## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **GREGORY HUNT,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **6:06-cv-1209-LSC-PWG** |
| **RICHARD ALLEN, Commissioner** | ) | |
| **Alabama Department of Corrections,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

This is an action for habeas corpus relief under 28 U.S.C. § 2254 by petitioner Gregory Hunt

("Hunt"), who was convicted and sentenced to death in Walker County, Alabama for the murder of

Karen Lane.  *See* 28 U.S.C. § 2254.  Hunt is represented by counsel. For the reasons which follow,

the petition is due to be DENIED.

### I. OFFENSE

The following summary of the evidence relevant to Hunt's conviction is taken from the trial

court's sentencing order:

> The defendant, Greg Hunt, and the deceased, Karen Lane, had been dating
> each other for approximately one month.  This, according to Tina Gilliland (Cook),
> a first cousin to the defendant, friend to the deceased and a State witness.  The
> deceased and Ms. Cook, had been sharing an apartment at 105 Elliott Heights,
> Cordova, Alabama, just prior to Ms. Lane's death.

> According to the testimony of a State witness, Shirley Romine, while at Ms.
> Cook's apartment on August 1, 1988 at approximately 6:00 P.M. in the course of a
> conversation with the defendant, Mr. Hunt, he made the statement, in regard to Ms.
> Lane, "She makes me so mad.  I could kill that bitch" and that he was "tired of
> everything and was moving back to Miami."

On August 1, 1988 at approximately 6:30 P.M. Ms. Cook and Ms. Lane left the Cordova apartment in Ms. Cook's car to go to her then finance, Clinton Cook's residence in Parrish.  Upon arrival there at approximately 7:00 P.M., Ms. Lane and Mrs. Cook took note of the defendant's van at Mr. Cook's home.  Ms. Cook got out of the car to go inside and Ms. Lane left quickly.

Upon arrival Ms. Cook went in the home and had a conversation with the defendant as to why Ms. Lane had not come in and where she was going.  Ms. Cook told Mr. Hunt that Ms. Lane was going to her mother's house.  Mr. Hunt left approximately five minutes after Ms. Cook's arrival.  Thereafter, Ms. Cook remained for the evening.

Later on that evening at approximately 9:45 P.M. the phone rang at Mr. Cook's residence. Mr. Hunt said to Ms. Cook, "do you know where Karen is? I know how you women are.  You better tell me where she is or it's going to be detrimental to you."  Before he hung up he said he was ready to go back to prison if that is what it took.

Also during that evening the defendant went to the trailer of Jamie Mullinax and Hortencia Ovalle and stated that he was going to "fuck" somebody up.  Mr. Mullinax and Mr. Hunt were discussing the relationship between the defendant and Ms. Lane just prior to this comment.

According to Mrs. W. O. Sanders, the mother of the deceased, she had two telephone conversations with Mr. Hunt in which he stated that he was looking for Ms. Lane.  The first conversation took place at approximately 8:45 to 9:45 P.M. on August 1, 1988 and the second conversation at approximately 1:00 A.M. on August 2.  In one of the conversations he stated that Mrs. Cook was "scum" and "I grew up in violence and I know what it's all about."

According to the Cordova Fire Department Dispatch Card signed by H. L. Webb, Dispatcher, the fire department arrived at a fire at an unoccupied house owned by Karen Lane at 10:50 P.M. on August 1, 1988.  According to the testimony of Mr. W.O. Sanders, father of the deceased, he heard an automobile which sounded like Greg Hunt's van in the area at approximately the same time.

According to Debra Kay Twilley, a State witness, she left work at 11:00 P.M. and went straight home on the night of August 1, 1988.  Mr. Hunt was at her home when she arrived.  He started talking about Ms. Lane and said that he was tired of her "crap", tired of everything and had burned her house.  She stated that he "took away the only thing that she had".  She further testified that he appeared to be drinking. State witness, Sheree Long, was in downtown Cordova at approximately 12:00 midnight on August 1, 1988 to 12:30 A.M. on August 2, 1988.  She observed the

defendant chasing the car which fit the description of the car driven by Ms. Lane. The van was chasing the vehicle at a high rate of speed.

At approximately 12:30 A.M. on August 2, 1988, the telephone rang again at the residence of Mr. Cook and another call was received from Mr. Hunt in which Mr. Hunt said he had done something "materialistically"; Ms. Lane and her parents were going to be upset with him; he might have to go back to Florida; people didn't "screw" him over and get away with it.

According to State witness, Mary Turner, a neighbor of Ms. Cook, she heard a noise that sounded like glass breaking. She looked out and saw the defendant reach his hand in the window at Ms. Cook's apartment and then saw him go through the door. She saw him go into the apartment around 2:00 A.M. on August 2, 1988 and saw him exit the apartment later.

At approximately 2:30 A.M. Mr Hunt called Mr. Cook's residence again saying that Ms. Lane was "lying here in the kitchen floor" instructing Mr. Cook to get someone up there and get her to the hospital.

From the testimony, the defendant went to Cullman to the residence of Jack and Jean Kilpatrick. While there, the defendant called his brother-in-law, Russell Davenport in Cooper City, Florida looking for his sister, Loretta. During the course of conversation he stated that he didn't think that he had killed her and that he couldn't find anything out about her. This call was made at approximately 7:00 or 8:00 P.M on August 2, 1988. He stated that they went out partying, got into a fight and that he was not sure what condition he left her in.

According to the testimony of the defendant's sister, Loretta Hunt Davenport Martin, she came from Florida to Alabama after receiving a telephone call from her mother. She arrived at her mother's house in Cordova and received a call from her brother, the defendant. She then went to Cullman to the Kilpatrick residence where she found the defendant. She ask [sic] what was going on and he said they were looking for him. The police then arrived and arrested Mr. Hunt.

Later, while visiting with her brother who was incarcerated in the Walker County Jail, the month of October, Loretta asked the defendant, "You did do this, you did kill her?" And he said, "Yes, I did." She said he replied he had beaten her; things had gotten out of control; he had lost his mind; he was sorry and he was drinking and on some pills at the time.

From the testimony of State witness, James Carl Sanders, an inmate with Mr. Hunt in the Walker County Jail, while awaiting trial, the defendant stated that he had beaten her and that he saw she was bleeding after he put the stick up her.

Meanwhile, in the early morning hours on August 2, 1988, Ms. Lane's bludgeoned body was discovered in Ms. Cook's apartment. (*See* State's Exhibits 1, 2, 3).

According to the testimony of Dr. Joseph Embry of the Alabama Department of Forensic Sciences, Ms. Lane sustained a total of 60 injuries which included: 20 injuries to the head, 12 fractured ribs on the left side and 12 fractured ribs on the right side; her breast bone was fractured; she sustained bruises to her heart; three tears to her liver; bruises to the lungs; a three-quarter-inch tear to th aorta; a bruised pancreas; and, bleeding in the muscles to the side of the neck.

Next to the body a bar stool was recovered with a quantity of blood on it as well as hair attached to it. Between her legs a broomstick was recovered. After analysis of the broomstick, mucus was found on the tip, suggesting it had been inserted in her vagina.

According to Larry Huys, Alabama Department of Forensic Sciences Serologist, who took vaginal, oral and anal swabs as well as secretions from the armpit and hair samples, sperm was found in Ms. Lane's mouth. Mr. Huys testified that the sperm was too numerous to count and was not consistent with regurgitation. The sperm was in such quantity indicating it had been deposited in close proximity to the death of Ms. Lane.

John Vaughan, Director of Regional Drug Unit, testified that blood was found in the apartment in two rooms upstairs. A bloody palm print was recovered from the fifth step which was successfully matched to the defendant. Fingerprints taken from a window screen on a broken window located at the rear of the apartment included Mr. Hunt's left ring, right palm and right index finger prints.

(*See* Vol. 22, Tab. 59 at 2-6.)

## II. PROCEDURAL HISTORY

On Tuesday June 19, 1990, Hunt was convicted of three counts of capital murder for murdering Karen Lane during the course of a burglary and during the course of sexual abuse.[1]  On that same day, the jury returned a sentencing recommendation of death by a  vote of 11 to 1.  After

---

[1]   Hunt was convicted of: (1) Count I: intentional murder during the sexual abuse of a victim incapable of consent; (2) Count II; intentional murder during sexual abuse by forcible compulsion; and (3) Count III: intentional murder during a burglary capital murder.

sentencing, the trial court followed the jury's recommendation and, on July 27, 1990, sentenced Hunt to death.  (Vol. 22, Tab 59.)  Hunt's attorneys at the trial level were Louis Wilkinson and Hubert Taylor, both of whom passed away after the trial.  With new attorneys, Hunt raised the following claims on direct appeal:

1.  The appellant's rights to due process as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States and the Alabama Constitution were denied him when the Circuit Court of Walker County, Alabama refused the appellant access to the use of the law library and law related material.

2.  The trial court committed reversible error in allowing witness testimony and prosecutor comments as to other criminal acts of the appellant or the appellant's propensity to commit other criminal acts.

3.  The trial court committed reversible error in allowing closing argument of the prosecutor where the prosecutor argues "plea bargaining" from intentional murder to simple murder.

4.  The trial court committed reversible error in allowing comments of the prosecutor during his opening statement which were improper and highly prejudicial to the appellant.

5.  The trial court committed reversible error in allowing improper comments as to the guilt of the appellant during the closing argument by the prosecutor.

6.  The trial court committed reversible error in allowing the prosecutor to vouch for the truthfulness of witnesses during his closing argument.

7.  The trial court committed reversible error in allowing the prosecutor to suggest that a witness for the appellant was not testifying truthfully.

8.  The appellant's constitutional rights, as guaranteed by the Fifth Amendment of the Constitution of the United States and of the State of Alabama, were violated by the trial court in allowing the prosecutor to comment during closing argument as to the appellant's "silence at trial."

9.  The trial court committed reversible error by allowing the prosecutor to comment on facts in evidence for no reason other than to inflame the passion of the jury.

10.     The trial court committed reversible error by allowing in the closing argument of the prosecutor unsubstantiated facts that were not a part of the record.

11.     The trial court committed reversible error in allowing the case to proceed to trial with no affirmation in support that probable cause existed to issue the warrant of arrest.

12.     The appellant was denied his rights as guaranteed by the Constitution of the United States and the State of Alabama to be present at each and every stage of the process in this capital case.

13.     The trial court committed reversible error by amending the indictment to correct an improper statement in the indictment.

14.     The trial court committed reversible error by allowing into evidence charges other than those for which the appellant was being tried.

15.     The court has failed to complete the record for this appeal for which the appellant can prepare his appeal, which is a violation of his constitutional rights as guaranteed by the Constitution of the United States and the State of Alabama.

(Vol. 11, Tab. 32).

On February 11, 1994, the conviction and death sentence were affirmed. *Hunt v. State*, 659 So. 2d 933 (Ala. Crim. App. 1994). Following the denial of his petition for rehearing, Hunt filed a petition for writ of certiorari, raising the following claims:

1.     Did the trial court commit reversible error by failing to instruct the jury regarding voluntary intoxication and manslaughter as a lesser included offense?

2.     Did the trial court commit error by improperly restricting defendant's cross examination?

3.     Did the trial court commit error by permitting the state to adduce testimony that defendant burned the decedent's house down prior to allegedly killing her?

4.     Is judicial electrocution unconstitutional as violative of the Eighth and Fourteenth Amendments which forbid the infliction of cruel and unusual punishments, as well as Article I Section 15 of the Alabama Constitution of 1901?

5.     Is any tinkering with the machinery of death so irrational and inconsistent as to necessarily violate the U.S. and Alabama Constitutions?

6.      Did the trial court fail to comply with the requirements of Code of Alabama § 13A-5-47(d)?

(Vol. 12, Tab 42.)

On February 17, 1995, the Alabama Supreme Court denied the petition. *Ex parte Hunt*, 659 So. 2d 960 (Ala.). The United States Supreme Court denied cert on October 2, 1995. *Hunt v. Alabama*, 516 U.S. 880 (1995).

In February 1997, Hunt filed a *pro se*[2] petition for post-conviction relief pursuant to Rule 32 of the *Alabama Rules of Criminal Procedure*, raising numerous claims. (Vol. 13, Tab 44.) Thereafter, the Rule 32 trial court, without holding an evidentiary hearing, dismissed some of Hunt's claims as procedurally barred. (Vol. 13, Tab 47.) In March of 2002, with the assistance of newly appointed counsel (the prior appellate attorneys had withdrawn), Hunt filed an Amended Rule 32 Petition raising numerous claims. (Vol. 14, Tab 48.)

An evidentiary hearing was held on July 22, 2002. (Vol. 17, Tab 53.) The trial court ultimately denied the petition, finding the claims either without merit or procedurally barred. (Vol. 22, Tab 63 at 5-6.)

Hunt appealed the denial of his Rule 32 petition, raising the following claims:

I.      This court owes no deference to the trial court's determinations, because the trial court merely signed the state's proposed order and the court did not independently analyze and determine the facts and laws contained in the state's proposed order.

II.     Mr. Hunt was deprived of a full and fair Rule 32 hearing.

---

[2]   Although not detailed in this procedural history, Hunt has persistently filed *pro se* documents even when represented by experienced death penalty counsel. Indeed, Hunt began filing these *pro se* pleadings prior to trial and, despite numerous admonishments from the courts, he has continued the *pro se* filings, even in this proceeding. (*See, e.g.* Doc. 36; Vol. 1, Tr. at 4-5, 10, 12-14; Vol. 6, Tr. at 1013-14, 1018); *Hunt*, 659 So. 2d at 937; *Hunt v. State*, 940 So. 2d 1041, 1048 (Ala. Crim. App. 2005).

III.    The trial court applied the wrong legal standards in denying Mr. Hunt's claim of ineffective assistance of counsel.

    A.    The finding on direct appeal of no plain error does not preclude a finding of prejudice under *Strickland* for determining whether defense counsel was ineffective under the Sixth and Fourteenth Amendments to the U.S. Constitution.

    B.    The individual and cumulative effects of counsel's errors must be considered in determining that Mr. Hunt was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel.

    C.    Mr. Hunt's claims of ineffective assistance of counsel were timely raised in his amended Rule 32 petition, since the *pro se* petition was filed within the statute of limitations and was timely amended before the entry of judgment.

    D.    The trial court misinterpreted the governing law on establishing prejudice in ineffective assistance claims.

IV.    Petitioner's key constitutional claims are not procedurally defaulted.

V.    The trial court erred in dismissing many of Mr. Hunt's claims for relief as time-barred.

VI.    Mr. Hunt's right to a trial by jury, fair trial, due process, and reliability in sentencing were violated because the ultimate factual determinations authorizing the death penalty were not made by the jury beyond a reasonable doubt; the trial court, therefore, erred in denying Mr. Hunt relief.

VII.    The trial court erred in failing to find that Mr. Hunt's trial counsel was ineffective and denied him of his constitutional right to a fair trial.

    A.    The statutory compensation for attorneys and experts rendered counsel ineffective.

    B.    The trial court erred in failing to find counsel's performance in numerous stages of the guilt phase to be ineffective.

        1.    Counsel was ineffective for not investigating or preparing adequately for the guilt phases.

        2.    Counsel was ineffective in failing to obtain significant pre-trial rulings on critical matters.

        3.    Counsel was ineffective for failing to request adequately that the state turn over exculpatory and impeachment evidence.

        4.    Counsel's voir dire was ineffective.

5.      Counsel failed to prevent or object to egregious prosecutorial misconduct.

6.      Counsel was ineffective in failing to cross-examine the state's witnesses.

7.      Counsel's failure to object to the court's instructions on reasonable doubt and the presumption of innocence was ineffective.

8.      Counsel's failure to request instructions on intoxication was ineffective.

9.      Counsel's failure to adequately object to the insufficiency of evidence supporting Mr. Hunt's capital conviction was ineffective.

C.      The trial court erred in failing to find that trial counsel's performance at the penalty phase was constitutionally deficient under *Strickland*.

1.      Counsel was ineffective in failing adequately to investigate and prepare for penalty phase.

2.      Counsel was ineffective in acquiescing to a rushed penalty phase determination.

3.      Counsel was ineffective in his presentation of his penalty phase case.

4.      Counsel was ineffective in failing to object to prosecutorial misconduct.

5.      Counsel was ineffective in failing to object to incorrect jury instructions and the jury's failure to specify its weighing of circumstances.

6.      Counsel was ineffective at the sentencing proceeding.

D.      The individual and cumulative errors of trial counsel at the guilt and penalty phase denied Mr. Hunt effective assistance of counsel.

VIII.      The trial court erred in failing to find that appellate counsel's performance was ineffective and denied Mr. Hunt of his constitutional right to a fair trial.

IX.      The trial court erred in dismissing as precluded Mr. Hunt's claim that his rights were violated by the jury's failure to specify the aggravating factor it found and on which it based its recommendation.

X.      The trial court erred in failing to find a *Brady* violation regarding James Sanders' testimony.

XI.      The trial court erred in failing to find that petitioner's grand jury was not drawn from a fair cross section of the community.

XII.    The trial court erred in failing to find that the state of Alabama failed to provide petitioner with a full record of his trial.

XIII.    The trial court erred in failing to find that imposition of the death penalty constitutes cruel and unusual punishment.

XIV.    The trial court erred in failing to find that the cumulative effect of these errors entitled Mr. Hunt to a new trial.

(Vol. 22, Tab 63) .

The Alabama Court of Criminal Appeals affirmed in a published opinion. *Hunt v. State*, 940 So. 2d 1041 (2005).  Hunt filed an application for rehearing and, ultimately, the Appeals Court supplemented its original petition. *Id.* at 1073-75.  That supplement addressed solely the issue of whether a finding of plain error on direct appeal precluded a finding of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).  Rejecting an earlier Alabama opinion, *Williams v. State*, 783 So. 2d 108, 133 (Ala. Crim. App. 2000), the Appeals Court concluded that a finding of no plain error on direct appeal did "not automatically foreclose a determination of the existence of the prejudice required under *Strickland* to sustain a claim of ineffective assistance of counsel." *Hunt*, 940 So. 2d at 1074.  Accordingly, the Appeals court reexamined the ineffective assistance of counsel claims raised in Hunt's appellate brief, and again denied relief. *Id.* at 1073-75.

Hunt filed a petition for writ of certiorari in the Alabama Supreme Court raising the following claims:

I.    The Court of Criminal Appeals' denial of Mr. Hunt's claims for ineffective assistance of counsel is contrary to decisions of the United States Supreme Court and the Supreme Court of Alabama.

    A.    The lower courts applied the wrong constitutional standards in determining Mr. Hunt's claims for ineffective assistance of counsel.

B.    The lower courts failed to apply a cumulative error analysis in determining whether the cumulative effect of respective counsel's errors amounted to both deficient performance and prejudice.

II.    The Court of Criminal Appeals' denial of Mr. Hunt('s) claims that trial counsel was ineffective is contrary to the decision in *Strickland*, other decisions of the United States Supreme Court, and Alabama law.

A.    The statutory compensation for attorneys and experts rendered counsel ineffective.

B.    Counsel's performance in numerous stages of the guilt phase was ineffective and contrary to *Strickland*.

1.    Counsel were ineffective for not investigating or preparing adequately for the guilty phases.
2.    Counsel were ineffective in failing to obtain significant pre-trial rulings on critical matters.
3.    Counsel were ineffective for failing to request adequately that the state turn over exculpatory and impeachment evidence.
4.    Counsel were ineffective in failing to life-qualify prospective jurors.
5.    Counsel were ineffective in failing to prevent or object to egregious prosecutorial misconduct.
6.    Counsel were ineffective in failing effectively to object to the direct examination of, or to cross-examine, key prosecution witness James Sanders.
7.    Counsel were ineffective in failing to object to the court's instructions on reasonable doubt and the presumption of innocence.
8.    Counsel were ineffective in failing to request an instruction on intoxication.
9.    Counsel's failure to adequately object to the insufficiency of evidence supporting Mr. Hunt's capital conviction was ineffective.
10.    Counsel were ineffective for other failures in the guilty phase that the trial court erroneously dismissed applying an incorrect standard of law.

C.    Counsel's performance at the penalty phase was ineffective and constitutionally deficient under *Strickland*.

1.    Counsel were ineffective in failing adequately to investigate and prepare for the penalty phase.
2.    Counsel were ineffective in acquiescing to a rushed penalty phase determination.

3.   Counsel were ineffective in their presentation of the penalty phase case.

4.   Counsel were ineffective in failing to object to prosecutorial misconduct.

5.   Counsel were ineffective in failing to object to incorrect jury instructions and the jury's failure to specify its weighing of circumstances.

6.   Counsel were ineffective at the sentencing proceeding.

D.   The individual and cumulative errors of trial counsel at the guilty and penalty phase denied Mr. Hunt effective assistance of counsel.

III.   The Court of Criminal Appeals' failure to find that appellate counsel's performance was ineffective denied Mr. Hunt of his constitutional right to effective assistance of counsel and a meaningful appeal, contrary to decisions of the United States Supreme Court.

IV.   The Court of Criminal Appeals erroneously failed to address Mr. Hunt's key constitutional claims by incorrectly holding they were procedurally defaulted, contrary to United States Supreme Court decisions and Alabama law.

A.   Mr. Hunt's *Brady* claim was not procedurally barred because it could not have been raised at trial or on direct appeal, and the court should have granted relief on the claim.

B.   The Court of Criminal Appeals improperly applied a procedural bar to, and refused to consider, Mr. Hunt's constitutional claims.

V.   The Court of Criminal Appeals erred in failing to find that Mr. Hunt was deprived of a full, fair Rule 32 hearing.

A.   Mitigating evidence was improperly excluded at the Rule 32 hearing.

B.   The Court of Criminal Appeals incorrectly affirmed the trial court's verbatim adoption of a facially flawed order drafted by the state.

VI.   Mr. Hunt's rights to a trial by jury, fair trial, due process, and reliability in sentencing were violated because the ultimate factual determinations authorizing the death penalty were not made by the jury beyond a reasonable doubt.

VII.   The state of Alabama failed to provide petitioner with a full record of his trial.

(Vol. 21, Tab 58.)

The Alabama Supreme Court denied his petition for certiorari on April 21, 2006.  (Vol. 22, Tab 65.)   Hunt filed a *pro se* habeas petition in this Court on May 5, 2002.  On August 8, 2003 the petition was dismissed without prejudice.  (Doc.11).  *Hunt v. Jones*, 02-N-1213-J (N.D. Ala.).  The present Section 2254 petition was filed, through counsel, on June 21, 2006.

### III.  CLAIMS PRESENTED

This federal habeas petition raises the following claims:

A.   Mr. Hunt Was Denied A Fair Trial By The Prosecution's Misconduct and Violation of Its Obligations Under *Brady*:

    1.   James Carl Sanders' Testimony
    2.   Prosecution's attempt to obtain fabricated testimony from inmates housed with Hunt

B.   Mr. Hunt Was Deprived of Fair Trial by Impartial Jury.

C.   Race, Gender and Economic Discrimination in the Formation and Composition of the Grand and Petit Juries and the Selection of the Respective Foreperson, Deprived Mr. Hunt of a Fair and Reliable Trial

D.   Gross Constitutional Errors in the Rushed Penalty Phase Deprived Mr. Hunt of His Rights to a Fair Trial and to Due Process of Law

    1.   Rushed Proceedings
    2.   Instruction on Each Statutory Mitigating Factor
    3.   Verdict Form
    4.   Collective Penalty Phase Violations

E.   The Trial Court Violated Mr. Hunt's Constitutional Rights by Refusing to Consider Non-statutory Mitigating Evidence.

F.   The Trial Court's Oral Charge at the Conclusion of the Penalty Phase of Mr. Hunt's Trial Was Constitutionally Defective and Prejudicial to Mr. Hunt

    1.   Failure to Explain to Jurors That They Were Required to Consider Non-statutory Mitigators and Failure to Define or Give Examples of Same
    2.   Alleged Confusing Instructions Regarding the Number of Votes Required for a Death Sentence

3.      Transposition of the Words Mitigating and Aggravating
4.      Instructions about Burden of Proof for Mitigating Evidence.
5.      Instructions Regarding the Sentence to Be Imposed If Jury Found No Aggravating Circumstances
6.      Court's Instruction on Circumstances That Would Allegedly Require a Sentence of Life Without Parole, but the Court Told the Jury it "May" Sentence Defendant to Life

G.      Mr. Hunt's Rights to a Trial by Jury, Fair Trial, Due Process, and Reliability in Sentencing Were Violated Because the Ultimate Factual Determinations Authorizing the Death Penalty Were Not Made by the Jury Beyond a Reasonable Doubt.

H.      Comments by the Trial Court, Defense Counsel, and the Prosecutor, Individually and Collectively, Impermissibly Diminished the Jury's Sense of Responsibility for Sentencing

I.      The Alabama Capital-sentence Scheme Is Unconstitutional, in That it Requires the Prosecution to Disprove the Existence of the Mitigating Factors by Only a Preponderance of the Evidence

J.      Alabama Code § 13A-5-45(e) Is Unconstitutional Insofar as it Denied Mr. Hunt the Right to Rebut at the Penalty Phase the Aggravating Circumstance That the Capital Offense Was Committed During a Burglary

K.      Due to Prosecutorial Misconduct and Improper, Inadmissable, and Prejudicial Arguments by the Prosecutor Throughout the Guilt Phase of His Trial, Mr. Hunt Was Deprived of His Right to a Fair Trial and to Due Process

1.      The Prosecutor's Opening Statement

A.      Personal Opinions of the Prosecutor
B.      Prosecutor's Remark That the Defense Would Make an Opening Statement
C.      Prosecutor Thanked the Jury and Had the Victim's Father at the Prosecution Table During Opening Argument
D.      Allegedly Fabricated Evidence

2.      Prosecutor's Guilt-phase Closing Argument

A.      •      Thanking the Jury on Behalf of the Prosecutor and the Victim's Family
        •      Hunt Painted an X-rated Picture for the Victim's Family
B.      "Devil" Comment

C.    "Pharaoh" Comment
D.    Hunt "Made" the Jury Look at a Triple X Rated Scene
E.    Alleged Plea Bargaining Comment.
F.    The Prosecutor Expressed His Personal Opinion with Comments about Hunt's Guilt Being "overwhelming" and "If this Isn't Capital Murder"
G.    The "Everybody Else Has to Be Lying" Comment
H.    •    Comment about Presence of Sanders and the Nephew at Apartment
      •    Comment about Looking at the Evidence
I.    Comment about the Prosecutor Believing in Case
J.    Prosecutor's Suggestion That State's Witness Kilpatrick Was Untruthful

K.    Prosecutor's Alleged Comment about Hunt's Failure to Testify

L.    Prosecutorial Conduct in Mr. Hunt's Penalty Phase Resulted in a Denial of Mr. Hunt's Rights to a Fair Trial and Reliable Sentence Determination

      1.    State Failed to Show by Preponderance of the Evidence That the Mitigating Factors Did Not Exist
      2.    Comparing Aggravating and Mitigating Circumstances
      3.    Prosecutor's Comment That the Jury "Had to Believe" Aggravating Circumstances Existed
      4.    Prosecutor's Argument That the Jury Could Consider "All" the Guilt Phase Evidence During Sentencing
      5.    Comments about "Sexually Oriented Injuries"
      6.    Prosecutor's Urging That the Death Penalty Was the "Right Thing" to Do

M.    Mr. Hunt's Rights Were Violated by the Jury's Failure to Specify the Aggravating and Mitigating Factors it Found and on Which it Based its Recommendation

N.    The Trial Court Impermissibly Altered the Prosecution's Burden of Proof

O.    The Use of Heinous, Atrocious or Cruel Aggravating Circumstances in this Case Violated Mr. Hunt's Rights Guaranteed by the Sixth, Eighth and Fourteenth Amendments.

P.    The Trial Court Violated Mr. Hunt's Constitutional Rights When it Refused to Grant Mr. Hunt's Request for a Continuance Due to Jurors' Infirmity

      1.    Juror with Hearing Impairment
      2.    Jurors with Heart Ailments

Q.      The Trial Court Erred in Permitting the Victim's Father to Sit at the Prosecution's Table Throughout the Trial

R.      The Trial Court's Failure to Provide a Trial Transcript for Jury Read Back and Allowing the Jury to Review Unsworn Evidence Violated Mr. Hunt's Constitutional Rights

S.      The Trial Court's Consideration of Inadmissible Evidence at Sentencing, Including a Prejudicial Presentencing Report, Deprived Mr. Hunt of a Reliable Determination of Punishment

T.      The Death Penalty in this Case Was Sought and Imposed Pursuant to a Pattern of Racial Bias

U.      The Manner of Execution Used by the State of Alabama Constitutes Cruel and Unusual Punishment (Lethal Injection)

V.      Mr. Hunt Was Arrested Without Probable Cause in Violation of the Fourth Amendment

W.      The State Post- Conviction Hearing Unreliable and Unconstitutional

      1.      No "Full and Fair" Hearing Because of Procedurally Barred Claims
      2.      No "Full and Fair" Hearing Because of "Overlooked Evidence"
      3.      Insufficient Time and Resources to Prepare for Rule 32 Hearing
      4.      Court Refused to Admit Evidence and Refused to Permit Full Briefing of Claims
      5.      Court Signed State's Proposed Order

X.      Mr. Hunt Was Denied Effective Assistance of Counsel at All Phases of His Capital Trial, Sentencing and Appeal

      1.      Pre-trial
            A.      Inadequate Preparation Time
            B.      Inadequate Compensation
            C.      Inadequate Pre-trial Investigation

      2.      Jury Selection & Other Pre-trial Matters
            A.      Failure to Request Venue Change
            B.      Inadequate Voir Dire: Failure to Life Qualify Jurors
            C.      Inadequate Voir Dire: Failure to Properly Question Jurors Who "Admitted" They Had Been Influenced by Pre-trial Coverage or Had Personal Knowledge

    D.      Failure to Move to Quash Grand and Petit Jury Pools Because They Did Not Represent a Cross-section of the Community

    E.      Failure to Object to Victim of the Father Seated at the Table next to the District Attorney

    F.      Failure to Adequately Argue a Motion to Suppress the Evidence Used Against Hunt on the Grounds That His Arrest Warrant Was Unsupported by the Factual Allegations in Violation of Fourth Amendment Rights

3      Guilt Phase

    A.      James Sanders and Loretta Martin
        i.      Failed to Object to the Prosecution's Examination of Sanders and Failed to Properly Cross Examine Sanders
        ii.     Failed to Properly Cross Examine Martin

    B.      Theory of Defense
        i.      Incoherent and Conflicting Defenses
        ii.     Intoxication Defense

    C.      Jury Instructions
        i.      Manslaughter & Intoxication
        ii.     Felony Murder
        iii.    Abuse of a Corpse

    D.      Sufficiency of Evidence of Capital Murder

    E.      Additional Guilt Phase Issues
        i.      Closing Statements of Trial Counsel
        ii      Prosecutorial Misconduct - Guilt Stage
            A.     At the Guilt Stage
            B.     At the Penalty Stage
            C.     State Court Decisions & Arguments of the Parties
        ii.     Trial Court's Erroneous Instructions on Reasonable Doubt
        iv.    Inflammatory Sketches Introduced Through Witness Kilpatrick and Inflammatory Photographs Introduced by the State
        v.     Failure to Transcribe All of the Proceedings

5.     Penalty Phase

    A.      Mitigating Evidence
        i       Hunt's Childhood
        ii.     Hunt's Intoxication/drug Use

    B.      Failure to Object to Rushed Proceedings

    C.      Counsel's Argument

    D.      Prosecutorial Misconduct

    E.      Jury Instructions and Verdict

    F.      Other Penalty Phase Issues

6.      Sentencing Hearing
7.      Appeal and Collateral Review
8       Cumulative Error

### IV. THE SCOPE OF FEDERAL HABEAS REVIEW

Pursuant to 28 U.S.C. § 2254(a), a federal district court is prohibited from entertaining a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court . . ." unless the petitioner alleges "he is in custody in violation of the Constitution or laws or treaties of the United States." In other words, this court's review of habeas claims is strictly limited to federal constitutional questions; claims pertaining solely to questions of state law fall outside the parameters of this court's authority.

**A.      Exhaustion and Procedural Default**

Prior to seeking relief in federal court from a conviction and sentence occurring in a state court, a habeas petitioner is first required to present his federal claims to the state court by exhausting all of the state's available procedures. This includes seeking appellate review up to and through the state's court of last resort. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The purpose of this requirement is to ensure that state courts are afforded the first opportunity to correct federal questions affecting the validity of state court convictions. As explained by the Eleventh Circuit,

> In general, a federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State. . . ."). "When the process of direct review . . . comes to an end, a presumption of finality and legality attaches to the conviction. . . . The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to

relitigate state trials." *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir. 1989) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983)).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971) (internal quotation marks omitted). The Supreme Court has stated:

> The federal claim must be fairly presented to the state courts..., it is not sufficient merely that the federal habeas applicant has been through the state courts.... Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies.

*Picard*, 404 U.S. at 275. *See also Duncan*, 513 U.S. at 365, ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues. "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 5-6 (1982) (citations omitted).

*Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

A related principal is procedural default. If a petitioner fails to raise his federal claim to the state court at the time and in the manner dictated by the state's procedural rules, the state court can decide the claim is not entitled to a review on the merits, *i.e.,* the claim is procedurally defaulted. Usually, if the last state court to examine a claim explicitly finds that the claim is defaulted because the petitioner failed to follow state procedural rules, then federal review of the claim is also precluded pursuant to federal procedural default principles. As explained by the Eleventh Circuit,

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed

> to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted. Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. *See id.* at 262, 109 S. Ct. at 1042-43; *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).  The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, *See Presnell v. Kemp*, 835 F.2d 1567, 1578-79 (11th Cir. 1988), *cert. denied*, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

*Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991).

Federal deference to a state court's clear finding of procedural default under its own rules

is so strong that a

> ". . . state court need not fear reaching the merits of a federal claim in an *alternative* holding. Through its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris*, 489 U.S. at 264 n.10, 109 S. Ct. 1038 (emphasis in original). *See also Alderman v. Zant*, 22 F.3d 1541, 1549-51 (11th Cir.) (where a Georgia habeas corpus court found that the petitioner's claims were procedurally barred as successive, but also noted that the claims lack merit based on the evidence, "this ruling in the alternative did not have an effect... of blurring the clear determination by the [Georgia habeas corpus] court that the allegation was procedurally barred"), *cert. denied*, 513 U.S. 1061, 115 S. Ct. 673, 130 L. Ed. 2d 606 (1994).

*Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999).

The Supreme Court defines an "adequate and independent" state court decision as one

"'[which] rests on a state law ground that is <u>independent</u> of the federal question and  <u>adequate</u> to

support the judgment.'" *Lee v. Kemna,* 534 U.S. 362, 375 (2002)  (emphases added)).  Whether a

state procedural rule is "adequate and independent," so as to have a preclusive effect on federal

review of a claim, "'is itself a federal question.'"  *Id.*  (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)).  Thus, notwithstanding a state court's determination that a claim was not presented in accordance with state procedural rules, it is for the federal court to determine whether that finding is sufficiently "adequate" and "independent" of federal law to merit a preclusive effect.

A state procedural rule is "independent of the federal question" when it "rests solidly on state law grounds [that are] not intertwined with an interpretation of federal law." *Judd v. Haley,* 250 F.3d 1308, 1313 (11th Cir. 2001) (citation omitted).  To be considered "adequate," by a federal court, the state procedural rule must be "'firmly established and regularly followed.'" *Lee,* 534 U.S. at 375 (citation omitted).  In other words, the rule must be "clear [and] closely hewn to" by the state for a federal court to find it to be adequate.  *James v. Kentucky*, 466 U.S. at 345.  This does not mean that the procedural rule must be applied rigidly in every instance, or that occasional failure to do so eliminates its "adequacy." Rather, the "adequacy" requirement means only that the procedural rule "must not be applied in an arbitrary or unprecedented fashion." *Judd,* 250 F.3d at 1313.  If the rule is adequate, federal review of a defaulted claim will be foreclosed.  If however, the rule is not firmly established,  or if it is applied in an arbitrary, unprecedented, and manifestly unfair fashion, it is not adequate to preclude federal review.  *Card v. Dugger*, 911 F.2d 1494, 1517 (11th Cir. 1990).

There are instances when the doctrines of procedural default and exhaustion intertwine.  For instance, if a petitioner's federal claim is unexhausted, then the district court will traditionally dismiss it without prejudice or stay the cause of action in order to allow the petitioner to first avail himself of his state remedies.  However, "if it is clear from state law that any future attempts at exhaustion [in state court] would be futile [under the state's own procedural rules,]" the federal

court can simply find that the claim is "procedurally defaulted, even absent a state court determination to that effect[.]"  *Bailey*, 172 F.3d at1305 (citing *Picard v. Connor,* 404 U.S. 270, 276 (1971))*; See also, Collier v. Jones*, 910 F.2d 770, 773 (11 Cir. 1990)(where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are pro-cedurally barred in federal court as well).

Thus, a claim is procedurally barred from federal review when it was not raised in state court and cannot now be raised in state court because of the running of the one year statute of limitations of Rule 32.2(c),  *Alabama Rules of Criminal Procedure.  See Teague v. Lane*, 489 U.S. 288 (1989) (procedural default rule applies where a claim has never been presented to the state courts).

There are only two circumstances in which an otherwise valid state-law ground will not prevent a federal habeas court from considering a constitutional claim that was procedurally defaulted in state court: (1) where the petitioner had good "cause" for not following the state procedural rule and was actually "prejudiced" by not having done so; or  (2) where failure to consider the petitioner's claims will result in a "fundamental miscarriage of justice."  *See Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring); *See also*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice") (citations and internal quotation marks omitted); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *Smith v. Murray*, 477 U.S. 527, 537

(1986) (same); *Davis v. Terry*, 465 F.3d 1249, 1252 n.4 (11th Cir. 2006) ("It would be considered a fundamental miscarriage of justice if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'") (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## B.    The "Cause and Prejudice" Standard

As the "cause *and* prejudice" standard clearly is framed in the conjunctive, a petitioner must prove both parts. *Johnson v. Singletary*, 938 F. 2d 1166, 1175 (11th Cir. 1991) (*en banc*).  To show cause, a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Murray*, 477 U.S. at 488.  The Supreme Court has explained:

> Objective factors that constitute cause include "'interference by officials'" that makes compliance with the State's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Ibid*.  In addition, constitutionally "[i]neffective assistance of counsel... is cause." *Ibid*.  Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.  *Id*., at 486-488, 106 S. Ct., at 2644-45.

*McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). *See also Murrayr*, 477 U.S. at 488-89 ("Ineffective assistance of counsel ... is cause for a procedural default."); *Reed v. Ross*, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.").  To constitute "cause," ineffective assistance of counsel must itself be a basis for relief in the sense that it is a violation of the Sixth Amendment right to effective counsel and it was exhausted and not procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446 (2000).

Once cause is shown, a habeas petitioner also must prove prejudice.  Such a showing must go beyond proof "that the errors at his trial created a *possibility* of prejudice, but that they worked

to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

### C.      The "Fundamental Miscarriage of Justice" Standard

In a "rare," "extraordinary,"  and "narrow class of cases,"  a federal court may consider a procedurally defaulted claim in the absence of a showing of "cause" for the procedural default, if (1) a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent," *Smith v. Murray*, 477 U.S. 527, 537-38 (1986) (citations omitted) or if (2) the petitioner shows "by clear and convincing evidence that[,] but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty."  *Schlup*, 513 U.S. at 323-27 & n.44 (1995) (citations omitted).

### D.      Rules Governing Habeas Corpus Cases under § 2254

Even when exhaustion and procedural default are not at issue, federal review of a claim decided on the merits by a state court is constrained by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  When it was enacted, Congress significantly limited the circumstances under which a habeas petitioner may obtain relief. Indeed, under AEDPA, a petitioner is entitled to relief on a federal claim only if he shows that the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the court's rulings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2); *See also Williams v. Taylor*, 529 U.S. 362, 404 (2000).  "Moreover, a state court's factual determinations

are presumed correct unless rebutted by clear and convincing evidence." *McNair v. Campbell*, 416

F.3d 1291, 1297 (11th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

A state court's adjudication of a claim will be sustained under Section 2254(d)(1) unless

it is "contrary to" clearly established, controlling Supreme Court precedent, or it is an "unreasonable

application" of that law. These are two different inquiries, not to be confused or conflated, as the

Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (emphasis added),

saying:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in state
> court. Under the statute, a federal court may grant a writ of habeas corpus if the
> relevant state-court decision was either (1) "*contrary to...* clearly established Federal
> law, as determined by the Supreme Court of the United States," or (2) "*involved an
> unreasonable application of...* clearly established Federal law, as determined by the
> Supreme Court of the United States."

The statute limits the source from which "clearly established Federal law" can be drawn to

"holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant

state-court decision." *Id.* at 412; *See Warren v. Kyler*, 422 F.3d 132, 138 (3d Cir. 2005) ("[W]e do

not consider those holdings as they exist today, but rather as they existed as of the time of the

relevant state-court decision.") (internal quotation marks and citation omitted).

A state-court determination can be "contrary to" clearly established Supreme Court

precedent in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court
> arrives at a conclusion opposite to that reached by this Court on a question of law.
> Second, a state-court decision is also contrary to this Court's precedent if the state
> court confronts facts that are materially indistinguishable from a relevant Supreme
> Court precedent and arrives at a result opposite to ours.

*Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Likewise, a state-court determination can be an "unreasonable application" of clearly established Supreme Court precedent in either of two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id*. at 407. The question of whether a particular application was "reasonable" turns not on subjective factors, but on whether the application of Supreme Court precedent at issue was "objectively unreasonable." The question is not whether the state court "correctly" decided the issue, but whether its determination was "reasonable," even if incorrect. *See Bell v. Cone*, 535 U.S. 685, 694 (2002), *See also Williams v. Taylor, supra* (holding that a federal court sitting in habeas review may overturn a state court decision only where the state court's application of Supreme Court precedent is **unreasonable**, not where a federal court might merely disagree with the state court's application of the law)(emphasis added).

## E. Pleading Requirements and Burden of Proof

It must also be acknowledged that, since "habeas corpus review exists only to review errors of constitutional dimension," a habeas corpus petition must meet the "heightened pleading requirements [of] 28 U.S.C. § 2254 Rule 2c." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (other citations omitted)). The petitioner must specify all the grounds for relief available to the petitioner, state the facts supporting each ground, and state the relief requested. 28 U.S.C. § 2254 Rule 2(c)(1)(2)(3). A "general reference to the transcripts, case records and brief on appeal patently fails

to comply with Rule 2(c) ." *Phillips v. Dormire*,  2006 WL 744387, *1, (E.D. Missouri 2006) (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)).

　　　　With regard to the facts supporting his case, the burden of proof is on the habeas petitioner to establish a factual basis for the relief he seeks.  *Hill v. Linahan*, 697 F.2d 1032, 1034 (11th Cir. 1983); *Corn v. Zant*, 708 F.2d 549, reh'g denied, 714 F.2d 159 (11th Cir. 1983).  Consequently, a petitioner must provide substantial evidence to meet his burden of proof to show why federal post-conviction relief should be awarded.  *Douglas v. Wainwright*, 714 F.2d 1532, reh'g denied, 719 F.2d 406 (11th Cir. 1983), vacated on other grounds, 468 U.S. 1206 (1984) and 468 U.S. 1212 (1984), on remand 739 F.2d 531 (11th Cir. 1984).  That burden is to point to *prima facie* evidence establishing the alleged constitutional violation.  The mere assertion of a ground for relief, without more factual detail, does not satisfy petitioner's burden of proof or the requirements of 28 U.S.C. § 2254(e)(2) and Rule 2(c), *Rules Governing § 2254 Cases in the United States District Courts*.

## V. PROCEDURAL MATTERS

　　　　Respondent does not allege that the AEDPA's one-year statute of limitations is a bar to relief in this action.  (Doc. 26, Answer ¶ 16.)   Respondent does assert, however, that the present petition is due to be dismissed because the claims contained herein are either procedurally barred or without merit.  Respondent asserts that many of Hunt's claims are due to be procedurally barred because either: (1) they are unexhausted and return to state court would be futile; or  (2) they were rejected under independent and adequate state law procedural grounds and are therefore barred from federal habeas review.  (Doc.# 26 ¶¶ 17-27.)   With regard to the claims which are not barred, Respondent asserts that Hunt is not entitled to federal habeas relief on the merits, because either:

(1) the state court's findings on said claims were not contrary to or an unreasonable application of the facts or law; or (2) Hunt failed to cite to controlling United States Supreme Court law or argue how such law was misapplied to his claims. (Id. ¶¶ 28-34.) In Hunt's response, he made several general arguments which apply globally to all of his claims. They will be discussed where relevant.

## A.      Claims Subject to Procedural Bar

### 1.      Lack of Exhaustion

Respondent argues that many of Hunt's claims are unexhausted because they were not raised in his petition for writ certiorari in the Alabama Supreme Court either on direct appeal or in his Rule 32 proceeding. Because any attempt to return to state court to achieve exhaustion would be futile due to Alabama's statutory provisions concerning the statute of limitations and the prohibition against successive petitions. *See* 28 U.S.C. § 2254(b)(1)(A); Ala.R.Crim.P. 32.2(b) and 32.2(c),[3] Respondent argues that the claims are procedurally defaulted from federal review.

Hunt contends that all of his habeas claims were either excused from presentation at the state court level or they were, in fact, presented to the state courts, albeit in a slightly different form using additional examples from the record to support his claims. He argues, "[t]he fact that the habeas

---

[3]    Ala. R. Crim. P. 32.2(b) provides: **Successive Petitions**. If a petitioner has previously filed a petition that challenges any judgment, all subsequent petitions by that petitioner challenging any judgment arising out of that same trial or guilty-plea proceeding shall be treated as successive petitions under this rule. The court shall not grant relief on a successive petition on the same or similar grounds on behalf of the same petitioner. A successive petition on different grounds shall be denied unless (1) the petitioner is entitled to relief on the ground that the court was without jurisdiction to render a judgment or to impose sentence or (2) the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice.

Ala. R. Crim. P 32.2(c) reads: **Limitations Period**. . . . [T]he court shall not entertain any petition for relief from a conviction or sentence . . . unless the petition is filed: (1) In the case of a conviction appealed to the Court of Criminal Appeals, within one (1) year after the issuance of the certificate of judgment by the Court of Criminal Appeals under Rule 41, Ala.R.App.P. . . .

petition may draw from the same record an occasional further example of trial counsel's unreasonable conduct does not in any fashion render those claims 'unexhausted.'"  (Reply at 19.)

It is well settled that to satisfy the exhaustion requirements of § 2254(c), a claim must be presented in a petition for writ certiorari in the Alabama Supreme Court.  *O'Sullivan v. Boerckel*, *supra*.  The Supreme Court has held that "for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, <u>as well as a statement of the facts that entitle the petitioner to relief</u>.   *Gray v. Netherland,* 518 U.S 152, 162-63 (1996) (citation omitted) (emphasis added).  Thus,

> in order to ensure that state courts have the first opportunity to hear all claims, federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."  While we do not require a verbatim restatement of the claims brought in state court, <u>we do require that a petitioner presented his claims to the state courts "such that a reasonable reader would understand each claim's</u> particular legal basis and <u>specific factual foundation</u>."

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir.2005) (citations omitted) (emphasis added).

Given this exacting standard, any of Hunt's habeas claims asserted in "a slightly different form [than asserted below] using additional examples from the record" are precluded from habeas review because they were not fairly presented to the state court for review. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (citation omitted).

### 2.    Procedural Default: Claims Defaulted in State Court

Respondent also asserts that many of Hunt's exhausted claims are nonetheless procedurally barred in this court because, although they were raised in his Rule 32 petition in state court, they

were denied on procedural grounds, primarily as precluded under Rules 32.(2)(a)(3)[4] and (5), or

insufficiently plead under Rule 32.6(b).[5]   It is well settled that Ala.R.Crim.P. 32.2(a)(3) and (5), and

32.6(b) are firmly established and regularly followed by the Alabama courts.  *Jenkins v. Bullard*,

210 Fed.Appx. 895 (11th Cir. 2006),  *Waldrop v. Jones,*  77 F.3d 1308, 1314 (11th Cir. 1996), *cert*

*denied*, 519 U.S. 898 (1996).   Thus, where Hunt's claims were properly barred by the state court,

they are due to be procedurally barred in federal court as well.

### 3.        Ineffective Assistance of Counsel ("IAC") as "Cause."

As cause for failing to raise many claims at the trial and direct appeal levels, Hunt asserts

that he received ineffective assistance of counsel.[6]  (Reply at 89-91.)  He argues he has established

prejudice because, had his prior attorneys properly presented his substantive claims, the state courts

would have granted relief.  (*Id*.)

A claim of ineffective assistance of counsel can only constitute cause if the petitioner can

prevail on an independent ineffective assistance of counsel claim, and has raised -- and thus

exhausted -- that particular claim of ineffective assistance of counsel in state court.  *Murray v.*

*Carrier, supra;  Hill v. Jones*, 81 F.3d 1015, 1029-31 (11th Cir.), *cert. denied*, 519 U.S. 1119

(1997).  Although Hunt raised claims of ineffective assistance of trial and appellate counsel in the

---

[4]/      Ala. R.Crim. P. 32.2 governs preclusion of grounds. If a claim could have been but was not raised at trial, it will
be precluded under Rule 32.2(a)(3); if a claim could have been but was not raised on appeal, it will be
precluded under Rule 32.2(a)(5).

[5]/      Ala.R.Crim. P. 32.6(b) addresses the specificity requirement of Rule 32 petitions, and provides that a petition
must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure
of the factual basis of those grounds.

[6]/      Respondent's assertion that Hunt cannot rely on the "cause and prejudice" exception to his procedurally
defaulted claims because he did not explicitly raise the exception as a defense in his petition is championing
form over substance. To the extent Hunt implicitly relies on the exception or there is evidence that such an
exception is applicable, this Court will address the exception as necessary.

state court, they were rejected, both individually and cumulatively.  *See Hunt*, 940 So. 2d at 1060-75.  Furthermore**,** as discussed in this opinion, each of his ineffective assistance of counsel claims raised here is without merit.  As such, Hunt cannot rely on the alleged ineffectiveness of his trial and direct appeal counsel to excuse his procedural default.

**B.     Claims Not Subject to Procedural Bar**

1.     **Insufficiently Pled Claims and Arguments**.

Respondent contends that many of Hunt's claims which were denied on the merits in state court are not actionable here because he: (1) failed to explain how the state court decisions were contrary to or an unreasonable application of United States Supreme Court law; and/or (2) failed to cite to the specific decisions in support of his claims; and/or (3) failed to spell out the facts supporting his claims.  (Doc. 26, Answer ¶¶ 28-34) *(hereinafter "Answer")*.

Hunt counters that his federal "habeas petition, like his far more copiously detailed petition to the Alabama state courts under Rule 32, more than sets forth the claims and facts supporting each of those claims." (Reply at 16.)  Hunt contends that Respondent misconstrues the rules regarding a well-pleaded habeas petition, and argues that there is no requirement that a habeas petitioner enumerate in his petition every fact which supports a ground for relief[7].

---

[7]      In support of his argument, Hunt quotes a Middle District of Alabama case, *Burden v. Jones*, No. 3:05-cv-0682-MEF, 2007 WL 3206216, at *3 (M. D. Ala., Oct. 31, 2007), and cites to *Chambers v. Mosley*, No. Civ.A. 3:04CV504-MHT, 2006 WL 1381855, at  4 (M. D. Ala. May 17, 2006); *Spaziano v. Singletary*, 36 F.3d 1028, 1031 n.2 (11th Cir. 1994).  Those cases, however, dealt with the timeliness of habeas petitions, and whether equitable tolling was warranted when the petitioners alleged that they were unable to timely file without access to certain documents which would have provided more specific information.  The cases do not support his present argument.

The law does not support Hunt's implication that the federal habeas pleading requirement is akin to notice pleading. Federal habeas courts are under no obligation to "consider unsupported and undeveloped issues." *Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999).

What is remarkably absent from the petition is the legal analysis to support many of Hunt's claims. While enumeration of "every fact" might be unnecessary, in many instances Hunt completely fails to provide *any* facts supporting his claims, cite to a single United States Supreme Court case, or explain how his cited cases compel a finding in his favor. Moreover, when there are citations to United States Supreme Court cases, there is more often than not no development beyond the mere citation and statement identifying a general legal principle. While such lack of clarity may not be fatal to claims factually presented and predicated upon clear constitutional grounds, this court is not charged with the duty of identifying claims Hunt has not made. To the extent Hunt fails to meet the habeas pleading requirements, his claims will be dismissed.

2.      **Ineffective Assistance of Counsel Claims Denied on the Merits.**

Respondent argues that many of Hunt's ineffective assistance of counsel claims do not warrant federal habeas corpus relief because the state court's determination that they were without merit was not contrary to, or an unreasonable application of, clearly established Federal law, nor an unreasonable determination of facts in light of the evidence.

Hunt counters that the Alabama Court of Criminal Appeals misapplied *Strickland v. Washington*, 466 U.S. 668 (1984) in two respects: (1) by placing additional burden on Hunt to present "extrinsic" proof of prejudice; and (2) by refusing to apply a cumulative-effect analysis in determining whether the purported trial errors rendered counsel's performance deficient and whether the deficiency resulted in prejudice.

a.      **Requirement of "Extrinsic" Proof of Prejudice.**

According to Hunt, the Appeals Court required that he provide extrinsic proof of prejudice when establishing his *Strickland* claims. Hunt points to the opinion of the Court of Criminal Appeals in which it affirmed, on alternative grounds, the trial court's denial of relief:

> At the Rule 32 evidentiary hearing, Hunt presented little evidence in support of his numerous claims of ineffective assistance of counsel. No witnesses testified at the Rule 32 hearing, and little demonstrative evidence was introduced. At the evidentiary hearing counsel read portions of his amended Rule 32 petition to the circuit court. Hunt made no attempt to satisfy his burden of proof under Rule 32.3 Ala. R.Crim.P., or to satisfy the requirements set out by the United States Supreme Court in *Strickland*.

*Hunt*, 940 So. 2d at 1055.

Hunt complains that this holding was contrary to and an unreasonable application of *Strickland* because the appeals court required that he present "extrinsic" evidence of prejudice. He further contends that the Court of Criminal Appeals mistakenly equated his position that there need not be "extrinsic" evidence of prejudice, with the argument that prejudice is to be "presumed." Hunt clarifies his position as follows: a petitioner can establish prejudice simply by relying on the trial and appellate records, and need not provide evidence "extrinsic" to the record. (*Reply at 28).*

Review of the state court's opinion, however, reveals nothing to indicate that Hunt was required to provide "extrinsic" evidence of prejudice; the Alabama Court of Criminal Appeals found that the trial court had correctly applied the *Strickland* standard, and required Hunt to demonstrate prejudice in order to succeed on his ineffective assistance of counsel claims. Such finding is consistent with *Strickland,* and did not require Hunt to provide *extrinsic* proof of prejudice, but simply *proof* thereof. In determining that the evidence upon which Hunt relied to support his ineffective assistance of counsel claims did not establish prejudice, the state courts did

not utilize a standard that was contrary to or an unreasonable application of *Strickland*.  Likewise,

his reliance on *Wiggins v. Smith*, 539 U.S. 510, 536 (2003), is not compelling because that case

simply requires that the examining court "evaluate the totality of the evidence -- both that adduced

at trial, and the evidence adduced at the habeas proceeding" when evaluating ineffective assistance

of counsel claims.[8]

> b.   **Refusal to Consider the Cumulative Effect of the Alleged Deficient Performance by Hunt's Prior Attorneys**.

Hunt further argues that the Alabama Court of Criminal Appeals erred by failing to consider

his ineffective assistance of counsel claims cumulatively.  According to Hunt, given the *Strickland*

references to "errors" in the plural and references to the "totality of circumstances,"  "[t]here can

be no doubt that *Strickland* and its progeny require that the cumulative-effect analysis applies to

claims of ineffective assistance of counsel."  (Reply at 31) (citing *Strickland*, 466 U.S. at 686, 688,

695).

In addressing Hunt's cumulative effect claim, the Alabama Court of Criminal Appeals noted

that other state and federal courts were not in agreement as to whether the 'cumulative effect'

---

[8]   Hunt points out a mistake in the Court of Appeals opinion.  In its discussion regarding the trial court's alternative merits rulings, the Appeals Court gave an example:

For example; Hunt's petition states the following concerning his claim that trial counsel's performance was ineffective because counsel failed to object to the State's use of prejudicial photographs.

*Hunt*, 940 So. 2d at 1055.

However, the Appeals Court then quotes an ineffective assistance of counsel claim from Hunt's petition regarding counsel's failure to object to the victim's family sitting at the prosecution table.  *See id*.  According to Hunt, because of this error, the Court of Criminal Appeals "did no better than the circuit court" in assessing his claims.  (Reply at 27.) This minor mistake in no way undermines the Court of Appeal's findings.

analysis applies to *Strickland* claims, and cited to and discussed many cases which held it was not. *Hunt*, 940 So. 2d at 1071-72.  However, the state court concluded its analysis by citing to *Brooks v. State*, 929 So.2d 491 (Ala.Crim.App. 2005) in which the court held that, although it could find no case where Alabama appellate courts applied the cumulative-effect analysis to claims of ineffective assistance of counsel, were it to do so, it would find that Brooks' substantial rights were not injuriously affected.  The Alabama Court of Criminal Appeals then held: **"We, likewise, cannot say that Hunt's substantial rights were injuriously affected**." *Hunt*, 940 So. 2d at 1071-72 (emphasis added).  The record clearly refutes Hunt's assertion that the Alabama Court of Criminal Appeals failed to consider the cumulative effect of his ineffective assistance of counsel claims.

Hunt also argues that, to the extent the appeals court "may have attempted to give the appearance that it" conducted a cumulative effect analysis, in doing so, it applied a higher standard for establishing prejudice.  (Reply at 41.)  He notes that *Bryant*, the case cited by the Court, holds that if it were to consider the cumulative effect claim, it would find that the petitioner's rights were "not injuriously affected" pursuant to Alabama Rule of Appellate Procedure 45.  *See Hunt*, 940 So. 2d at 1072 (citing *Ex parte Bryant*,  [Ms. 1990901, June 21, 2002] ---So.2d ---- (Ala.2002)).  That rule provides:

> No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has <u>probably injuriously affected substantial rights of the parties</u>.

Ala. R. App. P. 45 (emphasis added).

Hunt argues that the "probably injuriously affected substantial rights" standard applied by the *Bryant* court is not appropriate because it is a higher standard than that imposed under *Strickland.* Thus, he apparently claims the Court of Appeals evaluated his ineffective assistance of counsel claims in a manner that was unreasonable and contrary to *Strickland.* As such, Hunt contends that the Court should review *de novo* his ineffective assistance of counsel cumulative effect claim.

While Hunt raised <u>other</u> cumulative effect ineffective assistance of counsel claims in his application for rehearing to the Court of Appeals, (Vol. 20, Tab. 57 at 58), he failed to raise this specific claim regarding the state court's application of *Bryant* to the cumulative effect analysis**.** Therefore, Hunt neglected to fairly present his claim to the state court and give it an opportunity to "pass upon and correct alleged violations of its [Hunt's] federal rights." *See Snowden*, 135 F.3d at 735; *McNair*, 416 F.3d at 1302 (noting that the petitioner must present "his claims to the state court 'such that a reasonable reader would understand each claim's <u>particular legal basis</u> and specific factual foundation.'") (citation omitted). As such, Hunt is precluded from pursuing his ineffective assistance of counsel claim regarding the state court's application of *Bryant* to the cumulative effect analysis.[9]

In any event, Hunt's cumulative effect claim is without merit. As discussed later in this opinion, nothing about Hunt's claims suggests that his attorneys were deficient or, more importantly, that he was prejudiced by any alleged deficiency, alone or in concert.

---

[9]/   While Hunt did raise the specific *Bryant* claim in his Alabama certiorari petition, (Vol. 21, Tab 58 at 38-46), his failure to preserve the claim before the Court of Criminal Appeals was still fatal.

## VI.  SUBSTANTIVE CLAIMS[10]

A.    **Mr. Hunt Was Denied A Fair Trial By The Prosecution's Misconduct and Violation of Its Obligations Under Brady *v. Maryland*, 373 U.S. 83, 86 (1963).**  (Doc. 1, ¶¶ 22-28; Reply at 75-89.)

Hunt alleges two *Brady* claims in his habeas petition: (1) the prosecution misled the jury with respect to testimony proffered by Hunt's cell mate, James Carl Sanders; and (2) the prosecution failed to disclose that its agents had attempted to secure fabricated testimony from Hunt's fellow inmates.

### 1.    **James Carl Sanders' Testimony**[11]

Hunt alleges that the prosecution violated his constitutional right to a fair trial by "misleading" the jury and the defense into believing that convicted felon James Carl Sanders, a key prosecution witness, had no incentive to testify against Hunt.  (Doc. 1, ¶ 26; Reply at 9-10, 75-89.) According to Hunt, during the prosecution's examination of Sanders, the prosecutor "twice stated unequivocally to the jury that Sanders was going to the penitentiary for at least fifteen years under Alabama's habitual offender statute.  The prosecutor said it again during his closing argument." (Doc. 1, ¶ 23.)

The backdrop for Hunt's claim begins prior to trial.  Sanders and Hunt had shared a cell until Sanders' release.  Later, Sanders was re-incarcerated, at which time he and Hunt again shared the same cell.  (Vols. 3 - 4, Tr. at 600, 606-07.)  Near the end of Hunt's trial, the state called Sanders as a surprise witness.  (*See* Vol. 17, Tab. 51, pp. 12-13.)  According to Hunt, at this

---

10/    For the most part, the headings in the substantive and ineffective assistance of counsel sections of this opinion are consistent with the headings Hunt used in his habeas petition.  However, for ease of reference, the Court has added some additional sub-headings.

11/    James Carl Sanders is not related to the victim's father W. O. Sanders.

juncture of the trial, the state had failed to present evidence that he sexually abused Lane before her death.  However, proof of pre-mortem sexual abuse was necessary in order to secure a capital conviction.  Hunt contends that Sanders essentially saved the prosecution's capital case by providing such proof.

Sanders testified that, during the time the trial was in progress, he and Hunt were alone in their cell reading their Bibles and discussing being "saved" by God.  (Vol. 3, Tr. at 600-1.) During this conversation, Hunt confided that he had not only killed Lane, but had also sexually abused her before she died:

### DIRECT EXAMINATION BY THE STATE

A.   He said he was in love with her and they had broken up and she had started seeing somebody else.  And, that he had come in, him and the girl, the guy she was dating was there or something, wherever they were at, he didn't say where they were at, but [Hunt] came in and was talking to her and they had gotten in an argument about her seeing the other guy and said - - -

Q.   Greg came to her apartment?

A.   Right, to talk to her, you know cause he said he was in love with her, to try to get her back and all. They had gotten in a fuss and he said he was on drugs, you know, that night.

. . . .

A.   He said they got in a fuss and he had knocked her down and choked her and kicked here, beating her more or less.  He said he got scared, when he seen her bleeding real bad, he got scared and called the police

Q.   He said he called the police after he saw her bleeding?

A.   Yes, sir.

Q.   Did he say anything relevant to a stick?

A.   Yes, sir. . . .  He said, "If you need one stuck in you all the time, here is you one." And, he said he stuck the broom handle between her legs.

Q.      Stuck it up inside here?

A.      Up inside of her, yes, sir.

Q.      Her vagina?

A.      Yes, sir.

Q.      And, was it after he stuck the broom stick up inside of her that he said he saw her bleeding real bad?

A.      Yes, sir, that's when he said he saw her bleeding.

Q.      And, he said he called the police?

A.      Called the police.

(Vol. 4, Tr. at 602-03.)

At the time of his testimony, Sanders was a two time convicted felon who was then facing both a probation violation charge and a theft charge.  (Vol. 3, Tr. at 598; Vol. 4, Tr. at 604-05.)  On cross-examination, Hunt's counsel questioned Sanders about these prior charges and whether Sanders thought he might benefit from testifying against Hunt:

<u>CROSS EXAMINATION</u>

<u>By Wilkinson:</u>

Q.      James, first of all, let me get something straight about your record.  You got sentenced for first degree theft, three year sentence; right?

A.      I think that is right?

Q.      Ninety days to serve?

A.      Yes, sir.

Q.      Balance on probation; right?

A.      Yes, sir.

Q.     When did you have that happen to you?

A.     When did I have that?

Q.     Sentence, yes?

A.     It was about six months ago, I think it was.

Q.     Six months ago.  So, actually, before you got put in jail on this new charge or maybe presently, you are kinda on probation for two and a half years?

A.     Yes, sir.

Q.     And, if your probation gets revoked, you get two and a half years in the penitentiary or two years and nine months; isn't that true, or whatever; right?

A.     I guess.  I think that's right.

Q.     Has it been revoked yet?

A.     <u>I haven't been to court on it yet.</u>

Q.     All right.  Now, did you say that in addition to that theft charge, you have been convicted of something else before that?

A.     Well, when I did the ninety days is all.

Q.     No other charge, just the one felony charge?

A.     Two felonies, I think.

Q.     Two felonies.  And, now, you have another felony charge against you, not counting the probation revocation; another felony charge?

A.     Yes, sir. . . .

                                        . . . .

Q.     Ok, so if you are convicted for that felony, if you were convicted for that, you would be what we call a three time loser; right?

A.     Yes, sir.

Q.     And, you understand the significance of being a three time loser; don't you?

A.      Not really.

Q.      You don't know about the habitual offender laws, then?

A.      I don't know what it means.

Q.      You've heard of it; haven't you?

A.      Yeah, I've heard of inmates talking about it.

Q.      And, you know that it means your third conviction, substantially more time, minimum of ten years on up, if convicted the third time, you know that?

A.       I don't know exactly.  I didn't know.  I just heard talk.  There's a lot of talk in jail.

                        . . . .

Q.      But, you did have in the back of your mind that maybe your lawyer could work a deal for you?

A.      No, sir, I didn't have that nowhere - - - I told him that, too.

(Vol. 4, Tr. at 604-06, 610.) (emphasis added).  Later, Sanders testified that the prosecution had not

promised him anything in exchange for his testimony: "from the start they said there would be no

deals worked, whatsoever."  (Vol. 4, Tr. at 618-19; Vol. 3, Tr. 599.)

When the prosecutor twice asked Sanders if his habitual offender status meant he was going

to jail for fifteen years because of the two newly pending charges, the defense objected and the

Court sustained the objection.  Indeed, Sanders admitted upon questioning by the defense that he

was not certain of his fate:

<u>REDIRECT EXAMINATION</u>

<u>By Mr. Baker:</u>

Q.      You are going to the penitentiary for a minimum of fifteen years under the habitual offender law?

<u>Mr. Wilkinson (for the defense)</u> : Whoa, I object to that.

Q.      Do you want to change your testimony?

A.      No.

### RECROSS EXAMINATION

By Mr. Wilkinson:

Q.      Well, you don't really know what is going to happen to you; do you?

A.      I don't know.

Q.      Tell us the truth like you have about everything else.  Do you think coming in here will help you in the future?  Do you think - - not whether it will or not - - but do you think it will?

A.      I think it might help this case you all working on here.

Q.      Do you think it might help you?

A.      I don't think it will cause from the start they said there would be no deals worked, whatsoever.

Q.      I believe they did that.  I'm talking about what you think.  What do you think?

A.      No, sir, I don't think that.

Q.      Do you think it will hurt you?

A.      I don't know what it will do.  It hasn't been done yet.

        Mr. Wilkinson: That's all.

### REDIRECT EXAMINATION CONTINUED

By Mr. Baker:

Q.      You're going to the penitentiary for a minimum of fifteen years.

        Court: Sustain your objection.

(Vol. 4, Tr. at 617-19) (emphasis added).

During closing arguments, the state made the following comments regarding Mr. Sanders:

> James Sanders, the boy who testified from the jail, said he [Hunt] was taking cocaine and they jumped all over James Sanders <u>who realized that he was facing a minimum</u> - Mr. Wilkinson told him he was a habitual offender, under the law <u>facing a minimum of fifteen years in the penitentiary</u>. He [Hunt] said he was using cocaine.  Then they jumped all over the state for putting him on the witness stand.

(Vol. 5, Tab. 15 at pp. 848-49.) (emphasis added).

Thereafter, on or about July 10, 1990, less than one month after Sanders testified against Hunt, Sanders was reinstated to probation and the theft charge no billed by the Walker County grand jury.  (Vol. 15 at 572, 576; Vol. 18 at p 72-74, 107-110.)

In Hunt's Rule 32 Petition, which he filed *pro se*, he asserted the following with respect to his *Brady* claim:

### XV.  THE STATE FAILED TO TURN OVER TO THE DEFENSE EXCULPATORY EVIDENCE AND INFORMATION IN VIOLATION OF *BRADY V. MARYLAND* AND FEDERAL AND ALABAMA LAW.

> 113.   The prosecutor and other state officials did not make available to the defense the complete prosecution file and other materials exculpatory as to guilt and mitigating as to punishment, in violation of *Ex parte Monk*, 558 So. 2d 832 (Ala. 1989), and state and federal requirements in capital cases.  For example, the state did not disclose the fact that a witness who testified against Mr. Hunt had actually been inmates with another witness who was coerced by the state to obtain an improper extrajudicial confession from Mr. Hunt in jail.  Thus, exculpatory materials and critical mitigating evidence were withheld in violation of Temporary Rule 18 of the *Alabama Rules of Criminal Procedure*, Rule 16 of the revised *Alabama Rules of Criminal Procedure* and *Brady v. Maryland*, 373 U.S. 83 (1963).

> 114.   In this case, disclosure of the suppressed evidence would have made a different result reasonably probable.  The state's withholding of this information denied Mr. Hunt his rights to due process, a fair trial, and a reliable sentencing proceeding in violation of the Fifth, Sixth, Eight and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law.

(Vol. 13, Tab 44 at p. 29.)

The Rule 32 trial court dismissed this and other claims as procedurally barred because they could have been, but were not raised at trial or on direct appeal.  (Vol. 13. Tab. 47 at p. 4).  Later, Hunt, with the assistance of counsel, filed an Amended Rule 32 petition.  In this amended petition, he raised the following with respect to his *Brady* claim:

> 150.   The prosecution violated its constitutional obligations under *Brady v. Maryland* with respect to James Carr [sic] Sanders.  During trial, James Carr Sanders testified for the prosecution against Mr. Hunt.  Mr. Sanders provided key testimony for the prosecution, testifying that Mr. Hunt confessed to him while in the Walker County Jail.

> 151.   Mr. Sanders insisted that he received no promises from the prosecution and that, in fact, he had no expectation of receiving any benefit in exchange for his testimony.  (R. at 599, 610, 617-18.)  Further, during his examination of Mr. Sanders, the prosecutor stated unequivocally that Mr. Sanders was going to the state penitentiary for at least fifteen years under Alabama's habitual offender statute.  (R. at 617-18.)

> 152.   Mr. Sander's cases were pending before the same judge as was presiding over Mr. Hunt's trial and were being prosecuted by the same District Attorney.

> 153.   Less than one month after testifying against Mr. Hunt and sealing the prosecution's case against Mr. Hunt at trial, the charges against Mr. Sanders were dropped, he was released from jail and he was restored to probation.

> 154.   These circumstances demonstrate quite clearly that the prosecution misled defense counsel and the jury with its unequivocal assertions, representing it as a foregone conclusion, that Mr. Sanders was going to prison for at least fifteen years despite testifying for the prosecution on a key material issue at Mr. Hunt's capital trial. . . .

> 154.   The prosecution also violated *Brady v. Maryland* by not disclosing to defense counsel that agents of the prosecution were undertaking affirmative efforts to have inmates at Walker County Jail fabricate testimony of an alleged jailhouse confession by Mr. Hunt.

(Vol. 14, Doc. 43 at pp. 56-57.)

At the Rule 32 evidentiary hearing, the parties discussed the *Brady* claim as it related to Sanders' testimony.  Hunt, however, did not call any witnesses to substantiate this claim, nor did he submit evidence outside of Sanders' prosecution records.   (*See* Vol. 18 at pp 75, 107-110.) Rather, counsel for Hunt argued at the hearing that the prosecution's questioning of Sanders left the impression, without equivocation, that Sanders was going to serve time on the pending charges, until counsel for Hunt later "found out otherwise on our own."  (Vol. 18 at 107-08.)

The Rule 32 trial court found Hunt's *Brady* claim was precluded:

> Hunt failed to plead or prove that this claim is based on newly discovered evidence.  The Court finds that this claim is precluded from review because it could have been but was not raised at trial and because it could have been but was not raised on appeal.  Rules 32.2(a)(3) and (a)(5), ARCrP; *See Williams v. State*, 782 So. 2d at 811, 818 (Ala. Crim. App. 2000) (holding that a *Brady* claim raised in a Rule 32 petition is procedurally barred under Rules 32.2(a)(3) and (a)(5) where a petitioner fails to assert that the claim was based on newly discovered evidence. Therefore, this claim is dismissed.

> In the alternative, the allegations . . .  are based on entirely new facts that were not asserted in any claim in Hunt's original petition.  The Court finds that the claim . . . is time-barred; therefore it is dismissed.  *See Charest v. State*, CR-99-1663, 2002 WL 734306, at * 3 n.2 (Ala. Crim. App. April 26, 2002).[12]

(Vol. 22, Tab. 63 at 117-18).

On appeal, the Alabama Court of Criminal Appeals affirmed:

> Hunt also argues that the circuit court erroneously found that his *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim was barred.

---

[12]   Ultimately, the Court of Appeals reversed the trial court's finding that the claims in Hunt's amended Rule 32 petition did not relate back to his original *pro se* petition.  *Hunt*, 940 So. 2d at 1054-55.  The Appeals Court explained that *Charest v. State*, CR-99-1663, 2002 WL 734306, at * 3 n.2 (Ala. Crim. App. April 26, 2002), the case upon which the trial court relied, had been recently overruled by the Alabama Supreme Court in *Ex parte Jenkins*, [Ms. 1031313, April 8, 2005] --- So.2d ---- (Ala.1005).

Although the trial court relied on *Charest* to preclude many of Hunt's other claims, in most, if not all instances, it also issued alternative rulings.  Thus, the opinion will not address any of the *Charest* based preclusion rulings, unless necessary for the sake of clarity.

However, the circuit court found that Hunt's *Brady* claim was precluded because Hunt failed to plead or to prove that this claim was based on newly discovered evidence. The circuit court's ruling is consistent with prior holdings of this Court. As we stated in *Williams v. State,* 782 So.2d 811, 818 (Ala.Crim.App.2000):

> "The appellant's first argument is that the State withheld exculpatory information in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).... The appellant did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct appeal, but did not. *See* Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.; *Boyd v. State,* 746 So.2d 364 (Ala.Cr.App.1999); *Matthews v. State,* 654 So.2d 66 (Ala.Cr.App.1994); *Lundy v. State,* 568 So.2d 399 (Ala.Cr.App.1990)."

Hunt made no assertions in his Rule 32 petition or at the evidentiary hearing that his *Brady* claim was based on newly discovered evidence. *See* Rule 32.1(e), Ala.R.Crim.P.

*Hunt*, 940 So. 2d at 1058; *See Hunt*, 940 So. 2d at 1072.

      a.    <u>Procedural Default</u>

Respondent correctly argues that this claim is procedurally barred because the state court rejected it under independent and adequate state law grounds.  In his reply brief, Hunt hopes to avoid the deference a federal court must apply when evaluating state court decisions that rest on procedural grounds.  He argues that the state court misunderstood his claim.  He explains that his *Brady* claim is not rooted in a secret deal between the prosecution and Sanders, but instead the alleged suppression consisted of the prosecutor's "statements" that Sanders was going to jail for fifteen years when, in fact, Sanders' fate had not yet been adjudicated.  As this alleged suppression did not come to light until after the trial, when Sanders was released and returned to probation, Hunt argues that it "could not have been discovered at trial because it had not yet occurred.   Nor could it have been raised on direct appeal, as those facts were not in the record, and Alabama law

limits issues on appeal to that in the record."  (Reply at 79)(citing *Ware v. State*, 949 So. 2d 169, 181 (Ala. Crim. App. 2006)).

Hunt's argument is not persuasive. He simply did not properly plead his claim as required under Alabama law.  There is no question that Hunt failed to raise a *Brady* claim at trial or on direct appeal.  Then, once raised in his Rule 32 petition, Hunt failed to satisfy Rule 32.1(e), which limits review to cases where the petitioner alleges "[n]ewly discovered material facts" which: (1) "were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion . . . or in time to be included in any previous collateral proceeding; and (2) "could not have been discovered by any of those times through the exercise of reasonable diligence."  Hunt did not allege in his Rule 32 petition that he or his attorneys were unaware of Sanders' release prior to the time he first raised the *Brady* claim.  While it is certainly obvious that he was not aware of this information at trial, Hunt failed to plead or establish when he or his attorneys learned of Sanders' release.  Indeed, during the pendency of the Rule 32 proceeding, Hunt introduced no evidence regarding when he or any of his attorneys may have discovered Sanders' release. (*See* Vol. 14, Tab 48 ¶¶ 150-56; Vol. 18 at pp 75, 107-110; Vol. 19, Tab 54 at 46.).

Inasmuch as the state court's decision is based on independent and adequate state procedural law grounds, the decision is entitled to deference.[13]

---

[13/]   Hunt contends that the lower court made no factual findings regarding the *Brady* claim or the evidence relating to that claim.  He contends, instead, that the state court's findings were a "characterization" of his claims.  In the alternative, he argues that the state court's determination was an unreasonable determination of the facts in light of the evidence.  (Reply at 79 n.9.)  Given the above discussion about the inadequacies in Hunt's pleadings, Hunt cannot establish that the state court's decision was an unreasonable determination of the facts in light of the evidence.

b.      *Brady* Analysis

A petitioner who can establish a *Brady* claim also satisfies the "cause and prejudice" requirements necessary to overcome procedural default.  To establish a *Brady* claim, Hunt must show: (1) the evidence at issue was favorable to him, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) "prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281 (1999)

> Corresponding to the second *Brady* element-that the State suppressed the evidence at issue--a petitioner shows cause when the reason for the failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence. Coincident with the third *Brady* component--that prejudice ensued-prejudice within the compass of the "cause and prejudice" requirement exists when suppressed evidence is "material" for *Brady* purposes. . . .  Thus, if [Hunt] succeeds in demonstrating cause and prejudice, he will also succeed in establishing the essential elements of his *Farr Brady* claim.

*Banks*, 540 U.S. at 691.

Hunt contends that the state court's application of its procedural bar was contrary to and an unreasonable application of *Banks v. Dretke*, 540 U.S. 668 (2004) and *Strickler v. Greene*, 527 U.S. 263, 284-85 (1999), both of which involved procedurally defaulted *Brady* claims.  (Reply at 75-89.) Applying the *Brady* analysis, Hunt relies on the prosecution's "misleading statements" and "comments" about Sanders' future incarceration to establish *Brady* element number two: suppression of evidence.  (*Id*. at 77.)

This argument fails for several reasons.  First,  the prosecution did not "suppress" evidence that Sanders might go free and, therefore, could gain from his testimony.  Rather, the prosecution asked Sanders if he was going to jail for fifteen years.  Before Sanders could respond, however, the Court sustained an objection by Hunt's attorney.  (Vol. 4, Tr. at 848-49.)  Hunt's attorney followed

up by specifically questioning Sanders about whether or not he knew what was going to happen to him with respect to his incarceration.  Sanders responded that he did <u>not</u> know.  (*Id*.)  Then, in summation, the prosecution merely mentioned that Sanders was "facing" a fifteen year minimum sentence.  (Vol. 5, Tr. at 848-49.)  This course of events hardly constitutes suppressed evidence or misleading comments about Sanders' future incarceration.  Morever, jurors are not so naive as to believe that a jailhouse informant, facing fifteen years as a habitual offender, has no incentive to lie.  Thus, Hunt fails to establish the second *Brady* element, suppression, as  "cause" to excuse his procedural bar.

Second, Hunt cannot meet the third element of *Brady*: prejudice.  Hunt asserts that before Sanders' testimony, the prosecution had no evidence that Lane had been sexually abused prior to her death.  Hunt contends that a state medical expert testified that the amount of semen found in her mouth suggested post-mortem ejaculation.  Moreover, despite a great deal of blood and evidence of a violent struggle, Lane had no injuries or bruises to her vaginal or anal areas.  (Reply at 85-86.)

Despite Hunt's assertions to the contrary, the prosecution had presented evidence to suggest that Lane had been sexually assaulted prior to death: Lane's body was found on the kitchen floor partially clothed; her bra was partially laying on her body and her robe partially lying around her arm; a bed sheet with a small amount of blood, about the size of a quarter, was found near the foot of the bed in the upstairs master bedroom, a piece of the inner lining of a bloodied bra was found on the living room floor, while bloody women's panties were also found in the living room next to a pair of men's or boy's size briefs, also bloodied.  (Vol. 4, Tr. at 659-61, 664, 668-69, 675, 699 701-02.)  Moreover, a broom stick was found between her opened legs and the tip of the broomstick contained bodily fluid that could have come from her vagina.  (*See Id*. at 680; Vol. 22, Tab. 59 at

4.)  Although the state medical expert testified that the amount and condition of the semen suggested ejaculation "very close" to the time of death "if not postmortem," the expert specifically explained he was "uncomfortable" making a determination regarding whether the sperm was deposited prior to or after death.  (Vol. 3, Tr. at 405-06; 402-03.)  Given this evidence, Hunt cannot show that Sanders' testimony "'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"  *See Banks* 540 U.S. at 698 (citation omitted).  Hunt cannot show "a 'reasonable probability of a different result.'"  *See Banks* 540 U.S. at 698.  Thus, even if the *Brady* claim had survived the procedural default challenge, it would not succeed on the merits.

2.     **Prosecution's attempt to obtain fabricated testimony from inmates housed with Hunt**

Although not spelled out in the *Brady* section of his habeas petition or mentioned in his reply brief, Hunt does assert a substantive prosecutorial misconduct claim relating to a second alleged *Brady* violation.  (*See* Doc. 1, ¶ 191.)  Hunt contends that the prosecution committed a *Brady* violation by attempting to obtain fabricated testimony concerning Hunt's sexual abuse of the victim from inmates housed with Hunt in the Walker County Jail.  (Doc. 1, ¶¶ 27-28).

Not only would this claim be precluded based on its rejection by the state court on independent and adequate state law grounds,[14] but it is also unexhausted because Hunt failed to properly raise it in his Rule 32 appellate briefs.  (*See* Vol. 19, Tab 54 at 106-08; Vol. 21, Tab 58 at i - iv, 140-43).  Because return to state court would be futile, this claim is procedurally barred.

---

[14]/    The Court found that the claim was precluded from review because it could have been but was not raised at trial and/or on appeal.  Rules 32.2(a)(3) and (a)(5), ARCrP; *See Williams v. State*, 782 So. 2d at 811, 818 (Ala. Crim. App. 2000) (holding that a *Brady* claim raised in a Rule 32 petition is procedurally barred under Rules 32.2(a)(3) and (a)(5) where a petitioner fails to assert that the claim was based on newly discovered evidence). (Vol. 22, Tab 63 at 119-20.)

Alternatively, as will be discussed further in this opinion with regard to the substantive claim of prosecutorial misconduct, the claim fails on the merits.  Hunt has simply not met his burden of pleading; he directs the Court to nothing in the record to indicate that he presented the state court with any evidence in support of this claim, nor does he produce the same in this proceeding.

## B.   MR. HUNT WAS DEPRIVED OF A FAIR TRIAL BY AN IMPARTIAL JURY
(Doc. 1, ¶¶ 126-133)

Hunt claims he was denied the opportunity to select a fair and impartial jury because the trial court failed to grant his motion for a change of venue to ensure an untainted jury pool.

Hunt complains first that "numerous venire members" admitted they had been exposed to pre-trial publicity which was so prejudicial and extensive that it tainted the jury pool.  Second, Hunt complains that "numerous" venirepersons testified that they had personal knowledge of the crime and the alleged facts gained from their own friends, or gained from the victim's family and/or friends.  Hunt alleges that:  "[o]f the venire panel, seven jurors knew the husband of the victim on a personal basis," [15]  (Doc. 1, ¶ 132), and complains specifically about the trial court's denial of his challenges for cause with respect to jurors Childress, Davis, Benton, Norris and Tidwell, who testified to having prior factual knowledge of the case that was allegedly prejudicial to Hunt.[16]

---

[15]   The following seven venirepersons knew A.C. Lane, the victim's husband: J. C. Aldridge, Rita Garner, Debra Gravlee, Debra Hall, Terrell Nix, Gary Parra, James A. Tidwell.  (Vol. 1., Tr. 99.)  Three of the seven were successfully challenged for cause, and the rest were stricken as peremptory challenges.  (*See* Vol. 8 at 15; Vol. 1, Tr. 183-184.)

[16]   Hunt does not explain the nature of this information or cite to the record in the portion of his habeas petition where he discusses this substantive claim.  (Doc. 1, ¶ 131.)  In his reply brief, he does provide quotations and citations to the record when addressing his ineffective assistance of counsel venue claim.  (Reply at 41-44.)  However, as discussed below, none of the challenged venirepersons served on his jury.  (*See* Vol. 8 at 15; Vol. 1, Tr. 178 -200.)

According to Hunt, because his cause challenges were denied, he was unfairly compelled to exercise his peremptory challenges to cure the problem in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

Hunt raised both the claims in his amended Rule 32 petition.  (Vol. 14, Tab 48  ¶¶ 315-20.)  The trial court held that the claim regarding the motion for change of venue was previously dismissed by the Court because it could have been but was not raised at trial, and because it <u>was</u> raised or addressed on appeal.  (Vol. 22, Tab 63 at 126-27) (emphasis added).   The court also dismissed on procedural grounds the claim regarding the denial of the cause challenges, as that claim should have been, but was not raised at trial or on appeal.  (*Id*. at 127.)   Thereafter, Hunt failed to properly assert both claims in his Rule 32 appellate briefs.  (*See* Vol. 19, Tab 54 at p. iii - vii; Vol. 21, Tab 58 at pp. i - iv, 140 -43.)

As such, both claims are procedurally barred from federal review because: (1) they were rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court;[17] and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

In the alternative, Hunt's claims are without merit.  During the  Rule 32 hearing, the following discussion regarding the extent of the pre-trial publicity and juror knowledge about the case transpired:

> Mr. Levine
> (for Petitioner):      [T]rial counsel failed to obtain a change of venue.  We have
>                        a number of newspaper articles, copies of the <u>Daily</u>

---

[17]   "[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."  *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (citations omitted).

Mountain Eagle, leading up to the trial, right up to the date of trial from the time of Mr. Hunt's arrest.  And we're trying to show that Jasper and Walker County was saturated with news regarding this crime.  In fact, in the very jury selection process almost every juror, it seemed, had said that they had heard about this crime and knew some detail about it.  They differed in what details they knew and it showed that they were, in fact, saturated with it, that once they hear those things it's impossible to put it out of your mind.  Counsel did not move vigorously for a change of venue.  He didn't present any evidence to our knowledge of newspaper articles, locations showing, in fact, what news had been out there, so we would like to present them.

Mr. Hayden
(for Respondent):       The State is going to object unless they lay the proper predicate and put these under some exception, Your Honor, business records or something.  I'm not going to agree that they just be put in - -

The Court:              Well, they moved for the change of venue and I denied it. Isn't that right?

Mr. Levine:             I believe they moved for change of venue, but there's nothing that I've seen, any court records or anything that they actually introduced exhibits in support of their motion for change of venue.

Mr. Hayden:            Well, Your Honor, lives in the area, certainly you would have seen indication or some idea.

The Court:              We may be saturated with news, but I'm always surprised of how many jurors don't know what is going on or has not read the newspaper.  I don't believe I've ever had a case that more than seven or eight had - - knew about the crime that they were asked - - were going to be put on, my jury.

Mr. Levine:             My recollection from the jury process in this case is that almost everybody had known something about it.  They knew something about it because their friend works in the courthouse, they knew something about it because they're friends with the victim's family, they knew something about it because they're friends with the defendant's family, they

know about it because they were talking about it at work, they knew about it because they read it in the paper or heard about it on the news.

The Court:          I missed all of that, apparently.  If that were all correct, there would have been a change of venue without any question.  Go ahead.

Mr. Levine:         Judge, we'd like to submit copies of the newspaper articles as petitioner's exhibit - -

Mr. Hayden:         The State objects.

The Court:          Overruled.  Get them together and when we take a break you can put them in.

(Vol. 18 at 94-96) (emphasis added).   Hunt contends that given the Court's statement, it is

"abundantly clear" that the venue motion should have been granted.  (Doc. 1, ¶ 128.)

As an initial matter, "[i]t is well established in Alabama . . . that the existence of pretrial

publicity, even if extensive, does not in and of itself constitute a ground for changing venue . . . ."

*Ex parte Fowler*, 574 So. 2d 745, 747 (Ala. 1990).  This finding is consistent with United States

Supreme Court precedent:

> The constitutional standard of fairness requires that a defendant have "a panel of impartial, 'indifferent' jurors."   Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
> "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

*Murphy v. Florida*, 421 U.S. 794, 799-800 (1975) (citations omitted).

Thus, Hunt cannot simply rely on the pre-trial publicity nor the juror's knowledge of his

case, whether gained in the media or from other individuals, to support his constitutional claim.

Moreover, all of the jurors about which Hunt complains in his habeas brief were stricken, for one reason or another.[18]  Thus, the jurors about which he complains ultimately did not serve on the jury.

Finally, the Court finds unavailing Hunt's argument that his constitutional rights were violated because he had to use some of his peremptory strikes to rid the pool of those jurors whom the Court refused to strike for cause:

> Claims that the jury was not impartial must focus on the jurors who actually sat.  *See Ross*, 487 U.S. at 86, 108 S. Ct. 2273; *Heath v. Jones*, 941 F.2d 1126, 1133 (11th Cir.1991) (holding that habeas petitioner can only raise the trial court's denials of challenges for cause of those venire members who eventually sit on the jury).

*Spivey v. Head*, 207 F.3d 1263, 1273 (11th Cir. 2000).

> [E]ven if a veniremember should have been struck for cause, the Supreme Court in *Ross v. Oklahoma*, 487 U.S. 81, 108 S. Ct. 2273, 101 L. Ed. 2d 80 (1988), held that there is no constitutional violation where the biased veniremember does not eventually sit on the jury.  The Court in *Ross* held that a habeas petitioner's constitutional rights were not violated when he was forced to waste a peremptory challenge to remove a veniremember whom the court should have removed for cause.  Therefore, in this habeas petition, [a petitioner] can raise only the trial court's denials of [his] challenges for cause of those veniremembers who eventually sat on the jury.

*Heath v. Jones*, 941 F.2d at 1132-33.[19]

---

[18]/   In his habeas petition and in the ineffective assistance of counsel section of his reply brief, Hunt complains about the following jurors: Bankston, Benton, Childress, Davis, Duncan, Freeman, Hyde, Johnson, McNeal, Norris, Parra, Robbins, Thomas, Tidwell, Walden, Watson, and Wood.  (*See* Doc. 1, ¶¶ 131; Reply at 41-44).  None of these jurors are found on the final jury list: they were either stricken for cause or peremptory challenges.  (Vol. 8 at 15; Vol. 1, Tr. at 178-200.)

For the sake of clarity, the Court notes that on page 42 of his Reply brief, Hunt lists "Lane" as the name of a problematic juror and cites to page 128 of the trial transcript; however, there was no juror named Lane, rather Childress is the juror testifying on that page.  (Vol. 1, Tr. at 127-28.)  Additionally, although Hunt complains about juror Robbins and a "Robbins" appears on the final jury list, as an alternate, (*See* Vol. 8 at 15), the alternate by the name of Robbins is a male with the first name of "Mitchell," while Hunt complains about a female: Debra Robbins.  (*See* Reply at 43) (citing Vol. 1, Tr. at 156-57.)

[19]/   Hunt's assertion that the state court's findings were unreasonable interpretations of federal law is without merit.  (Doc. 1, ¶ 133.)  *See  Irvin v. Dowd*, 366 U.S. 717, 727-28 (1961) (where close to 90% out of 430 venirepersons examined on the issue entertained some opinion as to guilt and eight out the final 12 jurors believed petitioner was guilty); *Coleman v. Zant*, 708 F.2d 541, 544 (11th Cir. 1983) (noting that a

**Page 55 of 248**

**C.      RACE, GENDER AND ECONOMIC DISCRIMINATION IN THE FORMATION AND COMPOSITION OF THE GRAND AND PETIT JURIES AND THE SELECTION OF THE RESPECTIVE FOREPERSON, DEPRIVED MR. HUNT OF A FAIR AND RELIABLE TRIAL.** (Doc. 1, ¶¶ 134-139.)

Hunt, who is White,[20]  first argues he was deprived of his right to grand and petit juries formed without discriminatory animus in violation of his rights under Alabama law and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.   According to Hunt, otherwise qualified citizens were excluded from serving on the grand/petit juries due to a discriminatory system of forming and maintaining master jury lists in Walker County, in an intentional effort to exclude citizens on the basis of race, gender and/or economic status.  He asserts that these groups were systematically under-represented in the pool from which the grand jury indicted him and the pool from which his trial jury was selected.  In support of his assertion, Hunt complains that the grand jury had no Black members and Blacks comprised only 8.7%, or fifty-seven persons, of the panel from which his trial jury was selected.   According to Hunt, these numbers do not represent a cross-section of Blacks in the relevant community.  Hunt also asserts that women were under-represented on the venire panel.

---

constitutional violation occurs when "one or more jurors who decided the case entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty"); *Coleman v. Kemp*, 778 F.2d 1487, 1542 (11th Cir. 1985) (involving, *inter alia*, : (1) daily newspaper articles about the brutal murder of six persons from a well-known family; (2) newspaper editorials demanding the death penalty; (3) testimony from both citizens and reporters that "everybody" in the community had been talking about the crime; "everybody" knew the accused men had committed the crime based upon the "circumstantial evidence" and "everybody" in the county wanted to "Fry'em, electrocute'em"; (4) comments in the media by a defendants' mother suggesting that mercy was not due; and (5) publicity that numerous attorneys refused to take the case).

[20]/      (*See* Vol. 6, Tr. at 1055.)

Hunt further alleges that forepersons on grand juries, including the person chosen to head his grand jury, are selected in Walker County through a subjective decision making process that permits discrimination.

In his amended Rule 32 brief, Hunt raised his cross-section claims, relating to race, gender and class on both the grand and petit juries, as well as his grand jury foreperson claim.  (Vol. 14, Tab. 45 ¶¶ 321-26.)   The Rule 32 trial court remarked that the claims had been "previously dismissed" because they could have been, but were not, raised at trial or on appeal.[21]  (Vol. 22, Tab 63 at 128) .

At the appellate level, the heading in Hunt's brief lists a grand jury "cross-section" challenge only.  (Vol. 19, Tab 54 at 108.)   However, in the text of the brief, he raised both the grand and petit jury claims, but only as they relate to race as well as to his jury foreperson claim. (*Id*. at 108-09.)   The Court of Criminal Appeals then addressed only the grand jury race cross-section claim in its opinion, summarily finding that it was procedurally barred because Hunt failed to raise the claim at trial or on direct appeal.  *Hunt*, 940 So. 2d at 1072.  In his Alabama certiorari petition, he again raised the grand and petit jury claims, but only as they relate to race, in addition to his jury foreperson claim.  (Vol. 21, Tab 58 at 137-38.)

Because all of Hunt's claims were rejected on independent and adequate state law procedural grounds by the Rule 32 trial court, they are precluded from review.  (*See* Vol. 22, Tab

---

[21]   Although the trial court's holding is entitled to deference, the factual basis of its finding is not entirely correct. At trial, Hunt's attorneys did in fact raise a cross-section claim with respect to the number of Blacks on the trial venire.  (Vol. 2, Tr. at 202.)  However, they did not raise his other cross-section claims at trial and his prior appellate counsel raised no cross-section claims on direct appeal.  (*See* Vol. 11, Tab 32.)

63 at 128.)  Additionally, his gender and class cross-section claims are barred because he failed to

exhaust them in his Alabama certiorari petition and he is now precluded from curing this deficiency.

Moreover, even if his claims had been properly raised, they would fail on the merits.  Hunt

presented no evidence that the Walker County jury process "systematically exclude[s]  distinctive

groups in the community and thereby fail[s] to be reasonably representative thereof."  *Taylor v.*

*Louisiana*, 419 U.S. 532, 532  (1975).  Further, he failed  to provide any evidence regarding the

statistical  make-up  of  Blacks,  women  or  the  poor  in  the  community.    Instead,  Hunt  merely

introduced a copy of the venire from which his Grand Jury was selected and pointed out that all

were White.  (*See* Vol. 18 at 212-13.)  When the Court noted that Blacks make up six percent of

the population in Walker County and noted that the grand jury lists are chosen randomly by the

Alabama  Administrative  Office  of  Court  from  the  driver's  license  list,  Hunt  did  not  offer  any

evidence to dispute this procedure or evidence that the procedure is tainted.  (*See id*.)  He offered

no evidence regarding the venire for his petite jury.  Moreover, despite the judge's comment that

Blacks constitute 6 % of the County population, Hunt raises a  race-based constitutional challenge

to his petit jury pool that contained 8.7 % Blacks.  Accordingly, Hunt failed to make out a *prima*

*facie*  case  of  discrimination  because  he  did  not  establish,  among  other  things,  that  the  Walker

County jury "selection procedure is susceptible to abuse . . . . "  *See Locke v. State*, 631 So. 2d 1062,

1063-64 (Ala. Cr. App. 1993) (citing *Johnson v. Puckett*, 929 F.2d 1067, 1071-72 (5th Cir. 1991)).[22]

---

22/      The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981),
adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Finally, the legal authority upon which Hunt relies does not bolster his claims: the Alabama

Code provision and the cases he cites simply require that juries be selected randomly from a cross-

section of the community.[23]

**D.    GROSS CONSTITUTIONAL ERRORS IN THE RUSHED PENALTY PHASE DEPRIVED MR. HUNT OF HIS RIGHTS TO A FAIR TRIAL AND TO DUE PROCESS OF LAW.** (Doc. 1, ¶¶ 140-47.)

    1.    **"Rushed" Proceedings** (Doc. 1, ¶¶ 140-42.)

Hunt asserts that the trial court improperly "rushed" into the penalty phase proceedings

despite the late hour and juror fatigue:

COURT:          Ladies and gentlemen of the jury, I have to inform you that
                you have another duty to perform and that is the sentencing
                stage of this offense.

                Do we take a break for supper or come back tomorrow?
                Take a break for supper, do this, and finish tonight or come
                back tomorrow?

JUROR:          Do you have any idea how much time you talking about?

COURT:          A couple of hours.

MR. WILKINSON

---

[23]/    *See Duren v. Missouri*, 439 U.S. 357 (1978) (involving automatic exemption of women from jury service upon request); *Taylor v. Louisiana*, 419 U.S. 532, 552 (1975) (involving statute which provided that a "woman should not be selected for jury service unless she had previously filed a written declaration of her desire to be subject to jury service" and requiring that "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof").; *Thiel v. Southern Pacific Co.*, 328 U.S. 217 (1948) (involving lawsuit against a train company filed by a working class passenger who challenged the jury venire due to the absence of working class persons and rejecting jury selection procedures where "both the clerk of the court and the jury commissioner testified that they deliberately and intentionally excluded from the jury lists all persons who work for a daily wage"); *Locke v. State*, 631 So. 2d 1062 (Ala. Crim. App. 1993) (finding unconstitutional procedure where "the circuit judge appointed the foreman on the basis of his own subjective criteria"); Ala. Code § 12-16-55 ("It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this article, to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.")

| (for the defense): | It's not a terribly lengthy procedure, Judge.  In my experience it has been a couple hours. |
|---|---|
| COURT: | Would you all like to go back into the other courtroom and make your decision, so you can talk freely among yourselves.? |
| JUROR: | Yes, sir. |
| COURT: | Okay.  So, just inform Jim what you want to do and then we will proceed from that point on. |

> [Out of the presence of the jury]
>                              .  .  .  .
> We will be in recess until
> 8:00 o'clock [p.m.]

(Vol. 5, Tr. at 917-18.)  A decision was made to continue with the proceedings and, after the

attorneys made penalty phase oral arguments, the Court stated:

> Ladies and gentlemen of the jury, I know you are tired.  I am, too.  I'm going to give
> you jury instruction with regard to the sentencing hearing.

(*Id*. at 931.)

Hunt argues that the Court's comments and the determination to move directly into the

penalty phase presentations and deliberations late in the evening were outrageous in a capital trial.

This claim was raised in Hunt's Amended Rule 32 petition, where the trial court found it

to be precluded because it could have been, but was not, raised at trial or on direct appeal.  (Vol.

22, Tab 63 at 125).  Thereafter, Hunt failed to properly raise the claim in his Rule 32 appellate

briefs.  (*See* Vol. 19, Tab 54 at p. iii - vii;  Vol. 21, Tab 58 at pp. i - iv, p. 141 #12.)  As such, the

claim is procedurally barred because: (1) it was rejected under independent and adequate state law

grounds; (2) Hunt failed to exhaust the claim in state court; and (3) Hunt is now barred from curing

these deficiencies due to the statute of limitations and the prohibition against successive petitions.

Even if Hunt's rushed penalty phase claim were not barred, the Court finds that he is not entitled to relief on the merits.  Under Alabama law, "[t]he sentencing hearing shall be conducted as soon as practicable after the defendant is convicted."  Ala. Code § 13A-5-45(a).  Hunt has failed to offer any case law or argument in support of his substantive claim.  This Court is under no obligation to "consider unsupported and undeveloped issues."  *Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999).

2.    **Instruction on each statutory mitigating factor**.  (Doc. 1, ¶ 143.)

Hunt next complains about the inclusion, during the penalty phase jury charge, of a list of every statutory mitigating factor under Alabama law, even though "virtually none" applied to his case.  (Doc. 1, ¶ 143.)  By reading all of the factors, Hunt contends the Court implicitly suggested to the jury that the absence of evidence to support the listed mitigators was something that would weigh in favor of a death sentence.  (*Id*.)

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 292), and the claim was rejected on procedural grounds because it could have been, but was not, raised at trial. (Vol. 22, Tab 63 at 125).  However, Hunt failed to properly raise the claim in his Rule 32 appellate briefs. (*See* Vol. 19, Tab 54 at p. iii - vii;  Vol. 21, Tab 58 at pp. i - iv,  140-43.)  As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.  *See* 28 U.S.C. § 2254(b)(1)(A); Ala.R.Crim.P. 32.2(b) and 32.2(c).

Even if the claim were not barred, Hunt would be entitled to no relief, as he fails to cite any federal law or make any argument based upon federal law to support this claim.  Because the Court

is under no obligation to "consider unsupported and undeveloped issues," Hunt is not entitled to

habeas relief on this claim.  *See Moore*, 195 F.3d at 1180 n.17.

       3.      **Verdict Form** (Doc. 1, ¶¶ 144-46.)

Hunt next argues that the verdict form used in his case was defective because some jurors

may have taken the "single verdict" form as an indication: (1) that the judge favored the death

penalty in Hunt's case or that they were expected to return a death verdict; and (2) that the judge's

instructions on weighing the mitigating circumstances against the aggravating factors was

surplusage.  Hunt contends that the "jury did not receive any verdict forms recommending life

without parole rather than death."  (Doc. 1, ¶ 144.)  According to Hunt, the alleged defect in the

form violated his right to a determination of punishment as protected by the Fifth, Sixth, Eighth,

and Fourteenth Amendments to the United States Constitution.

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48, ¶¶ 293-96).  The Rule

32 trial court found the claim precluded because it could have been, but was not, raised at trial or

on direct appeal.  (Vol. 22, Tab 63 at 125).  However, Hunt failed to properly raise the claim in his

Rule 32 appellate briefs.  (*See* Vol. 19, Tab 54 at p. iii - vii; Tab 58 at pp.  i - iv,  140-43.)  As such,

the claim is procedurally barred because: (1) it was rejected under independent and adequate state

law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these

deficiencies due to the statute of limitations and the prohibition against successive petitions.

Had this claim not been barred, Hunt fails to make any argument based upon federal case

precedent to support the claim.

The pertinent part of the forms in Hunt's case appeared as follow:

<u>JURY RECOMMENDATION</u>

We, the Jury, recommend that the defendant, Gregory
Hunt, be punished by death in count one of the indictment.

The vote is as follows:
_____ Death          _____Life without
                                parole


                         _____
                                Jury Foreman

(Vol. 6, Tr. at 1035.)

The form explicitly provides jurors with a space to record the number of persons voting for

"life without parole."  Moreover, during the jury charge, the trial court explained:

On the verdict form there will be, at the bottom of the form, there will be a line with
death and a line with life without parole.  The jury foreman must enter the number
of votes for each.

(Vol. 5, Tr. at 943.)  Obviously, the jurors understood they had this option because one juror did

indeed vote for life without parole.  (Vol. 6 at 1035-37.)  As such, the basis for Hunt's argument

is unclear.  Inasmuch as the Court is under no obligation to "consider unsupported and undeveloped

issues," Hunt is not entitled to habeas relief.  *See Moore*, 195 F.3d at 1180 n.17.

4.      **Collective penalty phase violations** (Doc. 1, ¶ 147.)

Hunt concludes by arguing that the individual penalty phase violations collectively and

individually violated his right to a reliable determination of punishment in violation of his Fifth,

Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  (Doc. 1, ¶ 147.)  He

also argues that the state court adjudication of these claims was contrary to and an unreasonable application of clearly establish law.  Given the findings above, this claim is without merit.

**E.     THE TRIAL COURT VIOLATED MR. HUNT'S CONSTITUTIONAL RIGHTS BY REFUSING TO CONSIDER MITIGATING EVIDENCE.  (Doc. 1, ¶¶ 149-56.)**

Hunt first contends that during the penalty phase of the trial, the Court refused to consider non-statutory mitigating evidence found in both the pre-sentencing report and testimony from his mother regarding his troubled and abusive childhood.  (*See* Doc. 1, ¶¶ 149-57.)  Hunt notes that the Court did mention his childhood in its sentencing order, but he contends the Court "expressly refused to consider the evidence" of his difficult childhood as mitigation evidence.  (*Id.* ¶ 151.)

Second, he contends that the Court failed to consider evidence of his intoxication at the time of the crime as a mitigating factor.  According to Hunt, the Court considered such evidence only in relation to enumerating mitigating factor six, which requires that the alcohol and drug use have such an effect on the defendant that "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as substantially impaired."  Ala. Code § 13A-5-51(6).  Hunt contends that the trial court's consideration of his intoxication was flawed because the law requires consideration of intoxication as an independent mitigating factor, whether or not the intoxication "substantially impaired" his ability to "appreciate the criminality of his conduct."  *See id.*

Citing *Parker v. Dugger*, 498 U.S. 308, 314 (1991), *Hitchcock v. Dugger*, 481 U.S. 393, 397-99 (1987), *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982), and *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), Hunt contends that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the Court's failure to properly

consider his non-statutory mitigating circumstances.  (Doc. 1, ¶¶150-57.)  He also claims the state court findings on this issue were contrary to and an unreasonable application of federal law.

Hunt raised this claim in his Rule 32 brief, (Vol.14, Tab 48  ¶¶ 251-60), and the court rejected it on procedural grounds because it could have been but was not raised at trial or on appeal. (Vol. 22, Tab 63 at 122).  Hunt then failed to properly raise the claim in his Rule 32 appellate briefs. (*See* Vol. 19, Tab 54 at p. iii - vii; Vol. 21, Tab 58 at pp.  i - iv,  140-43).  As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

Alternatively, Hunt is entitled to no relief on the merits.  There is no evidence that the trial court failed to consider the mitigating circumstances or improperly weighed the mitigating factors.

In the sentencing order, the Court first explains its findings relating to the aggravating circumstances:

> (2) "The capital offense was especially heinous, atrocious or cruel compared to other capital offenses."
>
> A.  The Court finds from the testimony of Dr. Joseph Embry of the Alabama Department of Forensic Sciences, Ms. Lane sustained a total of 60 injuries which included: 20 injuries to the head; 12 fractured ribs on the left side and 12 fractured ribs on the right side; her breast bone was fractured; she sustained bruises to her heart; three tears to her liver; bruises to the lung; three-quarter-inch tear to the aorta; bruised pancreas and bleeding in the muscles to the side of the neck.
>
> B.  The Court finds from the evidence adduced by the State in the combined testimony of several witnesses establishing the fact that Mr. Hunt did insert a broomstick into the vagina of Ms. Lane during the assault which led to her death and that at some time in close proximity to her death he ejaculated in her mouth.  (*See* State's Exhibit 2).

The Court finds that these injuries were designed to inflict a high degree of pain and terror, with an utter indifference to - - or even enjoyment of  - - the suffering of the deceased.

This Court recognizes that all capital offenses are "heinous, atrocious or cruel," to some extent.

Evidence that the victim suffered over a protracted period of time is established by blood being found throughout the apartment in the upstairs bedrooms, on the staircase, in the living room and ultimately in the kitchen where the body was found.  Also that the bar stool was the principal instrument of death.

Because of the shockingly inhumane manner in which the defendant beat the deceased thereby causing so many injuries the Court finds that these acts were committed in such a manner and over a period of time that undoubtedly inflicted an extreme degree of pain, suffering and terror on a helpless victim.

The Court is therefore convinced beyond a reasonable doubt that this aggravating circumstance exists and that in comparison with other capital offenses tried before this Court over a period of fourteen years, the degree of heinousness, atrociousness, and cruelty which characterizes this crime far exceeds that common to the capital offenses tried before this Court.

(Vol. 22, Tab. 59 at p. 8-9) (emphasis in original).

Next, the Court lists each statutory mitigating factor and explains why each of those factors

is inapplicable here.  With respect to intoxication, the Court notes:

The Court finds from the evidence that the defendant had been drinking during the day prior to the killing of Karen Lane and that he stated to his sister, Loretta Martin, that he had been drinking and on some pills and that there was other testimony that he had been drinking the day prior to the homicide.

The Court finds from the evidence that the defendant made threatening statements about the deceased over the span of one afternoon and night.  He drove his vehicle pursuing her from place to place.  He talked with several witnesses on the phone and in person during this period of time.  He burned her house prior to the homicide.  He left the scene of the crime and stayed in his van that night subsequently going to Cullman.  From statements made by the defendant to witnesses in the case, he had a clear recollection of the events of the homicide.

Because of the above, this Court finds that this use of alcohol and other substances during this period of time did not diminish the capacity of Mr. Hunt to appreciate the criminality of his conduct or confirm his conduct to the requirements of the law.  Therefore, this mitigating circumstance does not exist.

(Vol. 22, Tab. 59 at p.11) (emphasis added).

The Court then goes on to explain with respect to the non-statutory mitigators:

Testimony adduced from the defendant's mother indicated that he had a childhood which apparently had been wrought with misfortune.

He had been placed in foster care in a children's home at a young age but later returned to his mother's custody.  His mother testified that he had a drug problem in his youth.

The pre-sentence report included that over a period of time the defendant had suffered at the hand of an abusive father.

However, the Court merely addresses this testimony and does not consider such as a mitigating circumstance.

(Vol. 22, Tab. 59 at p. 12) (emphasis in original).

Finally, the trial Court explains:

IV.   WEIGHING  AGGRAVATING  AND  MITIGATING CIRCUMSTANCES

After consideration of all the matters that were presented to this Court, the testimony heard at trial and the sentencing hearing before this Court, both in mitigation and by aggravation, taking into consideration all other matters that were proffered before this Court as hereinabove stated in this Order and disregarding pleas or references to the Court to consider the sentence on the basis of passion or prejudice, the Court does now find and is convinced beyond a reasonable doubt and to a moral certainty that the aggravating circumstances outweigh the mitigating circumstances and is sufficient to uphold the jury's recommendation of punishment at death.

(Vol. 22, Tab. 59 at p. 12) (emphasis added).

Later, on direct appeal, the Alabama Court of Criminal Appeals concluded its opinion by finding:

> In sentencing the appellant to death, the trial judge found the existence of two aggravating circumstances: 1) the capital offense was committed while the appellant was engaged in the commission of or an attempt to commit burglary, Ala. Code 1975, § 13A-5-49(4); and (2) the capital offense was especially heinous, atrocious or cruel compared to other capital offenses, § 13A-5-49(8). *See* R. 1046-48.
>
> The trial court found the existence of one statutory mitigating circumstance: the appellant has no significant history of prior criminal activity, § 13A-5-51(1). The trial court considered evidence of the nonstatutory mitigating circumstance that the appellant's childhood had been "wrought with misfortune," but rejected that as a mitigating circumstance. R. 1048-51.
>
> Review of the record convinces this Court that those findings regarding the aggravating and mitigating circumstances are supported by the evidence.
>
> In determining that death is the proper sentence in this case we find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(1). Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence. § 13A-5-53(b)(2). We find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. § 13A-5-53(b)(3).

*Hunt*, 659 So. 2d at 960 (emphasis added).  Thus, even after considering additional non-statutory mitigation evidence that was not presented at trial, the state appellate court found Hunt's mitigation evidence was not compelling.

Other than citing to Supreme Court cases for the basic proposition that the trial court has a duty to consider non-statutory mitigating evidence and that such evidence includes a troubled childhood, as well as drug/alcohol problems, Hunt provides no further development of his claim.[24]

---

[24] *See Parker*, 498 U.S. at 314-15 (holding that the United States Supreme Court must assume that the trial court considered non-statutory mitigators where the trial judge heard mitigation testimony and his order stated that he had "carefully studied and considered all the evidence," but he failed to specifically draft findings regarding

In contrast, Respondent correctly argues that this case is substantially different from *Hitchcock v. Dugger,* where the trial court instructed the jury that it could only consider statutory mitigators. (Answer ¶ 226) (citing 481 U.S. at 393-99).   Further, Respondent points out that the Eleventh Circuit has held that no *Dugger* violation occurs where the Court considers, but gives little to no weight to non-statutory mitigators.   (Answer ¶ 227) (citing *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992).  Given such precedent, Hunt's claim that the trial court failed to consider non-statutory mitigating evidence is without merit.

**F.     THE TRIAL COURT'S ORAL CHARGE AT THE CONCLUSION OF THE PENALTY PHASE OF MR. HUNT'S TRIAL WAS CONSTITUTIONALLY DEFECTIVE AND PREJUDICIAL TO MR. HUNT.** (Doc. 1, ¶¶ 157-66.)

Hunt complains that the trial court's jury instructions were inaccurate, confusing, incorrect and misleading.

Although Hunt raised the following claims in his amended Rule 32 brief, (Vol. 19, Tab 54, ¶¶ 263-69), the court rejected these claims because Hunt could have, but failed to raise them at trial or on direct appeal.  (Vol. 22, Tab 63 at 123).  Hunt then failed to raise these claims in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  As such, the claims are procedurally barred because: (1) they were rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the

---

the mitigation evidence);  *Hitchcock*, 481 U.S. at 398 (constitutional violation found where the prosecutor told the jury that it had to consider the mitigating factors "by number" and the trial court specifically instructed the jury as follows: "'[t]he mitigating circumstances which you may consider shall be the following . . .' (listing the statutory mitigating circumstances).");  *Eddings*, 455 U.S. 104 at 108-9, 114 (finding constitutional error where judge refused to consider defendant's violent background as a mitigating factor); *Penry*, 492 U.S. at 312, 323 (constitutional error found where jury instructions did not allow the jury to take into consideration mitigating evidence of mental retardation and childhood abuse).

statute of limitations and the prohibition against successive petitions. Hunt is not entitled to habeas relief on these claims.

Alternatively, it should be noted that none of the claims succeeds on the merits:

1.   **Failure to explain to jurors that they were required to consider non-statutory mitigators and failure to define or give examples of same.** (Doc. 1, ¶¶ 158-59.)

Hunt complains that the Court failed to adequately inform the jurors that they were required to consider non-statutory mitigators.  Hunt also contends that the Court never provided the jurors with examples of non-statutory mitigating circumstances, never "defined them," and did not instruct the jury that there was evidence of such factors.  Specifically, he complains about the following instruction:

> The law of the state provides a list of some of the mitigating circumstances which you may consider but that list is not a complete list of mitigating circumstances you may consider.  I will now read to you the list the law does provide.

(Vol. 5, Tr. at 937-38.)  These instructions, Hunt urges, precluded the jury from considering non-statutory mitigators, thereby depriving him of his Fifth, Sixth, Eighth, and Fourteenth Amendment constitutional rights.  (Doc. 1, ¶ 158-59) (citing *Hitchcock v. Dugger*, 481 U.S. at 394; *Eddings*, 455 U.S. at 114).

This claim is unavailing.  First, as Respondent points out, the Alabama Code does not give specific examples of non-statutory mitigators.  (Answer ¶ 231)(citing Ala. Code § 13A-5-52).  Second, the law simply requires that the jury and court "consider" non-statutory mitigators and the record establishes that the trial court sufficiently explained the jurors' obligations with respect to this issue:

> Now life imprisonment without eligibility for parole, in Alabama, by law, means just what it says.  It means you are never released from prison.  The law also provides that which of those two punishments should be imposed upon the

defendant depends on whether any aggravating circumstances exist and if so, whether the aggravating circumstances outweigh the mitigating circumstances.

An aggravating circumstance is a circumstance specified by law which indicates or tends to indicate that the defendant should be punished or sentenced to death.

Mitigating circumstance is any circumstance that indicates or tends to indicate that the defendant should be sentenced to life in prison without parole instead of death.

The issue at this sentencing hearing concerns circumstances of aggravation and circumstances of mitigation that you should consider and weigh against each other in deciding the proper punishment or what the proper punishment is in this case.

. . . .

You may not consider any aggravating circumstances other than those aggravating circumstances I have mentioned to you. . . .   If you find beyond a reasonable doubt that one or more of the aggravating circumstances which I have instructed you do exist in this case then you must proceed to consider the mitigating circumstances.   The law of the state provides a list of some of the mitigating circumstances which you may consider but that list is not a complete list of mitigating circumstances you may consider.   I will now read to you the list the law does provide. . . .

In addition to the mitigating circumstances previously specified, mitigating circumstances shall include any aspect of the defendant's character or record or any circumstances of the offense that the defendant offered as a basis for a life sentence, without parole, instead of death.

(Vol. 5, Tr. at 932-33, 937-38, 939) (emphasis added).

Not only did the Court explain to the jurors that they could consider non-statutory mitigators, but the Court also explained that such mitigators included "any aspect of the defendant's character or record or any circumstances of the offense that the defendant offered as a basis for a life sentence, without parole, instead of death." (*Id*. at 939.)   Hunt does not explain how these instructions violated the requirements of his cited cases. *See Hitchcock* , 481 U.S. at 398

(constitutional violation found where the prosecutor told the jury that it had to consider the mitigating factors "by number" and the trial court specifically instructed the jury as follows: "'[t]he mitigating circumstances which you may consider shall be the following . . .' (listing the statutory mitigating circumstances)."); *Eddings,* 455 U.S. 104 (overturning sentence where trial court judge opined that, in order to "follow the law," he was unable to consider certain mitigating evidence adduced by the defendant).  Accordingly, Hunt is entitled to no relief.

     **2.**     **Alleged Confusing Instructions Regarding the Number of Votes Required for a Death Sentence.**  (Doc. 1, ¶ 160.)

Next Hunt complains that the Court gave misleading and confusing instructions regarding the required votes needed for a death sentence recommendation versus a life without parole recommendation.  (Doc. 1, ¶ 160.)  Hunt complains about one sentence (underlined below) regarding the instructions on the vote:

> In order to bring back a verdict recommending punishment of death, at least ten of you must vote for death.
>
> In other words, the verdict of death must be either unanimous or eleven for death and one for life without parole, ten for death or two for life without parole. <u>Any number less than ten can not recommend the death penalty</u>.
>
> On the verdict form there will be, at the bottom of the form, there will be a line with death and a line with life without parole.  The jury foreman must enter the number of votes for each.  <u>And, if there are less than ten votes for the death penalty, you can not return a jury recommendation for death</u>.
>
> <u>In order to bring back a verdict recommending the sentence of life without parole, there must be a concurrence of at least ten of your number for that sentence.</u>
>
> In other words, for life without parole, there is a form here, death - - life without parole - - This cannot be returned unless seven jurors vote for life without parole. And, the remainder for death.  Do we understand how this is?

(Vol. 5, Tr. at 943) (emphasis supplied).

Hunt points to no error of constitutional portions, nor does he cite to any legal authority in support of his claim.  As Respondent points out, Alabama law requires at least ten votes for death. (Answer ¶ 231) (citing Ala. Code. § 13A-5-46(e)).  Applying Alabama law, the instructions taken together did not confuse the jury.  Indeed, the Court asked the jurors if they understood this instruction and none indicated they misunderstood.  (Vol. 5, Tr. at 943.)   Finally, with only one juror voting for life without imprisonment, there is no indication that a different instruction would have changed the outcome.

3.     **Transposition of The Words Mitigating and Aggravating**.  (Doc. 1, ¶¶ 161.)

Hunt's next argument centers around the Court's "rambling, lengthy, and confusing" jury instructions which prevented the jury from "adequately or properly" deciding his penalty. He specifically complains about the Court's transposition of the words "mitigating" and "aggravating" during the court's discussion about the sentence to be imposed if the jury found no aggravating circumstances:

> If you find that you are not convinced beyond a reasonable doubt, each and every one of you, that a <u>mitigating</u> circumstance does exist, you go no further from that point.  You sentence to life without parole.

(Vol. 5, Tr. at 947) (emphasis added).

This instruction presents no constitutional violation.  The Court notes that the trial judge almost immediately corrected its mistake:

> Ladies and Gentlemen, in my final freelance jury instruction, I transposed the word mitigating - - I used the word mitigating when I should have used the term aggravating.
>
> All twelve of you must be convinced beyond a reasonable doubt that an aggravating circumstance, if one or more exists, before you can go on to determine whether there are any mitigating circumstances.

If all of you are convinced beyond a reasonable doubt that one or more aggravating circumstances exists you go to the term mitigating circumstances.

If you are convinced beyond a reasonable doubt that in totality the mitigating circumstances outweigh the aggravating circumstances, your recommendation of life without parole would be the proper one.

If in your opinion, beyond a reasonable doubt and to a moral certainty that the aggravating circumstances outweigh the mitigating circumstances then your recommendation should be death.

(Vol. 5, Tr. 948.)

Taking the correction and the instructions in their totality, Hunt's alleged constitutional claim is without merit. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974) ("'In determining the effect of this instruction on the validity of respondent's conviction, we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'") (citations omitted).   Indeed, Hunt does not cite to any legal authority which might compel a finding to the contrary.

4.    **Instruction About the Burden of Proof for Mitigating Evidence.**  (Doc. 1, ¶ 162.)

Hunt also complains about the following instruction:

If you are convinced beyond a reasonable doubt that in totality the mitigating circumstances outweigh the aggravating circumstances, your recommendation of life without parole would be the proper one.

If in your opinion, beyond a reasonable doubt and to a moral certainty that the aggravating circumstances outweigh the mitigating circumstances then your recommendation should be death.

In determining mitigating circumstances the burden of proof is not beyond a reasonable doubt and to a moral certainty as I stated.   It is by the preponderance of the evidence.   Is that correct?

(Vol. 5, Tr. 948) (emphasis added).

This claim is meritless.  The relevant statute provides:

> At the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances. Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing. . . .

> The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence.

Ala. R. Crim. P. 13A-5-45(e) & (g).  Consistent with this statute, the Court explained :

> [W]hen a factual existence of an offered mitigating circumstance is in dispute, the state shall have the burden of disproving the factual existence of the circumstances by the preponderance of the evidence.  The burden of disproving it by preponderance of the evidence means that you are to consider the mitigating circumstance does exist unless taking evidence as a whole it is more likely than not that the mitigating circumstance does not exist.

> Only an aggravating circumstance must be proven beyond a reasonable doubt and I have stated to you this many times and the burden is upon the state to convince each and every one of you beyond a reasonable doubt and to a moral certainty of the existence of aggravating circumstances.

(Vol. 5, Tr. at 940.)

Given the statutory framework, the entirety of the Court's instruction and Hunt's failure to

explain  how his constitutional rights were violated, he is not entitled to habeas relief.

> **5.**    **Instructions Regarding the Sentence to Be Imposed if the Jury Found No Aggravating Circumstances.** (Doc. 1, ¶ 163.)

Hunt also complains about the following instruction:

> However, if after a full and fair consideration of all the evidence in the case, you determine that mitigating circumstances outweigh aggravating circumstances that exist, you are not convinced beyond a reasonable doubt and to a moral certainty that at least one aggravating circumstance exists, your verdict <u>should</u> be to

recommend the punishment of life without parole and your verdict form <u>should</u> be as follows  "We, the jury recommend the defendant, Greg Hunt, be punished by life imprisonment without parole and the vote is as follows . . .

(Vol. 5, Tr. at 945) (emphasis added).

Hunt fails to identify his challenge to this instruction and how the instruction violates his

constitutional rights.  Accordingly, he is not entitled to habeas relief.

6.     **Court's Instruction on Circumstances That Would Allegedly Require a Sentence of Life Without Parole, but the Court Told the Jury It "May" Sentence Defendant to Life.** (Doc. 1, ¶ 164-65.)

Finally, Hunt complains about the following instruction:

Ladies and gentlemen, it has been pointed out that I may have misstated something.

If you are convinced beyond a reasonable doubt and to a moral certainty that there are - - all of you, all twelve of you, are convinced beyond a reasonable doubt and to a moral certainty, that there is a least one aggravating circumstance contained here, that it does exist, you may, upon considering the mitigating circumstances, feel that the mitigating circumstances outweigh the aggravating circumstances and you <u>may</u> sentence the defendant to life in prison without parole.

(Vol. 5, Tr. 946) (emphasis added).  According to Hunt, this explanation actually <u>requires</u> a finding

of life without parole because the Alabama Code provides:

If the jury determines one or more aggravating circumstances [as spelled out in the statute] exist but do not outweigh the mitigating circumstances, it <u>shall</u> return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole.

Ala. Code § 13A-5-46(e)(1)(2) (emphasis added).

Respondent argues that the trial court's instruction was correct.   (Answer ¶ 231.)

Respondent also notes that Hunt fails to explain the alleged constitutional deficiencies in the trial

court's instructions; thus, he is not entitled to relief.  (*Id*. ¶ 231.)

Hunt fails to point out that the trial judge clarified his comments during the closing portion of his charge after several objections by defense counsel:

| | |
|---|---|
| MR. WILKINSON (for the defense): | I have a question. Perhaps I did mishear it. I thought you said that if you are convinced beyond a reasonable doubt and to a moral certainty that there is no aggravating circumstances, then you must return a verdict of life without parole. Is that correct? |
| COURT: | Uh-hu. |
| MR. WILKINSON: | But, I think it is also correct that if you feel the mitigating circumstances outweigh the aggravating circumstances - - - |
| COURT: | I put that in there. |
| MR. WILKINSON: | I didn't think you said that, I thought you only said - - - |
| MR. ADAIR (for the state): | I think you read it altogether, instead of separating it out. |
| COURT: | Let me make myself clear on that. . . .   Ladies and gentleman, it has been pointed out that I may have misstated something. |

                                              . . . .

| | |
|---|---|
| | If all of you are convinced beyond a reasonable doubt that in totality the mitigating circumstances outweigh the aggravating circumstances, your recommendation of life without parole would be the proper one. |

(Vol. 5, Tr. at 946-47, 948.)

Taking the jury instructions in their entirety, Hunt is not entitled to habeas relief on this claim. This Court is under no obligation to "consider unsupported and undeveloped issues."

*Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999), and Hunt has failed to offer any federal law or argument in support of his claim.[25]

**G.    MR. HUNT'S RIGHTS TO A TRIAL BY JURY, FAIR TRIAL, DUE PROCESS, AND RELIABILITY IN SENTENCING WERE VIOLATED BECAUSE THE ULTIMATE FACTUAL DETERMINATIONS AUTHORIZING THE DEATH PENALTY WERE NOT MADE BY THE JURY BEYOND A REASONABLE DOUBT.** (Doc. 1, ¶¶ 167-70.)

Hunt challenges the Alabama death penalty sentencing procedures for two reasons.  First, he argues that the ultimate determination and weighing of the aggravating factors is unconstitutionally undertaken by the trial judge, rather than the jury.  (Doc. 1, ¶¶ 167-68.)  Hunt points out that during the guilt phase, aggravating factors must be proved to a jury beyond a reasonable doubt.  Once the proceedings enter the penalty phase, however, Alabama Code Section 13A-5-47 provides that the "trial court shall proceed to determine the sentence."  By allowing the judge to make the final determination and, consequently, the ultimate findings of fact, Hunt claims his constitutional rights were violated.

He also complains that the Alabama sentencing scheme allows a jury to recommend death without unanimity.  *See* Ala. Code § 13A-5-46(f).  Moreover, because the jury is under no obligation to specify the aggravating factors it finds, or make such findings unanimously, there is no guarantee of unanimity between the jurors' decisions regarding the aggravating circumstances and the judge's decision.

In support of his constitutional challenges, Hunt cites to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and contends his rights to a fair trial, trial by jury, reliability in sentencing and due

---

[25]    In paragraph 166 of Hunt's habeas petition, he complains that the challenged jury instructions cumulatively violated his rights to trial by jury, fair trial, reliability in sentencing, and due process under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  Taking the instructions in their entirety, the Court finds this claim is without merit.

process rights were violated in contravention of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

This claim was rejected by the Rule 32 trial court because Hunt attempted to rely on *Apprendi* retroactively and the law did not provide for retroactive application[26]. (Vol. 22, Tab 63 at 120-22.) In the alternative, the court found that the claim was procedurally defaulted because it could have been but was not raised at trial and on appeal pursuant to Rules 32.2(a)(3) and (a)(5). (Vol. 22, Tab 63 at 121.)

On appeal of the denial of the Rule 32 petition, the Court of Criminal Appeals also rejected his claim:

> Hunt argues that the circuit court erred in finding that some of his constitutional claims were procedurally barred because they could have been raised at trial or on appeal. Specifically, he argues that the procedural default rules in Rule 32, Ala. R. Crim. P., do not exclude claims that raise a jurisdictional defect and that the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim, he argues, raises a jurisdictional issue. The circuit court stated the following:
>
> > "*Ring* [ *v. Arizona*, 536 U.S. 584 (2002),] is not retroactive to cases that are beyond the direct appeal stage.... The Alabama Court of Criminal Appeals has repeatedly held that '*Apprendi* does not apply retroactively to cases on collateral review.' *Sanders v. State*, 815 So.2d 590, 591 (Ala.Crim.App.2001). . . . Likewise, the Eleventh Circuit Court of Appeals has held that *Apprendi* does not apply retroactively to cases on collateral review."
>
> (C.R. 120.) The circuit court correctly denied relief on this ground. As we stated in *Brooks v. State*, 929 So.2d 491 (Ala.Crim.App.2005):
>
> > "[T]he Supreme Court's decision in *Ring* [ *v. Arizona*, 536 U.S. 584 (2002),] does not apply retroactively to cases on collateral review. *See McWilliams v. State*, 897 So.2d 437 (Ala. Crim. App.2004). The United States Supreme Court in *Schriro v. Summerlin*, 542 U.S. 348,

---

[26] Hunt's case was final in May 1995, when the Alabama Court of Criminal Appeals  issued the certificate of judgment. *Apprendi* was handed down close to five years later on June 6, 2000.  *Apprendi*, 430 U.S. 466.

124 S. Ct. 2519 (2004), specifically held that its decision in *Ring* did not apply to death cases that were already final at the time that the decision was announced."

Finally, the Appeals Court explained:

the jury convicted Hunt of murdering Karen Lane during the course of a burglary. The felony that elevated the murder to capital murder and made Hunt eligible for the death penalty was submitted to the jury and proven beyond a reasonable doubt in the guilt phase. There was no *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428, 153 L.Ed.2d 556 (2002), violation. *See Ex parte Waldrop,* 859 So.2d 1181 (Ala.2002), *cert. denied,* 540 U.S. 968, 124 S.Ct. 430, 157 L.Ed.2d 314 (2003).

*Hunt*, 940 So. 2d at 1057.

Hunt fails to explain how this finding was contrary to or an unreasonable application of *Apprendi* or *Ring*. Therefore, not only is his claim procedurally barred based on its rejection under independent and adequate state law grounds, but it is also without merit.

**H.    COMMENTS BY THE TRIAL COURT, DEFENSE COUNSEL, AND THE PROSECUTOR, INDIVIDUALLY AND COLLECTIVELY, IMPERMISSIBLY DIMINISHED THE JURY'S SENSE OF RESPONSIBILITY FOR SENTENCING.** (Doc. 1, ¶¶ 171-77.)

Hunt claims the trial court, defense counsel and the prosecutor lessened the jury's sense of responsibility in sentencing by repeatedly reinforcing to the jury that its decision regarding the penalty was a recommendation because the ultimate determination is made by the judge. *See* Alabama Code §§ 13A-5-46(a) (the jury "shall return an advisory verdict"); § 13A-5-47 ("after the jury has returned an advisory verdict . . . the trial court shall proceed to determine the sentence). Relying on *Caldwell v. Mississippi*, 472 U.S. 320, 329 (1985), Hunt complains that the jury was never informed that the court must take the jury's recommendation into consideration. In *Caldwell*, a constitutional violation occurred where "the prosecutor urged the jury not to view itself as determining whether the defendant would die, because a death sentence would be reviewed for

correctness by the State Supreme Court." 472 U.S. at 323. Because of the alleged *Caldwell* violation here, Hunt contends his rights to a trial by jury, fair trial, reliability in sentencing and due process were violated in contravention of the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution.

Hunt raised this claim in his amended Rule 32 brief. (Vol. 14, Tab 48 ¶¶ 244-50). The court rejected the claim because of Hunt's failure to raise it at trial or on direct appeal. (Vol. 22, Tab 63 at 122. Hunt then failed to raise this claim in his Rule 32 appellate brief (*See* Vol. 19, Tab 54 at p. iii - vii.). As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

Alternatively, the claim is without merit. Pursuant to *Ramano v. Oklahoma*, 512 U.S. 1, 9 (1994), "to establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *See also Davis v. Singletary*, 119 F.3d 1471, 1483-85 (11th Cir. 1997)(no *Caldwell* violation where the jury was advised that its role was to provide a sentence recommendation). Hunt fails to direct the Court to specific comments he found troubling, or explain how advising the jury of its role under Alabama law constituted a *Caldwell* violation. He is not entitled to federal habeas relief.

**I.   THE ALABAMA CAPITAL-SENTENCE SCHEME IS UNCONSTITUTIONAL, IN THAT IT REQUIRES THE PROSECUTION TO DISPROVE THE EXISTENCE OF THE MITIGATING FACTORS BY ONLY A PREPONDERANCE OF THE EVIDENCE.** (Doc. 1, ¶¶ 178-79.)

Hunt challenges Alabama Code Section 13A-5-45(g) which provides

The defendant shall be allowed to offer any mitigating circumstance defined in Sections 13A-5-51 and 13A-5-52. When the factual existence of an offered mitigating circumstance is in dispute, the defendant shall have the burden of interjecting the issue, but once it is interjected the state shall have the burden of disproving the factual existence of that circumstance by a preponderance of the evidence.

Hunt claims that because the state can disprove the mitigators by a preponderance of the evidence, rather than beyond a reasonable doubt, his rights to trial by jury, reliability in sentencing and due process under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated.

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 261-62). The court rejected it because Hunt had failed to raise the claim at trial or on direct appeal.  (Vol. 22, Tab 63 at 123.)   Hunt then failed to raise this claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.). As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

Even in the absence of default, the claim fails on the merits.  Assuming Hunt is raising a "reverse-*Ring/Apprendi* claim," Respondent points out the challenged Alabama statutory provision does not require that the prosecution disprove mitigating factors at all, as long as the aggravating circumstances outweigh the mitigating circumstances.  (Answer ¶¶ 241, 245.)   Moreover, Hunt fails to cite to any case law which indicates the state must disprove mitigators, much less disprove them beyond a reasonable doubt.  As such, he is not entitled to relief.

J.   **ALABAMA CODE § 13A-5-45(e) IS UNCONSTITUTIONAL INSOFAR AS IT DENIED MR. HUNT THE RIGHT TO REBUT AT THE PENALTY PHASE THE AGGRAVATING CIRCUMSTANCE THAT THE CAPITAL OFFENSE WAS COMMITTED DURING A BURGLARY** (Doc. 1, ¶¶ 180-184.)

Hunt challenges Alabama Code Section 13A-5-45(e) which provides:

> At the sentence hearing the state shall have the burden of proving beyond a reasonable doubt the existence of any aggravating circumstances.   Provided, however, any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing.

Hunt claims this provision is unconstitutional because it prevents the defendant from presenting rebuttal evidence regarding aggravating circumstances.  Hunt contends that the statute places an unconstitutional burden on the defendant's exercise of his right to remain silent at the guilt phase of the trial because the only time the defendant can present evidence to rebut the aggravating circumstances is at the guilt phase.  (Doc. 1, ¶ 181.)  He asserts that:

> [t]he defendant is either penalized at the penalty-phase for not testifying at the guilt phase, by losing all rights to rebut the aggravating factor, or he is effectively coerced into surrendering his constitutional right to remain silent at the guilt phase and testifying, even though he may have a myriad of legitimate reasons for wanting to exercise that constitutional right.  The defendant, however, may have several reasons independent of his guilt or non-guilt of that particular charge for exercising his right to remain silent at the guilt phase.  For example, Mr. Hunt faced two other capital charges in the indictment on which he may have wished to exercise his constitutional right not to testify. . . . [Additionally] there may be evidence that is admissible to rebut the aggravating factor at the penalty phase, but was not admissible at the guilt phase.  In that case, the defendant would be statutorily precluded from presenting his otherwise admissible penalty-phase evidence to rebut an aggravating factor he was not permitted to rebut at the guilt phase.

(*Id*. ¶ 181.)  Accordingly, argues Hunt, the statute violates a "long line of cases" holding that the defendant must be allowed to present all relevant mitigating evidence and must be allowed to rebut factors considered by the sentencer.  *See e.g., Skipper v. South Carolina*, 476 U.S. 1 (1986);

*Eddings*, 455 U.S. at 113; *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978); *Gardner v. Florida*, 430 U.S. 349, 362 (1977).

Hunt raised the claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 272 -76), and the court held that the claim was precluded because it could have been, but was not, raised at trial or on direct appeal.  (Vol. 22, Tab 63 at 124).  Thereafter, Hunt failed to raise the claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.).  As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

Alternatively, this claim fails on the merits.  As argued by Respondent, the Alabama statute permits the State to rely on its guilt phase evidence to prove a sentencing phase aggravator for *Ring* and *Apprendi* purposes so that the jury is not forced to sit through the same evidence - often for days - for a second time.  (*See* Ala. Code § 13A-5-45(e)).  This statutory scheme does not prevent Hunt from presenting evidence of a mitigator, as was the defendant in the cases upon which he relies.  Instead, Hunt had every opportunity to "deny or explain" the facts established during the guilt stage and present any evidence that might have lessened the weight of the aggravating circumstances.  *See, e.g., Skipper*, 476 U.S. 1 (overturning conviction where judge refused to allow two of defendant's witnesses to testify at sentencing hearing); *Eddings*,  455 U.S. 104 (overturning sentence where trial judge opined that, in order to "follow the law," he was unable to consider certain mitigating evidence adduced by the defendant); *Lockett*, 438 U.S. 586 (finding that the sentencer cannot be precluded from considering mitigating evidence); *Gardner*, 430 U.S. 349, 362 (overturning sentence where trial judge ignored life sentence recommendation from the jury and

imposed death sentence based, in part, on pre-sentence report which was not disclosed in full to defendant or his counsel, thereby foreclosing defendant's ability to "deny or explain" the information).

**K.   DUE TO PROSECUTORIAL MISCONDUCT AND IMPROPER, INADMISSABLE, AND PREJUDICIAL ARGUMENTS BY THE PROSECUTOR THROUGHOUT THE GUILT PHASE OF HIS TRIAL, MR. HUNT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL AND TO DUE PROCESS.  (Doc. 1, ¶ 185-203.)**

Hunt complains of numerous instances where he claims that the prosecutor engaged in conduct that violated his constitutional rights.  He also argues that the state court's findings on these claims was contrary to and an unreasonable application of clearly established law.

**1.      Prosecutor's Opening Statement**  (Doc. 1, ¶ 186-92.)

Hunt first challenges several comments made by the prosecutor during his opening:

**a.      Personal Opinions of the Prosecutor**  (Doc. 1, ¶¶ 189-90.)

Hunt complains that the prosecutor expressed his personal opinion during opening arguments when he said:

> The State is not here today to ask you to convict a man on flimsy evidence. It's not here today to ask you to convict a man on half-baked evidence.  But, we are here today to tell you that the evidence that we will present, we feel, will be overwhelming and at the conclusion of this trial that you will agree with the State of Alabama that the defendant is guilty of capital murder.

(Doc. 1, ¶ 189); (*See* Vol. 2, Tr. at 220).

Hunt asserts that expressions of personal opinion are a "form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued."  *United States v. Young*, 470 U.S. 1, 8 n.6 (1958) (citation to American Bar Association Guidelines omitted).  Additionally, he contends that these statements were particularly improper because this case is a murder trial and

the comments "unfairly play[ed] upon the jury's susceptibility to credit the prosecutor's viewpoint."

*See Brooks v. Kemp*, 762 F.2d 1383, 1410 (11th Cir. 1985).

Respondent argues that this claim is the only one concerning the prosecutor's comments that Hunt raised on direct appeal. (Answer, ¶ 254) )(citing Vol. 11, Tab 32 at pp. 9-10). In rejecting this claim, the Court of Criminal Appeals found, in relevant part:

> There was no objection to these comments at trial. Our review of the record convinces us that the evidence against the appellant was, in fact, overwhelming. Consequently, there was nothing improper in the prosecutor's comments.

> "The purpose of an opening statement is merely to advise a jury of the issues involved in the case before them. *Braswell v. State*, Ala. Cr. App., 371 So. 2d 992 (1979). It is a well-established rule that the scope and latitude of the opening statement are matters that rest within the sound discretion of the trial judge and his ruling should not be disturbed on appeal unless an abuse is shown. *Winnings v. State*, Ala. Cr. App., 370 So. 2d 323, *cert. denied*, Ala., 370 So.2d 329 (1979)."

> *Brown v. State*, 401 So.2d 213, 216 (Ala.Cr.App.), *cert. denied*, 401 So.2d 218 (Ala.1981).

> " 'The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on facts admissible in evidence. Counsel, however, is to be allowed considerable latitude in presenting to the jury in his opening statement what he expects the evidence to show.' *White v. State*, 294 Ala. 265, 270, 314 So. 2d 857, cert. denied, *White v. Alabama*, 423 U.S. 951, 96 S. Ct. 373, 46 L.Ed.2d 288 (1975). . . . ' "Counsel, of course, may, in a reasonable way, outline what he expects to prove, unless it is manifest that such proof would be incompetent, or the offer or statement is made for the purpose of improperly influencing the jury." ' *Daniels v. State*, 243 Ala. 675, 679, 11 So. 2d 756, *cert. denied*, *Daniels v. Alabama*, 319 U.S. 755, 63 S.Ct. 1168, 87 L.Ed [1708] (1943). ...

> *Lawson v. State*, 476 So. 2d 116, 119 (Ala. Cr. App.), *cert. quashed*, 476 So.2d 122 (Ala.1985).

> " '[T]he rule on which the weight of authority is in agreement is that
> it is improper for the prosecuting attorney so to express his personal
> opinion or belief in guilt of accused as to permit an inference by the
> jury that such opinion or belief is based on reasons or information
> outside the evidence, but that it is not improper for him to argue or
> to express his opinion that accused is guilty, where he states, or it is
> apparent, that such opinion is based solely on the evidence.' 23A
> C.J.S. *Criminal Law* § 1104, p. 194-95 (1961). *See Crenshaw v.
> State*, 153 Ala. 5, 7, 45 So. 631, 632 (1908) (prosecutor argued to the
> effect that the evidence showed a clear case); *Cranmore v. State*, 41
> Ala. App. 276, 279, 129 So. 2d 121, 123 (1961) (prosecutor's
> statement, 'I never did ask you to convict a man I believe to be
> innocent' found to be 'a mere expression of opinion by the solicitor
> that the defendant was guilty, and ... not a cause for reversal') . . .' "

*Galloway v. State*, 484 So.2d 1199, 1201 (Ala. Cr. App.1986).

> Furthermore, any question about the propriety of this comment is removed
> by the district attorney's remarks at the conclusion of his argument:

>> "What I've said is not evidence.  Listen to what evidence the State
>> puts on from the witness stand.  I feel confident that *based on the
>> evidence*, not on emotions and not on whim, but *based on cold hard
>> evidence* and Walker County common horse sense. When you
>> deliberate you will say-Yes, Mr. [District Attorney] we agree with
>> you, not because we like you or don't dislike you, but *based on the
>> evidence that comes from the witness stand* that the defendant is
>> guilty as charged in the indictment of capital murder." R. 230
>> (emphasis added).

*Hunt*, 659 So. 2d at 940-42 (emphasis in italics in the original).

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is

whether the alleged actions rendered the entire trial fundamentally unfair.  *Donnelly v.

DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Hall v. Wainwright*, 733 F.2d 766, 733 (11 Cir. 1984).

In assessing whether the fundamental fairness of the trial has been compromised, the totality of the

circumstances are to be considered in the context of the entire trial, *Hance v. Zant*, 696 F.2d 940

(11 Cir.), *cert. denied*, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there

is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial

would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11 Cir.), *cert. denied*, 485

U.S. 964 (1988).

      Hunt points to nothing which might indicate that the state court's ruling was contrary to or

an unreasonable application of federal law.  Indeed, the cases he cites actually weigh against his

argument; in *United States v. Young*, 470 U.S.1, 18, 20 (1985), the Supreme Court reversed the

lower court which had ordered a new trial for defendant. In finding that the prosecutor's comments

did not constitute plain error or seriously impact the fairness of the trial, the Supreme Court noted:

> The prosecutor's vouching for the credibility of witnesses and expressing his
> personal opinion concerning the guilt of the accused pose two dangers: such
> comments can convey the impression that evidence not presented to the jury, but
> known to the prosecutor, supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on the basis of the evidence
> presented to the jury; and the prosecutor's opinion carries with it the imprimatur of
> the Government and may induce the jury to trust the Government's judgment rather
> than its  own view of the evidence.

*Id*. at 18.  However, in analyzing these dangers, the *Young* Court examined the challenged

comments in light of the entire argument made by the prosecutor and held that the prosecutor's

comments about the defendant's guilt did not convey the impression that the prosecutor had any

undisclosed evidence because he supported his comment by reference to the evidence.  *Id*.

Additionally, the Court held that because there was overwhelming evidence of guilt, the

prosecutor's comments did not create a "lingering doubt that the prosecutor's remarks unfairly

prejudiced the jury's deliberations or exploited the Government's prestige in the eyes of the jury."

*Id*.

      Similarly, the prosecutor's comments did not leave a "lingering doubt that the prosecutor's

remarks unfairly prejudiced the jury's deliberations," *See id*,  particularly where the prosecutor

added that Hunt's guilt would become evident "based on cold hard evidence."  *See Hunt*, 659 So.

2d at 942.[27]

Hunt fails to establish that the state court's ruling in his case was contrary to or an

unreasonable application of the law or facts.

> b.   **Prosecutor's Remark That the Defense Would Make An Opening
> Statement.**  (Doc. 1, ¶ 186)

Hunt next challenges the following statement by the prosecutor:

> I have the opportunity to tell you what I expect the State of Alabama's
> evidence to show.  Every sentence that I say should be prefaced by - - - This is what
> I expect the evidence will show.  Just as the defense's statement will be the same
> way.  This is what we expect the evidence to show.

(Vol. 2, Tr. at 220.)  Without any citation to authority, Hunt contends that this statement violated

his Fifth and Fourteenth Amendment rights because the statement ensured that the defense would

be severely prejudiced if it elected not to make an opening statement.

This claim was raised in Hunt's amended Rule 32 brief, (Vol. 14, Tab 48, ¶ 123).  The Rule

32 trial court found the claim precluded because it could have been, but was not, raised at trial or

on direct appeal.  (Vol. 22, Tab 63 at 107).   Thereafter,  Hunt failed to raise the claim in his Rule

32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  As such, the claim is procedurally barred

because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to

exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute

of limitations and the prohibition against successive petitions.

---

[27]   Hunt's reliance on *Brooks v. Kemp*, 762 F.2d 1383 (11th Cir. 1985), is likewise unavailing.  Although the
*Brooks'* court found some of the prosecutor's comments troubling, it ultimately found that the defendant's
constitutional rights had not been violated.  *Id.* at 1415-16.  After examining "all the facts and circumstances,"
some of the "overwhelming" evidence, as well as mitigation of the troubling statements by later argument and
instructions from the trial judge, the Eleventh Circuit found that there was no reasonable probability that the
prosecutorial misconduct changed the outcome.  *Id.*

Alternatively, the claim does not survive constitutional scrutiny.  As Hunt cites to no legal authority, nor makes any argument in support of his claim that his constitutional rights were violated, he is entitled to no relief.  *See* Rule 2(c) of the § 2254 *Governing Rules* (requiring petitioner to "specify all grounds for relief"); *Moore v. Gibson*, 195 F.3d at 1180 n.17 (federal habeas courts are under no obligation to "consider unsupported and undeveloped issues").

        **c.**      **Prosecutor Thanked the Jury and Had the Victim's Father at the Prosecution Table During Opening Argument**.  (Doc. 1, ¶¶ 187-88.)

Hunt claims the prosecutor improperly appealed to the emotions of the jury by making the following statement:

> I know nobody relishes the thought of sitting on a jury but we thank you, the District Attorney's office thanks you and Mr. Sanders and his wife [the victim parent's] thanks you . . . .

(Vol. 2, Tr. at 220.)  Without any citation to authority, Hunt claims that because the victim's parents were seated at the prosecution table, this statement was an improper appeal to the emotions of the jury.  He further contends that the presence of the victim's family also gave the jury the impression that the prosecutor was a personal avenger for the grieving family.

This claim was rejected by the Rule 32 court because it could have been, but was not raised at trial or on direct appeal.  (Vol. 22, Tab 63 at 107, 108).  Hunt failed to exhaust this claim by omitting it from his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii).  As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions

In the alternative, Hunt is entitled to no relief on the merits. Under Alabama law, the victim's family may sit at the prosecution table throughout the proceedings. (*See* Ala. Code §

15-14-54 ("A victim of a criminal offense shall not be excluded from court or counsel table during the trial or hearing or any portion thereof conducted by any court which in any way pertains to such offense . . . ."); § 15-14-56 ("Whenever a victim is unable to attend such trial or hearing or any portion thereof by reason of death . . . the victim's family may select a representative who shall be entitled to exercise any right granted to the victim . . .")).  Hunt cites to no legal authority, nor does he make any argument in support of his argument that his constitutional rights were violated.  *See* Rule 2(c) of the § 2254 *Governing  Rules* (requiring petitioner to "specify all grounds for relief"); *Moore v. Gibson*, 195 F.3d at 1180 n.17 (federal habeas courts are under no obligation to "consider unsupported and undeveloped issues").

    d. **Allegedly fabricated evidence**.  (Doc. 1, ¶ 191.)

   According to Hunt, the prosecutor fabricated evidence of sexual abuse by coercing Hunt's fellow inmates, Jimmy Lynn Cain and James Carl Sanders, to say Hunt confessed to using a broom to commit sexual acts during the crime.

   Hunt failed to raise this claim on direct appeal (*See* Vol. 11, Tab. 32), but did  raise it in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 129).  There, the court held that it was procedurally barred under Rules 32.2(a)(3) and (a)(5).  (Vol. 22, Tab 63 at 109.)  Thereafter, Hunt failed to raise this claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii).  As such, the claim is procedurally barred because: (1) it was rejected under independent and adequate state law grounds; (2) Hunt failed to exhaust in state court; and (3) Hunt is now barred from curing these deficiencies due to the statute of limitations and the prohibition against successive petitions.

   In the alternative, the claim is without merit.  Hunt presented no evidence to support this claim at the Rule 32 hearing and he points to nothing here that might support his assertion that the

prosecution coerced Cain or Sanders to proffer testimony against Hunt. *See* Rule 2(c) of the § 2254 *Governing Rules* (requiring petitioner to "specify all grounds for relief"); *Moore v. Gibson*, 195 F.3d at 1180 n.17 (federal habeas courts are under no obligation to "consider unsupported and undeveloped issues").

### 2. Prosecutor's Guilt-Phase Closing Argument (Doc. 1, ¶¶ 193-203.)

Hunt claims several statements the prosecutor made during his guilt-phase closing argument violated his right against self incrimination, as well as his rights to a trial by jury, fair trial, confrontation, due process, and reliability in sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Hunt contends that the state court's denial of this claim was contrary to and an unreasonable application of the law or facts.

> a.. • **Thanking the jury on behalf of the prosecutor and the victim's family.** (Doc. 1, ¶ 193.)
>
> • **Hunt painted an X-rated picture for the victim's family.** (Doc. 1, ¶ 194.)

Hunt first complains about the following statements by the prosecutor:

> I thank you on behalf of myself, Mr. Charles Baker, the district attorney here in Walker County, and I want to thank you for Mr. and Mrs. Sanders. Mrs. Sanders will not be with us today.

(Doc. 1, ¶ 193; Vol. 4, Tr. at 787.) Hunt claims this statement was an improper attempt to influence juror sympathy by giving the appearance that the prosecutor was the lawyer for the victim's parents and not an arm of the state. Additionally, Hunt claims this statement implied that the jurors had an obligation to the victim's family.

Next, Hunt complains about the following statements:

> The picture that [Hunt] painted to this [victim's father] will always be there.
> . . . .

[Hunt] painted an "X" rated, triple "X" rated picture for [the victim's father] to remember the rest of his life.

(Doc. 1, ¶ 194; Vol. 4, Tr. at 788; Vol. 5 at 805.)

According to Hunt, these statements were outrageous appeals to jury sympathy and ensured that the jury would base its verdict on passion and prejudice.

The Rule 32 court found these claims precluded because they could have been, but were not, raised at trial or on direct appeal.  (Vol. 22, Tab 63 at 111).  Hunt did not raise these claims in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii). As such, these claims are procedurally barred because (1) the state court's decision is based on independent and adequate state law grounds, (2) Hunt failed to exhaust, and (3) a return to state court would be futile.

Alternatively, the claims do not warrant relief.  Hunt does not direct the Court to any legal authority to indicate that his constitutional rights were violated.  Additionally, given the evidence regarding the state of the victim's body when discovered, as well as the broom stick, with mucus, found between her legs, the state's argument was consistent with its theory that the murder had a sexual component.

b.     **"Devil" Comment.** (Doc. 1, ¶ 195.)

Hunt next challenges purportedly inflammatory comments made by the prosecutor during closing arguments when he referred to Hunt as the "devil."  On direct appeal, the Court Criminal Appeals rejected this claim:

In his closing argument to the jury defense counsel Taylor stated: "How much credence can you pay to a jail inmate?  [Referring to the testimony by James Carl Sanders about Hunt's confession] Is it logical to you that Greg Hunt, on the day before he goes to trial for his life would go up there in that jail and tell some inmate that he had done this horrible thing?  Is that logical?" R. 820.  In his closing argument, defense counsel Wilkinson stated: "I submit to you that he [Sanders] was

expecting some [help] and it's too obvious and when he says he doesn't[,] I think he's lying and when he lies, he lies under oath and perjures himself. . . ." R. 833.

In his closing argument to the jury at the guilt phase of the trial, the district attorney explained to the jury why the State used [inmate] Sanders as a prosecution witness:. . . .

"But, I can tell you this, ladies and gentlemen of the jury, when you are trying the devil, sometimes your witnesses have to come from hell." R. 849.

The trial judge overruled defense counsel's objection that this comment was "inflammatory and improper argument." R. 849.

We find no impropriety in the prosecutor's comment that "when you are trying the devil, sometimes your witnesses have to come from hell."  "In a proper case, the prosecuting attorney may characterize the accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence of the case." *Nicks v. State*, 521 So. 2d 1018, 1023 (Ala. Cr. App.1987), *affirmed*, 521 So.2d 1035 (Ala.), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). *See also Barbee v. State*, 395 So. 2d 1128, 1134-35 (Ala. Cr. App.1981).  In this case, the prosecutor's characterization of the appellant as a "devil" was completely justified by the evidence of the manner in which the appellant murdered Ms. Lane.

*Hunt*, 659 So. 2d at 945-46 (emphasis added).

Hunt has failed to cite any Supreme Court law explaining how the merits decision on direct appeal was contrary to or an unreasonable application of the law.  *See* Rule 2(c) of the § 2254 *Governing Rules* (requiring petitioner to "specify all grounds for relief"); *Moore v. Gibson*, 195 F.3d at 1180 n.17 (federal habeas courts are under no obligation to "consider unsupported and undeveloped issues").  Moreover, review of the underlying state court trial record amply supports the conclusion that there was no reasonable probability that, absent the allegedly improper remarks, the outcome of the trial would have been different.

c.      **"Pharaoh" Comment.** (Doc. 1, ¶ 195.)

Hunt next challenges the prosecutor's "inflammatory" religious reference:

> He had a bloody left hand and he stuck it in that pocket to get the blood off
> his hands, like Pharaoh tried to wash his hands.  He tried to get his blood off by
> putting it in his pocket . . . .

(Doc. 1, ¶ 195; Vol. 5, Tr. 848.)

Respondent argues that the Court of Criminal Appeals addressed the Pharaoh comment and

found no plain error on direct appeal.  (*See* Answer ¶¶ 259, 265) (citing *Hunt*, 659 So. 2d at 940-47,

946.)  However, review of the state court appellate opinion does not bear that conclusion.[28]  The

Rule 32 trial court addressed the "Pharaoh" comment and found that it was barred because it could

have been but was not raised at trial and because it had been raised on appeal.  Rules 32.2(a)(3) and

(a)(4), ARcrP.  (Vol. 22, Tab. 63 at 114.)   Hunt then failed to raise this claim in his Rule 32

appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.).

Respondent argues that this claim is procedurally barred from federal review because of both

lack of exhaustion and because it was denied based upon an adequate and independent state

procedural bar.  Without regard to the procedural posture of the claim, this  Court finds that the

claim is without merit.  Here, the "Pharaoh" comment was made while the prosecutor was drawing

a connection between Hunt's bloody hand print, found at the scene, and an unidentified pair of

bloody pants, the same size as Hunt wore, which were also found at the scene:

> Folks, we just found out whose pants they are.  I want you to remember the
> testimony that came from the witness stand that he left that bloody palm print up
> there and I want you to look at [defense counsel's] challenge that has been
> answered, the 29, 30 [inch waist] pants that [Hunt's] own momma said he could
> wear.  They have blood in the left hand pocket and how can you explain blood being

---

[28]/   The Court does not agree that the Court of Criminal Appeals directly addressed this argument.  While the
Appeals Court quotes the "Pharaoh" comment in Section "VIII" of the opinion, that section relates to the
prosecutor's alleged comment about Hunt's failure to testify; thus the Court did not actually analyze the
"Pharaoh" comment.  *See Hunt*, 659 So. 2d at 943-44.  Later, the Court does address the "Devil" comment, but
does not mention the "Pharaoh" comment.  *See Hunt*, 659 So. 2d at 946.

> in the only pair of men's pants that was found in there, that is the same size that
> [Hunt] wears, unless he put his hand in his pocket?
>
> So, who [do] the clothes belong to?  [Defense counsel] said, 'If you find out
> who those pants belong to, you've got the man.'  All the other evidence put aside,
> we've got our man. And, that's the man. . . . .

(Vol. 5, Tr. 847.)  The "Pharaoh" comment is similar to the "Devil" comment where the Court of

Criminal Appeals held that a prosecuting attorney may characterize the accused or his conduct in

language which, although it consists of invective or opprobrious terms, accords with the evidence

of the case.  *Hunt*, 659 So. 2d at 946 (citing *Nicks v. State*, 521 So. 2d 1018, 1023 (Ala. Cr.

App.1987), affirmed, 521 So.2d 1035 (Ala.)).  Thus, like the "Devil" comment, the "Pharaoh"

comment "accords with the evidence of the case."  *See Hunt*, 650 So. 2d at 946.  Moreover, Hunt

points to no legal authority for his claim that the "Pharaoh" comment violated his constitutional

rights, and given the strength of the evidence against him, cannot show that absent the comment,

the result of the trial would have been different.

> ### d.      Hunt "made" the jury look at a triple X scene.  (Doc. 1, ¶ 195.)

Hunt complains that the prosecutor improperly implied that by exercising his right to a trial,

Hunt forced the jury to view photographs and evidence from the scene.  Hunt also contends the

prosecutor's statement indicated Hunt had personally insulted and offended the jurors themselves:

> This case is about two things; about murder and sex.  That is the two things
> that this case is about.
>
> We see this on TV screens every night and read about it in the paper and we
> are forced to look at it.  Ladies and gentlemen, you all are having to see it at the
> most basic roots in this case; murder and sex.
>
> Greg Hunt made us all look at this triple X rated scene at this house.  He
> made us do this.  He made each and every one of you all do that.

(Doc. 1, ¶ 195; Vol. 4, Tr. 788) (emphasis added).

Respondent asserts that this claim was raised in Hunt's amended Rule 32 petition and was precluded by the Rule 32 trial court. (Answer ¶¶ 258-59, 267-68) (citing Vol. 22, Tab 63 at 111-15.) However, there is nothing in the Rule 32 trial court's opinion regarding this comment. (*See id*.) Indeed, this is because Hunt failed to raise the claim at trial, (Vol. 4, Tr. 788), on direct appeal, (*See* Vol. 11, Tab. 32), in his Rule 32 brief, (*See* Vol. 14, Tab. 48 ¶¶ 132-46), or in his Rule 32 appellate brief. (*See* Vol. 19, Tab 54 at p. iii - vii.)

Consequently, the claim is unexhausted. It is therefore precluded from federal habeas review. *See Snowden*, 135 F.3d at 735.

In addition to finding the claim unexhausted, the Court finds that the claim likewise entitles Hunt to no relief. As with the earlier  references to the "x-rated" scene, this comment was consistent with the prosecution's theory of the case, particularly in light of the evidence regarding the state of the victim's body when discovered and the broom stick evidence. Moreover, even if the comment was inappropriate, it did not rise to a level that deprived the petitioner of a fair trial.

      **e.**      **Alleged Plea Bargaining Comment**.  (Doc. 1, ¶ 196.)

Hunt complains that the prosecutor made an improper comment about plea bargaining:

> Now, there is another charge called simple murder, which is a much, much lower charge. It is a reduced charge or lesser charge, that of what we call intentional murder or simple murder.
>
> [Defense counsel's] whole argument centered around why this is intentional murder and the reason is because that is a lesser charge.  <u>It is a reduced charge, sort of like a DA plea bargaining a case to a reduced charge</u>.

(Doc. 1, ¶ 196; Vol. 5, Tr. 788)(emphasis added).   According to Hunt, this comment injected

thoughts about punishment into the guilt phase and also violated his right to have a jury consider

lesser included offenses.  *See Beck v. Alabama*, 447 U.S. 625 (1980).[29]

On direct appeal, the Court of Criminal Appeals rejected this argument:

The appellant complains that the district attorney made an improper comment regarding "plea bargaining" in his guilt-phase closing argument to the jury:

"Now, there is another charge called simple murder, which is a much, much lower charge. It is a reduced charge or a lesser charge, that of what we call intentional murder or simple murder.

"Mr. Wilkinson's [defense counsel] whole argument centered around why this is intentional murder and the reason is because that is a lesser charge. It is a reduced charge, sort of like a [district attorney] plea bargaining a case to reduce a charge." R. 854.

There was no objection to this comment at trial and the appellant cites no authority to support his objection raised now on appeal. Compare *Jackson v. State*, [Ms. CR-91-820, September 30, 1993] --- So.2d ---- (Ala. Cr. App.1993).  We agree with the attorney general that the district attorney's comment was "merely an innocuous analogy that the prosecutor chose to use to help the jury understand the nature of some of Appellant Hunt's own evidence and arguments, evidence and arguments to the effect that there was no aggravating circumstance present in Appellant's case so as to convert to capital murder what would otherwise be merely an intentional murder." Appellee's brief at 9.

*Hunt*, 659 So. 2d at 940.

Hunt did not raise this claim in his petition for writ of certiorari.  It is therefore unexhausted.

*O'Sullivan v. Boerckel*, 526 U.S. 838.

Alternatively, Hunt has not established that the state court's denial of the claim was contrary

to or an unreasonable application of clearly established federal law.  Hunt's reliance on *Beck v.*

---

[29]/     In *Beck,* the Court held that a defendant cannot be guilty of a capital offense unless he had an intent to kill, and that intent to kill cannot be supplied by the felony murder doctrine.

*Alabama* to suggest as much is misplaced.  In *Beck*, the Alabama statute actually prevented the jury

from considering lesser-included offenses.   447 U.S. at 630.   No such statutory restrictions were

present, nor did the trial court impose such restrictions. Rather, the prosecutor simply argued that

the evidence fully supported the charged offense of capital murder and not some lesser offense.

Hunt has failed to establish how the state court's finding is contrary to or an unreasonable

application of the law or facts.

> f.      **The Prosecutor Expressed His Personal Opinion With Comments
> About Hunt's Guilt Being "overwhelming" and "if this isn't capital
> murder".  (Doc. 1, ¶ 197.)**

Hunt next complains about the following comments by the prosecutor:

> It's overwhelming.  The man's guilt is overwhelming.

> Ladies and gentlemen, you are going to be asked by myself and by Mr. Baker
> to return a verdict of guilty of capital murder, capital murder.

> You're going to hear words such as "reasonable doubt."  Ladies and
> gentlemen, this case is beyond reasonable doubt.  It is well beyond that.  It's
> overwhelming as to guilt.

> If you believe that during the course of the murder, that he committed these
> sexual acts with this girl, then he is guilty of capital murder.  He is guilty of it.

> Ladies and gentleman, I close by saying if this isn't capital murder, then
> there has never been capital murder in Walker County.

(Doc. 1, ¶ 197; Vol. 5, Tr. 805) (emphasis added).  According to Hunt, these statements were

improper because the prosecutor expressed his personal opinion and impermissibly compared

Hunt's case to other cases in Walker County.  Hunt argues that this statement urged the jurors to

determine whether Hunt was guilty of capital murder by reference to other crimes in Walker

County, rather than by solely looking at the evidence presented at trial.  Hunt also complains that

this argument impermissibly injected into the guilt-phase deliberations notions of punishment.

The Court of Criminal Appeals rejected this argument on direct appeal:

> There was no objection to these comments.  Without any citation to authority, the appellant now claims that these comments "exceeded the guidelines for proper argument."  Appellant's brief at 11.  We reject this argument for the reasons stated in Part IV of this opinion.

*Hunt*, 659 So. 2d at 942.

Hunt did not raise this claim in his petition for writ of certiorari in the Alabama Supreme

Court, and therefore failed to exhaust it. As it is to late to remedy this error, the claim is

procedurally barred from federal habeas corpus review.

Moreover, Hunt is entitled to no relief on the merits.  First, he has failed to cite any Supreme

Court law explaining how the merits decision on direct appeal was contrary to or an unreasonable

application of the law.  While the comments certainly appear to be at least borderline improper,

Hunt did not in state court, or here in his federal habeas petition, cite to relevant case law in support

of his assertion.  Second,  considering the comments  in the context of the entire trial, it cannot be

said that  the fundamental fairness of the trial was compromised by the prosecutor's comments.

g. **The "everybody else has to be lying" comment.  (Doc. 1, ¶ 198.)**

Hunt also complains that the prosecutor improperly vouched for the truthfulness of the

state's witnesses:

> <u>Everybody else has to be lying if you believe that Greg Hunt is not the guilty man</u>. He started the evening making threats.  He went down to Clint's and Tina's trying to find Karen [the victim].  She didn't get out [of the car] down there.  She went back home.  He hunted her all over that night.  He burned the house.  Mr. Sanders heard the van go by.

(Doc. 1, ¶ 198; Vol. 5, Tr. 849) (emphasis added).  According to Hunt, this comment shifted to him the burden of proving that the prosecution witnesses were lying.

On direct appeal, the Court of Criminal Appeals rejected this argument:

> There was no objection to this comment at trial.  Moreover, we find no impropriety in this comment.

>> "A distinction must be made between an argument by the prosecutor personally vouching for a witness, thereby bolstering the credibility of the witness, and an argument concerning the credibility of a witness based upon the testimony presented at trial. '[P]rosecutors must avoid making personal guarantees as to the credibility of the state's witnesses.' *Ex parte Parker,* [610 So.2d 1181, 1187] (Ala.1992).  *See Ex parte Waldrop,* 459 So.2d 959, 961 (Ala.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

>>> " ' "Attempts to bolster a witness by vouching for his credibility are normally improper and error." ... The test for improper vouching is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility.... This test may be satisfied in two ways. First, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity.... Secondly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony.' "

>> "*United States v. Sims,* 719 F.2d 375, 377 (11th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).

>> ".... 'The credibility of a witness is a legitimate subject of criticism and discussion.' *Flint v. State,* 370 So.2d 332, 335 (Ala. Cr. App.1979).  Here, as in *Smith v. State,* 344 So.2d 1239, 1242 (Ala. Cr. App.), *cert. denied,* 344 So.2d 1243 (Ala.1977), '[t]he prosecutor's remarks were grounded on some testimony given by the witness himself.' *See also Watson v. State,* 398 So.2d 320, 328 (Ala. Cr. App.1980), *cert. denied,* 398 So.2d 332 (Ala.), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981) (reference in closing argument to defendant as a 'bald face liar' was 'a hard blow but it was not foul')."

*DeBruce v. State,* 651 So.2d 599 (Ala. Cr. App.1993).

*Hunt*, 659 So. 2d at 942-43.

This claim was not raised in Hunt's petition for writ of certiorari to the Alabama Supreme Court. Accordingly, because it is thus unexhausted, and a return to state court would be futile, the claim is procedurally barred. In the alternative, Hunt fails to cite any Supreme Court law explaining how the merits decision on direct appeal was contrary to or an unreasonable application of the law.

> h.   •   **Comment about the presence of Mr. Sanders and his nephew at the apartment.**  (Doc. 1, ¶ 198.)
>
>    •   **Comment about looking at the evidence.**  (Doc. 1, ¶ 198.)

Hunt complains about several other statements by the prosecutor that purportedly allowed the prosecutor to vouch for the truthfulness of the state's witnesses:

> Then they made a big thing about Mr. Vaughan [finger print expert]. Mr. Vaughan found a left hand palm print. They made a big thing about that. They started saying, "What about all these other prints?" Ladies and gentlemen one on the wrong door. One on the back door. One on the kitchen sink.
>
> How many of us have people over who knock on the front door? How many people have the mailman over who puts mail in your box? How many people were in and out of that apartment before the police got there?
>
> <u>I know Mr. Sanders was.  You know that his nephew was</u>.  We know the police came there on several different occasions. . . .   You heard Mr. Vaughan said prints last and you can't tell how long they will last.. . .
>
> Ladies and gentleman, these prints were all found in places where - - - Lot of people visit your house and lot of people put their hands on things going in and out. These are common areas of the house. But, the only print in blood is Greg Hunt's. The only print in blood.

(Doc. 1, ¶ 198; Vol. 5, Tr. 803-04) (emphasis added).

Hunt also complains about the following statement that, according to Hunt, rendered the district attorneys and the victim's father as unsworn witnesses in violation of Hunt's Sixth and Fourteenth Amendment rights to confront and cross-examine witnesses:

> I am going to ask each and every one of you to look at the evidence and look at each fact and weigh it, like you swore to do.  <u>When you look at it you are going to tell the same thing Mr. Baker [District Attorney] and myself and Mr. Sanders [victim's father] have been able to tell.</u>  This man went over there with sex on his mind and he killed that girl.

(Doc. 1, ¶ 198; Vol. 5, Tr. 805-06) (emphasis added).

Although these claims were raised on appeal, Hunt failed to raise them in his petition for writ of certiorari. As such, they are unexhausted and procedurally barred.

In the alternative, it is worth noting that the state court correctly determined the claims were without merit.  There was nothing in the record to dispute that the victim's father and his nephew visited the crime scene and, therefore, could have accounted for many other sets of fingerprints found at the scene.  As noted above, the Court of Appeals, when addressing an allegation by Hunt that the prosecutor vouched for a witness, held:

> "[a] distinction must be made between an argument by the prosecutor personally vouching for a witness, thereby bolstering the credibility of the witness, and an argument concerning the credibility of a witness based upon the testimony presented at trial." *Hunt*, 659 So. 2d at 942 (citation omitted).  "'The credibility of a witness is a legitimate subject of criticism and discussion.'"  *Id*. at 943 (citation omitted.)  Again, Hunt fails to direct this Court to any legal authority which might support a finding that his constitutional rights were violated.'"

*Hunt*, 659 So. 2d at 942-43 (citation omitted).

i.     **Comment about the prosecutor believing in the case**.  (Doc. 1, ¶ 199.)

Hunt challenges the following statement because it allegedly allowed the prosecutor to inject his personal beliefs and the prestige of his office in the case:

> Now, if anything I say or the way I say it offends you, I apologize for it. Please don't hold it against the case.  As Mr. Taylor said, when you believe in something, when you get involved in it, it is hard not to get emotional about it, <u>when you believe in it with all your heart</u>. . . .

> There is one thing that stuck out with me, and I'm fixing to hush, about this trial, and I hope my emotions have not offended you, but it was <u>sincere and heart felt</u>.

(Doc. 1, ¶ 199; Vol. 5, Tr. 843, 865) (emphasis added).

Hunt raised this claim in his Rule 32 amended brief, (Vol. 14, Tab 48 ¶ 143), but the court found it to be precluded from review because it could have been, but was not raised at trial and on appeal.  (Vol. 22, Tab 63 at 115.)  Hunt failed to raise this claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)   Therefore, the claim is precluded because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

In the alternative, the claim is without merit.  In light of the overwhelming evidence against Hunt, he cannot rely on isolated comments by the prosecution during its long closing argument to establish a constitutional violation.

j.     **Prosecutor's suggestion that state's witness Kilpatrick was untruthful**. (Doc. 1, ¶ 200.)

Hunt next complains that the prosecutor improperly suggested that his own witness was not testifying truthfully, without any basis in evidence for that assertion.  (Doc. 1, ¶ 200.)  Hunt contends that in the opening statement the prosecutor told the jury one of the prosecution witnesses,

Ms. Kilpatrick, would testify that Hunt drew several alleged sexually oriented pictures of females

on a note pad.[30]  However, Ms. Kilpatrick actually testified that her husband had drawn the pictures.

"Despite this testimony by his own witness and the lack of any testimony to the contrary, the

prosecution argued in closing that the drawings were Mr. Hunt's . . . ."  (Doc. 1, ¶ 200.)

On direct appeal, the Alabama Court of Criminal Appeals rejected this argument:

The appellant argues that reversible error was committed when the prosecutor was permitted to suggest that a witness was not testifying truthfully.

Sometime prior to and relatively close to the time that the victim was murdered, the appellant used the telephone at the residence of Mrs. Jean Kilpatrick to make a telephone call. Mrs. Kilpatrick testified that while the appellant was talking on her telephone, she observed him writing on a pad of paper that was next to the telephone.  She gave a sheet of that pad to the prosecutor.  That sheet contained "some sketches of silhouettes of ladies and girls" and a telephone number. R. 563.  A question was raised at trial as to whether the sketches had been done by the appellant or by Mrs. Kilpatrick's husband, who had died two months before the appellant's trial.

During the prosecutor's direct examination of Mrs. Kilpatrick, the following occurred:

"Q.     Okay. Now, there is some sketches of silhouettes of ladies and girls.  I believe your husband liked to doodle and made those himself, you said . . .

"A.     Yes.

"Q.      ... and you don't attribute those to the defendant?

"A.     No."

R. 563.

During his closing argument in the guilt phase of the trial, the district attorney stated:

"You heard from Mrs. Kilpatrick when she said Greg was writing on this.  And, he was making some phone calls. You will have a stipulation in there that [the telephone number written on the

---

30/     Hunt does not cite to the portion of the record where this statement was made.  (Doc. 1, ¶ 200.)

Page 105 of  248

sheet of paper] is the [telephone] number of patient information. And, Mrs. Kilpatrick does live in Cullman."

"I submit to you, also, that she did say that these doodles on this thing were her husband's. Ladies and gentlemen, you saw that lady. She was an elderly lady. Do you believe any man the age that would be married to her and now deceased, would draw pictures such as this? You look at it. All the ink is all the same. No different color ink on here. The [telephone] number to the Walker Regional Medical Center and you have this picture." R. 798-99.

" 'The credibility of a witness is a legitimate subject of criticism and discussion.' ... Here, ... '[t]he prosecutor's remarks were grounded on some testimony given by the witness himself.' " *DeBruce*, 651 So.2d at 611. The prosecutor's opinion was based on the evidence presented at trial and the logical inferences to be drawn therefrom.

*Hunt*, 659 So. 2d at 943.

This claim was not raised in Hunt's petition for writ of certiorari to the Alabama Supreme Court, and is thus unexhausted. In the alternative, Hunt fails to cite any Supreme Court law explaining how the merits decision on direct appeal was contrary to or an unreasonable application of the law.[31]

  k.   **Prosecutor's alleged comment about Hunt's failure to testify.** (Doc. 1, ¶ 201-22.)

Hunt also challenges comments by the prosecutor that allegedly commented on his failure to testify. (Doc. 1, ¶ 201.) According to Hunt, the challenged comments violated his right against self-incrimination. (Doc. 1 ¶ 202) (citing *Estelle v. Smith*, 451 U.S. 454, 463 (1981)). Hunt argues that once a defendant elects to forego testifying, the prosecution is strictly forbidden form commenting on the defendant's silence. (Doc. 1, ¶ 202) (citing *Griffin v. California*, 380 U.S. 609,

---

[31]/   The Court notes that the sketches consist of: (1) silhouettes of female heads; (2) frontal drawings of what appear to be female faces; and (3) one full body drawing of what may be a female. (Vol. 6 at 1113.) None of the drawings are of a sexual nature. (*See id*.)

615 (1965); *Ex parte Wilson*, 571 So. 2d 1251 (Ala. 1990); *Wherrey v. State*, 402 So. 2d 1130, 1133

(Ala. Cr. App. 1981); Ala. Code § 12-21-220 (1975)).[32]

This argument was rejected by the Alabama Court of Criminal Appeals on direct appeal:

The appellant contends that the prosecutor improperly commented on the fact that he did not testify.

In the rebuttal portion of his closing argument to the jury during the guilt phase of the trial, the district attorney stated:

"So, we all know, and the evidence that has been presented is uncontroverted that this is the left bloody palm print of Greg Hunt. Well, nobody in the courtroom that don't believe that he had a bloody hand [sic]. Ain't nobody in that courtroom that don't believe [sic] that he touched that stair because the defense even admitted that in their opening statement."

"... [After describing the pockets of the bloodied pants found at the scene, the prosecutor continued:] So, I said, 'Is there anything on the right hand side of those pockets that this jury might be interested in knowing, that nobody has told them about?' This is in evidence, so I said, 'Well, is there anything on the inside?'"

"What about Greg Hunt's left hand? I know if these are his pants and if he has a bloody left hand, that left pocket might be significant. [Defense counsel] made the challenge. He made the challenge." R. 846-47.

Not recited by the appellant in his brief on appeal are the comments of the prosecutor which follow those quoted above:

---

[32]/     Section 12-21-220 of the Alabama Code provides:

On the trial of all indictments, complaints or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness, and his failure to make such a request shall not create any presumption against him nor be the subject of comment by counsel. If the district attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within 30 days from entry of the judgment.

"I want you to remember the testimony that came from the witness stand that he left that bloody palm print up there and I want you to look at Mr. Taylor's challenge that has been answered, the 29, 30 [inch waist] pants that his own momma said he could wear. They have blood in the left hand pocket and how can you explain blood being in the only pair of men's pants that was found in there, that is the same size that this man wears, unless he put his hand in his pocket?

"So, who [do] the clothes belong to?  Mr. Taylor said, 'If you find out who those pants belong to, you've got the man.'  All the other evidence put aside, we've got our man.  And, that's the man....

".... He had a bloody left hand and he stuck it in that pocket to get the blood off his hands, like Pharaoh tried to wash his hands. He tried to get his blood off by putting it in his pocket and he left it in the pants the same size that he wears and he had these socks on.

"That's why we didn't find any shoe prints or footprints down there."  R. 847-48.

The prosecutor's statements were reasonable inferences from the evidence and were in direct response [Footnote 2] [33] to defense counsel's closing argument, in which defense counsel stated:

"Now let's get back to the fingerprint. Fingerprint on the window.  Fingerprint on the steps.  Blood on it.  Yes, Greg Hunt was there on that occasion.  He found the body.  There was blood everywhere; living room, kitchen, upstairs.  Certainly he could have gotten blood on his hand there looking at the body, whatever, he did.

"... But, the question is this: How about those other eight or nine fingerprints that were matched against Greg Hunt that were not his? ...

"If Greg Hunt was there, which he admits, at 2:44, somebody else was in that house, too."

---

[33] Footnote 2 reads:

The district attorney specifically identified the defense argument to which he is responding: "I want to answer a challenge first of all.... I want to answer a challenge that Mr. Taylor ... made.... Mr. Taylor said, 'Mr. DA, why don't he tell you whose those pants are?'" R. 843.

"....

"And, the greatest evidence in this case with regard to the innocence of Greg Hunt, the clothing. Why did not the State of Alabama in presenting their case show you the broom, show you the stool but did not want to show you those other bloody items?

"....

"Ladies and gentlemen of the jury, whoever killed Karen Lane on that brutal night was wearing those clothes. That's the only way you can explain the presence of the blood....

"You can not tell me under God's sun, that the State of Alabama made no attempt to find out who that clothing belonged to. Yeah, they found out. You know what it showed. It wasn't Greg Hunt.

"They already had enough problems with the fingerprints. They already had enough problems with the hair. Now, they have to admit that the clothes don't belong to him. No case.

"....

"I can assure you if it belonged to Greg Hunt, they would have told you. They have ways of finding that out. Fiber tested, clothing tested. Don't you know they asked Tina Gilliland who owned that apartment, 'Who are these men's clothes?' Don't you know they made every effort to try to connect those clothes to Greg Hunt? They couldn't do it.

"....

"   I challenge Mr. Baker right here on the spot, when he gets up here to tell you why he made no attempt to find out who that other bloody clothing belonging to a male belonged to. 'Oh, the men's pants belonged to a boy.' That is what Mr. Vaughan told him.

"....

"They checked that out. They checked it out thoroughly. They knew if they could pin those bloody clothes on this young man that would seal their case. But, they couldn't.

"That's why he didn't tell you anything when they presented their case.  That's why they say now, 'We didn't really try to find out who they belonged to.'  Sure they did.  If they belonged to Greg Hunt they would have told you." R. 813, 815-18.

No statement made by the district attorney constituted a comment on the appellant's failure to testify.

"'During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' *Rutledge v. State*, 523 So.2d 1087, 1100 (Ala. Cr. App.1987), *rev'd on other grounds*, 523 So.2d 1118 (Ala.1988) (citation omitted). Wide discretion is allowed the trial court in regulating the arguments of counsel. *Racine v. State,* 290 Ala. 225, 275 So.2d 655 (1973). 'In evaluating allegedly prejudicial remarks by the prosecutor in closing argument, ... each case must be judged on its own merits,' *Hooks v. State,* 534 So.2d 329, 354 (Ala. Cr. App.1987), *aff'd*, 534 So. 2d 371 (Ala.1989), *cert. denied*, 488 U.S. 1050 [109 S.Ct. 883, 102 L.Ed.2d 1005] (1989) (citations omitted) (quoting *Barnett v. State,* 52 Ala.App. 260, 264, 291 So. 2d 353, 357 (1974)), and the remarks must be evaluated in the context of the whole trial, *Duren v. State,* 590 So.2d 360 (Ala. Cr. App.1990), *aff'd*, 590 So.2d 369 (Ala.1991)."

*Coral v. State,* 628 So.2d 954 (Ala. Cr. App.1992), *affirmed,* 628 So.2d 1004 (Ala.1993). "A prosecutor has a right based on fundamental fairness to reply in kind to the argument of defense counsel. *See Ex parte Rutledge,* 482 So.2d 1262, 1264 (Ala.1984)." *DeBruce v. State,* 651 So. 2d 599, 609 (Ala. Cr. App.1993).

*Hunt*, 659 So. 2d at 943-45.

This claim is unexhausted because, although Hunt raised it on appeal, he did not include it in his petition for writ of certiorari before the Alabama Supreme Court. In addition to being unexhausted and procedurally barred, Hunt fails to establish that the state appellate court's merits decision was contrary to or an unreasonable application of federal law.

The Supreme Court has held that direct comments by the prosecution on a defendant's silence violate the Fifth Amendment. *Griffin v. California*, 380 U.S. 609 (1965). When determining whether an impermissible comment on a defendant's right to remain silent has

occurred, federal courts must consider the totality of the circumstances and evaluate whether the remark is "manifestly intended" by the prosecutor or "was of such a character" that it "would naturally and necessarily be understood by the jury" as a comment on the defendant's silence. *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987).

In *Isaacs v. Head*, 300 F.3d 1232, 1270 (11th Cir. 2002) (citations omitted), the Eleventh Circuit described the proper manner in which to evaluate a *Griffin* claim:

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify. A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so. The defendant bears the burden of establishing the existence of one of the two criteria. The comment must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement. . . .
>
> In applying *Griffin*, we have strictly enforced the requirement that a defendant show that the allegedly offensive comment was either manifestly intended to be a comment on the defendant's silence or that the comment naturally and necessarily related to the defendant's silence.

In defending the state court's denial of this claim on the merits, Respondent points out that in *Griffin* the prosecutor directly commented on defendant's failure to testify:

> These things he has not seen fit to take the stand and deny or explain. And in the whole world, if anybody would know, this defendant would know. Essie Mae is dead, she can't tell her side of the story. The defendant won't.

380 U.S. at 611.

Respondent further points out that the trial court in *Griffin* instructed the jury that it could consider defendant's failure to testify as evidence inferring guilt:

> As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable.

*Id.* at 610.

Respondent correctly argues that the state court found neither of these constitutional violations occurred.  (Answer ¶ 266) (citing *Hunt*, 659 So. 2d 943-44).

Hunt failed to even address the *Griffin* standard or explain how the state court's ruling was contrary to or an unreasonable application of the law.  Thus, he is entitled to no relief.[34]

## L.    PROSECUTORIAL MISCONDUCT IN MR. HUNT'S PENALTY PHASE RESULTED IN A DENIAL OF MR. HUNT'S RIGHTS TO A FAIR TRIAL AND RELIABLE SENTENCE DETERMINATION. (Doc. 204-16.)

Hunt asserts that the prosecutor engaged in numerous acts of misconduct, individual and cumulative, during the penalty phase of his trial, thereby resulting in a denial of his Fifth, Sixth, Eighth and Fourteenth Amendment rights.

Hunt raised all of these claims in his amended Rule 32 brief.  (Vol. 14, Tab 48 ¶¶ 279, 280, 281-83, 284-86, 287-89.)  The state court found all of the claims were precluded under Rules 32.2(a)(3) and (a)(5) because they could have been but were not raised at trial or on appeal. (Vol.

---

[34]    Moreover, the other cases cited by Hunt are unavailing: *Estelle v. Smith*, 451 U.S. 454, 463 (1981) (finding violation of right against self-incrimination where a doctor obtained by the state examined defendant's mental capacity and testified about his future dangerousness at the sentencing hearing, without a *Miranda* warning prior to the examination); *Ex parte Wilson*, 571 So. 2d 1251, 1258 (Ala. 1990) (rejecting constitutional claim where defendant was examined by state's mental expert because defendant was read his *Miranda* rights prior to the examination.  *Wherry v. State*, 402 So. 2d 1130, 1133 (Ala. Crim. App. 1981) (where prosecutor commented about the evidence and stated, *inter alia*, that '[t]hey bring this defendant here and here she sits, quietly, calmly, never says move her head or nothing, with her head down. . . . And what is that supposed to show, that . . . she can't talk").  Accordingly, Hunt is not entitled to habeas relief on his *Griffin* claim.

22, Tab 63 at 124.)  Hunt did not raise the claims in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.).  Accordingly, the claims are barred because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

Alternatively, as will be discussed below, each of these claims is without merit.

**1.      State failed to show by a preponderance of the evidence that the mitigating factors did not exist.**  (Doc. 1, ¶ 205.)

Hunt argues that the prosecutor failed to meet its burden under Alabama Code Section 13A-5-45(g) of establishing by a preponderance of the evidence that mitigating factors did not exist in his case.  Hunt presented evidence of three mitigators: great emotional turmoil, influence of drugs/ alcohol, and his relatively young age.   Because the prosecutor failed to present evidence in rebuttal, and indeed commented that he did not hear all the defense arguments, Hunt contends the state failed to establish by a preponderance that the mitigating circumstances did not exist.

Hunt's argument is flawed.  The existence of mitigating factors alone, did not entitled Hunt to a sentence of life without parole: only if the mitigators outweighed the aggravators.  Here, the prosecutor recounted in detail the extensive guilt phase evidence supporting aggravating circumstances, including: (1) the nature and extent of the victim's injuries; (2) evidence regarding the amount of blood, how it was located throughout the two level apartment and how it tended to show the extent of Lane's suffering; (3) evidence regarding the victim's torn blooded bra and blood soaked panties; and (4) evidence regarding the broom stick and the semen found in the victim's mouth.  (*See* Vol. 5, Tr. at 925-29.)  Hunt has failed to show that his mitigators outweighed this evidence.

2.      **Comment regarding comparing aggravating and mitigating circumstances.**
(Doc. 1, ¶ 206.)

Hunt complains about the following "erroneous" argument by the prosecution:

> What you ought to do, I believe his Honor will tell you this, is you don't marshal the mitigating or you don't list the mitigating and aggravating that I will talk to you about in a minute, and add them up and say - - Well, there is six here and two here, so we are going to go with the death penalty or we will go with life without parole.  It's not a numbers game is what I'm saying.
>
> Rather you marshal the mitigating things that the defense will talk to you about and has talked to you about and you marshal over here the two aggravating things I'm going to talk to you about and <u>you don't look at them just numerically, but you look at them together and say - - Well, I'm looking at them together and I'm comparing them and you compare them together and then you make your recommendation, based on that, to the judge</u>.

(Vol. 5, Tr. at 923) (emphasis added).  According to Hunt, this argument is misleading because the law requires that the jury <u>first</u> determine whether any aggravating factors exist which are sufficient to warrant the death penalty.  (Doc. 1, ¶ 206) (citing Ala. Code § 13-A-5-45(f)).  Then, only if one or more exist, does the jury go on to consider the mitigating evidence and weigh it against the aggravating circumstances.  In other words, Hunt argues, this two phase inquiry should not be collapsed into one.  (Doc. 1, ¶ 206.)

Hunt has not established a violation of his constitutional rights.  First, the prosecution did not have the final word regarding instructing the jury on the law or the jury's duties with respect to consideration of the aggravating and mitigating factors.  Indeed, the prosecution explained to the jury that the judge would tell them how they were to proceed:  "What you ought to do, <u>I believe his Honor will tell you this</u>, is you don't marshal the mitigating or you don't list the mitigating and

aggravating. . . ."  (Vol. 5, Tr. at 923) (emphasis added).  Moreover, the judge did in fact clearly

explain:

> Now life imprisonment without eligibility for parole, in Alabama, by law, means just what it says.  It means you are never released from prison.  The law also provides that which of those two punishments should be imposed upon the defendant <u>depends on whether any aggravating circumstances exist and if so, whether the aggravating circumstances outweigh the mitigating circumstances</u>. . . .
>
> In making your recommendation concerning what the punishment should be <u>you must determine whether any aggravating circumstances exists and if so, you must determine whether any mitigating circumstances exists</u>. . . .
>
> <u>If the jury is not convinced beyond a reasonable doubt, based upon the evidence, that one or more aggravating circumstances exist, then the jury must recommend that the defendant's punishment be life without parole, regardless of whether there are any mitigating circumstances</u>.

(Vol. 5, Tr. at 932-33, 934) (emphasis added).   Hunt's claim is without merit.

> 3.   **Prosecutor's comments that the jury "had to believe" the aggravating circumstances existed.** (Doc. 1, ¶¶ 207-8.)

Hunt complains that the prosecutor engaged in misconduct when he made the following

statement:

> We must convince you or you must be convinced that there is at least one aggravating circumstance [: the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit burglary].  And, th[is] first one I'm not going to talk about very much because I believe that <u>you have to believe that it exists or you couldn't have found the defendant guilty of Count III of the indictment</u>.

(Vol. 5, Tr. at 923-24) (emphasis added).

According to Hunt, this argument

instructed the jury that the mere fact of the defendant's conviction on Count III

required that they find an aggravating circumstance.  This is incorrect, as a death

sentence can never be imposed simply because someone has been convicted of a

capital offense.  Aggravating circumstances must genuinely narrow the class of individuals eligible to receive a sentence of death.  *Godfrey v. Georgia*, 446 U.S. 420 (1980); *Gregg v. Georgia*, 428 U.S. 153 (1976).  This comment further violated the Eighth Amendment requirement that the jury make an "individualized determination" of the appropriate sentence.  *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976).

(Doc. 1, ¶ 208.)

Hunt's argument is unpersuasive for several reasons.  First, the prosecutor prefaced the challenged statement by indicating "he believed" that the jury must believe the burglary aggravator existed based on defendant's prosecution under Count III for intentional murder during a burglary. (*See* Vol. 5, Tr. at 923-24.)  He later added,

> You found him guilty in Count III, so you had to believe burglary existed or he attempted to burglarize the apartment . . . .   I <u>suggest to you</u> that that [sic] has been proven."

(Vol. 5, Tr. at 924) (emphasis added.)  Thus, the prosecutor was simply making an argument in an effort to convince the jury that the penalty phase evidence and verdict supported a finding regarding the aggravating circumstances.  Moreover, the challenged statement was not improper given the burglary conviction and the judge's instructions, quoted above, that the jury must first determine whether an aggravating factor existed, before weighing it with any mitigators.  (*See* Vol. 5, Tr. at 932-33, 934.)  As such, Hunt's claim is without merit.[35]

_____

[35]/   Hunt's argument that *Gregg*, *Godfrey*, and *Woodson* require a finding in his favor is similarly unpersuasive. In *Godfrey*, the Georgia statute allowed for a death sentence where the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved . . . depravity of mind . . . ." 446 U.S. at 432-33.  The Court reversed the  death sentence because the statute was too vague; specifically, it did not provide "clear and objective standards" to the sentencing body so as to avoid the "arbitrary and capricious infliction of the death penalty."  446 U.S. at 428.  The arbitrary and capricious nature of the death sentence was evident in respondent's conviction for a double murder.  Respondent had approached the two victims and shot them in the head, at which time each died immediately.  In contrast, a different case involving a death sentence under the same statute involved a victim who was beaten, burned, raped, abused and then strangled to death prior to the murder.  A second case involved a  defendant who committed anal sodomy on two seven year old boys and then strangled them.  *Id*. at 429-430 (citations omitted.)  Thus, in the two later cases the decedents had suffered a great deal during the murder.  Given the stark differences in the circumstances surrounding the murders in the

4.   **Prosecutor's argument that the jury could consider "all" the guilt phase evidence during sentencing**.  (Doc. 1, ¶¶ 209-10.)

Hunt challenges the following argument by the prosecutor:

> I believe His Honor will tell you that you can consider <u>all</u> the evidence and <u>all</u> the testimony that has come from the witness stand during this trial.

(Vol. 5, Tr. at 924) (emphasis added).

Hunt argues that his right to a fair trial, due process and reliability in sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by this statement because Alabama law only permits the jury to consider the eight aggravating factors set forth in Alabama Code Section 13A-5-49.  (Doc. 1 ¶ 209) (citing *see Ex parte Stewart*, 659 So. 2d 122 (Ala. 1993); *Tomlin v. State*, 443 So. 2d 47 (Ala. Cr. App. 1979)).  Hunt also contends that the prosecutor's statement failed to cabin the jury's discretion and narrow the issues presented, as required during the sentencing stage.  Rather, he argues, the prosecutor's statements misinformed the jury that it could consider the entire range of adverse testimony and evidence presented at trial, including evidence on factors that the jury was not entitled to weigh as aggravating circumstances.  He cites to several cases in support of this argument: *Gregg v. Georgia*, 428 U.S. 153, 197 (1976)**;** *Zant v. Stephens*, 462 U.S. 862, 877 (1983)**;** *McCleskey v. Kemp*, 481 U.S 279, 305 (1987)**.**

---

later two cases and the circumstances in defendant Godfrey's case, the Court held that the statute was unconstitutionally vague.  No such issues are present here.

*Gregg* involved a defendant's claim that the state death penalty aggravators were articulated so broadly that most any murder case would be subject to the death penalty.  428 U.S. 153.  Again, no such issues exist.

Finally, *Woodson* involved a statute which required a death sentence upon conviction for certain types of murders, thereby taking away from the jury the ability to make an "individualized determination" regarding the appropriate sentence.  428 U.S. at 286, 304-05.

Hunt's argument is unavailing.  First, the context in which the challenged comment was made indicates the prosecution was explaining to the jury that it could consider "all" of the <u>relevant</u> evidence when determining whether the aggravating factors existed:

> You found him guilty in Count III, so you had to believe burglary existed or he attempted to burglarize the apartment . . . .  I suggest to you that that has been proven.

> I believe His Honor will tell you that you can consider all the evidence and all the testimony that has come from the witness stand during this trial.  <u>Burglary during the course of murder.  That he committed a burglary during this killing.  If you believe that, that is an aggravating circumstance</u> . . . .

(Vol. 5, Tr. at 924-25.)  Additionally, the trial judge clearly explained to the jurors that they were only to consider evidence with regard solely to two aggravating circumstances:

> In making your determination concerning the existence of aggravating and mitigating circumstances you should consider the evidence presented at this sentencing hearing which, as I have stated, is the evidence you have heard in the trial of the case and that is what both sides are basing their requests on.

> You should also consider any evidence that was presented during the guilt phase of the trial that is <u>relevant to the existence of any aggravating or mitigating circumstances</u>.

> The law of this state provides a list of aggravating circumstances which may be considered in recommending punishment if the jury is convinced beyond a reasonable doubt and to a moral certainty from the evidence that one or more aggravating circumstances exist in this case. . . .

> A list of aggravating circumstances provided by the law are: There are two aggravating circumstances which you may consider in this case . . . .

> The aggravating circumstances which you may consider in this case, if you find from the evidence, that they have been proven beyond a reasonable doubt are as follows:

> The capital offense was one committed which the defendant was engaged in the commission of the crime of burglary.  That is one aggravating circumstance.

The capital offense was especially heinous, atrocious or cruel compared to other capital offenses. . . .

(Vol. 5, Tr. at 933-35) (emphasis added.)  Given the prosecution's additional argument and the instructions by the trial judge, Hunt has not established that his constitutional rights were violated.

Finally, it is permissible to use an aggravating circumstance to satisfy an element of the offense during the guilt phase and again as a factor to be considered in the sentencing phase.  The constitutionality of such a statutory scheme has been upheld by the United States Supreme Court in *Lowenfeld v. Phelps*, 484 U.S. 231, 241-46 (1988).  Hunt's citations do not compel a finding to the contrary.[36]

### 5. Comments about "sexually oriented injuries" (Doc. 1, ¶ 211-13.)

Hunt complains that the prosecutor purportedly misstated evidence of the victim's injuries in order to inflame the jury's passions.  Hunt asserts that the prosecutor argued that Dr. Embry, the medical examiner, testified that the injuries to the victim's breast area were "sexually oriented injures" and that they were "made . . . with that broom."  (Doc. 1, ¶ 211; *See* Vol. 5, Tr. at 926.)  Hunt points out that Dr. Embry testified: "I think the injures to her chest were not caused by a stick." (Vol. 2, Tr. a 260.)  Further, Hunt contends Dr. Embry did not testify that the injuries to the victim's breast were "sexually oriented."  Such comments, argues Hunt, constitute improper

---

[36]    Unlike this case, in *Ex parte Stewart*, the statute limited the jury to consideration of only the enumerated aggravators, but the trial court incorrectly instructed the jury that it could consider any of the enumerated aggravators, "plus 'any aggravating circumstances you might find from the facts of the case.'"  659 So. 2d at 127.  In *Tomlin v. State*, the judge's sentencing order explicitly listed factors as aggravators that are not permitted by statute. 443 So. 2d at 58.  *See Gregg*, 428 U.S. 153 (involving a claim that the state death penalty aggravators were articulated so broadly that most any murder case would be subject to the death penalty); *Zant*, 462 U.S. at 866-68 (involving death sentence on two aggravators, where one was subsequently found to be unconstitutionally vague); *McCleskey*, 481 U.S 279 (involving claim that death sentence was imposed in a racially biased manner).

argument regarding facts not in evidence or misstatements of facts to the jury.  *See Donnelly v.*

*DeChristoforo*, 416 U.S. 637 (1974)**.**  Hunt further argues it is particularly egregious in a capital

case because such cases implicate the Eighth Amendment guarantee of a reliable sentence and "the

elemental due process requirement that a defendant not be sentenced to death on the basis of

information which he had no opportunity to explain."  *See Skipper v. South Carolina*, 476 U.S. 1,

7 n.1 (1986).  Finally, Hunt asserts that these statements improperly served to inflame the passions

of the jury.  (Doc. 1, ¶ 213) (citing  *See Viereck v. United States*, 318 U.S. 236, 247-48 (1943)).

Hunt's argument is not compelling.  Independent review of the record does not reveal that

the prosecutor actually stated that Dr. Embry testified the injuries were "sexually oriented."[37]

Rather, the prosecutor gave his own hypothesis that the injuries were "sexually oriented" and that

he "believed" Dr. Embry had testified a stick caused the injuries:

> Dr. Embry testified that there was a gash under her chin and he testified that in these muscles here right above the breast bone - - - Do you remember what he said?  - - - He said there is blood in that tissue and I usually see that kind of injury in  a car wreck. . . .

> Then  [Hunt] made these injuries to her around her breast, sexually oriented injuries, I contend to you.  He made one, two, three, four, five, six, seven, eight - - - approximately seven or eight injuries to her breast area and I believe the evidence has shown that he made them with that broom.

(Vol. 5, Tr. at 926.)

This argument, although not quite accurate, was consistent with the prosecution's case,

namely that the facts surrounding the murder were sufficient to support a conviction under Count

II, intentional murder during sexual abuse by forcible compulsion.  Indeed, as the Court of Criminal

---

[37]/       Hunt provided no citation to the record.

Appeals noted with respect to mis-statements the prosecution made about the broom stick being

used as a phallic symbol despite the absence of evidence in that regard:

> While the district attorney's comments are graphic and nauseating, they constitute legitimate and reasonable inferences based on the evidence presented to the jury of the manner in which the victim was murdered.

*Hunt*, 659 So. 2d at 947.

Moreover, it should be noted that the actual testimony of Dr. Embry regarding the cause of

the breast injuries was potentially more damning to Hunt's case than the prosecutor's inartfully

expressed opinion.  Dr. Embry testified that the breast injuries where not caused by "some kind of

instrumentality like a stick or rounded object," but instead were likely caused by "something that

required more force."  (Vol. 2, Tr. at 260.)  The implication being that the injuries were caused by

the bar stool or human force.  Thus, to the extent the prosecutor mis-summarized the evidence about

the stick, Hunt's constitutional rights were not violated.  *See Donnelly*, 416 U.S. at 646 (noting that

"consistent and repeated misrepresentation of a dramatic exhibit of the evidence may profoundly

impress a jury and may have a significant impact on the jury's deliberations.  Isolated passages of

a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not

reach the same proportions.")  This is not a case like *Miller v. Pate*, 386 U.S. 1, 6 (1967) (*cited in*

*Donnelly*, 416 U.S. at 646), where the respondent obtained habeas relief after the prosecutor

repeatedly commented that a pair of underwear allegedly belonging to petitioner was stained with

blood, when in fact they were stained with paint.[38]

---

[38]    The other two cases cited by Hunt are likewise not on point. *See Skipper*, 476 U.S. at 7 n.1 (overturning conviction where judge refused to allow two of defendant's witnesses to testify at sentencing hearing); *Viereck*, 318 U.S. 236, 247-49 (rejecting as inflammatory, prosecutor's wartime comments equating non-violent defendant with those plotting the death of Americans).

6.   **Prosecutor's urging that the death penalty was the "right thing" to do.**
(Doc. 1, ¶ 214-15.)

Hunt's last argument about alleged prosecutorial misconduct during the penalty stage

involves the following comments regarding the "right thing to do:"

> There is a right thing to do in this case.  And, the right thing to do, just as
> you ladies and gentlemen have so courageously done in the first part of this case in
> returning a guilty verdict to each count, there is another right thing to do. . . .  The
> right thing to do many times, as in this case, is not many times the easy thing to do.
>
> The easy thing to do is to say life without parole.  But, the right thing to do,
> that so many times is the hardest thing to do, the right thing to do, as we tell our
> children to do, the right thing to do, as we tell ourselves to do, the right thing to do
> is to return a recommendation to the court that is appropriate in this case, under the
> law, and that is a recommendation of death.
>                                      . . . .
>
> There is a right verdict.  It is not the easy thing to do.  It's like when we tell
> our kids what they should do.  It's the hard thing to do.  The right thing to do is the
> hard thing to do and the right thing to do is to recommend to this judge death.

(Vol. 5, Tr. at 922, 929.)   Hunt argues that these comments suggest to the jury that is their

obligation or legal duty to return a death recommendation.  *See United States v. Young,* 470 U.S.

1, 6, 8-9.  Hunt also asserts that these statements were improper because the prosecutor informed

the jury of his own moral views and urged them to substitute a moral judgment for an individualized

evaluation of the legal evidence.  *See Young*, 470 U.S at 8;  *Woodson*. 428 U.S. 280, 305.  Hunt

contends that these statements deprived him of a fair trial and reliable sentence determination.

Again, the cases upon which Hunt relies do not support a finding that his constitutional

rights were violated, particularly in light of the overwhelming evidence of guilt.  *See Young*, 470

U.S. at 18-20 (although comments were improper, habeas relief was denied because the comments

did not "seriously affect" the "fairness of the trial" and there was no "lingering doubt that the

prosecutor's remarks unfairly prejudiced" the Respondent, particularly in light of the overwhelming evidence of respondent's guilt); *Woodson*, 428 U.S. at 305 (involving a statute which required a death sentence upon conviction for certain types of murders, thereby taking away from the jury the ability to make an "individualized determination" regarding the appropriate sentence.). Hunt is entitled to no relief.

## M.   MR. HUNT'S RIGHTS WERE VIOLATED BY THE JURY'S FAILURE TO SPECIFY THE AGGRAVATING AND MITIGATING FACTORS IT FOUND AND ON WHICH IT BASED ITS RECOMMENDATION.  (Doc. 1, ¶ 217-18.)

Hunt contends that the jury's failure to specify the aggravating and mitigating factors upon which it based its recommendation of death violated his constitutional rights.  Hunt concedes that the recommendation is not binding, but argues that reversal of the judge's sentence would nonetheless be required if the jury found or considered invalid aggravating factors.  *See Harris v. Alabama*. 513 U.S 504, 512 (1995).  Hunt contends that it is impossible to determine if the ultimate sentence is invalid because the jury did not specify the aggravators.  (Doc. 1, ¶ 217.)

Hunt also contends that it is impossible to ensure unanimity with respect to each aggravator without knowing the basis of the jury's decision, and that it is impossible for the reviewing court to determine the propriety of the recommendation.  Accordingly, he argues that his right to a reliable determination of the verdict and his right to fair proceedings were violated. Finally, he contends that the state court's adjudication on this issue is contrary to and an unreasonable application of clearly establish law.  (Doc. 1, ¶ 218.)

Although Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 297-98), the court found that the claim was precluded because it could have been but was not raised at trial or on appeal. (Vol. 22, Tab 63 at 125.)  Hunt exhausted this claim in his Rule 32 appellate brief, and

in his Alabama certiorari petition, (*See* Vol. 21, Tab 58 at 136-37.)  However,  it is nonetheless procedurally barred because the state court's decision was based on independent and adequate state law grounds.

Alternatively, Hunt's claim is without merit.  In *Hildwin v. Florida*, 490 U.S. 638, 640 (1989)*,* the Supreme Court held that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury."  Hunt does not explain how his claim presents a constitutional violation in light of *Hildwin*.  Moreover, he merely cites to a general legal proposition in *Harris v. Alabama* without explaining how the case supports his claim: "If the judge must consider the jury verdict in sentencing a capital defendant, as the statute plainly requires, then it follows that a sentence is invalid if the recommendation upon which it partially rests was rendered erroneously."  (Doc. 1, ¶ 217) (citing *Harris v. Alabama*. 513 U.S 504, 512 (1995)).  However, the Supreme Court in *Harris* granted certiorari to consider whether "Alabama's capital sentencing statute is unconstitutional because it does not specify the weight the judge must give to the jury's recommendation and thus permits arbitrary imposition of the death penalty."  *Id.* at 505.  In the course of its analysis, the Court cautioned that a constitutional violation does occur  "when the jury considers an invalid factor and its verdict is in turn considered by the judge . . . ."  *Id.* at 512 (citations omitted).  Yet, nothing in this case even hints that the jury might have improperly considered invalid factors.  Indeed, the evidence and jury instructions indicate otherwise.  As such, Hunt's reliance on *Harris*, is not compelling.

**N.    THE TRIAL COURT IMPERMISSIBLY ALTERED THE PROSECUTION'S BURDEN OF PROOF.  (Doc. 1, ¶¶ 219-20.)**

Hunt next challenges two comments by the trial court.  First, he contends that the court erred by "reducing" the burden for establishing guilt beyond a reasonable doubt in its opening remarks when the Court informed the jurors:

> Both sides have an opportunity to make an opening statement.  Now, an opening statement is simply a statement.  It is not evidence . . . . It is a thumbnail sketch of what <u>both sides, both the state and the defense expect to show by the evidence</u>.
>                      . . . .
>
> <u>Opening statements that both sides have the opportunity to make are simply a thumbnail sketch of what they expect the evidence to show</u>.

(Vol. 2, Tr. at 208, 209) (emphasis added).

Next, he contends that the trial court shifted the burden of proof from the state to the defense when the court made the following statement during the guilt phase charge:

> Your duty, in the first part of this trial, is to determine the guilt or innocence of the defendant, with relationship to the counts or lesser included offenses.

(Vol. 5, Tr. at 869.)  Hunt points out that whether or not the jury believes Hunt is innocent, its verdict must be based upon whether or not the prosecution proves its case beyond a reasonable doubt.  Thus, he contends, the court's statements shift to him the burden of establishing that he was "innocent."  As such, he argues that the court's comment violated his right to trial by jury, right to a fair trial, his due process rights and his right to a reliable sentence in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  He also argues that the State Court's adjudication of this claim was contrary to and an unreasonable application of clearly established federal law.  (Doc. 1, ¶ 220.)

Although Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 148-49), the court found that it was precluded because it could have been but was not raised at trial or on appeal. Hunt then failed to raise the claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  Thus, this claim is barred because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

Alternatively, this claim fails on the merits.  Not only does Hunt fail to cite to any Supreme Court precedent in support thereof, but he omits the following instruction made during the trial court's charge:

> The defendant has entered a plea of not guilty.  As I told you earlier, the defendant is presumed to be innocent until proven guilty, beyond a reasonable doubt and to a moral certainty by the evidence or any part of the evidence in this case.

> The defendant comes to you clothed with this presumption and this presumption follows him throughout the course and proceedings of this trial until the evidence produced by the state convinces each of you beyond a reasonable doubt and to a moral certainty of his guilt.  The presumption of innocence is to be regarded by this jury as a matter of evidence, to the benefit of which the accused is entitled.

> As a matter of evidence this presumption attends the defendant until his guilt is, by the evidence, placed beyond a reasonable doubt.  In this case as in all cases where the defendant pleads not guilty the burden is upon the state to convince each member of the jury, beyond a reasonable doubt and to - -- of the truth of the material elements contained in the indictment.  This burden never shifts.  <u>In other words the defense is never required to prove that they are innocent</u>.

(Vol. 5, Tr. at 869-70) (emphasis added.).  Taking the instructions in their entirety, the Court finds that Hunt's claim is without merit.

**O.   THE USE OF THE HEINOUS, ATROCIOUS OR CRUEL AGGRAVATING CIRCUMSTANCE IN THIS CASE VIOLATED MR. HUNT'S RIGHTS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS. (Doc. 1, ¶ 221.)**

Hunt contends that the trial court's reliance on the "especially heinous, atrocious, or cruel" aggravating factor was constitutionally flawed because the use of this statutory factor suffers from vagueness and over breadth.  Hunt points out that the trial court admitted in its sentencing order that "all capital offenses are 'heinous, atrocious or cruel,' to some extent."   (Vol. 22, Tab. 59 at 9.) Thus, according to Hunt, the jury instructions on this aggravator and the court's reliance on the same was unconstitutional in his case and in the state of Alabama generally.  He relies on *Maynard v. Cartwright*, 486 U.S. 356 (1988) in support of his argument.

Although Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 300-01), the court found that the claim was precluded because it was not raised on appeal or at trial. (Vol. 22, Tab 63 at 126.)  Hunt then failed to raise the claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  Thus, this claim is barred because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

In the alternative, the claim is without merit.  In *Bradley v. Nagle*, 212 F.3d 559, 559-71 (11th Cir. 2000), the Eleventh Circuit Court of Appeals held that Alabama's "especially heinous, atrocious, or cruel" aggravating circumstance can meet the constitutional requirements of *Maynard* if the instruction is properly limited.  In Hunt's case, the trial court gave the following limiting instruction, thereby satisfying constitutional requirements:

> The aggravating circumstances which you may consider in this case, if you find from the evidence, that they have been proven beyond a reasonable doubt are as follows: . . . .

> The capital offense was especially heinous, atrocious or cruel compared to other capital offenses.  The term heinous, means extremely wicked or shockingly evil.  The term "atrocious" means outrageously wicked and violent.  The term "cruel" means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others.  What is intended to be included in this aggravating circumstances are only those cases where the actual commission of a capital offense is accompanied by such additional acts as to set the crime apart from the norm of capital offenses.

> For the capital offense to be especially heinous, atrocious or cruel, it must be a consciously or pitiless crime which was unnecessarily tortuous to the victim.  All capital offense are heinous, atrocious and cruel to some extent.  But, not all capital offenses are especially heinous, atrocious, cruel, compared to other capital offenses.  You should not find or consider this aggravating offense unless you find from the evidence that this particular capital offense involved a consciously or pitiless crime which was unnecessarily tortuous to the victim.

(Vol. 5, Tr. at 935-36.)

After the jury's verdict the Court found that the "especially heinous, atrocious or cruel" aggravator applied to Lane's murder.  (Vol. 22, Tab. 59 at p. 8-9.)  In explaining this finding, the court detailed the extent of the victim's injuries, the amount of blood found at the crime scene, the evidence regarding use of the stick and the presence of semen in the victim's mouth.  (Vol. 22, Tab. 59 at p. 8.)  The Court then concluded:

> The Court finds that these injuries were designed to inflict a high degree of pain and terror, with an utter indifference to - - or even enjoyment of  - - the suffering of the deceased. . . .

> Because of the shockingly inhumane manner in which the defendant beat the deceased thereby causing so many injuries the Court finds that these acts were committed in such a manner and over a period of time that undoubtedly inflicted an extreme degree of pain, suffering and terror on a helpless victim.

The Court is therefore convinced beyond a reasonable doubt that this aggravating circumstance exists and that in comparison with other capital offenses tried before this Court over a period of fourteen years, the degree of heinousness, atrociousness, and cruelty which characterizes this crime far exceeds that common to the capital offenses tried before this Court.

(Vol. 22, Tab. 59 at p. 8-9.)

Hunt provides no argument or legal authority to suggest that the application of the challenged aggravator in this case, or in the state of Alabama, fails the test enunciated by the Eleventh Circuit in *Bradley:*

a "court's consideration of the 'especially heinous, atrocious or cruel' aggravating factor must satisfy a three part test." First, the appellate courts of the state must have narrowed the meaning of the words "by consistently limiting their application to a relatively narrow class of cases, so that their use" informs the sentencer of what it must find before it imposes the death penalty. Second, "the sentencing court must have made either an explicit finding that the crime was 'especially heinous, atrocious or cruel' or an explicit finding that the crime exhibited the narrowing characteristics set forth" in the state courts' construction. Third, the sentencer's conclusion as to step two "must not have subverted the narrowing function of those words by obscuring the boundaries of the class of cases to which they apply."

212 F.3d 559 at 570 (citations omitted). Indeed, this case is much like *Bradley* where the Court properly limited its aggravating circumstance instruction as follows:

[T]he jury was instructed that the term "heinous" means extremely wicked or shockingly evil, the term "atrocious" means outrageously wicked or violent, and the term "cruel" means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others. They were also informed that the degree to which this crime is heinous, atrocious, or cruel must exceed that which exists in all capital offenses, and that in order to find the aggravating circumstance, they must find that the crime was "unnecessarily torturous to the victim." As the district court found, in order to be valid, an aggravating circumstance must "genuinely narrow the class of persons eligible for the death penalty," *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), i.e., must provide a "principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not," *Godfrey v. Georgia*, 446 U.S. 420, 433, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

Page 129 of 248

212 F.3d 559 at 570.  Given the similarity between *Bradley* and Hunt's case, Hunt has failed to establish that he is entitled to relief on this claim.

**P.      THE TRIAL COURT VIOLATED MR. HUNT'S CONSTITUTIONAL RIGHTS WHEN IT REFUSED TO GRANT MR. HUNT'S REQUEST FOR A CONTINUANCE DUE TO JUROR'S INFIRMITY.  (Doc. 1, ¶ 222.)**

Hunt next challenges the trial court's refusal to grant a motion for continuance based on "defense counsel's representation that one juror selected for trial was suffering 'from an ear condition which makes him totally deaf' and 'another juror was suffering from a heart condition.'" (Doc. 1, ¶ 222; *See* Vol. 2, Tr. at 219.)  Hunt also claims the court failed to "explore the abilities of the two jurors to hear trial testimony based on defense counsel's representation of their physical abilities."  (Doc. 1, ¶ 222.)  Because of these alleged errors, Hunt claims he was deprived of his right to a fair trial by jury and due process rights under the Fifth, Sixth, and Fourteenth Amendments.

Although Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 145), the court found that the claim was precluded because it could have been but was not raised at trial and on appeal.[39]  Thereafter, Hunt  failed to raise the claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  Thus, this claim is barred because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

---

[39]      Although Hunt did raise an objection during trial, this fact does not change the outcome because he failed to raise the claim on direct appeal.  (*See* Vol. 11, Tab 32.)

In the alternative, this claim is without merit.  Hunt fails to cite to any case law in support of his claim or to direct the Court to anything in the record that might support his claim.  Hunt's attorney made the following motion prior to opening statements:

> It has come to our attention that one juror that has been selected for trial in this case is suffering from an ear condition which makes him almost totally deaf and another is suffering from a heart condition.  Under these circumstances the defense moves for a continuance on the grounds it feels it should not be forced to trial with two jurors suffering from these type physical disabilities.

(Vol. 2, Tr. 219.)  Unclear from the record, however,  is precisely what transpired regarding the two jurors.

### 1.   **Juror with hearing impairment.**

With respect to the juror with the hearing impairment, the record reflects the following *voir dire*:

> Mr. Wilkinson
> (for the defense):   Mr. Bankston, you had indicated when we were asking you questions
>                      - - I'm sorry.  If I don't speak up, tell me.
>
> Mr. Bankston:        I'm going to tell you cause I can't hear nothing in my left ear.

(Vol. 1, Tr. at 122.)   During *voir dire*, Mr. Bankston spoke up several times when questions were thrown out at the group.  (*See* Vol. 1, 105, 122-24.)  Ultimately, he testified that he knew Hunt's mother and he had known the victim's family, particularly the victim's parents, "all his life".  (Vol. 1, Tr. at 100, 124.)  The record establishes that the Court granted defense counsel's challenge for cause with respect to Mr. Bankston, over the objection of the State.  (Vol. 1, Tr. at 179-80.)  Indeed, he is not on the final jury list.  (Vol. 8 at 14-15.)

Thus, it appears that Bankston is not the juror who was later dismissed after the trial began:

<u>JURY OUT</u>

Court:              You made a motion to dismiss because we had a hearing
                   impaired juror, at the first, which I denied. Are there any
                   other motions?
                                     . . . .

Mr. Baker:         I would join with the defense in Mr. Taylor's motion, having
                   observed - - -
                                     . . . .

Mr. Taylor:        My motion is a motion to dismiss the case.   That's my
                   motion.

Mr. Baker:         Dismiss the juror.  I would join in the motion to dismiss the
                   juror in that having had a chance to observe him during these
                   proceedings it appears that his motion has merit.  I have a
                   substantial doubt in my mind as to whether or not he is
                   hearing the testimony as it comes form the witness stand.

Court:             . . . I am going to want to interview the juror myself to make
                   a determination.  For the record, I talked with the bailiffs
                   who stayed with the jury last night.  They indicated that he
                   has a severe hearing impairment and possibly does not
                   understand what is going on.

                   I don't want to embarrass the man by having a whole bunch of
                   people in here and bringing him in here.  But, of course, you all
                   certainly need to be with me when I talk to him. . . . [The Court
                   proceeds to question the juror]

                   From my personal observation of the man, is that he is impaired
                   and can not hear.  And, from his affects it appears there are other
                   impairments and it is my understanding that he is 80 years of age.

Mr. Taylor:        What are you going to do?

Court:             I'm going to dismiss him.

Mr. Taylor:        For the record, we want to renew our motion to dismiss and
                   all our motions to continue on the grounds that the defendant

|  | is entitled to [sic] particular tribunal in the 6th amendment to hear his case to complete his case.  It violates his right to a fair trial. |
|---|---|
| Court: | I'm going to dismiss the juror in that the court has found that after he had been impaneled he is not competent or qualified to serve as a juror due to physical and probably mental disabilities and we will put alternate #1 into his position. |
| Mr. Taylor: | We except the court's ruling. |
| Mr. Baker: | Let the record reflect that the alternate #1 was the defendant's last strike and not the state's last strike. |
| Mr. Taylor: | I don't know if that is true or not but the record will reflect it. |
| Court: | The record will reflect that I made a note as to who alternate #1 and #2 was and in front of all parties, I am going to slide alternate #1 into that position. |

(Vol. 2, Tr. at 391-96.)  Inasmuch as it appears that a juror with a severe hearing impairment was impaneled, but ultimately replaced by one of the alternates, Hunt fails to raise a constitutional claim regarding this juror.

    2.    **Jurors with heart ailments**:

With respect to jurors with heart problems, the record reflects the following:

    A.    My name is Bonnie Williams.  Mine is not serious, but it is a health problem. . . .  I want to serve but if it's criminal I have a heart problem and if I get upset my blood pressure goes up.

(Vol. 1, Tr. at 69.)

    A.    My name is James Windham.  I have had open heart surgery and high blood pressure.

    Q.    Did your doctor say you didn't need to be under stress.

    A.    No, he didn't say that.

Q.      Do you have any problems with it?

A.      Just once, one occasion.

Q.      Just have a seat back there.  If you have any problems let somebody know.

(Vol. 1, Tr. at 69.)  Both of these individuals were ultimately impaneled.  (*See* Vol. 8 at 14-15.)

However, precisely what occurred later is unclear.  In its opinion on direct appeal the appellate court mentions the hospitalization of jurors while analyzing a different claim:

> "[V]oir dire of the jurors who were separated and taken for an emergency room visit during the trial."  There is no mention of or reference to this matter in the transcript of the trial and sentence proceedings.

> This matter first appears at the hearing held on September 4, 1991. At that hearing, in response to a request by the appellant's counsel for information on this matter, the trial judge stated:

> "As I recall there were no notes. We had two heart patients on that [jury], unbeknownst to anyone, and the bailiff and I can't remember whether it was at night or during the day, called me and said these, one at a time, that they were feeling bad and wanted to get permission to separate them and take them to the hospital. I gave verbal order [sic] to certainly take them to the emergency room and have them checked out.

> "The only writing done about that was in the [news]paper. I know I personally did not communicate with any juror, directly, after they were impanelled. [sic]

> "BY MR. COHEN: Do you recall whether or not counsel for defendant or counsel for the State-

> "BY THE COURT: Communicated with the juror?

> "BY MR. COHEN: Communicated with them with respect to those two crises?

> "BY THE COURT: No, they did not. We were all concerned. But, every question that came from the jury to me, such as family visits and things of that nature, telephone calls and things of that nature, I gave verbal instructions to the bailiff on how to conduct or handle the jury."

Supplemental Record filed December 26, 1991, at 25-26 (transcript of September 4, 1991, hearing).

At that hearing, the prosecutor indicated that there had been no objection to this matter when the trial judge informed counsel for both parties about it during the trial. Supplemental Record filed December 26, 1991, at 28 (transcript of September 4, 1991, hearing). Attorney Cohen, although challenged by the prosecutor, did not make a proffer that this separation could have influenced the jurors' verdict. Id. at 28-29.

This matter is next mentioned at the hearing on the appellant's motion to supplement the record held on May 22, 1992:

"BY MR. COHEN: ... The second aspect has to do with the request I had made for the reconstruction hearing insofar as it relates to the testimony of-I believe there were two jurors who for a total of three occasions were taken to the hospital. It would require some brief voir dire of them, on the record. Perhaps the doctors and certainly the court officer who assigned them to the hospital and thanks to the court, I did have a chance to speak to the court officer the last time I was here.

"BY THE COURT: Who was that? Wanda Lansford?

"BY MR. COHEN: Yes.

"My suggestion is the following, Judge. I'm going to be here for the next four or five days. I am involved in an investigation with respect to Mr. Hunt. It, also, touches upon the jury issue.

"I would suggest to the court-I have spoken to the district attorney beforehand-that we set a firm date-.... I will use the next three or four days to wrap up whatever investigations are necessary and at that point, following that brief colloquy, that's it. We have resolved this phase of perfecting the appeal to the degree that we can."

Volume II of the Supplemental Record filed on May 29, 1992, at 5 (transcript of May 22, 1992, hearing).

*Hunt*, 659 So. 2d at 954-55.

Hunt directs the Court to no evidence that the jurors who were hospitalized were physically incapable of rendering competent jury service during the actual trial.

**Q.      THE TRIAL COURT ERRED IN PERMITTING THE VICTIM'S FATHER TO SIT AT THE PROSECUTION'S TABLE THROUGHOUT THE TRIAL.** (Doc. 1, ¶ 223.)

Hunt challenges the trial court for allowing W. O. Sanders, the father of the victim, to sit at the table next to the prosecuting attorney throughout the trial.  Hunt contends that the father's presence at the prosecution table fostered the implication that the two had a special relationship, and engendered sympathy for the prosecution and the victim's family.  As such, Hunt contends that his right to a fair trial, due process and reliability in sentencing were violated.

The Rule 32 court found that the claim was precluded because it could have been but was not raised at trial and on appeal. (Vol. 22, Tab 63 at 116.)  Hunt then failed to exhaust this claim by raising it in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.)  Thus, the claim is barred because the state court's decision is based on independent and adequate state law grounds, Hunt failed to exhaust, and a return to state court would be futile.

Moreover, this claim is without merit.  As discussed earlier, Alabama allows a victim or, where the victim is unavailable, a member of the victim's family to sit at the table with the prosecution through out the proceedings.  *See* Ala. Code § 15-14-54; § 15-14-56.

**R.      THE TRIAL COURT'S FAILURE TO PROVIDE A TRIAL TRANSCRIPT FOR JURY TO READ BACK AND ALLOWING THE JURY TO REVIEW UNSWORN EVIDENCE VIOLATED MR. HUNT'S CONSTITUTIONAL RIGHTS. (Doc. 1, ¶ 224.)**

Hunt claims the trial court erred by allowing the jury to take notes during the trial, but at the same time failing to make allowance for jurors to review a trial transcript.  (Doc. 1, ¶ 224; *See* Vol. 2, Tr. at 211-12.)  Because of this purported error, Hunt claims that the jurors were able to review unsworn evidence and review their potentially incorrect notes without an opportunity to refer back

to the trial transcript.  Accordingly, he argues his rights to due process and a fair trial under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated.

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 146), but the court found it was precluded because it could have been but was not raised at trial and on appeal.  Hunt then failed to raise the claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii.) Accordingly, the claim is barred because the state court's decision was based on independent and adequate state law grounds, Hunt failed to exhaust and he is now barred from curing this deficiency.

In the alternative,  the claim fails on the merits because Hunt cites to no Supreme Court precedent in support thereof.  *See* Rule 2(c)(2) of the § 2254 *Governing Rules* (requiring petitioner to "specify all grounds for relief"); *Moore v. Gibson*, 195 F.3d at 1180 n.17 (federal habeas courts are under no obligation to "consider unsupported and undeveloped issues").

## S.     THE TRIAL COURT'S CONSIDERATION OF INADMISSABLE EVIDENCE AT SENTENCING, INCLUDING A PREJUDICIAL PRESENTENCE REPORT, DEPRIVED MR. HUNT OF A RELIABLE DETERMINATION OF PUNISHMENT. (Doc. 1, ¶ 225.)

Hunt argues that the presentence report in this case was "replete with inaccurate and incomplete information, inadmissable evidence and hearsay."  (Doc. 1, ¶ 225.)

Although Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 299), the court found that the claim was precluded because it could have been but was not raised at trial and/or on appeal pursuant to Rules 32.2(a)(3) and (a)(5).  (Vol. 22, Tab 63 at 126.)  Because Hunt failed to raise the claim in his Rule 32 appellate brief,  (S*ee* Vol. 19, Tab 54 at p. iii - vii) the claim is barred not only because the state court's decision is based on independent and adequate state law grounds, but due to lack of exhaustion as well.

Alternatively, Hunt is not entitled to relief because he fails to name any Supreme Court precedent in support of his claim, or specify the portions of the report he finds objectionable. Further, under Alabama law, a sentencing court may consider any probative evidence, even evidence that would normally be inadmissable, such as hearsay evidence.  *See* Ala. R. E. 1101 ("These rules [of evidence], other than those with respect to privileges, do not apply in the following situations . . . Miscellaneous proceedings.  Proceedings for . . . sentencing . . . ."); Ala. Code § 13A-5-45(c) ("Any evidence which has probative value and is relevant to sentencing shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence . . . .");  *Tomlin v. State*, 443 So. 2d 47, 54 (Ala. Cr. App. 1979) (noting that "the sentence hearing is designed in theory to benefit the accused by allowing the trial court to reduce his sentence from death to life without parole when the mitigating circumstances so require.")

## T.   THE DEATH PENALTY IN THIS CASE WAS SOUGHT AND IMPOSED PURSUANT TO A PATTERN OF RACIAL BIAS.  (Doc. 1, ¶ 226-27.)

Hunt asserts that both Walker County and the state of Alabama seek and impose the death penalty in a racially discriminatory pattern, and did so against him in violation of his Fifth, Sixth, Eighth and Fourteenth Amendments rights.  *See McCleskey v. Kemp*, 481 U.S. 279 (1987).  Hunt claims that the death penalty was sought because the victim in this case was part of Walker County's White community, but would not have been if the victim had been poor and Black instead.

When Hunt raised this claim in his amended Rule 32 brief, the court found that the claim was precluded because it could have been but was not raised at trial and/or on appeal pursuant to Rules 32.2(a)(3) and (a)(5).  (Vol. 22, Tab 63 at 129.)  Hunt did not raise this claim in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at p. iii - vii, 110-11.)  Thus, this claim is barred because the

state court's decision is based on independent and adequate state law grounds, Hunt failed to

exhaust, and a return to state court would be futile.

Alternatively, Hunt is not entitled to relief because he has failed to meet the standard

enunciated in the case upon which he relies:

> A criminal defendant alleging an equal protection violation must prove the
> existence of purposeful discrimination.  [citation omitted]  He may establish a *prima
> facie* case of purposeful discrimination "by showing that the totality of the relevant
> facts gives rise to an inference of discriminatory purpose."
>
> [To establish a *prima facie* case], [f]irst, he must establish that he is a member of a
> group "that is a recognizable, distinct class, singled out for different treatment."
> Second, he must make a showing of a substantial degree of differential treatment.
> Third, he must establish that the allegedly discriminatory procedure is susceptible
> to abuse or is not racially neutral. Ibid.

*See McCleskey*, 481 U.S. 279, 352- 53 (1987) (citations omitted).

In this case, Hunt simply provides no evidence that he received the death penalty due to the

victim's race.  Instead, the record reflects that Hunt received the death penalty based on the heinous,

atrocious, and cruel nature of the murder he committed.

## U.    THE MANNER OF EXECUTION USED BY THE STATE OF ALABAMA CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.  (Doc. 1, ¶ 228-30)

Hunt argues that lethal injection and the process by which it is administered is cruel,

torturous and violates state and federal law.  (Doc. ¶ 228-29) (citing Zant *v. Stephens*, 462 U.S. 862

(1983)).  Hunt notes that the Eighth Amendment requires that states employ all feasible measures

to minimize the risk of cruelty, mutilation, pain and distortion of the condemned person's body

when inflicting capital punishment.  (Doc. 1 ¶ 229.)  Hunt also quotes Justice Powell who dissented

in *Furman v. Georgia,* 408 U.S. 238, 460 (1972): "[N]o court would approve any method of

implementation of the death sentence found to involve unnecessary cruelty in light of presently

available alternatives."   Hunt adds that fundamental concepts of human dignity require that an execution be carried out so as to minimize mutilation, pain and distortion of the condemned's body. (*Id*. ¶ 229.)   According to Hunt, lethal injection causes a slow and excruciating death and the personnel who carry out this function are inadequately trained, with only cursory instruction.   Such circumstances are constitutionally intolerable, he contends, particularly given evolving standards of decency.   As such, he argues that his sentence to death by lethal injection violates his rights under "Article VI, Cl.2 and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and International law.   *See The Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment*, October 21, 1004."

In his March 25, 2002, amended Rule 32 brief, Hunt challenged Alabama's then method of execution, electrocution, as cruel and unusual.   (Vol. 14, Tab 48 ¶¶ 333-35.)   He asserted that Alabama used antiquated equipment and that personnel were not properly trained.   (*Id*. ¶ 335.) Later, Alabama adopted lethal injection as an alternative form of execution,  effective July 1, 2002, but Hunt never filed  a second amended Rule 32 petition to challenge the constitutionality of lethal injection.   *See* Ala. Code § 15-18-82(c) (lethal injection statute); Ala. R. Crim. P. 32.1(e) (allowing petition based on newly discovered material facts).   On December 16, 2002, over five months after the lethal injection statute became effective, the Rule 32 trial court rejected Hunt's "electrocution" claim because it could have been but was not raised at trial and on appeal. The court also noted that the claim was moot, as the Alabama legislature had recently changed the primary method of execution to lethal injection.   (Vol. 22, Tab. 63 at 130.)

On April 11, 2003, Hunt filed his Rule 32 appellate brief in which he challenged the lower court's ruling that the "death penalty" did not constitute cruel and unusual punishment.  However,

he did not use the terms "electrocution" or "lethal injection" in his argument.  (Vol. 19, Tab 54 at

110-11.)  Moreover, he spelled out his claim in two sentences, without any mention of the execution

equipment or the training of personnel.  (*See id*.)

The Court of Criminal Appeals summarily affirmed the lower court's finding that the claim

was precluded because it could have been, but was not, raised at trial or on direct appeal.  *Hunt*, 940

So. 2d at 1072.  In his Alabama certiorari petition, Hunt challenged the appeal court's finding with

respect to the "imposition" of the "death penalty," as applied in Alabama and argued that

"electrocution or lethal injection" were inconsistent with evolving standards of decency.  (Vol. 21,

Tab 58 at 138-89.)  Hunt did not make an assertion with respect to the equipment or training of

personnel.  (*See id*.)

Respondent argues Hunt's "lethal injection" claim is barred because the state court's

decision is based on independent and adequate state law grounds and a return to state court would

be futile.  (Answer ¶¶ 301-03).  Alternatively, Respondent argues that Hunt never presented any

evidence that "lethal injection as applied in Alabama is unnecessarily painful or cruel."  (Answer

¶ 304.)

Because Alabama no longer uses electrocution as its primary method of capital punishment,

that portion of Hunt's claim is moot.  Moreover, regardless of whether Hunt raised his "lethal

injection" claim appropriately in the state court when it appeared for the first time in his Rule 32

appellate brief, (Vol. 19, Tab 54 at 110-11), the claim fails for several reasons.  First, the state

court's preclusion of  his "cruel and unusual punishment" claim was based on independent and

adequate state law grounds, and any return to state court would be futile.  Second, Hunt failed to

fairly present for state review his claim regarding the alleged faulty equipment and inadequate

training of personnel; the claim was contained in his amended Rule 32 brief, but the brief was devoid of any factual support for the claim. Thus, the claim is procedurally barred.

Alternatively, his claim is without merit, as it is based on no controlling federal precedent. Just last year, a plurality of the United States Supreme Court **rejected** the argument that the lethal injection protocol used in Kentucky constituted cruel and unusual punishment. *Baze v. Rees*, ___ U.S. ___, 128 S. Ct. 1520 (2008). While it is unclear whether Kentucky's protocol mirrors the protocol used in Alabama, this is the only case even remotely on point and it does not support Hunt's claim. Therefore, his Eighth Amendment death penalty claim is due to be dismissed.

## V.   MR. HUNT WAS ARRESTED WITHOUT PROBABLE CAUSE IN VIOLATION OF THE FOURTH AMENDMENT.  (Doc. 1. ¶ 231.)

Hunt asserts that the warrant for his arrest was issued without probable cause to believe he committed a crime, in violation of his Fourth and Fourteenth Amendment right to be free from unreasonable seizures. (Doc. 1. ¶ 231.) Citing *Dunaway v. New York*, 442 U.S. 200 (1979), Hunt argues that evidence obtained as a result of an illegal arrest is considered fruit of the poisonous tree and cannot be used against a defendant. (Doc. 1 ¶ 231) (citing *Wong Sun v. United States*, 317 U.S. 471 (1963); *Cox v. State*, 489 So. 2d 612 (Ala. Crim. App. 1985)). He contends that the state court decision on this issue was contrary to and an unreasonable application of federal law. (Doc. 1 ¶ 231.)

This claim was raised on direct appeal and denied on the merits. However, it was not raised in Hunt's petition for writ of certiorari. Accordingly, it is unexhausted and, because return to state court would be futile, procedurally barred from federal habeas corpus review.

In the alternative, the claim fails on the merits.  In denying the claim,  the Alabama Court of Criminal Appeals held:

> There is nothing in the record on appeal to indicate that this issue was raised in either the district or circuit court.  Because there is nothing in the record to indicate that the appellant was arrested without probable cause, the alleged error is not "plain."  *See McNair v. State*, 653 So. 2d 320 (Ala.Cr.App.1992).   Moreover, [the] record does indicate that there was probable cause for the appellant's arrest and that his arrest was pursuant to a warrant.

> Karen Lane was murdered on August 2, 1988.  The writ of arrest charging the appellant with arson in the second degree and with murder was issued by the district court on August 2, 1988.  That writ of arrest was based upon the complaint of Investigator John Mark Tirey of the Walker County Sheriff Department.  R. 960. That complaint states, in part: "Before me, Larry Lapkovitch, Judge of District Court . . ., personally appeared Investigator John Mark Tirey, Walker County Sheriff Department." R. 960. The form titled "Complaint and Warrant of Arrest" lists four witnesses: "John M. Tirey, Walker Co. Sheriff," "J.C. Poe, Jr., Walker Co. Sheriff," "Jack Lawson, Walker Co. Sheriff," "John M. Vaughan Walker, Co. D.A." R. 961. The arrest warrant was executed on August 3, 1988. R. 961.  The appellant was indicted on March 27, 1989.

> Investigator Tirey obtained a search warrant for the appellant's motor vehicle on August 3, 1988. R. 1150, 1152-54. Tirey's affidavit in support of the search warrant is contained in the original record.  R. 1150, 1152.  Tirey's statements in that affidavit clearly show that probable cause existed for the appellant's arrest.

> The transcripts of the preliminary hearing held in district court on August 19, 1988, and of the hearing on a petition for writ of habeas corpus (for reduction of bond) are also contained in the record on appeal. Volume I of the Supplemental Record filed May 29, 1992.  The record of these proceedings convinces this Court that there was clearly probable cause for the appellant's arrest.

*Hunt*, 659 So. 2d at 947-48.

Hunt fails to explain why the evidence the state court considered was insufficient to constitute probable cause, nor does he argue precisely what piece of evidence was allegedly admitted improperly.   Even were the claim exhausted, there is still simply  nothing to lead to the conclusion that the state court's findings were contrary to or an unreasonable application of the law

or facts.  The cases cited by Hunt in this proceeding do not lead to a contrary result.  *See Dunaway*,

442 U.S. at 203 (involving defendant who was taken into custody despite the absence of a warrant);

*Wong Sun*, 371 U.S. 471 (involving warrantless arrest and search); *Cox v. State*, 489 So. 2d 612

(Ala. Crim. App. 1985) (involving a warrantless arrest).  Accordingly, Hunt is not entitled to habeas

relief.

## W.   THE STATE POST-CONVICTION HEARING WAS UNRELIABLE AND UNCONSTITUTIONAL  (Doc. 1, ¶ 232-35.)

Hunt makes various arguments challenging his Rule 32 proceedings.  Respondent argues

generally that Hunt is not entitled to habeas relief on the claims raised in paragraphs 232 through

235 of his petition because they were either not raised on appeal or were decided based upon

Alabama law, and Hunt fails to cite any federal case law the Alabama courts may have applied.

As will be seen, although the merits of many of Hunt's claims were not addressed in state

court, this was due not to the lack of the opportunity for "a full and fair" post-conviction

proceeding, but to Hunt's own failure to comply with the state's procedural rules.  Hunt has not

shown that he was in any way prevented from properly raising, or presenting evidence in support

of his claims.  Instead, he failed to properly plead many of his claims in state court by either failing

to raise them at the correct time, or with sufficient specificity.

### 1.   No "full and fair" hearing because of procedurally barred claims . (Doc.1, ¶ 232, 234.)

Hunt contends that the state of Alabama deprived him of "a full and fair post-conviction

hearing by finding that a number of [his] claims were procedurally barred," and argues that the court

applied erroneous standards in evaluating his claims.  (Doc. 1, ¶ 232, 234.)  At no point in his

discussion on this claim, however, does he challenge any specific findings by the Rule 32 trial court.

Respondent correctly notes, (Answer ¶ 308), that the Court of Appeals upheld the lower court's finding on this issue:

> Hunt argues that the circuit court erred in finding that some of his constitutional claims were procedurally barred because they could have been raised at trial or on appeal.

*Hunt*, 940 So. 2d at 1057.  The court then discusses his *Apprendi* and *Brady* claims, after which it found:

> The circuit court also correctly found that many of Hunt's claims were procedurally barred because they could have been, but were not, raised at trial or on appeal.  **We have repeatedly held that the procedural default grounds contained in Rule 32 apply to all cases, even to those in which the death penalty has been imposed**.  *See Brownlee v. State,* 666 So.2d 91 (Ala.Crim.App.1995); *State v. Tarver,* 629 So.2d 14 (Ala.Crim.App.1993).

*Hunt*, 940 So. 2d at 1058 (emphasis added).

Hunt fails to identify any case law to support a finding that the denial of his claims on procedural grounds by the state court was contrary to or an unreasonable application of federal law.

Moreover, Hunt's assertion that the state court based many of its procedural bars on erroneous standards fails as it, too, is insufficiently pled.  To the extent Hunt did make specific arguments of incorrect applications of state procedural bars, those arguments were addressed in the discussion of the specific claims.

2.   **No "full and fair" hearing because of "overlooked evidence."**
     (Doc.1, ¶ 232, 234.)

Next, Hunt contends the court "overlooked" evidence that was not previously available to him, either due to trial counsel's ineffectiveness or prosecutorial misconduct.  Such evidence "included, but was not limited to," the full record regarding the disposition of the criminal proceedings against state's witness James Carl Sanders; the composition of his grand jury; the

extent of pre-trial publicity; proof concerning his trial and appellate counsel's failure to investigate; and mitigating circumstances his trial and appellate counsel failed to discover regarding his extremely abusive childhood and his prior drug and alcohol abuse.  (Doc. 1, ¶ 232.)

Hunt failed to fully and fairly present this claim to the state court for review.  In his Rule 32 appellate brief, Hunt challenged the Rule 32 court for refusing to <u>admit</u> evidence; he did not raise a claim regarding evidence the court allegedly "overlooked."  (*See* Vol. 19, Tab 54 at 15-18.) Accordingly, this claim is unexhausted. Because return to state court would be futile, it is procedurally barred from review.

3.     **Insufficient time and resources to prepare for Rule 32 hearing.**  (Doc. 1, ¶ 233.)

Hunt contends that the trial court denied him sufficient "time and resources to prepare for [his] post-conviction hearing."  (Doc. 1, ¶ 233.)  Because he was incarcerated and indigent, he claims he was unable to conduct an adequate investigation, interview witnesses or pay for appropriate testing.

Hunt failed to raise and exhaust this claim in the appellate courts. (S*ee* Vol. 19, Tab 54 at 15-18 ;Vol. 21, Tab 58 at 143-48.)  Because return to state court would be futile, this claim is procedurally barred.

Moreover, Hunt is entitled to no federal habeas relief.  First,  the state court's finding was based upon state law, and does not present a cognizable federal question.  Second, Hunt had over seven years between the time of his conviction and his July 2002 Rule 32 hearing, and offers no references to the record, discussions of evidence, or case law in support of his claim.[40]

---

40/     A review of the record establishes the following: The sentencing order was entered July 27, 1990, (Vol. 22, Tab. 59); the Alabama Supreme Court affirmed his conviction and sentence on February 17, 1999, *Ex parte Hunt*, 659 So. 2d 960 (Ala. 1995);  he filed his *pro se* Rule 32 petition on February 18, 1997, (Vol. 13, Tab.

4.      **Court refused to admit evidence and refused to permit full briefing of claims.**
        (Doc. 1, ¶ 234.)

Hunt contends the trial court erred by: (1) refusing to admit evidence in support of his claims; and (2) refusing to permit full briefing of those claims.  He elaborates no further.

With respect to Hunt's claim regarding the Rule 32 court's alleged refusal to allow full briefing, the Court finds that Hunt failed to fairly present this claim to the state court for review.  *See* 28 U.S.C. § 2254(b)(1)(A).  In his Rule 32 appellate brief and in his Alabama certiorari petition, Hunt did not raise the briefing claim.  (Vol. 19, Tab 54 at 15-18; Vol. 21, Tab 58 at 143-48.)  Thus, it is unexhausted, and procedurally barred.  Alternatively, Hunt fails to cite any factual basis in support of this claim.  *See* § 2254 *Governing Rule* 2(c)(2).

With respect to the claim regarding rejected evidentiary submissions, the Court of Criminal Appeals rejected this claim:

> Hunt argues that he was deprived of a full and fair postconviction hearing because, he argues, the circuit court denied him the opportunity to submit evidence by affidavits.  Hunt argues that the affidavits, executed by members of Hunt's family, would establish mitigating evidence concerning Hunt's troubled childhood.  He further argues that the circuit court erred in excluding the testimony of cocounsel regarding statements made to cocounsel by members of Hunt's family.
>
> The following occurred at the evidentiary hearing on the Rule 32 petition:
>
>> "[Defense counsel]: Judge, the live witnesses we anticipated that we served notice of with the hope that they would be here to testify, they're not here to testify.  And in lieu of them, I would hope that Your Honor would allow me to put Ms. [Mary Lynne] Wurelwas [an attorney assisting defense counsel] on who has spoken to two of those witnesses and that will be regarding the penalty-phase ineffective assistance.

_____

44); pre-hearing conferences were held on November 9, 2001, (Vol. 17, Tab. 51), and December 17, 2001, (Vol. 17, Tab. 52); his new appellate counsel filed an amended Rule 32 Petition on March 25, 2002, (Vol.14, Tab 48), and the Rule 32 hearing was not held until July 22, 2002, (*See* Vol. 22, Tab. 63 at 5).

"[Assistant attorney general]: Your Honor, if he's talking about making some-or letting his associate testify as to what someone else has testified, the State is going to vigorously object to that.

"The Court: Well, I understand that.

"[Assistant attorney general]: That is nothing but rank hearsay.

"The Court: Where are these people? Do you know?

"[Defense counsel]: I don't know where they are right now, no.

"The Court: Who are they?

"[Defense counsel]: They're family members of Greg Hunt.

"The Court: Oh, okay.

"[Defense counsel]: Specifically, Kim Abreu, who is one of Greg's sisters and Jeff Hunt, one of Greg's brothers. With respect to the hearsay objection, Judge, at the sentencing proceeding hearsay would have been admissible."

(R. 75-76.) [Footnote 3][41]

Hunt first argues that excluding the affidavits violated the clear wording of Rule 32, Ala.R.Crim.P. Rule 32.9(a), Ala.R.Crim.P., states, in pertinent part:

"Unless the court dismisses the petition, the petitioner shall be entitled to an evidentiary hearing to determine disputed issues of material fact, with the right to subpoena material witnesses on his behalf. <u>The court in its discretion may take evidence by affidavits,</u> written interrogatories, or depositions, in lieu of an evidentiary hearing, in which event the presence of the petitioner is not required, or the court may take some evidence by such means and other evidence in an evidentiary hearing."

(Emphasis added.)

_____

[41]/    Footnote 3 reads:

"Hunt did not move for a continuance at the evidentiary hearing in order to secure the presence of the witnesses who failed to appear."

Rule 32.9(a), Ala.R.Crim.P., is discretionary, not mandatory and leaves the question of the admission of evidence by affidavits to the discretion of the trial court. This Court has upheld a circuit court's exclusion of affidavits when those affidavits were introduced for the first time at the Rule 32 evidentiary hearing. In *Hamm v. State*, 913 So.2d 460 (Ala.Crim.App.2002), we stated the rationale for this holding:

> "Rule 32.9(a), Ala.R.Crim.P., provides that a court has the discretion to take evidence by affidavit.' 'As Hamm argues on appeal, postconviction counsel was aware of Dr. [Dale] Watson and the substance of his testimony, but did not call him to testify at the hearing. If the court had admitted the affidavit, the State would not have been able to examine Dr. Watson about his education and expertise, his testing methods, the validity of his conclusions, or any other areas appropriate for cross-examination. As this Court stated in *Callahan v. State*, when addressing similar circumstances:

>> " ' "The admission of the affidavit would have denied the State its right to cross-examine the witness. Additionally, the State did not know of the existence of the affidavit until the evidentiary hearing, so the State was also deprived of the opportunity to prepare a counter affidavit."

>> " '... We cannot say the trial court abused its discretion when it refused to consider the affidavit in the absence of evidence that the affiant was actually unavailable, especially considering that the testimony was offered in such a fashion.... Presenting the testimony by affidavit prevented the State from confronting the affiant, and did not allow the trial court the opportunity to closely examine the complete testimony.... Rule 32.9(a), Ala.R.Crim.P.'

" *Callahan*, 767 So.2d 380, 403 (Ala.Crim.App.1999), *cert. denied*, 767 So.2d 405 (Ala.2000). *See also McNair v. State*, 706 So.2d 828, 838 (Ala.Crim.App.), *cert. denied*, 706 So.2d 828 (Ala.1997), *cert. denied*, 523 U.S. 1064 (1998)."

913 So.2d at 478-79 (footnote omitted). For the reasons stated in *Hamm*, the circuit court did not err in excluding the affidavits because they were introduced for the first time at the evidentiary hearing.

Hunt also argues that the circuit court erred in not admitting the testimony of cocounsel, which consisted of hearsay statements made to her by Hunt's family members. He asserts that hearsay evidence is admissible at the penalty phase of a capital-murder trial; therefore, hearsay evidence was admissible at his Rule 32 proceeding. Hunt's argument is misplaced.

The *Alabama Rules of Evidence* apply to Rule 32 proceedings. Rule 804, Ala.R.Evid., specifically excludes hearsay evidence. We addressed this identical issue in *Giles v. State*, 906 So.2d 963 (Ala.Crim.App.2004), overruled on other grounds, *Ex parte Jenkins*, [Ms. 1031313, April 8, 2005] --- So.2d ---- (Ala.1005), and stated:

> "Giles specifically argues that the circuit court erroneously failed to consider the hearsay testimony of two witnesses as to what Giles told them about a drug relationship between him and Carl Nelson.   Giles argues that the circuit court misapplied the evidentiary rules governing capital sentencing because hearsay evidence is admissible at the sentencing portion of a capital-murder trial.

> "However, what Giles fails to consider is whether the Rules of Evidence apply to Rule 32 proceedings. *See* Rule 101, Ala.R.Evid., and Rule 1101(a), Ala.R.Evid., which states, in part, 'these rules of evidence apply in all proceedings in the Courts of Alabama....'   Rule 1101(b), Ala.R.Evid., lists the proceedings exempt from application of the Rules of Evidence. Those proceedings include proceedings concerning preliminary questions of fact, grand jury proceedings, extradition proceedings, preliminary hearings in criminal cases, sentencing or probation revocation hearings, proceedings related to the issuance of a warrant of arrest, criminal summonses, or search warrants, bail proceedings, and contempt proceedings.

> "The Rules of Evidence apply to postconviction proceedings. *See DeBruce v. State*, 890 So.2d 1068 (Ala.Crim.App.2003).   Rule 804, Ala.R.Evid., specifically excludes hearsay evidence.   The circuit court correctly applied existing law and excluded the hearsay statements presented concerning an alleged drug relationship between Giles and one of the victims.   After excluding the hearsay evidence, the circuit court was left with no lawful evidence to support this contention.   Relief was correctly denied on this ground. *See DeBruce*, supra."

906 So.2d at 985-86. The circuit court committed no error in excluding the affidavits and the hearsay testimony of cocounsel.

*Hunt*, 940 So. 2d at 1049-51.

Hunt points to nothing in the record, nor any legal authority which might support his argument that the state court's finding was contrary to or an unreasonable application of federal law. Accordingly, the claim is without merit.

> 5.    **Court signed state's proposed order.**  (Doc. 1, ¶ 245.)

Hunt challenges the trial court's signing "*in toto*" of the draft order presented by the state of Alabama, "without even correcting the mis-spellings therein or reference to a wholly other defendant, and the state appellate courts erred by affirming the circuit court's entry of this boilerpate order."  (Doc. ¶ 235.)

The Court of Criminal Appeals considered this claim, and found no violation under Alabama law:

> Hunt argues that we should give no deference to the circuit court's order because, he argues, the circuit court adopted the State's proposed order in toto.
>
> "The Alabama Supreme Court and this Court have repeatedly upheld a circuit court's wholesale adoption of a proposed order prepared by one of the parties.
>
> *Coral v. State*, 900 So.2d 1274, 1288 (Ala.Crim.App.2004), overruled on other grounds, *Ex parte Jenkins*, [Ms. 1031313, April 8, 2005] _____ So.2d _____ (Ala.2005).

*Hunt*, 940 So. 2d at 1041 (some citations omitted).

Again, there is nothing in Hunt's brief that might lead to the conclusion that the state court's decision was contrary to or an unreasonable application of United States Supreme Court law. Accordingly, the claim entitles Hunt to no relief.

### VII.    MR. HUNT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT ALL PHASES OF HIS CAPITAL TRIAL, SENTENCING AND APPEAL.[42]

1.    **Governing Standards.**

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court established a national standard for judging the effectiveness of criminal defense counsel: "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.' 466 U.S. 668 (1984). There is a strong presumption that trial counsel's conduct is the result of trial strategy and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Sinclair v. Wainwright,* 814 F.2d 1516, 1519 (11th Cir. 1987), *citing Strickland v. Washington, supra* at 690. Review of counsel's conduct is to be highly deferential, *Rutherford v. Crosby*, 385 F.3d 1300 (11th Cir. 2004), and second-guessing of an attorney's performance is not permitted. *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992).

To prevail on a claim of ineffective assistance of counsel, the petitioner must establish that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland, supra.* Thus, the petitioner must show that his counsel's performance was below constitutional standards, and that he suffered prejudice as a result. Both

_____

[42]/    This section of the opinion corresponds with Section B of Hunt's habeas petition. (Doc. 1 ¶¶ 29-125.)

prongs of the *Strickland* test – deficient performance AND prejudice – must be satisfied in order for a movant to prevail on a claim of ineffective assistance of counsel. It is not necessary, however, for the court to address both prongs if one is clearly not satisfied. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Hunt challenges counsels' performance at all stages of his state court proceedings. However, as will be seen, the claims were either correctly procedurally barred by the state court due to Hunt's failure to properly raise them in accordance with the state's procedural rules, or the state court's denial on the merits was a reasonable application of clearly established federal law.

   2.   **Pre-Trial. (Doc. 1, ¶¶ 33-40.)**

       a   **Inadequate Preparation Time.**  (Doc. 1, ¶ 33.)

Hunt first argues he was denied effective assistance of counsel because: (1) his trial attorney Louis Wilkinson was not appointed until approximately three months before the scheduled trial date of May 14, 1990; and (2) his other trial counsel, Mr. Hubert Taylor, did not accept appointment until May 1, 1990, only three weeks before the scheduled trial date. It is unclear whether Hunt complains that the circumstances surrounding the actual appointment constituted ineffective assistance of counsel or that his attorneys were some how ineffective because they did not seek a continuance. (*See* Doc. 1, ¶ 33.)

To the extent he claims that the actual appointment of the attorneys shortly before trial constituted ineffective assistance of counsel, this claim is precluded because Hunt failed to fairly present his claim in the state courts; he did not raise this claim in his amended Rule 32 brief, (*See*

Vol. 13, Tab 44 ¶¶ 6-118), his appellate brief, (*See* Vol. 19, Tab 54 at iv– vi), or his certiorari

petition (*See* Vol. 21, Tab 58 at 46-88).

To the extent he claims his trial attorneys were ineffective for failing to seek a continuance,

Hunt did raise this claim in his amended Rule 32 brief, (Vol.14, Tab 48 ¶¶ 33-34), but the court

found the claim meritless:

> This claim is located in . . . paragraphs 33 and 34 . . . of Hunt's amended
> petition. Hunt contends that trial counsel did not have adequate time to prepare for
> the guilt and penalty phases of trial. Hunt fails to plead in his amended petition,
> however, what grounds trial counsel could have argued that would have required the
> Court to grant a continuance or what information or evidence trial counsel might
> have discovered if a continuance had been granted that would have caused a different
> result at the guilt or penalty phase of trial.
>
> At the evidentiary hearing, Hunt argued that the Court should find trial
> counsel's investigation inadequate based solely on a time sheet originally submitted
> by Mr. Wilkerson.[43]  He offered nothing concerning Taylor.  In fact, there was no
> evidence presented showing the actual extent or [sic] Wilkerson's and Taylor's
> investigation. Because both of Hunt's trial counsel were deceased at the time of the
> evidentiary hearing the Court presumes that their investigation was reasonable. . .
> "Prejudice cannot merely be alleged; it must be affirmatively proved." *Williams v.
> State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000).  The Court finds that Hunt "has
> not met his burden of proof imposed by Rule 32.2  ARCrP." *Boyd v. State*, 746 So.
> 2d at 385.  The Court finds that Hunt has failed to prove that trial counsel's
> performance was deficient or caused him to be prejudiced.  The allegation [is
> therefore] denied by the Court.

 (Vol. 22**,** Tab. 63 at 18-19.)

On appeal, Hunt failed to raise this specific claim; instead he raised the related claim that

counsel failed to properly prepare for trial.  (*See* Vol. 19, Tab 54 at 59-60.)  Therefore, this claim is

precluded because of Hunt's failure to exhaust.

---

[43]/   Trial counsel's name was actually Wilkinson, not Wilkerson.  (*See* Vol. 1, Tr. at 2.)

In the alternative, the Court finds that Hunt has failed to establish that the Rule 32 trial court's finding was contrary to or an unreasonable application of *Strickland*.  In addition to the facts pointed out by the Rule 32 trial court, the Court notes that Hunt's own behavior contributed to the delayed appointment of his final trial counsel.  There is evidence that Hunt made various accusations against at least three of his trial attorneys, who were ultimately forced to withdraw because of disagreements with Hunt and because Hunt acted "directly contrary to the advice of counsel."  (*See* Vol. 1, Tr. at 4-5, 10, 12-14; Vol. 6, Tr. at 1013-14, 1018) ; *Hunt*, 659 So. 2d at 937.  Of course these disagreements delayed the start of the trial.  Despite these delays, when trial counsel Wilkinson asked for a continuance because he had only recently been appointed to the case, the Court granted the motion.  (Vol. 1, Tr. at 33.)  While a second motion filed by Taylor for continuance was denied, the Court noted that most of the delay up to that point had occurred due to Hunt's inability to work with his attorneys.  Because Hunt had finally found some attorneys with whom he could work, the Court denied the last motion to continue.  (*Id*. at 61-64.)

To the extent these allegations about the short time between appointment of his trial attorneys and the start of the trial do not constitute an independent claim, but instead relate to his claim that trial counsel did not conduct an adequate pre-trial investigation, that claim is addressed below.

### b.   **Inadequate Compensation**.  (Doc. 1, ¶ 34.)

Hunt argues he was denied effective assistance of counsel because the State of Alabama provides "shockingly low compensation" for capital defense attorneys appointed to defend the indigent.  At the time of Hunt's trial, Alabama law provided a cap of $1,000 for out-of-court work for each phase of the capital trial, based on a rate of $20 per hour or no more than 50 hours of out-of-

court work.  (Doc. 1, ¶ 34.)   Following Hunt's conviction, the law was amended and the fee cap for

capital trials was removed.

   Hunt raised this claim in his Rule 32 amended brief, (Vol.14, Tab 48 ¶¶ 10-12 ), but the court

found it had no merit:

> This claim is located in . . .  paragraphs 10 - 12 . . . of Hunt's amended
> petition.  Hunt fails to identify a specific instance where his trial counsel was
> ineffective due to insufficient funding.  Moreover, Hunt presented no evidence at his
> evidentiary hearing that would establish he was prejudiced due to alleged insufficient
> funding for his trial.  "Prejudice cannot merely be alleged; it must be affirmatively
> proved."  *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000).  The Court
> finds that Hunt "has not met his burden of proof imposed by Rule 32.2 ARCrP."
> *Boyd v. State*, 746 So. 2d at 385.  The Court finds that Hunt has failed to prove that
> trial counsel's performance was deficient or caused him to be prejudiced.  The
> allegation [is therefore] denied by the Court.

(Vol. 22, Tab. 63 at 10.)[44]

The  Alabama  Court  of  Criminal  Appeals  upheld  the  trial  court's  decision,  finding  Hunt  had

presented no evidence in support of this claim at the evidentiary hearing:

> This Court in *Bui v. State*, 717 So. 2d 6 (Ala.Crim.App.1997), specifically
> rejected the same claim as Hunt now makes.  In *Bui*, we stated:
>
> > "[W]e reject the notion that Alabama's statutory scheme for
> > compensating attorneys in capital cases, in and of itself, denies a
> > defendant effective representation.  Although the burden of pleading
> > and proof is on the appellant, Rules 32.3 and 32.6(b), Ala.R.Crim.P.,
> > he alleged no facts in his petition and presented no evidence at the
> > hearing to support his claim that the compensation scheme in §
> > 15-12-21(d) caused is counsel's performance to fall 'outside the
> > wide range of professionally competent assistance.' *Strickland*, 466 U.S.
> > at 690, 104 S.Ct. at 2066.  Because the appellant has not shown 'by
> > a preponderance of the evidence the facts necessary to entitle [him]
> > to relief,' Rule 32.3, we find no merit in his claim."

---

[44]/  "The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts
necessary to entitle the petitioner to relief."  Ala. R. Crim. P. 32.3.

717 So.2d at 15-16 (footnote omitted).  The circuit court correctly denied relief on this claim.

*Hunt*, 940 So. 2d at 106-61.

Hunt has failed to establish the state court's decision was contrary to or an unreasonable application of *Strickland*.  Inadequate funding of counsel appointed to represent capital defendants, as unfair as it might be seem, does not itself amount to ineffective assistance of counsel *unless* it contributes to actual errors or shortcomings in the performance of counsel:

> A convicted defendant making a claim of ineffective assistance must identify <u>the acts or omissions</u> of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, <u>the identified acts or omissions</u> were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Strickland***,** 466 U.S. 668 at 690 (emphasis added).  Thus, the allegation that compensation caps hindered the ability of counsel to represent Hunt has meaning only by reference to specific errors or shortcomings purportedly caused by inadequate defense funding.  Consequently, as a claim of ineffectiveness divorced from analysis of particular errors or omissions, the assertion that the State of Alabama provides inadequate compensation for capital defense counsel fails to state a basis for habeas relief, and is due to be denied.

> c. **Inadequate Pre-Trial Investigation.**  (Doc. 1, ¶¶ 35-43.)

Hunt argues that his trial attorneys were ineffective because they "conducted virtually no investigation before or during" the trial.  (*Id.* ¶ 35.)  He notes that Wilkinson billed less than the full amount permitted by statute, only 45 hours for out-of-court preparation time.  He also protests that his attorneys did not interview his parents, family members, friends, or employer, and did not obtain

school or employment records, nor seek any type of evaluation of Hunt to determine how these circumstances may have been connected with the crime.  With respect to Jim Bentley, the investigator Wilkinson hired, Hunt claims Bentley limited his investigation to a "few fact witnesses." (*Id* ¶ 36.)  Because of these alleged inadequacies, his attorneys failed to discover information relating to his abusive childhood, including observing the abuse of his sister, as well as information about his emotional difficulties, drug and alcohol abuse.[45]   (*Id*. ¶ 37.)

Additionally, he complains that his trial attorneys did not visit the crime scene or interview witnesses who testified at trial, nor did they interview Stephen Cain and Jimmy Cain who were held in the same jail as Hunt and "could have testified about the prosecution's efforts to obtain a 'jailhouse informant' to testify against Hunt." (Doc. 1, ¶ 38.)  Hunt also complains that his trial counsel did not "obtain written statements given to the prosecution by Stephen Cain, describing the prosecution's efforts to solicit testimony against Hunt, and by Loretta Hunt Martin, the defendant's sister, who testified against him at trial.  Hunt argues that this failure was inexplicable, as the statements were listed on a discovery log and thus known to trial counsel, and could have provided a basis for impeachment of Ms. Martin and of the prosecution's eventual jailhouse informant, James Sanders." (*Id*. ¶ 39.)  Although his attorneys called his mother, Ruby Savage as a witness, Hunt complains that they did so without having interviewed her or properly preparing her to testify. (Doc.

---

[45]/    Here Hunt recounts that his attorneys would have learned

> that Mr. Hunt was born into a family with a generations-long pattern of sexual and other physical abuse, alcoholism, domestic violence and psychiatric problems, and suffered serious physical abuse in his home such that he and his siblings were made wards of the state.  Living in group children's homes where he was also beaten, Mr. Hunt began abusing drugs during childhood, continuing the drug and alcohol abuse after he was returned from the group homes back to his physically and sexually abusive family.

(Doc. 1, ¶ 37.)

1, ¶ 42.)  "Because trial counsel never conducted a proper investigation, they could not have made a strategic decision about whether and how to present Hunt's defense to the jury and trial court. Their failure to investigate doomed Mr. Hunt, as it left trial counsel with no basis on which to make a reasonable determination of what evidence should be presented to the jury and trial court."  (*Id.* ¶ 40.)[46]

The Rule 32 trial court rejected this claim, (Vol. 23, Tab 63 at 10-11), and the Court of Criminal Appeals upheld the denial finding:

> Hunt argues that counsel failed to investigate and prepare for trial. Specifically, Hunt argues that counsel failed to visit the crime scene, failed to interview certain witnesses, and failed to prepare Hunt's mother to testify. [Footnote 11] [47]

> The circuit court stated the following concerning this claim:

> "The Court of Criminal Appeals has held that:

> " 'Claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.'

> "*Thomas v. State*, 766 So.2d 860, 892 (Ala.Crim.App.1998), citing, *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir.1993).  Hunt fails to plead in his amended petition what beneficial information trial counsel could have discovered from viewing the crime scene or interviewing the named witnesses.  Hunt also fails to plead any facts in his amended petition indicating how trial counsel's preparation of his mother was deficient or what additional information trial counsel could have elicited from her at trial....

---

[46]   Hunt also argues that trial counsel failed to adequately argue for "adjournments necessary to give them time to conduct an investigation and prepare."  (Doc. 1, ¶ 41.)  This argument was addressed above by the Court in Section VI.(2)(a) entitled "Inadequate Preparation Time."

[47]    Footnote 11 reads: "Hunt's mother testified at the guilt phase and said that Hunt had a difficult childhood."

"In the alternative, Hunt presented no evidence at his evidentiary hearing that would establish that he was prejudiced because trial counsel did not visit the crime scene or interview other witnesses, including Hunt's mother.  'Prejudice cannot merely be alleged; it must be affirmatively proved.'  *Williams v. State*, 783 So.2d 108, 119 (Ala.Crim.App.2000).  The Court finds that Hunt 'has not met [his] burden [of proof] imposed by rule 32.3, [ARCrP]'.  *Boyd v. State*, 746 So.2d at 385."

(C.R. 806-07.)

Hunt introduced at the Rule 32 proceedings Louis Wilkinson's attorney-fee declaration. Wilkinson billed the state for 80 hours of in-court time and for 45 hours of out-of-court time.  Taylor's fee declaration was not introduced.

In support of this claim of ineffective assistance of counsel Hunt relied exclusively on the fact that Wilkinson's fee declaration showed that he worked 45 hours out-of-court on the case and that his itemization contained no indication that he interviewed any witnesses. However, what Hunt fails to consider is that before trial Hunt's attorneys obtained the services of private investigators Jim Bentley and Jean Isaacs. Taylor submitted the investigators' bill to the circuit court.  The total bill detailed 138 hours of investigator time and 38 hours of travel time.  The bill also showed that the investigators obtained statements from 12 witnesses.  Neither of the investigators was called to testify at the Rule 32 hearing.

At the time of Hunt's trial the amount attorneys representing indigents could collect was capped by statute. It is this Court's experience that when statutory limitations are imposed on the amount that an attorney may bill, many attorneys will cease itemizing their work when they have reached the statutory limit.  A petitioner cannot satisfy the requirements of *Strickland* by merely submitting a copy of a bill for services submitted by one of his two trial attorneys.  Because Hunt presented no other evidence to support this claim, we hold that Hunt failed to meet his burden of proving that counsel was ineffective for failing to investigate. *See* Rule 32.3, Ala.R.Crim.P.

Moreover, we have reviewed the transcript of the trial proceedings and see no evidence that counsel was unprepared.  Indeed, the opposite is true.  The record shows that counsel put on a vigorous defense, thoroughly challenging the State's evidence, even though the evidence against Hunt was both overwhelming and horrific.  Hunt failed to satisfy the *Strickland* test and relief was properly denied on this claim.

*Hunt*, 940 So. 2d at 1061-62.

Hunt is not entitled to habeas relief on this claim because he failed to establish that the state court's decision was contrary to or an unreasonable application of *Strickland*. Accordingly, Hunt is entitled to no relief.[48]

**3.      Jury Selection & Other Pre-Trial Matters.  (Doc. 1, ¶¶ 43 - 48.)[49]**

**a.      Failure to Request Venue Change.**  (Doc. 1, ¶¶ 43-44; Reply at 38-50.)

Hunt argues that his trial attorneys failed to adequately pursue and argue a motion for a change of venue.  Hunt claims his case "received significant prejudicial media coverage in the local press, including stories with supposed details of the crime, inflammatory statements by the District Attorney about Mr. Hunt, and allegations that Mr. Hunt was the suspect in another violent crime in the community."  (Doc. 1 ¶ 43.)  Hunt concedes that trial counsel moved for a venue change, but asserts that counsel made no effort to meet its burden of proof, did not request an evidentiary hearing and failed to submit the proper newspaper evidence showing ample adverse publicity.  (Doc. 1, ¶ 43.)  Additionally, Hunt contends trial counsel failed to renew its motion during or after voir dire, despite admissions by jurors that "they had been influenced by the pre-trial coverage or had personal

---

[48]      In his Rule 32 appellate rehearing brief, Hunt claims that Taylor's fee declaration could not be located in the court's files and Hunt's Rule 32 counsel were unable to obtain files maintained by the deceased attorneys. (Vol. 20, Tab. 57 at 37; *See* Vol. 17, Tab 51 at 6-10, 21-22.)  Such information, however, does not alter this Court's analysis of his claim.  First, with respect to non-discovered evidence regarding mitigating circumstances, the Appeals Court reviewed the additional mitigation evidence Hunt complains his attorneys did not discover and the Court found that the death sentence was still appropriate.  *See Hunt*, 940 So. 2d at 1070.

Second, with respect to the allegation that counsel failed to investigate the witness statements regarding Cain and Loretta Hunt Martin, Hunt failed to bring forth any witnesses or documentary evidence to substantiate his claim that the prosecution attempted to obtain fabricated testimony, that Martin had a relationship with a prosecution investigator, or that Martin had applied for a job with the prosecution prior to or around the time of her testimony.

[49]      Although this Section in Hunt's brief included paragraphs 41-42, the Court addressed the claims made in those two paragraph in the above discussion on "Inadequate Pre-trial Investigation."

knowledge of the crime from the victim's family members or friends."[50] (*Id*. ¶ 44.) Hunt argues that trial counsel's failure in this regard was "wholly unreasonable" given the Rule 32 trial judge's comment: "I missed all of that, apparently.  If that were all correct, there would have been a change of venue without any question."  (Vol. 18 at 96.)[51]

Citing the trial court's opinion, the Court of Criminal Appeals rejected Hunt's claim:

The circuit court made the following findings on this claim:

> "The allegations in part II.A.(vii) [paragraphs 26-29] of Hunt's amended petition are no more specific than the allegations in Hunt's original petition.  Hunt fails to identify any juror by name or indicate how their alleged pre-trial knowledge of the facts of his case had any effect on the outcome of his trial.

> "At his evidentiary hearing, Hunt submitted newspaper articles in an attempt to support his allegation that trial counsel was ineffective for failing to secure a change of venue.  After reviewing the newspaper articles, the Court finds that they were either factual in nature or were published after Hunts's trial and, thus, would not have supported a change of venue. *See Hammonds v. State*, 777 So.2d 750, 769-770 (Ala. Crim. App.1999).  Hunt failed to prove that any juror that sat on his petit jury was adversely effected by pre-trial publicity.  'Prejudice cannot merely be alleged; it must be affirmatively proved.' *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App.2000).  The Court finds that Hunt 'has not met [his] burden [of proof] imposed by Rule 32.3, [ARCrP].' *Boyd v. State*, 746 So. 2d at 385.  The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. The allegation in Part II.A.(vii) of Hunt's petition is hereby denied by the Court."

(C.R. 812-13.)

---

50/    The record reflects that the trial court did grant some of Hunt's challenges for cause. (*See* Vol. 1, Tr at 92-199.) Moreover, after conclusion of *voir dire*, Hunt's trial counsel did request a change of venue and moved to quash the jury venire due to the publicity about the case, juror knowledge of facts not discussed in the media, as well as friendships between venirepersons and the victim's family.  (Vol. 2, Tr. at 202-03.) Thus, Hunt's recitation of the facts is not entirely supported by the record.

51/    In Section V(B) of this opinion, the discussion surrounding this comment is quoted and Hunt's substantive venue change motion is addressed.

To support his assertion, Hunt introduced and admitted at the evidentiary hearing copies of 25 newspaper articles. Some of the articles were published after Hunt's trial. Hunt offered no other evidence to support this claim. "It is well established in Alabama . . . that the existence of pretrial publicity, even if extensive, does not in and of itself constitute a ground for changing venue . . . ." *Ex parte Fowler*, 574 So. 2d 745, 747 (Ala.1990). <u>Hunt made no attempt to introduce the voir dire examination of the prospective jurors nor any statements from any jurors.</u> Hunt failed to meet his burden of proof in regard to this claim.

*Hunt*, 940 So. 2d at 1062-63 (emphasis added).

Hunt first argues that the state court's ruling was contrary to and an unreasonable application of the facts in light of the evidence presented in the form of newspaper articles and in light of the evidence found in the trial record. (Reply at 38-39.) He challenges the state court's finding that he failed to "introduce the voir dire examination of the prospective jurors nor any statements from any jurors." *Hunt*, 940 So. 2d at 63. Hunt asserts that during the Rule 32 hearing, the parties stipulated that the entire trial and appellate record, including *voir dire*, would be admitted into evidence. (*See* Reply at 39.) Hunt supports this assertion by citing to pages 154 through 155 of the Rule 32 hearing transcript.[52] (Reply at 39)(citing Vol. 18 at 154-55.)

Hunt also notes that he "reminded" the court at the Rule 32 hearing "of the type of statements made by numerous prospective jurors regarding knowledge of the case." (Reply at 39.)[53] Additionally, he notes that he submitted numerous newspaper articles, and quotes several of them. (Reply at 39-40.)[54]

---

[52]   The Court could find no mention of such a stipulation on those pages.

[53]   Counsel's comments to the trial court are quoted above in Section V(B) of this opinion.

[54]   For example: "Lawmen Capture Man Suspected of Cordova Slaying"; Hunt was a "suspect in a violent incident in April where a 15-year-old Cordova youth was nearly beaten to death, but no charges have been filed in that case."; Hunt was a suspect in the most "gruesome beating" of a woman the District Attorney had seen "in fourteen years"; "This man [Hunt] left his calling [card] there - he left his fingerprints there [at the murder scene]"; "Greg Hunt is a dangerous criminal." (Reply at 40-41.)

Even if a stipulation was made to introduce the entire trial court record at the Rule 32 hearing, Hunt has failed to establish that the state court's decision was an unreasonable application of the facts in light of the evidence. As an initial matter, "[i]t is well established in Alabama . . . that the existence of pretrial publicity, even if extensive, does not in and of itself constitute a ground for changing venue . . . ." *Ex parte Fowler*, 574 So. 2d 745, 747 (Ala. 1990). Thus, Hunt's submission of the newspaper articles alone did not support his claim. Yet, in both his brief and at the hearing, Hunt failed to identify any particular jurors or direct the Rule 32 trial court to any specific testimony that might have supported his claim. (*See* Vol. 14, Tab 48 ¶¶ 26-29; Vol. 18 at 94-97).[55] Instead, in his Reply Brief before the Court Hunt provides for the first time specific quotations from the *voir dire* examination with citations to the record. (*See* Reply at 40-50.) Thus, the record supports the factual finding by the Court regarding Hunt's lack of evidentiary support for his claim. *See* Ala. R. Crim. P. 32.6. ("The petition must contain a clear and specific statement of the grounds upon which

---

[55] In Hunt's *pro se* Rule 32 petition, (Vol. 13, Tab. 44, ¶ 16, 98), and in his Amended Rule 32 petition, (Vol. 14, Tab. 48, ¶¶ 26-29), his ineffective assistance of counsel venue claims were very general, without any specific references or quotes, regarding the knowledge of the jurors and the pre-trial publicity. For example, in his *pro se* petition he alleged, without citation to the record or any exhibits:

> "Mr. Hunt's capital trial was held in Walker County where both the written and broadcast media extensively covered the tragic murder, the investigation, and Mr. Hunt's trial. The trial court's failure to order a change of venue violated state and federal law and denied Mr. Hunt his right to a fair sentencing hearing by an impartial jury."

(Vol. 13, Tab. 44, ¶¶ 16, 98.)

In his Amended Rule 32 petition Hunt alleged, again without citation to the record or any exhibits: Trial counsel failed to proffer . . . published reports . . . which contained details of the gruesomeness of the crime, the published inflammatory statements of the District Attorney about Mr. Hunt and references to his prior criminal record, or published law enforcement allegations that Mr. Hunt was the suspect in another violent crime in the community.

Defense counsel failed to renew Mr. Hunt's motion for a change of venue throughout jury selection as answers from the potential jurors demonstrated their exposure to negative publicity and their independent knowledge of the facts of this case.

(Vol. 14, Tab. 48, ¶¶ 28-29.)

relief is sought, including full disclosure of the factual basis of those grounds."); 32.3 ("[P]etitioner shall have the burden of pleading and proving . . . the facts necessary to entitle the petitioner to relief.").[56]

Relying on the trial judge's comment that "[I]f that were all correct, there would have been a change of venue without any question,"  Hunt next contends that the state court's finding was an unreasonable application of *Strickland*.   (Reply at 44) (citing Vol. 18 at 96) (emphasis added by petitioner.)   Hunt's reliance on this comment is misplaced for several reasons.   The trial court's comments were in response to the limited information Hunt provided about alleged "juror" knowledge regarding the case.   Hunt failed to mention to the court he was discussing knowledge by members of the "venire" and the challenged venirepersons never actually served on his jury.[57]  (Vol. 18 at 94-97.)   Thus, as Respondent points out,  Hunt failed to provide "any" proof that the outcome of his case was affected by pre-trial publicity.   (Answer ¶ 59).   *See Heath v. Jones*, 941 F.2d 1126, 1133 (11th Cir.1991) (holding that habeas petitioner can only raise the trial court's denials of challenges for cause of those venire members who eventually sit on the jury).

---

56/   The Court notes that Hunt did quote excerpts from newspaper articles, spell out specific juror names and testimony, as well as provide citations to the record,  in the substantive venue section of his amended Rule 32 Petition.  (*See id*. ¶¶ 315-19.)  However, these citations, in the substantive section of his brief, did meet his burden of proof with respect to his ineffective assistance of counsel venue claim, particularly in a 140 page brief with no table of contents.  *See* Ala. R. Crim. P. 32.3.

57/    In his habeas petition and reply brief, Hunt complains about the following jurors: Bankston, Benton, Childress, Davis, Duncan, Freeman, Hyde, Johnson, McNeal, Norris, Parra, Robbins, Thomas, Tidwell, Walden, Watson, and Wood.  (*See* Doc. 1, ¶¶ 131;  Reply at 41-44).  None of these jurors are found on the final jury list.  (Vol. 8 at 15) (*See also*, Vol. 1, Tr. at 178 - 200.)

For the sake of clarity, the Court notes that on page 42 of his Reply brief, Hunt lists "Lane" as the name of a problematic juror and cites to page 128 of the trial transcript; however, there was no juror named Lane, rather Childress is the juror testifying on that page.  (Vol. 1, Tr. at 127-28.).  Additionally, although Hunt complains about juror Robbins and a "Robbins" appears on the final jury list as an alternate, (*See* Vol. 8 at 15), the alternate Robbins is a male with the first name of "Mitchell," while Hunt complains about a female: Debra Robbins.  (*See* Reply at 43) (citing Vol. 1, Tr. at 156-57.)

Second, the *trial judge's* comment does not support a finding that the denial of the claim by the Alabama Court of Criminal Appeals was contrary to *Strickland.* The trial judge's comment does not control the instant proceedings, rather, the Court is obligated to give deference to the Appeal Court's determination that Hunt failed to meet the *Strickland* standard. Inasmuch as Hunt fails to direct the Court to any precedent which might indicate the state court's decision was an unreasonable application of or contrary to Supreme Court law, Hunt's claim is due to be denied consistent with *Strickland.*

> **b.     Inadequate Voir Dire: Failure to Life Qualify Jurors.**
> (Doc. 1, ¶¶ 45; Reply at 45.)

Hunt complains that his trial counsel did not "'life-qualify' the jury by identifying prospective jurors who would be biased in favor of capital punishment or would automatically sentence Mr. Hunt to death." (Doc. 1,¶ 45.) He faults his trial counsel for failing to object to the exclusion, for cause, of prospective jurors who expressed reservations about imposing a death sentence, but stated they could render an impartial guilt phase verdict.

The Court of Criminal Appeals rejected these arguments as follows:

> Hunt argues that counsel" voir dire examination of the prospective jurors was inadequate because, he argues, counsel did not "life qualify" the prospective jurors. [Footnote 12].[58] Hunt made the following claim in his Rule 32 petition:
>
> > "Trial counsel failed to conduct sufficient and adequate voir dire to ensure that an impartial jury would be impaneled. Voir dire requires sufficient latitude for the intelligent exercise by an accused of his peremptory challenges. ...At least ten prospective jurors were exposed to prejudicial media coverage of Mr. Hunt's case and several more had extensive personal knowledge of the facts. By asking limited and leading questions, trial counsel failed to elicit anything but conclusory

---

[58]     Footnote 12 reads: "To 'life qualify' prospective jurors a judge asks the jurors whether they would automatically vote for the death penalty. *See Morgan v. Illinois*, 504 U.S. 719 (1992)."

statements from the veniremembers about their abilities to lay aside their opinions formed from pretrial publicity or prior knowledge of the case.  Mere assertions by jurors that they can be impartial are inadequate to establish that they can in fact be impartial.... Counsel's failure to conduct an adequate voir dire deprived Mr. Hunt of his rights to a fair trial by an impartial jury."

(C.R. 236.)

The Alabama Supreme Court held in *Ex parte Brown*, 686 So.2d 409 (Ala.1996), that the failure to life qualify prospective jurors does not constitute plain error if no prospective juror expressed strong views in favor of the death penalty. Hunt presented no evidence as to any responses offered by prospective jurors during voir dire. Hunt failed to meet his burden of proof.

*Hunt*, 940 So. 2d at 1063-64.[59]

Respondent argues that Hunt's claim is due to be dismissed because he failed to argue how *Strickland* was misapplied.  (Answer ¶ 62.)   In his reply brief, Hunt argues that the state court's analysis "begs the question."  (Reply at 46.)  Specifically, he argues that the court found he failed to present evidence that any of the prospective jurors offered pro-death penalty responses.  He explains, "of course there were no pro-death-penalty responses given by jurors: Mr. Hunt's trial counsel never asked the question and never requested the trial court to make such an inquiry. Because trial counsel neither asked the questions themselves nor requested the court to ask the questions, no answers were given.  Thus, to say the record is void of 'any responses offered by prospective jurors during voir dire,' *Hunt*, 940 So. 2d at 1064, does not defeat the claim; it proves it."  (Reply at 46.)  Finally, citing *Bracewell v. State*, 506 So. 2d 354 (Ala. Crim. Apps. 1986), Hunt contends that prior to the opinion in his case, the Appeals Court had already held that jurors "should

---

[59]   Although the Appeals Court inadvertently quotes the section of Hunt's amended Rule 32 trial court brief which addressed his claim that trial counsel's *voir dire* was ineffective with respect to pre-trial publicity exposure, the ultimate decision on the life qualification issue satisfies the *Strickland* standard.  Hunt did not raise the claim regarding attorney *voir dire* over pre-trial publicity in his Rule 32 appellate brief.  (*See* Vol. 19, Tab 54 at 64-65.)

be 'life-qualified' in capital murder trials." (Reply at 46.)   Thus, he contends, trial counsel could

not have had a tactical reason for failing to "life qualify," making trial counsel's performance both

deficient and prejudicial under *Strickland*.  (*Id*.)

Hunt's reliance on *Bracewell* does not meet his burden to establish "cause and prejudice"

under *Strickland*.  The *Bracewell* court held that a venire should be "life-qualified," "upon proper

request."  506 So. 2d at 358.  However, the failure of the Court to *sua sponte* "life-qualify" is not

plain error.  *Id*.  Thus, Alabama law does not  "require" "life-qualification" of jurors, nor does

Alabama law provide that the failure of defense counsel to request such a qualification amounts to

deficient representation.  Rather, as the Court of Appeals noted in Hunt's case,

> [t]he Alabama Supreme Court held in *Ex parte Brown*, 686 So.2d 409 (Ala.1996),
> that the failure to life qualify prospective jurors does not constitute plain error if no
> prospective juror expressed strong views in favor of the death penalty.

*Hunt*, 940 So. 2d at 1064.  Despite this Alabama precedent, Hunt fails to explain what about the

Appeals Court decision in his case is contrary to or an unreasonable application of *Strickland* or

other Supreme Court law.  Consequently, Hunt's claim is due to be dismissed.

        c.      **Inadequate Voir Dire: Failure To Properly Question Jurors Who "Admitted" They Had Been Influenced By Pre-trial Coverage or Had Personal Knowledge."** (Doc. 1 ¶ 45.)

Hunt argues that his trial counsel were ineffective because they asked "limited and leading

questions of jurors who admitted they had been influenced by pre-trial coverage or had personal

knowledge of the case."  (Doc. 1 ¶ 45.)  Because of this failure, Hunt contends his attorneys failed

to adduce sufficient information for the intelligent exercise of peremptory challenges, and thus failed

to ensure that an impartial jury would be impaneled.  (*Id*.)

The Rule 32 trial court rejected this claim:

> This claim is located in . . . paragraph 35 . . . of Hunt's amended petition. Hunt contends that potential jurors had been exposed to prejudicial media coverage and that others had personal knowledge of the facts of his case. Hunt fails, however to identify in his amended petition any juror that sat on his petit jury whose verdict was improperly influenced in any way by alleged pre-trial knowledge of the facts of his case.
>
> In the alternative, Hunt presented no evidence at his evidentiary hearing establishing that he was prejudiced because members of his petit jury were improperly influenced by pre-trial media coverage or because they had personal knowledge of his case. "Prejudice cannot merely be alleged; it must be affirmatively proved." *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim app. 2000). The Court finds that Hunt "has failed to met his burden of proof imposed by Rule 32.3 [ARCrP]". *Boyd v. State*, 746 So. 2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. Th[is] allegation . . . is hereby denied by the Court.

(Vol. 22, Tab 63 at 19-20.)

In his Rule 32 appellate brief, Hunt did not raise this claim. (*See* Vol. 19, Tab 54 at 64-65.) Instead, he challenged trial counsel's failure to adequately question the jurors on the "life-qualification" issue. (*See id*.) As such, Hunt is not entitled to habeas relief because he failed to fairly present this pre-trial publicity *voir dire* claim to the state court for adjudication. *See Snowden*, 135 F.3d at 735 (Petitioner must "fairly present federal claims to the state court in order to give the State the opportunity to pass upon and correct alleged violations of [Hunt's] federal rights.").

Alternatively, Hunt is not entitled to habeas relief on his claims because he has failed to establish that the state court's decision was contrary to or an unreasonable application of *Strickland*. As discussed previously, a "[c]laim that the jury was not impartial . . . must focus not on the [biased juror], but on the jurors who ultimately sat." *See Ross*, 487 U.S. at 86**;** *Heath v. Jones*, 941 F.2d

1126, 1133 (11th Cir.1991) ("Petitioner can raise only the trial court's denials of [Petitioner's]

challenges for cause of those veniremembers who eventually sat on the jury.")

> **d.    Failure to move to quash the grand and petit jury pools because they did not represent a cross-section of the community.** (Doc. 1, ¶ 46.)

Hunt asserts that trial counsel were ineffective for failing to present and adequately argue

motions to quash either the grand jury, which contained no Blacks, or the petit jury pool which

contained only five Blacks, and asserts those ratios "clearly" indicate an absence of cross-section

representation.  (Doc. 1 ¶ 46.)  As with his substantive claim, Hunt relies on *Duren v. Missouri*, 439

U.S. 357 (1978), *Taylor v. Louisiana*, 419 U.S. 532 (1975), and *Thiel v. Southern Pacific Co.*, 329

U.S. 217 (1948).

The Rule 32 trial court denied the claim, finding:

> The claim is located . . . in paragraph 36 . . . of Hunt's amended petition. Hunt contends that trial counsel did not present statistical evidence concerning the population of Walker County or the number of blacks on the venire in relation to the number of blacks in the community.  Hunt failed to plead in his original, or his amended petition what these statistics or ratios would have shown, nor did he argue how he was prejudiced.

> In the alternative, Hunt presented no statistical information at his evidentiary hearing about the population of Walker County or the number of blacks on his jury venire establishing that his indictment should have been quashed. . . .  The Court finds that Hunt "has not met his burden of proof imposed by Rule 32.3, ARCrP." *Boyd v. State*, 746 So. 2d at 385.  The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudice [under *Strickland*].

(Vol. 22, Tab. 62 at 20-21.)

Although Hunt raised this claim in his Rule 32 appellate brief, (Vol. 19, Tab 54 at 62-63),

it appears that the Appeals Court did not address his ineffective assistance of counsel cross-section

claim.  *See Hunt*, 940 So. 2d at 1060-1071. Thus, as Respondent points out, deference must be given to the Rule 32 trial court's opinion.  (Answer ¶ 64.).

Respondent correctly argues that Hunt has failed to establish a constitutional violation under *Strickland* or *Duren,* citing to Eleventh Circuit law which provides:

> [A] criminal defendant enjoys a Sixth Amendment right to an impartial jury trial, which includes a right to the presence of a fair cross-section of the community on venire panels, or lists from which grand and petit juries are drawn. *Taylor v. Louisiana*, 419 U.S. 522, 526-29, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (petit jury); *United States v. Terry*, 60 F.3d 1541, 1544 (11th Cir.1995) (grand and petit juries). To show a *prima facie* violation of this right, a defendant must prove:
>
> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Terry*, 60 F.3d at 1544.

(Answer ¶ 65) (citing *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005)).

Respondent points out that Alabama courts apply the same standard.  (Answer ¶ 65) (citing *See Wimberly v. State*, 934 So. 2d 411 (Ala. Crim. App. 2005)(applying the Duren standard to hold that a defendant failed to prove a *prima facie* "unfair cross-section" claim)).

Review of this claim establishes that Hunt has failed to show how the state court's ruling was contrary to or an unreasonable application of *Strickland* or *Duren*.  Hunt presented no evidence that the Walker County jury "selection procedure is susceptible to abuse or is not racially neutral."  *See Locke v. State*, 631 So. 2d 1062, 1063-64 (Ala. Cr. App. 1993) (citing *Johnson v. Puckett*, 929 F.2d

1067, 1071-72 (5th Cir. 1991)).  As such, his attorneys could not have been deficient, and he is not

entitled to habeas relief on his ineffective assistance of counsel cross-section claim.

> **e.** **Failure to Object to Victim of the Father Seated at the Table Next to the District Attorney.**  (Doc. 1, ¶ 47.)

Hunt contends trial counsel were ineffective for failing to object to the presence of the

victim's father, W. O. Sanders, seated next to the District Attorney during jury selection and opening

statements.  (Doc. 1, ¶ 47.)

Hunt raised this claim in his amended Rule 32 brief, but the court rejected it because "Hunt

presented no evidence at his evidentiary hearing that would establish trial counsel's failure to object

caused him to be prejudiced.  Thus Hunt failed to meet his burden of establishing that his attorneys

were deficient or caused him to be prejudiced. (Vol. 22, Tab. 63 at 21-22).

The Court of Criminal Appeals upheld:

> The circuit court's finding that Hunt failed to meet his burden of proof in regard to this claim is supported by the record.  At the Rule 32 evidentiary hearing, Hunt presented little evidence in support of his numerous claims of ineffective assistance of counsel.  No witnesses testified at the Rule 32 hearing, and little demonstrative evidence was introduced.  At the evidentiary hearing counsel read portions of his amended Rule 32 petition to the circuit court.  Hunt made no attempt to satisfy his burden of proof under Rule 32.3, Ala. R. Crim. P., or to satisfy the requirements set out by the United States Supreme Court in *Strickland*.

*Hunt*, 940 So. 2d at 1055.[60]

The state court properly applied the *Strickland* standard.  Hunt failed to argue how he was

prejudiced, or how his attorneys could have successfully excluded the victim's father in the face of

---

[60]    In the opinion, the Appeals Court begins by mentioning Hunt's ineffective assistance of counsel claim regarding photographic evidence.  *Hunt*, 940 So. 2d at 1055; (*See* Vol. 14, Tab 48 ¶ 101).  The Appeals Court then quotes Hunt's claim regarding W. O. Sanders sitting at the prosecution table.  (*See* Vol. 14, Tab 48 ¶ 37.)  The Appeals Court also quotes the lower court's holding on the W. O. Sanders claim.  (*See* Vol. 22, Tab. 63 at 21-22.)  Despite this mix-up, the Court's decision still applies to the W. O. Sanders claim, given the citation to the lower court decision on said claim.

Alabama law, which specifically allows the victim's family to sit at the prosecution table throughout the proceedings. (citing Ala. Code § 5-14-56; Ala. R. Evid. 615); *See* Ala. Code § 15-14-54).  This claim is due to be denied.

      **f.**     **Failure to Adequately Argue a Motion to Suppress the Evidence Used Against Hunt on the Grounds That His Arrest Warrant Was Unsupported by the Factual Allegations in Violation of Fourth Amendment Rights.**  (Doc. 1, ¶ 48; Reply at 47-50.)

Hunt argues trial counsel were ineffective because they did not adequately argue a motion to suppress the physical evidence on the grounds that his arrest warrant was unsupported by factual allegations. (Doc. 1, ¶ 48).  The Rule 32 trial court rejected this claim:

> This claim is located in . . . in paragraphs 18 and 19 . . . of Hunt's amended petition. Hunt raised the underlying substantive issue on direct appeal.  On direct appeal, the Court of Criminal Appeals held that the "record does indicate that there was probable cause for [Hunt's] arrest and that his arrest was pursuant to a warrant."

(Vol. 22, Tab 63 at 12-13) (citing *Hunt v. State*, 659 So. 2d 933, 946 (Ala. Crim. App. 1994)).

Relying on *Williams v. State*, 783 So. 2d 108, 133 (Ala. Crim. App. 2000), the Rule 32 trial court held that Hunt's ineffective assistance of counsel claim necessarily failed because of the state court's substantive finding: "A finding of no manifest injustice under the 'plain error' standard on direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in *Strickland*. . . ."  (Vol. 22, Tab 63 at 13.)

Although Respondent argues that Hunt failed to raise this claim in his Rule 32 appellate brief, it was addressed by the Alabama Court of Criminal Appeals.  *See Hunt*, 940 So. 2d at 1073-75.  In that rehearing opinion, the Appeals Court re-examined the issue of whether a finding of no plain error on direct appeal is sufficient, alone, to establish that the Respondent fails to meet the *Strickland* prejudice standard:

In Part II of [today's] opinion we addressed Hunt's claim that the circuit court applied the wrong standard when evaluating his claims of ineffective assistance of counsel. We specifically noted that the circuit court applied the law applicable at the time it concluded that a finding of no plain error by this Court on direct appeal would preclude a finding of prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).

While this case was pending on rehearing, the Alabama Supreme Court released *Ex parte Taylor*, [Ms. 1040186, September *1074 30, 2005] --- So. 2d ---- (Ala.2005). The Supreme Court resolved the issue of whether a finding of plain error precludes a finding of prejudice and stated:

> "Although it may be the rare case in which the application of the plain-error test and the prejudice prong of the *Strickland* test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under *Strickland* to sustain a claim of ineffective assistance of counsel. In determining whether to grant a Rule 32 petitioner relief on an ineffective-assistance claim, a court must examine both the plain-error and prejudice standards of review."

In light of the Supreme Court's decision in Taylor, we have reexamined Part II of our opinion. . . .

In response to his first issue, this Court on direct appeal specifically found that Hunt's arrest was based on probable cause. We detailed the evidence in support of this claim in our opinion. This Court stated: "The record of these proceedings convinces this Court that there was clearly probable cause for the appellant's arrest." *Hunt v. State*, 659 So. 2d 933, 948 (Ala. Crim. App.1994). Therefore, Hunt cannot show that counsel's performance was deficient.

*Hunt*, 940 So. 2d at 1073-74.

Hunt raised this claim in his petition for writ of certiorari, and it is thus exhausted. However, Hunt has failed to establish that the state court's decision was contrary to and an unreasonable application of the law.

Hunt contends that the warrant was issued based upon an affidavit containing only conclusory allegations that Hunt was the perpetrator of a crime and that evidence was thought to be in his van.

(Reply at 49; *See* Vol. 5, Tab 26 at 960.)  Because the affidavit did not contain the actual basis for

these conclusions, Hunt asserts that his attorneys should have argued that Supreme Court precedent

established that the warrant had been issued in violation of his constitutional rights.  *See Whiteley v.*

*Warden, Wyoming State Penitentiary*, 401 U.S. 560, 564 (1971); *Kerr v. State of California*, 374 U.S.

23, 24-25 (1963); *Giordenello v. United States*, 357 U.S. 480, 485-87 (1958); *Map v. Ohio*, 367 U.S.

643 (1961).  Hunt contends that if his trial attorneys had raised this probable cause argument,

"important evidence, including blood, hair, and saliva samples would have been suppressed, resulting

in the reasonable probability that the outcome of the trial would have been different."  (Reply at 50.)

As such, he contends the state court's finding was contrary to and an unreasonable application of

*Strickland* and the facts in light of the evidence.  (Reply at 50.)

Hunt's arguments are unavailing because the cases upon which he relies are not on point.

Although *Whiteley v. Warden* involved a warrant that did not contain the facts necessary to support

probable cause, the case turned on very different facts.  401 U.S. 560.  Specifically, the officer in

*Whiteley*, who swore out the complaint for the warrant, was acting on a tip from an informant, but the

officer failed to share with the magistrate any information supporting issuance of the warrant.  *Id*. at

462-64.  As the Court emphasized, to sustain a probable cause challenge "the judicial officer issuing

such a warrant [must] be supplied with sufficient information to support an independent judgment

that probable cause exists for the warrant."  *Id*. at 564.  Unlike *Whiteley*, there is no evidence that the

magistrate lacked sufficient information to support an independent judgment regarding probable

cause.  *See Hunt*, 659 So. 2d at 947-48 (discussing the evidence supporting the

warrant).[61]  Likewise, the other cases upon which Hunt relies are unpersuasive.  *See Kerri,* 372 U.S. 23 (involving a warrantless arrest); *Giordenello*, 357 U.S. 480 (involving federal warrant where the federal rules require that the face of the complaint contain the facts supporting probable cause); *Map*, 367 U.S. 643 (involving search where there was no evidence that police officials had a warrant, despite an officer's statement to the defendant that a warrant had been issued).

Inasmuch as Hunt cannot show that the circumstances surrounding issuance of the arrest warrant were constitutionally deficient, Hunt has failed to establish that the state court's decision on his ineffective assistance of counsel probable cause claim was contrary to or an unreasonable application of *Strickland.*

4.  **Guilt Phase**.

a.  **James Carl Sanders and Loretta Martin.**  (Doc. 1, ¶¶ 49-51)

i.  **Failed to Object to the Prosecution's Examination of Sanders and Failed to Properly Cross Examine Sanders.**  (Doc. 1, ¶¶ 49--51.)

Hunt raises two claims regarding James Carl Sanders.  First, Hunt contends that trial counsel was ineffective for failing to object to the prosecution's "improper and misleading examination of James Carl Sanders."  (Doc. 1 ¶ 49.)  Hunt argues that the prosecutor misled the jury into believing that Sanders had nothing to gain from his testimony against Hunt, despite the gravity of the charges that were pending against Sanders when he testified.  (Doc. 1, ¶ 49.)

Second, Hunt argues his attorneys were inadequate when cross-examining Sanders because they failed to use his prior convictions or pending charges for impeachment.  (Doc. 1 ¶ 50.)  Hunt notes that all of the crimes for which Sanders was convicted were crimes of dishonesty and, at the

---

[61]/     The state court's factual findings on the probable cause claim are quoted in Section V of this opinion, discussing Hunt's substantive probable cause claim.

time of his testimony, he was facing additional dishonesty charges: theft and probation violation.  He further contends that a violation of probation represents a broken promise to the court and disrespect for the criminal justice system.  Additionally, Hunt faults his trial attorneys for not "clarify[ing] the misimpression left by the prosecutor's direct and re-direct examination that Mr. Sanders was going to serve a minimum of fifteen years in prison regardless of his testimony against Hunt... and that Sanders had an open case before the same court" and the same District Attorney who was prosecuting Hunt was still investigating the Sanders charges.  (Doc. ¶ 50.)

In Hunt's Rule 32 trial brief, Hunt raised these two arguments separately, (Vol. 14, Tab. 48, ¶¶ 64-67, 68-70).  The circuit court addressed both claims separately, finding that Hunt had failed to establish his trial attorneys were deficient or that he was prejudiced.  (*See* Vol. 22, Tab 63 at 47-49.) In his brief to the Alabama Court of Criminal Appeals, however, Hunt did not allege that trial counsel failed to cross-examine Sanders' about his criminal history for impeachment purposes; rather, Hunt complained solely about trial counsel failing to object to Sanders' allegedly misleading testimony that he had nothing to gain from coming forward.  (*See* Vol. 19, Tab. 54 at 66-67.)  On appeal, the Court of Criminal Appeals reached a finding that essentially collapsed the two arguments into one, even though Hunt actually failed to raise both in his brief:

> Hunt also argues that counsel was ineffective in failing to adequately cross-examine James Sanders, a State's witness.  [Footnote 13.][62]  Though the circuit

---

[62/]     Footnote 13 reads:  Sanders, who was incarcerated at Walker County jail with Hunt, testified that Hunt told him that

> " 'He [appellant] said they were fussing and he was jealous and they were fussing over the guy she had been seeing and they got in a fight and he knocked her down and went into a rage because he was messed up on dope and started kicking her and abusing her and choking her-... And, said that when she was laying [sic] on the ground he told her if she had to have one all the time he would give her one and he struck [sic] the broom handle between her legs.... He said she was bleeding and he got scared and called the police....' "

*Hunt*, 659 So.2d at 945.

court erroneously found that this claim was time-barred because it was not raised in Hunt's timely filed [*pro se*] petition, the circuit court also gave alternative reasons for denying relief.

The circuit court made the following findings:

> "In the alternative, Hunt did not call either Loretta Martin or James Sanders to testify at his evidentiary hearing. The Court allowed Hunt, over the State's objection, to introduce documents concerning Sanders criminal history. At trial Sanders testified that he had prior felony convictions for receiving stolen property and robbery and, at the time of trial, was in jail for theft. Sanders also indicated that his testimony against Hunt was not the result of any deal with the State for help on his pending charges. Trial counsel vigorously cross-examined Sanders about his criminal record and his possible motives for testifying against Hunt. Hunt presented no evidence at his evidentiary hearing that trial counsel could have used to further impeach the testimony of Loretta Martin or James Carr [sic] Sanders. 'Prejudice cannot merely be alleged; it must be affirmatively proved.' *Williams v. State*, 783 So.2d 108, 119 (Ala.Crim.App.2000). The Court finds that Hunt 'has not met [his] burden [of proof] imposed by Rule 32.3, [ARCrP]'. *Boyd v. State*, 746 So.2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced."

(C.R. 844-45.) [Footnote 14 omitted]

> " '[D]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature.' *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1018, 98 L.Ed.2d 983 (1988); accord *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir.2003) (' "The conduct of examination and cross-examination is entrusted to the judgment of the lawyer ...." ' (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir.1998))); *See also United States v. Eisen*, 974 F.2d 246, 265 (2d Cir.1992) (no ineffective assistance based on failure to adequately impeach government witnesses where defense counsel vigorously cross-examined witnesses and could have reasonably concluded that further questioning on relatively unimportant matters would confuse or fatigue the jury), *cert. denied*, 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993)."

> *Rosario-Dominguez v. United States*, 353 F.Supp.2d 500, 515-16 (S.D.N.Y.2005).
> Hunt failed to satisfy the *Strickland* test in regard to this claim.

*Hunt*, 940 So. 2d at 1064-65.

Hunt contends that the state court's decision was contrary to or an unreasonable application of *Strickland*. He rehashes the facts he discussed in his *Brady* claim, and argues that if trial counsel had cross-examined Sanders and elicited information that incarceration for fifteen years was not a foregone conclusion, there is a probability that the outcome of the trial would have been different. (Reply at 52-53.)

Hunt's argument is unavailing. As noted by the Court of Criminal Appeals, and, as quoted above in the Court's discussion on the *Brady* claim, Hunt's attorneys questioned Sanders extensively about his criminal history. Additionally, Hunt's attorneys specifically asked Sanders on cross-examination if he knew what was going to happen to him as a result of his pending charges and he said no. *Id*. Because the jury had no reason to believe Sanders' potential imprisonment was a foregone conclusion, Hunt's claim that the outcome would have been different is wholly unpersuasive. Accordingly, he has failed to show the state court's determination was contrary to or an unreasonable application of *Strickland* or the facts in light of the evidence, and is entitled to no relief on this claim.

### ii.        Failed to properly cross examine Martin.  (Doc. 1, ¶¶ 50-51.)

Hunt also claims his trial attorneys failed to properly cross-examine his sister, Loretta Hunt Martin. Martin testified that within days of the murder, Hunt told her he was planning to leave town because the police were looking for him. (Doc. 1 ¶ 51; *See* Vol. 2, Tr. at 276.) According to Martin, Jack Kilpatrick, a family friend, was present during this conversation. (*See id*. at 275-76.) She also

testified that several months later, Hunt confessed that he killed Lane.  (*See id*. at 278.)  According

to Hunt, trial counsel never sought to impeach Martin by delving into a romantic relationship she

allegedly had with the District Attorney's investigator, Frank Cole.  Hunt also complains that his

attorneys failed to question Martin about waiting over a year after the confession before exposing him,

as well as how she came to disclose both the alleged confession and Hunt's statements about wanting

to flee the area after the murder.  Hunt claims the timing of Martin's disclosures is suspect because

it came only after the death of Jack Kilpatrick, the only other person who heard the comment about

Hunt wanting to flee.  (Doc. 1, ¶ 51; *See* Vol. 2, Tr. at 2756.)

   This claim is procedurally barred.  Although Hunt raised this claim in his Rule 32 trial court

brief, he failed to raise it in his appellate brief to the Court of Criminal Appeals.  (*See* Vol. 14, Tab.

48, ¶ 68; Vol. 19, Tab 54 at  iii - vii, 66-67.)  Accordingly, the Court of Criminal Appeals found

> Hunt makes no argument in <u>this</u> brief that counsel was ineffective for failing
> to cross-examine Loretta Martin; therefore, he has abandoned this claim. *See
> Brownlee v. State*, 666 So.2d 91 (Ala.Crim.App.1995).

*Hunt*, 940 So. 2d at 1065 n.14 (emphasis added).  Thereafter, Hunt failed to exhaust this claim in his

Alabama certiorari petition.  (*See* Vol. 21, Tab 58 at i - iv, 67-71.)  Therefore, this claim is barred

because Hunt failed to exhaust, and a return to state court would be futile.

   Alternatively, Hunt is not entitled to relief because he failed to explain how the state court

unreasonably applied *Strickland*.  As an initial matter, Hunt has failed to produce any evidence of the

alleged "relationship" between Martin and the investigator.  Additionally, the Court notes that, on

cross-examination, Hunt's attorneys asked Martin whom she contacted about the confession.  Martin

testified that she called Cole because he was the person who had arrested Hunt and because Cole had

questioned her on approximately three occasions after the arrest.  (Vol. 2, Tr. at 290-91.) When asked

if she had "gotten to know [Cole] pretty well," she replied "No, I did not."  (*Id*. at 290-91.)  The only other admissible testimony about Martin and Cole came from Hunt's mother, Ruby Savage.  When defense counsel questioned her about a possible relationship between Martin and Cole, the mother said Cole had come to her house on several occasions, at which time Martin and Cole talked either on the porch or in the living room.  (Vol. 4, Tr. at 725-26.)[63]

With respect to Martin's reasons for waiting to come forward, the Prosecutor questioned Martin about this, at which time defense counsel objected and the judge sustained the objection.  (Vol. 2, Tr. 302.)   Later, however, defense counsel asked Hunt's mother if she had any idea why Martin waited so long.  The mother replied she did not know.  (Vol. 4, Tr. 727.)  Hunt has failed to produce any evidence that Martin's testimony was untruthful.  Accordingly, Hunt has not established that his attorneys were deficient or that he was prejudiced.

> **b.**      **Theory of Defense (Doc. 1, ¶¶ 52-56.)**:
>
> **i.**      **Incoherent and conflicting defenses.  (Doc. 1, ¶¶ 52-53.)**

Hunt alleges that by presenting conflicting theories of misidentification and lack of intent, trial counsel presented an incoherent and sub-standard theory of defense which led the jury to believe Hunt was guilty.  Hunt argues that because the physical evidence and testimony indicated Hunt had been in an altercation with the victim, it was unreasonable to pursue a defense of misidentification.

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 75-78), but the court rejected this claim:

The claim is located in . . . Paragraphs 75 - 78 . . . of Hunt's amended petition. . . .

---

[63]/     The Court sustained the state's objection to the mother's testimony that she heard Martin state she and Cole were going to a party in Birmingham.  (Vol. 4, Tr. 725.)

> Hunt presented no evidence or legal argument at his evidentiary hearing that would establish he was prejudiced by trial counsel's strategic choices about his defense. "Prejudice cannot merely be alleged; it must be affirmatively proved." *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000). The Court finds that Hunt "has not met his burden of proof imposed by Rule 32.3, ARCrP." *Boyd v. State*, 746 So. 2d at 385. The allegation . . . is hereby denied.

(Vol. 22, Tab 64 at 52-53.)

However, Hunt then failed to raise the claim in his Rule 32 appellate brief, (*See* Vol. 19, Tab 54 at p. iii - vii), and in his Alabama certiorari petition (*See* Vol. 21, Tab 58 at i - iv, 73-78). Thus, the claim is barred because Hunt failed to exhaust and a return to state court would be futile.

Alternatively, he is entitled to no relief. Hunt cites no United States Supreme Court authority in support of his claim, nor does he attempt to explain why the state court's decision was contrary to or an unreasonable application of *Strickland*. Thus, Hunt is not entitled to federal habeas relief on this claim.

### ii.   Intoxication Defense.  (Doc. 1 ¶¶ 54-56.)

In conjunction with his claim regarding alleged incoherent defenses, Hunt alleges that his attorneys were deficient for failing to pursue an intoxication defense. (Doc. 1 ¶¶ 54-56.) According to Hunt, had his trial attorneys conducted an investigation, they would have learned of his long history of substance abuse and that he was intoxicated at the time of the crime. (*Id*. ¶ 54.) In the absence of such an investigation, he argues, trial counsel could not have made a strategic decision to forego pursuing this defense. (*Id*.) Additionally, he argues that his attorneys were "wholly unreasonable" for failing to pursue such a defense, given the evidence introduced during trial that he was intoxicated at the time of the crime. (*Id*. 55.) Indeed, Hunt contends that such evidence was central to the prosecution's case from the start of opening arguments. As such, his attorneys should have requested

an instruction on intoxication and objected had the trial court failed to give such an instruction.  (*Id*. ¶ 56) (citing *Fletcher v. State*, 621 So. 2d 1010, 1019 (Ala. Crim. App. 1993)).

In his amended Rule 32 petition, Hunt did not make an intoxication argument as it relates to his claims about counsel's defense strategy.  (*See* Vol. 14, Tab 48 ¶¶ 75-78.)  As such, he failed to raise and exhaust this claim.  Thus, the claim is barred because Hunt failed to properly present the claim to the state court.  However, it should be noted that in his amended Rule 32 brief, Hunt did raise an ineffective assistance of counsel intoxication claim relating to the jury instructions.  Specifically, he challenges his trial attorneys for failing to request such an instruction.  Hunt's ineffective assistance of counsel intoxication related jury instruction claim is addressed below.  Moreover, were the claim not procedurally barred, it would nonetheless entitle Hunt to no relief for the reasons discussed in relation to the ineffective assistance of counsel intoxication jury instruction claim, *infra*.

### c.   **Jury Instructions.  (Doc. 1 ¶¶ 57-62.)**

Hunt alleges that his trial attorneys were ineffective for failing to request instructions that would have allowed the jury to convict him on lesser charges and failing to object to the trial court when it did not give such an instruction.

### i.   **Manslaughter & Intoxication.  (Doc. 1 ¶ 57-58.)**

Hunt first argues that his attorneys were ineffective for failing to request an instruction on intoxication which, under Alabama law, reduces a capital murder charge to manslaughter.  (Doc. 1 ¶¶ 56-58.)  According to Hunt,

> "It is clear that '[a] defendant is entitled to a charge on a lesser included offense if there is any reasonable theory from the evidence that would support the position.'" *Fletcher v. State*, 621 So. 2d at 1019 (quoting *Ex parte Oliver*, 518 So. 2d 705, 706 (Ala. 1987)).  This is true "regardless of 'however weak insufficient, or doubtful in credibility' the evidence concerning that offense." *Id*. (quoting *Chavers v. State*, 361 So. 2d 1106, 1107 (Ala. 1978)).  In fact, "[w]hen there is evidence that would support

a charge on a lesser included offense, the defendant is entitled to the charge 'even where 'the defendant denies the charge,' *Ex parte Pruitt*, 457 So. 2d 456, 457 (Ala. 1984), and [where] 'the evidence supporting the defendant's position is offered by the State.'" *Fletcher,* 621 So. 2d at 1019 (quoting *Silvey v. State*, 485 So. 2d 790, 792 (Ala. Cr. App. 1986)). Moreover, "'it is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.'" *Id*. at 1021 (quoting *Phelps v. State*, 435 So. 2d 158, 163 (Ala. Cr. App. 1983)). As noted by the Court of Criminal Appeals, intoxication and manslaughter as a lesser included offense are interrelated. *Id*. at 1019.

(Doc. 1 ¶ 57.) Given the evidence that he was under the influence of drugs and alcohol, Hunt asserts that a manslaughter charge was appropriate because intoxication and manslaughter, as lesser included offenses, are interrelated. (Doc. 1 ¶ 58) (citing *Fletcher*, 621 So.2d at 1019).

Hunt raised this claim in his amended Rule 32 petition, (Vol. 14, Tab. 48, ¶¶ 89, 91-92), and his Rule 32 appellate brief. (Vol. 19, Tab 54 at p. 69-71.) However, the Rule 32 trial court rejected the claim because Hunt failed to present "evidence at his evidentiary hearing that would establish that he was prejudiced due to trial counsel's failure to request a jury instruction on intoxication. [Therefore Hunt] failed to prove that trial counsel's performance was deficient or caused him to be prejudiced." (Vol. 22, Tab 63 at 56-58.)

The Court of Criminal Appeals upheld under *Strickland*:

Hunt argues that counsel was ineffective for failing to request an instruction on intoxication. The circuit court erroneously found that this claim was time-barred because it was not raised in Hunt's timely Rule 32 petition.

However, this Court on direct appeal found no plain error in the trial court's failure to instruct the jury on intoxication. We stated:

"[I]n the instant case, the matter of an intoxication charge was not raised by anyone at the guilt phase of the trial. In fact, defense counsel objected to the references during the trial to the appellant's drug use and, in addition to the appellant's defense that he did not commit the murder, defense counsel suggested during closing argument that, at

most, the evidence supported a conviction of intentional murder only.
Thus, it appears that the appellant's defense strategy was to convince
the jury either that he did not commit the murder or that the killing was
intentionally done, but without sexual overtones.  There was no claim
that he was unable to form the intent to kill because he was
intoxicated.  Where, as in this case, an intoxication instruction would
conflict with defense strategy, there is no plain error in the trial court's
failure to give such an instruction.  *Gurley v. State*, 639 So. 2d 557,
560-61 (Ala.Cr.App.1993)."

*Hunt*, 659 So.2d at 958.

We have examined the transcript of Hunt's trial.  It appears that counsel's
defense at the guilt phase was to attack the State's case by establishing a reasonable
doubt.  In closing argument Taylor attacked the State's witness who placed Hunt at
Cook's apartment around the time of the murder by arguing that Turner had changed
her story.  Moreover, he argued (1) that the eight or nine fingerprints discovered near
the body did not match Hunt's fingerprints so someone else had to have been there;
(2) that the numerous hairs discovered at the crime scene did not match Hunt's hair;
(3) that Hunt had no scars and bruises, which was inconsistent with a struggle; and (4)
that a pair of bloody men's underwear that was discovered at the murder scene was
never identified as Hunt's.   Finally, counsel attacked the credibility of Hunt's sister
because she changed her story and also attacked the credibility of the jail-house
informant.  Wilkinson in his closing argument pointed out that experts had testified
that the broom handle had mucus on the end, but he argued that the mucus could have
been from the victim's mouth or nose.  He further argued that because there was no
trauma to the victim's vagina the murder was not sexually motivated.  Both attorneys
vigorously attacked the State's evidence hoping to establish a reasonable doubt for the
jury.

Here, an intoxication instruction would have been inconsistent with counsel's
defense strategy.  "[T]he mere existence of a potential alternative defense theory is not
enough to establish ineffective assistance based on counsel's failure to present that
theory."  *Rosario-Dominguez v. United States*, 353 F. Supp.2d at 513.  We cannot say
that counsel's performance is deficient for failing to request a jury instruction on
intoxication when such an instruction would have been inconsistent with counsel's
defense.  *See Commonwealth v. Doucette*, 391 Mass. 443, 458, 462 N.E.2d 1084
(1984).  The circuit court correctly denied relief on this claim.

*Hunt*, 940 So. 2d at 1066-67.

Hunt has failed to demonstrate - or explain - how the state court's decision was contrary to

or an unreasonable application of *Strickland*.

Page 185 of 248

It is well settled that when conducting a *Strickland* analysis, a reviewing court should not second guess trial counsel's strategic decisions. *See Waters v. Thomas*, 46 F.3d 1506, 1518-19 (11th Cir. 1995) (citations omitted)). With regard to an intoxication instruction, the Eleventh Circuit has held that whether an instruction on voluntary intoxication is proper is a question of state, not federal law. Thus, Respondent argues that whether prejudice occurred (because an instruction would have been proper) is solely a question for state courts to decide. Respondent cites to *Callahan v. Campbell* 427 F.3d 897, 931-32 (11th Cir. 1995), and argues that "a state court's decision to deny relief under *Strickland's* prejudice element based on state law evidentiary law grounds 'forecloses' federal habeas relief." (Answer ¶ 93.)

In his reply brief, Hunt argues that the state court's decision was an objectively unreasonable application of *Strickland* and an unreasonable determination of the facts. (Reply at 58, 53-59.) Hunt first points out the evidence that he was intoxicated at the time of the crime: testimony from his sister that he said he had gotten into a fight with Lane after drinking and taking pills; the sister's testimony that Hunt confessed he "lost his head and couldn't control himself;" witness Twilley's testimony that she saw Hunt shortly before the murder and he appeared to have been drinking; Sanders' testimony that Hunt confessed he was under the influence of cocaine at the time of the murder and he "went into a rage because he was messed up on dope;" and the testimony of Hunt's mother that he appeared to have been drinking shortly before the murder and he told her that he was on pills. (Reply at 55-56 (citing Vol. 2, Tr. 278-79, 293; Vol. 3, Tr. 513; Vol. 4, Tr. 602, 764**.**)) Given this evidence, Hunt argues, his attorneys should have pursued the intoxication defense. (Reply at 56.)

Hunt defends his *Strickland* argument by describing as "puzzling" the Court of Criminal Appeal's reliance on two non-Alabama cases to support its findings that his trial attorneys were not

ineffective, when an Alabama case, *Fletcher v. State*, 621 So. 2d 1010 (Ala. Crim. App. 1993), would

have mandated a finding in his favor. (Reply at 54, 57) (citing *Hunt*, *Common-wealth v. Doucette*, 462

N.E.2d 1084) (1984); *Rosario-Dominguez v. United States*, 353 F. Supp.2d 500, 513 (S.D.N.Y.

2005)).   According to Hunt, under *Fletcher*, the trial courts in Alabama "must instruct the jury on

intoxication whenever there is some evidence presented at trial from which a jury could entertain a

'reasonable doubt' on the element of intent."   (Reply at 54) (citing *Fletcher*, 621 So. 2d at 1019).

"This is so, even when 'the defendant denies commission of the crime and the evidence of

intoxication is offered by the State.'"   (Reply at 54) (citing *Fletcher*, 621 So. 2d at 1019.)

"Moreover, 'it is clear that where there is evidence of intoxication, the extent to which the accused

is intoxicated is a question to be decided by the jury.'"   (Reply at 54) (citing *Fletcher*, 621 So. 2d at

1019-21.)

      Hunt argues that an intoxication charge would not have been inconsistent with a "reasonable

doubt" defense, because intoxication evidence presented "reasonable doubt" of Mr. Hunt's "specific

intent to kill, an essential element" of a capital murder charge.  (Reply at 57.)  Additionally, given the

"overwhelming" evidence of Hunt's identity as the perpetrator, "negating the element of intent

through the State's own abundant evidence of intoxication was unquestionably the reasonable defense

strategy." (Reply at 57.)  Thus, Hunt contends, "it is inconceivable" that trial counsel really thought

the better strategy was to argue that Hunt intentionally killed Lane, rather than argue that he did so

unintentionally while under the influence of alcohol and drugs.  (*Id*.)  Additionally, Hunt notes that

trial counsel was already presenting "inconsistent defenses" of "he did not do it," but if he did, it did

not have sexual overtones.   Thus, Hunt contends, an intoxication instruction would have been

consistent with the defense that the State failed to prove the sexual offenses necessary for the charges.

Moreover, Hunt contends that if defense counsel had requested such an instruction and the court denied the request, the error would have been reviewed by the appellate courts using a more deferential standard and would have been reversed on appeal.  *See Ex Parte Thomas*, 766 So. 2d 975, 979 (Ala. 2000).

Finally, Hunt responds to the state's argument about whether this issue is a question of state law with two arguments.  First, he argues that the nature of his claim goes to trial counsel's failure to request an instruction which, under Alabama law, he was entitled to request and the court would have been obligated to give.  (Reply at 58-59.) Thus the "federal law that is in issue here is not whether the instruction would have been appropriate, but the federal constitutional issue of counsel's ineffectiveness in failing to request the charge to which their client was certainly entitled."  (Reply at 59.)  Second, Hunt argues that it is "patently untrue that whether a particular state-law charge must be given to the jury is only a state law, not federal law, question" because the intoxication instruction would have necessarily required an instruction on the lesser-included offense of manslaughter under Alabama law.  (Reply at 59) (citing *Beck v. Alabama*, 447 U.S. 625 (1980)).

*Fletcher*, the case upon which Hunt relies,  involved a defendant who was convicted of the brutal bludgeoning death of a gas station owner, whose body was discovered shortly after midnight. 621 So. 2d 1012.  At trial, the pathologist testified that the nature and extent of the injuries indicated "a great deal of overkill" and hypothesized that the killer was either influenced by stimulating drugs, was extremely angry with the victim, or there was some sexual component to the killing.  *Id*. at 1013 - 14.  There was also evidence that the appellant smoked crack cocaine (a stimulant), several times throughout the evening of the murder and was "high" that night.  *Id*. at 1015-17.  At trial, the Court refused to give an intoxication instruction and the Appeals Court reversed, finding:

> A charge on intoxication should be given if " 'there is an evidentiary foundation in the record sufficient for the jury to entertain a reasonable doubt' " on the element of intent.  An accused is entitled to have the jury consider the issue of his intoxication where the evidence of intoxication is conflicting, where the defendant denies the commission of the crime, and where the evidence of intoxication is offered by the State. . . .  [I]t is clear that where there is evidence of intoxication, the extent to which the accused is intoxicated is a question to be decided by the jury.

*Id*. at 1019, 1021 (citations omitted).

Hunt's reliance on *Fletcher*, to the exclusion of subsequent Alabama law is faulty.  As an initial matter, Hunt fails to point out that in its original opinion on direct appeal, the Appeals Court reached the same result on his intoxication defense and relied on an Alabama case.  *See Hunt*, 659 So. 2d at 958) (citing *Gurley v. State*, 639 So. 2d 557, 557 (Ala. Cr. App.1993)).  *Gurley*, which was decided after *Fletcher*, involved a conviction for murder committed during a robbery.  It was undisputed at trial that the victim had agreed to meet the appellant for the purpose of settling a cocaine debt owed the appellant.  *Id*. at 558.  At trial, the appellant testified that he and several other persons, including the murder victim, were driving around in a car and "everyone was drinking beer and smoking 'premo joints' (marijuana laced with cocaine)."  *Id*. at 559.  At some point, the driver stopped the car so one of the occupants could urinate.  According to the appellant, the victim then asked the appellant for more cocaine and the appellant exited the vehicle, went to the trunk and gave the victim the cocaine.  The victim purportedly injected the cocaine and, as appellant turned to close the trunk, the victim pointed a pistol at the appellant.  Appellant claims he shot the victim in self defense.  *Id*.  There was testimony that the appellant beat the victim, cut his throat and took the victim's wallet, which was later burned.  *Id*. at 558-59.  Appellant, however, testified that other passengers in the car actually beat the victim and cut his throat.  *Id*. at 559.  Appellant also testified that the victim, who was on parole, never carried a wallet or identification because he claimed the

police were always on the lookout for him. *Id*. at 560.  At trial, the appellant asked for an intoxication

instruction, but it was denied by the court:

> At trial, defense counsel requested instructions on self-defense and on the lesser included offenses of murder and simple manslaughter. R. 1254, 1267. The appellant did not ask for and the court did not give a charge on reckless manslaughter. The appellant now contends that the trial court committed plain error by failing to instruct the jury on the principles of voluntary intoxication and on reckless manslaughter as a lesser included offense.

> In *Fletcher v. State*, 621 So.2d 1010 (Ala.Cr.App.1993), this Court reversed a capital conviction because the trial court failed to give an instruction on reckless manslaughter where there was evidence that the accused had been under the influence of liquor and drugs at the time of the offense. We noted:

>> "[I]n reversing two separate capital convictions where the trial court refused to instruct the jury on the lesser included offense of manslaughter, this Court has stated:

>>> " 'No matter how strongly the facts may suggest that appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should have been instructed on manslaughter as a lesser included offense since there was a "reasonable theory from the evidence which would support the position." ' '

>> *Crosslin v. State*, 446 So.2d 675, 682 (Ala.Cr.App.1983) (capital offense of murder of two persons in a single transaction); applied in *McNeill v. State*, 496 So.2d 108, 109 (Ala.Cr.App.1986) (capital offense of murder during a robbery)."

*Fletcher v. State*, 621 So.2d at 1020. When the crime charged is intentional murder " 'and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of [reckless] manslaughter.' " *McNeill v. State*, 496 So.2d 108, 109 (Ala.Cr.App.1986) (quoting *Gray v. State*, 482 So.2d 1318, 1319 (Ala.Cr.App.1985)).

The trial court's failure to charge on reckless manslaughter does not, however, constitute plain error in this case. The appellant's decision to rely on self-defense, which constitutes an admission of intentional conduct, necessarily means that there was no obvious and egregious error in the court's failing to instruct the jury on the principles of reckless conduct.

> "It is a well accepted principle of law that a claim of self-defense necessarily serves as an admission that one's conduct was intentional.... [A] person simply cannot ... recklessly defend himself. The decision to defend one's self, whether justified or not, is by its very nature a conscious and intentional decision. If a jury decides that a person is justified in using deadly force to defend himself then he or she is not guilty of any crime, and the defense is perfect. Conversely, if a jury determines that a person is not justified in using deadly force to defend himself then that person is guilty of either murder or simple manslaughter. Our legislature has specifically rejected the notion that any other result can attach where self-defense is concerned."

*Lacy v. State*, 629 So.2d 688, 689 (Ala.Cr.App.) (on rehearing) (emphasis added), *cert. denied*, 629 So.2d 691 (Ala.1993).

" ' "Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' " *Ex parte Womack*, 435 So.2d 766, 769 (Ala.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). The appellant did not request an instruction on reckless manslaughter. His defense strategy was to convince the jury that his intentional decision to defend himself by killing Bentley was justified, rather than to persuade the jury that he was unable to form the intent to kill because he was intoxicated. The trial court's failure to give a reckless manslaughter instruction was not a " 'particularly egregious error' and would not result in a miscarriage of justice if a reversal [on this issue] was denied." *Ex parte Womack*, 435 So.2d at 769 (accused "never indicated any reliance on such a defense [that mere presence was insufficient for complicity]; that is, instead of defending on the basis that he had no intent to kill but only to rob, his defense was alibi"). *See also Ex parte Harrell*, 470 So.2d 1309, 1314 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985) (because "the defendant's defense was substantially based upon the claim that the killing [of a police officer] was accidental, the defendant raised no objection to the instruction to the jury, and he did not request the court to instruct the jury on the element of [the accused's] knowledge [that the victim was a police officer], this case is distinguishable from [ Ex parte ] *Murry,* [455 So.2d 72 (Ala.1984) ]," wherein the court held that the trial judge erred in failing to give a requested instruction that the accused, at the time of the murder, must have known that the victim was an on-duty police officer).

*Gurley*, 639 So. 2d at 560-61.

Given the *Gurley* decision, *Fletcher* does not mandate an intoxication instruction under the circumstances presented in his case; to the extent such an instruction conflicts with the defense's theory, an intoxication instruction is not required.  Indeed, the Court of Appeals relied on *Gurley* to find that the instruction was not mandated here, and that decision is entitled to deference.  *See Hunt*, 659 So. 2d at 958 (citing *Gurley*, 639 So. 2d 557).

Moreover, under Alabama law, "the degree of intoxication necessary to negate specific intent and, thus, reduce the grade of an offense must amount to 'insanity'." *Crosslin v. State*, 446 So. 2d 675, 681 (Ala. Crim. App. 1983) (citation omitted).  There was sufficient evidence to establish that Hunt's intoxication did not rise to such a level.  Hunt had threatened Lane on the day of the murder and chased her through the streets of town.  He called for help at some point indicating he understood the seriousness of his actions, then fled the scene of the crime.  He told his sister he needed to get out town and attempted to borrow the car of a family friend because it was not "wise that [he be] seen in [his] van."  Later the van was found in the parking lot of a fast food restaurant.  (Vol. 3, Tr. 447, 511-12.)  Given the *Gurley* decision and the level of proof required to establish insanity in Alabama, Hunt has failed to establish that an intoxication instruction was required.  Accordingly, he has failed to establish that his attorneys were deficient, as defined in *Strickland,* for failing to request such.[64]

Even if the instruction had been mandated and given, Hunt fails to establish there was a reasonable probability that the jury would have convicted Hunt of manslaughter instead of capital murder.  As discussed previously, the extent of Lane's injuries, the evidence that she suffered, along

---

[64]/    Hunt also argues that under *Beck v. Alabama*, 477 U.S. 625 (1980), he was entitled to the intoxication charge. This argument fails because the Supreme Court has taken pains to explain that *Beck* does not stretch beyond the unique question it raised.  *See Schad v. Arizona*, 501 U.S. 624, 646 (1991) ("Our fundamental concern in *Beck* was that the jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all. . . .  We repeatedly stressed the all-or-nothing nature of the decision with which the jury was presented ") (citations omitted).

with the evidence of both pre-mortem and post-mortem sexual abuse weighed heavily against any conviction under a manslaughter charge.

ii.      **Felony Murder.**  (Doc. 59-60.)

Hunt argues that his trial attorneys were ineffective for failing to request an instruction on the lesser included offense of felony-murder for Counts I [65] and II [66] of the indictment. (Doc. 1¶ 59.)

Hunt raised this claim in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶¶ 94-97), but the court rejected it under *Strickland* because Hunt "presented no evidence at his evidentiary hearing that would establish that he was prejudiced due to trial counsel's failure to request a jury instruction on felony-murder.  [Therefore Hunt] failed to prove that trial counsel's performance was deficient or caused him to be prejudiced."  (Vol. 22, Tab 63 at 58-59.)

Respondent argues the claim is defaulted because Hunt failed to raise this issue in his brief to the Alabama Court of Criminal Appeals or in his petition for writ before the Alabama Supreme Court.  (Answer ¶¶ 94, 96.)  Hunt responds that he did raise this claim in his appellate briefs.  However, that contention is not supported by the record;  Hunt *never mentions* his ineffective assistance of counsel felony murder claim in either appellate brief.  (*See* Vol. 19, Tab. 54 at iii - vi; 69-71; Vol. 21, Tab 58 at i - iii, 73-78.)  Instead, the section of his appellate brief where he now argues that he "raised" this claim actually contains several <u>general</u> arguments about the legal

---

[65]     Count I alleged intentional murder during the sexual abuse of a victim incapable of consent pursuant to Ala. Code § 3A-6-66(a)(2).  *See Hunt*, 659 So. 2d at 937 n.1.

[66]     Count II alleged intentional murder during sexual abuse by forcible compulsion.  Count III alleged intentional murder during a burglary.  *See Hunt*, 659 So. 2d at 937 n.1.

standards employed by the lower court with respect to some of his ineffective assistance of counsel claims.[67]

Hunt then merely refers the appellate courts to page and section numbers from the lower court opinion he challenged without arguing or elaborating on those claims.  (*Id*.)  For example, he has several paragraphs with a format similar to the following:

> The trial court applied the wrong legal standards in denying Mr. Hunt's claim of ineffective assistance of trial and appellate counsel. . . .

> In denying many of Mr. Hunt's claims of ineffective assistance of trial, [sic] the court concluded that a finding of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), is precluded because the underlying substantive issues were addressed on appeal and found not to be "plain error."  <u>C. 808-09, Parts I.E; 810-11, I.G; 819, I.o; 821-26, I.p(1) - I.P (4); 830-40, I..P (8) - I.P (14); 858-60, I.DD</u>).

(Vol. 19, Tab 54 at 18-19; *See also id*. at 22-24, 36-41) (emphasis added); (Vol. 21, Tab 58 at 34-35, 37-38.)

The Alabama Court of Criminal Appeals specifically held that these types of citations to the lower court opinion did not satisfy the pleading requirements found in the Appellate Rules of Procedure:

> Hunt did not identify any specific issue he claims was incorrectly resolved by the circuit court.  Rule 28(a)(7), Ala. R. App. P. states in part that a brief must contain: "A full statement of the facts relevant to the issues presented for review, with appropriate references to the record . . . ."  Hunt's brief fails to comply with the requirements of Rule 28(a)(7), Ala. R. App. P.

*Hunt*, 940 So. 2d at 1074.

Although the Court's opinion was focused on a different part of his brief than the section upon which he relies here, the same principal applies to the ineffective assistance of counsel felony-murder

---

[67]/   This section relates to his successful argument that the lower court could not rely on *Charest* to find his amended petition did not relate back to the original *pro se* petition.

claim.  Thus, Hunt's reliance on these page and section number citations to support his argument that he exhausted the ineffective assistance of counsel felony-murder claim is misplaced.  Accordingly, his ineffective assistance of counsel felony murder instruction claim is unexhausted.  As any return to state court would now be futile, the claim is procedurally barred from federal review.

In the alternative, this claim is due to be dismissed on the merits. In support of his claim, Hunt points out Respondent's theory was that Lane was murdered in connection with attempted sexual abuse.  Thus, he argues, even if the jury decided Hunt murdered Lane during the commission of sexual abuse, it might also have decided, irrespective of the intoxication issue, that he lacked the specific intent to actually cause her death.  He contends that there is no objective evidence of intent, such as a shot through the heart or a confession indicating intent.  Instead, he points to testimony adduced at trial that he "lost his head and could not control himself," and became afraid when Lane began bleeding badly; he called the police, and he telephoned someone and told the person to call for help.   (Doc. 1 ¶ 60) (citing Vol. 2, Tr. 270, 349; Vol. 4, Tr. 603.)

Hunt contends that "the lesser-included charge of murder, which was submitted by the court, was not distinguishable from the capital-murder charge on the issue of intent to kill." (Doc. 1 ¶ 61.) He argues that, as in *Beck*, the jury might have been convinced that Hunt sexually abused Lane and caused her death, but still find that he did not <u>intend</u> to cause her death.  (*Id.*)  According to Hunt, the jury would have been left with only two options: acquitting Hunt or convicting him to death.  (*Id.*)

Hunt has not established that counsel was constitutionally ineffective.  There is no reasonable probability that, had the jury been instructed on the lesser included offense of felony capital murder, it would have convicted the petitioner of felony, rather than capital murder.  The forensic evidence admitted at trial established that Ms. Lane sustained a total of 60 injuries.  These injuries included 20

injuries to the head, 12 fractured ribs on the left side and 12 fractured ribs on the right side, a fractured

breast bone, bruises to her heart, three tears to her liver, bruises to the lungs, a three-quarter-inch tear

to the aorta, a bruised pancreas, and bleeding in the muscles to the side of the neck. Between her legs

was a broomstick with mucus on the tip, and next to the body was a bar stool with blood and hair

attached to it. The extent and severity of the injuries clearly evince an intent to commit murder.

### iii.    Abuse of a Corpse.  (Doc. 1  ¶ 62.)

Hunt argues that trial counsel should have requested an abuse of corpse instruction on counts

one and two because, according to Hunt, substantial testimony showed that any sexual abuse may

have occurred after the victim's death.  (Doc. ¶ 62) (citing *Padgett v. State*, 668 So. 2d 78, 83-85)

(Ala. Crim. App. 1995)).

Hunt raised this claim in his amended Rule 32 petition and the court rejected it pursuant to

*Strickland* because "Hunt presented no evidence at his evidentiary hearing that would establish that

he was prejudiced due to trial counsel's failure to request a jury instruction on felony-murder.

[Therefore Hunt] failed to prove that trial counsel's performance was deficient or caused him to be

prejudiced."  (Vol. 22, Tab 63 at 59-60.)

This claim is precluded because Hunt failed to raise it in his brief to the Alabama Court of

Criminal Appeals or in his petition for writ before the Alabama Supreme Court, and return to state

court to exhaust would be futile.  Hunt's contention that he did raise these claims in his appellate

briefs is unavailing; as with the ineffective assistance of counsel felony-murder instruction claim

addressed above, merely listing page and section numbers from the lower court opinion in his brief

was insufficient to achieve exhaustion.  Thus, like his felony-murder claim, this claim is similarly

precluded for lack of exhaustion.

In the alternative, Hunt's claim is without merit.  In support of his claim, Hunt cites to *Padgett v. State*, 668 So. 2d 78, 83-85) (Ala. Crim. App. 1995).  (*See* Reply at 61.**)**  *Padgett* does not support his argument that the lower court misapplied *Strickland* with respect to the deficiency of his attorneys.  In *Padgett*, the court discussed the appropriateness of giving an instruction on a lesser included offense, not the effectiveness of counsel for failing to request a jury instruction.  The evidence in *Padgett* established that the appellant had sex with the victim either while she was dying or within fifteen minutes following her death.  668 So. 2d at 81.  Thus, if the jury believed that the victim was still alive at the time of the sexual intercourse, then a capital murder conviction was appropriate and no lesser-included abuse of a corpse charge was appropriate.  *Id*. at 84.  Additionally, if the appellant formed the intent to rape the victim while he was killing her, and then had sex with her even though she was dead, he was still guilty of capital murder.  *Id*.  If, on the other hand, the appellant did not have the intent to rape the victim at the time of the murder, and the sexual intercourse took place after her death, he could not be convicted of capital murder and a lesser included offense instruction was appropriate.  *Id*. at 84-85.  The court noted that " [a] lesser-included offense charge should only be refused in a death case when the evidence adduced at trial could only support a conviction of the crime charged in the indictment."  *Id*. at 83

While it appears an abuse of a corpse instruction might well have been supported by the evidence, counsel was not ineffective for failing to request it.  As discussed above, defense counsels' strategy was to attack the State's case by establishing a reasonable doubt.  Thus, the focus was on the state's lack of evidence to prove that Hunt committed the crime, not that Hunt had committed the crime, but the crime was not capital murder.  As stated by the Court of Appeals in rejecting Hunt's ineffective assistance of counsel intoxication instruction claim, "the mere existence of a potential

alternative defense theory is not enough to establish ineffective assistance based on counsel's failure to present that theory." *Hunt*, 940 So.2d at 1067.  Counsel's performance in failing to request a jury instruction on abuse of a corpse was not deficient when such an instruction would have been inconsistent with counsel's defense.

> **d.**      **Sufficiency of Evidence of Capital Murder.**  (Doc. 1¶¶ 63-67.)

Hunt alleges that his trial attorneys were ineffective for failing to object and adequately argue that there was insufficient evidence to support Hunt's capital-murder convictions and death sentences.

First, with respect to each count, Hunt alleges that the evidence was insufficient beyond a reasonable doubt to establish he intended to cause Lane's death.  (Doc.1 ¶ 64) (citing Ala. Code § 13A-5-40(a); *Ex parte Murry*, 455 So. 2d 72 (Ala. 1984) (capital murder is intentional murder without legal provocation)).  He argues that there was no evidence of such intent, but rather evidence from the prosecution's own witnesses  that he did not intend to kill Ms. Lane, yet his attorneys failed to argue the insufficiency of the evidence.

Second, Hunt claims that there was insufficient evidence to convict him under Alabama Code Section 13A-5-40(a)(4), which provides that "[m]urder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant," is a capital offense.  (Doc. 1 ¶ 65.)  "A person commits the crime of burglary . . . if he or she knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in the dwelling . . .  the person . . . [c]auses physical injury to any person who is not a participant in the crime." Ala. Code § 13A-7-5(a)(2); *See* Ala. Code § 13-A-76(a)(2).  He asserts that the indictment specifically alleged that the crime he intended to commit in the course of the burglary was sexual abuse in the second degree; the sexual abuse was also the underlying crime supporting the

capital murder charge.   (Doc. 1 ¶ 65.)   Hunt alleges that there was insufficient evidence that he

intended to commit a crime upon entry.   He also alleges, that even if there was evidence he intended

to commit a crime, there was <u>no</u> evidence that the crime he intended to commit was sexual abuse.

(Doc. 1¶ 66) (emphasis in original).

Third, Hunt argues there was insufficient evidence that he was guilty beyond a reasonable

doubt of committing the murder during the commission of sexual abuse under Counts I and II.   The

statute provides:

> (a)      A person commits the crime of sexual abuse in the first degree if:
>
> > (1) He submits another person to sexual contact by forcible compulsion; or
> >
> > (2) He subjects another person to sexual contact who is incapable of consent
> > by reason of being physically helpless or mentally incapacitated.

Ala. Code § 13A-6-66(a).

Hunt argues that when the intent to commit sexual abuse arises after death, there can be no

"forcible compulsion," nor would the victim be merely "physically helpless" consistent with the

statute.   (Doc. 1 ¶ 67) (citing *Padgett*, 668 So. 2d 78, 84085 (Ala. Crim. App. 1995)).   Thus, he

contends, his trial attorneys were ineffective for failing to object and argue the insufficiency of the

evidence because the evidence did not support a finding that any abuse occurred prior to death: he

claims the semen evidence established post-mortem abuse and there was no evidence that the

broomstick was used prior to death.   (Doc. 1 ¶ 67.)

Hunt raised these claims in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶¶ 102-14), and

the Court rejected them:

> This claim is located . . .  In paragraphs 102 -114 . . . of Hunt's amended petition. This
> Court presided at Hunt's trial and finds that the evidence of Hunt's guilt was
> overwhelming.  Further, on direct appeal the Court of Criminal Appeals found that the

evidence supporting Hunt's conviction was not only legally sufficient, but "was, in fact, overwhelming." *Hunt v. State*, 659 So. 2d 941. Additionally, the Court of Criminal Appeals, after independently weighing the aggravating and mitigating circumstances, found that "death was the proper sentence." *Hunt v. State*, 659 So. 2d at 960.

The Court finds that [this allegation] of Hunt's amended petition fails to state a claim or establish that a material issues of fact or law exist [sic] which entitled him to relief as required by Rule 32.7(d), ARCrP. The Court finds that the allegation . . . is without merit; therefore it is hereby denied.

(Vol. 23, Tab 63 at 62.) [68]

In his brief on Appeal, Hunt did not raise the ineffective assistance of counsel intent to commit murder argument, but instead only raised the burglary and sexual abuse[69] ineffective assistance of counsel claims. (*See* Vol. 19, Tab 54 at 72-74.) Thus, the Appeals Court affirmed on those claims only:

Hunt argues that counsel was ineffective for failing to object to the sufficiency of the evidence presented at trial. Specifically, Hunt argues that counsel did not object to the sufficiency of the evidence to support the offense of sexual abuse-the underlying crime for the burglary charge. . . .

. . . .

We agree with the circuit court [that the evidence of guilt was overwhelming].

Moreover, we have reviewed the record of the trial proceedings. Our review of the record shows that counsel made the following objection:

"[Defense counsel]: We move to dismiss Count III of the indictment on the grounds that the charges allege felony[,] and sexual abuse in the second degree is a misdemeanor.

---

[68]   Rule 32.7(d) provides: "Summary disposition. If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. . . . ."

[69]   Respondent did not address the ineffective assistance of counsel intent to cause murder argument claim separately, but asserted that the Circuit Court addressed the claims in their entirety. (*See* Answer ¶¶ 102-06.) However, the Court finds that the claim is precluded because Hunt failed to exhaust and a return to state court would be futile.

"We except to any charge on the offense of sexual abuse on the grounds there is no evidence of sexual abuse in the meaning of the capital murder statute.

"We, also except to any charge on sexual abuse on the ground that sexual abuse in the second degree is not sufficient to trigger the capital murder statute.

"We except, also, to any charge on the charge of burglary on the ground that there is no evidence of a burglary."

(R. 898-99.) <u>Hunt is due no relief on this claim.</u>

*Hunt*, 940 So. 2d at 1067. (emphasis added).

As Respondent correctly argues, Hunt has not directed the Court to any legal argument or authority which might indicate the state court's finding was contrary to or an unreasonable application of the facts or *Strickland*. (Answer ¶ 104.) Additionally, Respondent argues that the federal court is "foreclosed" from granting habeas relief because the state court applied state law to find that no prejudice occurred. (Answer ¶ 105) (citing Callahan, 427 F.3d at 931-32). Hunt has offered no argument in response to Respondent. Accordingly, Hunt is not entitled to habeas relief.

    e.    **Additional Guilt Phase Issues.** (Doc. 1 ¶ 68-76.)

    i.    **Closing statements of trial counsel.** (Doc. 1 ¶ 68-72.)

Hunt claims his trial counsel provided ineffective assistance of counsel by making poor, prejudicial and incoherent arguments during opening and closing that had "no possible salutary effect" on his defense. (Doc. 1 ¶ 68.) Because of trial counsel's ineffectiveness, Hunt argues he was denied competent, vigorous advocacy and the jury was left with only confused and inaccurate theories of law. (*Id*.)

First, Hunt complains about the following argument made during closing arguments:

I understand that there is sex, seemingly apparent, in the pictures and in that factor but what I'm talking about or asking you ladies and gentleman to consider, is sex killing.  Not sex murder or murder and sex as Mr. Adair said. But, sex and murder, which is, of course, very different.  Very, very different.  And, I expect the judge will tell you that it is a sex/murder which is a capital offense.  The underlying is sex/murder.

(Vol. 5, Tr. at 841.)  According to Hunt, this was a poorly prepared and delivered closing argument that prejudiced his ability to receive a fair trial.  (Doc. 1 ¶ 69.)

Next, Hunt complains about the follow argument, also made during closing, that Hunt contends worked against his interests:

It has been a long case and you have heard a lot of evidence, some of it scientific, and a lot of things you have to decide.

You know, a trial to a certain extent, is like a - - To a certain extent, is like an athletic contest.  It's an adversarial proceeding.  Both sides are clashing.

As you have heard, we clashed with the state many times in regard to evidence and other matters.  But that's the nature of our system.

. . .  I am very combative by nature when it comes to representing the interest of my client.  That's my duty.  I couldn't be otherwise.

Just as Mr. Baker and Mr. Adair are very combative representing the interest of the state.  That's the nature of the game.  And, it's good for all of us. . . .

I want to say that I appreciate Mr. Baker and his staff and the investigative team in this case and the work they've done and the work they do in all these cases.  They do an excellent. [sic]

(Vol. 5, Tr. at 806-07)(emphasis added).  According to Hunt, his attorney's comment about the prosecution and the state doing a great job added credibility to the prosecution, thereby abdicating his attorney's responsibility to act single mindedly on behalf of Hunt.

Hunt also complains his attorneys misled the jury by suggesting that their duty was not to determine guilt by a reasonable doubt, but instead to determine the truth:

This has been an interesting case.  But, your function and your duty is to come to that age old pursue for which man has struggled and prevailed through the ages; what is the <u>truth</u>?  That is what you have to decide.  What really happened on that terrible night back in August, 1988, in which that young lady was brutally, viciously, murdered?

Someone once said, "You shall know the <u>truth</u> and the <u>truth</u> will make you free." . . . .

(Vol. 5, Tr. at 808) (emphasis added); (*See* Doc. 1 ¶ 71).

Next, Hunt complains about the following statement:

You, in this particular time of your life, must wrestle with the greatest issue that will ever face you; life, death, and the very substance of that life fiber itself. Perhaps destiny has put you here.  I don't know that.  Nobody knows that.  But, it's your responsibility and frankly, I don't envy you.

<u>It's much easier for me to represent the interest of my client, knowing it is my duty, than it is for you because you have to decide what is the truth</u>.

(Vol. 5, Tr. at 808-09) (emphasis added).  According to Hunt, this statement allowed the trial attorneys to distance themselves from Hunt and gave the jury the impression the attorneys were representing him because they had no choice.  (Doc. 1 ¶ 70.)

Hunt also complains about the following argument:

[I]f the evidence is consistent with, I think the judge will tell you this is right, if the evidence is consistent with a murder that has primary purpose, something other than or was not intended a sexual abuse or sexual act, then there is no capital murder.

.  .   .   .

What is the intention from the circumstances in this case . . . .

There are some circumstantial factors, of course, that the state has introduced from which they <u>would suggest to you or that it would lead you to say the only possible conclusion is or the only reasonable possible conclusion is that this was a sexual killing</u>.

(Vol. 5, Tr. at 825-27) (emphasis added).  According to Hunt, this comment was prejudicial and inflammatory because it suggested, rather than denied his guilt.  (Doc. 1 ¶ 71.)  Finally, Hunt

complains that his attorneys' comments indicate a complete breakdown in the adversarial system and cumulatively the comments denied him the right to a fair trial, due process, reliability in sentencing and effective assistance of counsel.  (*Id*. ¶ 72.)

Hunt raised these claims in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶¶ 79-83), but the Court rejected them:

> This claim is located . . . in paragraphs 79 - 83 . . . of Hunt's amended petition. . . .  Hunt presented no evidence or legal argument at his evidentiary hearing that would establish he was prejudice by trial counsel's strategic choices about his defense. [Therefore] Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced.. . . .

(Vol. 22, Tab 63 at 53-54.)

These claims are precluded because Hunt failed to exhaust these claims in his Rule 32 appellate brief, (Vol. 19, Tab 54 at p. iii - vii, 59-74), or his Alabama certiorari petition, (Vol. 21, Tab 58 at i - iv, 50-88) and return to state court would be futile.

In the alternative, the Court finds that Hunt has pointed to nothing to indicate that the state court's conclusion was contrary to or an unreasonable application of *Strickland.*  Indeed, the Court notes that the comments about the sex/murder were made in the context of the defense merely pointing out that the prosecution would "suggest" that the evidence showed the killing was sexual. Additionally, the defense was attempting to convince the jury that Hunt did not go to the victim's home with the intent of sexually abusing her.  With respect to the argument about trial counsel's "duty," these comments were consistent with earlier comments that the jury had difficult choices to make, which trial counsel did not envy.  Such arguments were not problematic, particularly when defense counsel earlier told the jury that he was "combative by nature when it comes to representing the interest of [his] client."  (Vol. 5, Tr. at 807.)  Indeed, although it is not clear from the record how

long defense counsel's closing argument lasted, the record establishes that both defense attorneys were given one hour each.  (Vol. 4, Tr. 786.)   Thus, his attorneys had two full hours available to make closing arguments during the guilt phase.  Hunt cannot cherry pick edited excerpts about those arguments to establish a constitutional claim.

        **ii.**        **Prosecutorial Misconduct.**  (Doc. 1, ¶ 73.)

            **a.**        **At the guilt stage.**  (Doc. 1, ¶ 73.)

Hunt claims his trial attorneys were ineffective because they failed to object to allegedly improper and prejudicial statements made by the prosecution during the course of the guilt phase proceedings.[70]   Hunt raises ineffective assistance of counsel claims relating to the same alleged prosecutorial misconduct about which he raised substantive claims in his habeas petition:

- Prosecutor's comment that the defense would make an opening statement.  (Doc. 1, ¶ 186.)

- Prosecutor thanked the jury on behalf of himself and the victim's family, as well as had the victim's father sitting at the prosecution table during opening arguments. (Doc. 1, ¶ 187-88.)

- Prosecutor expressed personal opinions by arguing during his opening that the evidence was "overwhelming."  (Doc. 1, ¶ 189-90.)

- Prosecutor fabricated evidence of sexual abuse by coercing Hunt's fellow inmates to testify.  (Doc. 1, ¶ 191.)

- Paragraph 192 contains no claim regarding a specific comment.

---

[70]    In the paragraph where Hunt raises this ineffective assistance of counsel claim, he refers the Court to the prosecutor's comments about which Hunt complained in the substantive portion of his petition: specifically, paragraphs 171-77 and 186-216.  Because paragraphs 171-77 relate to alleged prosecutorial misconduct at the penalty stage, these paragraphs are addressed separately below.

    Ignoring Hunt's reference to paragraphs 171-77 and 186-216, Respondent argues that Hunt pled all of his ineffective assistance of counsel prosecutorial misconduct claims without naming any "specific instances." (Answer ¶ 112.)

- Prosecutor thanked the jury on behalf of the victim's family during closing arguments. (Doc. 1, ¶ 193.)

- Prosecutor's closing argument about Hunt painting an X-rated picture. (Doc. 1, ¶ 194.)

- Prosecutor's "Devil" and "Pharaoh" comments during closing, as well as comment that Hunt made the jury look at a "triple X rated" scene. (Doc. 1, ¶ 195.)

- Prosecutor's "plea bargaining" comment during closing.  (Doc. 1, ¶ 196.)

- Prosecutor expressed personal opinions during closing by indicating "if this isn't capital murder, then there has never been capital murder in Walker County."  (Doc. 1, ¶ 197.)

- Prosecutor improperly vouched for witnesses during closing with several comments: "Everybody else has to be lying...," "I know Mr. Sanders [victim's] father was at the apartment and you know his nephew was," "When you look at the evidence you can tell the same thing I, Mr. Baker and Mr. Sanders can tell . . . ."  (Doc. 1, ¶ 198.)

- Prosecutor injected personal belief into the case during closing with comments that he believed in the case with all his "heart," and his emotions were "sincere and heart felt." (Doc. 1, ¶ 199.)

- Prosecutor suggested Mrs. Kilpatrick, his own witnesses testified truthfully. (Doc. 1, ¶ 200.)

- Prosecutor allegedly commented, during closing, on Hunt's failure to testify. (Doc. 1, ¶ 201-02.)

With the exception of the claim regarding allegedly fabricated evidence, all of the above ineffective assistance of counsel assistance of counsel claims were raised in Hunt's amended Rule 32 brief,  (Vol. 14, Tab 48 ¶¶ 37, 49-51, 54-61, 63) and each individually rejected by the Court because Hunt failed to offer any proof that his attorneys were deficient or that he was prejudiced by his attorneys' failure to object to the alleged prosecutorial misconduct.  (*See* Vol. 22, Tab 63 at 21, 29-32, 35-36, 38-42, 43-47)).

   **b.**  **At the penalty stage** (Doc. 1, ¶ 73)

Hunt also challenges his attorneys for failing to object to the following during the penalty phase of the trial:

- Comments that the jury's role was to recommend a sentence, without informing the jury that the recommendation was important because the judge had to take the recommendation into consideration. (Doc. 1, ¶¶ 171-77.) [71]

- Paragraphs 203 and 204 contain no claim regarding a specific comment.

- Failure to show by preponderance of the evidence the absence of mitigating circumstances. (Doc. 1, ¶ 205.)

- Argument that jury should weigh the mitigating and aggravating circumstances, rather than informing them that they had to first find if any aggravating circumstances existed, then weigh them with any mitigators. (Doc. 1, ¶ 206.)

- Comment that the jury had to "believe that [an aggravating circumstance] exists or you couldn't have found the defendant guilty of Count III of the indictment. . (Doc. 1, ¶¶ 207-208.)

- Comment that the jury could consider "all" the evidence presented at trial in reaching its sentence recommendation. (Doc. 1, ¶ 209-10.)

- Misstatement of evidence of the victim's injuries: comments about "sexually oriented injuries" and that injuries to the breast area were made with a broom stick. (Doc. 1, ¶¶ 211-13.)

- Argument that a recommendation for death was the "right thing" to do. (Doc. 1, ¶ 214-15.)

Hunt raised all of these claims in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶¶ 181-87, 194-209), but the court rejected each claim individually because Hunt failed to offer any proof that his attorneys were deficient or that he was prejudiced by the challenged comments. (Vol. 22, Tab 63 at 74-75, 80-86.) With the exception of the first claim, regarding the comments that the jury was

---

[71/] Hunt failed to exhaust this claim because he did not raise it in his Rule 32 appellate brief. (*See* Vol. 19, Tab 54 at 88-94.)

making only a "recommendation," Hunt raised these claims again in his appellate brief, (Vol. 19, Tab 54 at 88-94).

<strong>c.      State Court decisions & arguments of the parties:</strong>

Respondent appears to argue that all of the prosecutorial misconduct claims are procedurally barred under Appellate Rule 28(a)(7) due to insufficient pleading.  Alternatively, Respondent asserts that Hunt failed to meet the *Strickland* requirements.  (Answer ¶¶ 112-16.)

On appeal, the Court held that Hunt failed to meet to the *Strickland* requirements with respect to his "penalty phase" claims

> Hunt argues that the circuit court erred in concluding that his counsel's performance at the penalty phase of his capital trial was not deficient.
>
> [The Court then goes on to analyze Hunt's ineffective assistance of counsel mitigation claim].   Therefore, Hunt failed to prove that the alleged excluded mitigation evidence would have affected the outcome at the penalty phase.
>
> Hunt also makes several other arguments concerning his counsel's performance at the penalty phase.  However, Hunt presented absolutely no evidence at the Rule 32 hearing in support of these claims; therefore, he failed to meet this burden of proof.  Rule 32.2, Ala. R. Crim. P.

*Hunt*, 940 So. 2d at 1067, 1070.  In another portion of the opinion, the Court specifically addresses the ineffective assistance of counsel prosecutorial claims:

> Hunt argues that trial counsel failed to object to certain instances of prosecutorial misconduct.  <u>Specifically, he argues that the prosecutor vouched for State witnesses, injected his own opinions into the proceedings, and commented on facts not in evidence.</u>
>
> The underlying substantive issues were addressed by this Court in our opinion on direct appeal.  <u>In each instance we found no error.  Because we found no merit to the substantive issue, Hunt cannot satisfy the *Strickland* test.</u>  As this Court stated in *Coral v. State*, 900 So.2d 1274, 1287 (Ala.Crim.App.2004):
>
> > "The substantive claim was addressed by the Alabama Supreme Court on direct appeal and determined adversely to Coral.... Therefore, Coral

Page 208 of  248

can show no prejudice. The circuit court correctly denied relief on this claim."

Moreover, although we do not have the benefit of trial counsel's testimony because both attorneys are now deceased, this Court has repeatedly held that whether, and when, to object is a matter of trial strategy.  As we stated in *Moore v. State*, 659 So.2d 205, 209 (Ala.Crim.App.1994):

> "Objections are a matter of trial strategy, and an appellant must overcome the presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action 'might be considered sound trial strategy.' *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693 (1984). Again, the appellant has not shown how she was prejudiced by trial counsel's failure to make objections."

*Hunt*,  940 So. 2d at 1064 (emphasis added)

On rehearing, the Alabama Court of Criminal Appeals re-visited the *Strickland* analysis as applied to the ineffective assistance of counsel claims that had previously been dismissed due to the finding of no plain error on the substantive issues.  *Id*. at 1073-75.  As discussed earlier in the opinion, the Court found that Hunt's claims were not sufficiently pled because he merely cited to page and section numbers from the lower court opinion.  *Id*. at 1074.  The Court then explained:

> we have reviewed the issues presented in Hunt's brief. The issues that have been identified by merely citing page numbers in the Rule 32 record are: . . . .  (4) counsel was ineffective for failing to object to improper argument made by the prosecutor in his opening and closing statements . . . .
>
> . . . .
>
> Hunt argues that counsel was ineffective for failing to object to prejudicial arguments in the prosecutor's opening and closing statements. The circuit court also addressed these claims in the alternative and found that Hunt presented no evidence showing that he was prejudiced by trial counsel's failure to object.  Moreover, a great portion of our opinion on direct appeal addressed claims that the prosecutor's argument was erroneous. In each instance we found that the argument was not inappropriate.  Hunt cannot show that counsel's performance was deficient in regard to these claims. . . .

After carefully reviewing the Supreme Court's decision in *Taylor* and the issues raised in this case, we conclude that our original decision affirming the denial of Hunt's Rule 32 petition was correct.

*Hunt*, 940 So. 2d at 1073-75.

Given these findings, it is clear that the state court ultimately decided that all but one of Hunt's ineffective assistance of counsel prosecutorial misconduct claims failed because he failed to present any evidence to support his claims; accordingly, he failed to meet the *Strickland* requirements.[72]   In his federal habeas petition, Hunt presented no legal argument or citation to authority which might compel a finding that the state court's decision was contrary to or an unreasonable application of *Strickland*.  Moreover, it has been determined that none of the underlying allegations of prosecutorial misconduct were sufficiently egregious to render the trial fundamentally unfair.  Hunt has failed to establish that he was prejudiced by counsel's failure to object to the alleged prosecutorial misconduct - even if some of the objections might have been sustained.  Hunt is entitled to no relief.

### iii.    Trial Court's Erroneous Instructions on Reasonable Doubt.  (Doc. 1, ¶ 74.)

Hunt contends his trial attorneys were ineffective for failing to object when the court purportedly misdefined "proof beyond a reasonable doubt" using such phrases as proof "to a moral certainty," "doubt for which a good, sound sensible person could give a reason," and "an abiding conviction that Mr. Hunt here is guilty."  According to Hunt, these instructions diminished the state's burden and undermined confidence in the jury verdict   (Doc. 1, ¶ 74) (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993)).

---

[72]    Hunt never raised, in his amended Rule 32 brief, the ineffective assistance of counsel claim regarding the prosecution's alleged attempt to fabricate evidence of sexual abuse.  (*See* Vol. 14, Tab 48, ¶¶ 37, 45-63.)

Hunt raised these claims in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶¶ 84-86). The trial court rejected them:

> Hunt alleges that the Court's definition of reasonable doubt violated the principles set forth in *Cage v. Louisiana*, 498 U.S. 39 (1990) and *In re Winship*, 397 U.S. 358 (1970). In *Lawhorn v. State*, 745 So. 2d 971 (Ala. Crim. App. 1999), the Court of Criminal Appeals reviewed similar language in the trial court's instruction that Hunt contends is improper. The Court of Criminal Appeals held that:
>
>> While the trial court used the terms "actual substantial doubt" and "moral certainty" in its instructions, it did not also use the term "grave uncertainty" in defining reasonable doubt. It was the use of all three terms that the Supreme Court found unconstitutional in *Cag*e. This court has held that use of some, but not all, of the terms examined in *Cage* does not necessarily constitute reversible error.
>>
>> In a recent revisitation of *Cage*, the United States Supreme Court held that, while it did not condone the use of the *Cage* terminology in reasonable doubt instructions, the use of such terminology does not automatically render instructions unconstitutional if "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).
>
> *Lawhorn v. State*, 756 So. 2d at 985.
>
> The Court's definition of reasonable doubt given to the jury, taken as a whole, did not violate the principles of *Cage*. The Court finds that the allegation in Hunt's second [sic] amended petition attacking the Court's definition of reasonable doubt to be without merit. Thus, Hunt has failed to state a claim of ineffective assistance of counsel or establish that a material issue of fact or law exist [**sic**] that would entitle him to relief as required by Rule 32.7(d), ARCrP. The Court finds that this allegation is without merit; therefore, it is hereby denied.

(Vol. 22, Tab 63 at 54-55.)

The Court of Criminal Appeals affirmed by quoting the above language and concluding: "The circuit court's findings are correct and supported by case law. Relief was correctly denied on this claim." *Hunt*, 940 So. 2d at 1066.

Hunt fails to explain how the state court's decision was an unreasonable interpretation of or contrary to *Strickland*.  Indeed, Hunt fails to explain how the challenged phrases are unconstitutional in light of the *Victor v. Nebraska* decision cited above by the Court of Appeals.  *See Hunt*, 940 So. 2d at 1066 (citing 511 U.S. 1).  In *Victor*, *supra*, the United States Supreme Court noted that the use of terms such as "moral certainty" does not automatically render the instructions unconstitutional. *Id*. at 15-16.  The Court explained:

> In the *Cage* instruction, the jurors were simply told that they had to be morally certain of the defendant's guilt; there was nothing else in the instruction to lend meaning to the phrase. Not so here. The jury in Sandoval's case was told that a reasonable doubt is "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." Sandoval App. 49 (emphasis added).  The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case.  Other instructions reinforced this message.  The jury was told "to determine the facts of the case from the evidence received in the trial and not from any other source."  *Id*., at 38.  The judge continued that "you must not be influenced by pity for a defendant or by prejudice against him.... You must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." *Id*., at 39.  Accordingly, there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case.

*Victor*, 511 U.S. at 16 (emphasis added).

Similarly, in the present case, the trial judge gave other instructions that would have conveyed to the jury that "moral certainty" related to the evidence in the case:

> Now, you've heard throughout the arguments the term "reasonable doubt". Reasonable doubt means a doubt which has some good reason for arising out of the evidence presented in the case.  It means an actual and substantial doubt growing out of the unsatisfactory nature of the evidence in the case.  It does not mean doubt that arises from mere whim or from a groundless surmise or guess.
>
> While the law requires you to be satisfied of the defendant's guilt beyond a reasonable doubt, it at the same time prohibits you from going outside the evidence to search for doubts upon which to acquit the defendant.  In arriving at your verdict

it is your duty to carefully consider the entire evidence in the case and in doing so you can entertain only such doubts that shall arise from the evidence as I've already defined. Unless the doubt is a reasonable one and does so arise it will not be sufficient in law to authorize a verdict of not guilty.

Upon careful consideration of all the evidence, this is how it works: You ask yourself, "Is he guilty?" And, if the answer comes back from all the evidence, after considering it, "I have no doubt that he is," then it's your duty to convict the defendant. If the answer comes back, "I have a doubt," and that doubt arises out of the evidence or the insufficiency of the evidence or lack of evidence, then it is your duty to acquit the defendant.

(Vol. 5 Tr 870-71.)  Given these instructions, Hunt has failed to establish that the trial judge's instructions were constitutionally deficient. Thus, he has failed to show that the state court's decision was contrary to or an unreasonable application of *Strickland*.

> **iv.    Inflammatory Sketches Introduced Through Witness Kilpatrick, and Inflammatory Photographs Introduced by the State.** (Doc. 1, ¶ 75.)

Hunt contends that his trial attorneys were ineffective because they failed to object to the introduction of evidence he describes as inflammatory.

First, Hunt complains that his attorneys failed to object to the state's reliance on photographs of the deceased victim. (Doc. 1, ¶ 75.)[73]  According to Hunt, the photographs were prejudicial, irrelevant, not probative and his attorneys should have objected to their introduction. (Doc. 1, ¶ 75.)

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 101), but the court rejected his claim:

This claim is located . . . paragraph 101 . . . of Hunt's amended petition. In *Burgess v. State*, 723 So. 2d 742, 764 (Ala. Crim. App. 1997), the Court of Criminal Appeals, observed that:

---

[73]    In the photograph Lane is sprawled on the kitchen floor, partially clad with her private areas exposed. Additionally, a broom handle lies between her legs. (*See* Vol. 22, Tab. 59 at 6; Vol. 2, Tr. 39; Vol. 8 at 115-17, 152.)

"The courts of this state have repeatedly held that photographs that accurately depict the crime scene and the nature of the victim's wounds are admissible despite the fact that they may be gruesome or cumulative.

" '[P]hotographs showing external wounds of a deceased victim are admissible even if the evidence is gruesome, cumulative, and relates to undisputed matters. *Ex parte Siebert*, 555 So.2d 780 (Ala.1989) [, cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990) ]. Moreover, photographs that depict the position and location of a victim's body at the scene of an offense have been held to be proper. *Hill v. State*, 516 So.2d 876 (Ala.Cr.App.1987).' *Oryang v. State*, 642 So.2d 979, 989 (Ala.Cr.App.1993)." *Land v. State*, 678 So.2d 201, 207-08 (Ala.Cr.App.1995).

The Court reviewed the pictures admitted at Hunt's trial and correctly determined they were admissible despite the fact that some were of a graphic nature. The Court finds the [claim] fails to raise a claim or establish that a material issue of fact or law exists that would entitle him to relief as required by Rule 32.7(d), ARCrP. The Court finds that the [claim] is without merit; therefore it is hereby denied.

(Vol. 22, Tab 36 at 61.)

Hunt also complains about counsels' failure to object to a notepad containing sketches of

women. (Doc. 1, ¶ 75.)  According to witness Kilpatrick, her husband, who liked to doodle, drew the

sketches on a notepad that was near the telephone.  (Vol. 3, Tr. 563.)  Hunt contends the sketches

were not relevant or probative because the evidence established Kilpatrick's late husband drew them,

not Hunt. (Doc. 1, ¶ 75.)  At trial, however, the prosecution argued that Mr. Kilpatrick, who was by

then deceased, was unlikely to have drawn the sketches because of his age.

Hunt raised this claim in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶ 71), but the Court

rejected the claim, finding that Hunt  failed to present evidence that his attorneys were deficient or

that he was prejudiced.[74]  (Vol. 22, Tab 63 at 50.)

---

[74]/ There was evidence at trial that the same notepad contained a telephone number to the local hospital.  There was also evidence at trial that Hunt called a local hospital, hoping to find out if Lane had been admitted and her condition.  Thus, introduction of the notepad was clearly relevant.

Both of these claims are procedurally defaulted because Hunt failed to raise them in his Rule 32 appellate brief, (Vol. 19, Tab 54 at p. iii - vii), or his Alabama certiorari petition, ( Vol. 21, Tab 58 at i - iv).  In response, Hunt again relies on the argument that he raised these claims in his appellate brief when he made general ineffective assistance of counsel arguments and cited to page numbers and section numbers from the Rule 32 trial court's opinion.  (Reply at 67-68.)  As addressed above, however, such citations do not satisfy the pleading requirements of Appellate Rule 28(a)(7).  *See Hunt*, 940 So. 2d at 1074.  Because Hunt failed to fairly present his claims to the state court and a return to state court would be futile, the claims are procedurally barred.

In the alternative, Hunt's claims fail on the merits. Hunt does not establish that the state court's decision was contrary to or an unreasonable application of *Strickland*, particularly where the evidence was admissible under Alabama law.  *See United States v. DeParias*, 805 F.2d 1447, 1453 (11th Cir. 1986) ("Photographs of homicide victims are [admissible if] relevant in showing the identity of the victim, the manner of death, the murder weapon, or any other element of the crime.").

Moreover, the court finds unavailing Hunt's assertion that his habeas petition identified the clearly established Supreme Court precedent that was unreasonably applied and which is contrary to the standard applied by the state courts.  Hunt notes that on pages 9 through 11 of his habeas petition, he "set forth the governing standard for claims of ineffective assistance of counsel as a preface to the specific claims of counsel error."  (Reply at 69)(citing Doc. 1, ¶¶ 30-32).   In that portion of his habeas petition, however, he merely spells out general standards set forth in various United States Supreme Court cases regarding analysis of ineffective assistance of counsel claims.[75]  (*See id.*)

---

[75]   He also cites to certain cases which discuss the standards found in the American Bar Association Guidelines for the Appointment and Performance of Counsel on Death Penalty Cases (1989).  (Doc. 1 ¶ 31.)  Such citations do not establish the basis for a constitutional claim, however.

These general references to Supreme Court cases are not compelling, particularly given that Hunt failed to cite any legal authority in the paragraph discussing his specific ineffective assistance of counsel sketch pad and photograph arguments. (*See* Doc. 1, ¶ 75.)  As such, Hunt fails to establish that the state court's finding was contrary to or an unreasonable application of *Strickland*.

> ### v.     Failure to Transcribe All of the Proceedings (for example: bench conferences and peremptory challenges.)  (Doc. 1, ¶ 76.)

Hunt complains that his attorneys were ineffective for failing to ensure that a complete and accurate record was maintained during his trial and penalty proceedings. (Doc. 1 ¶ 76.) He notes that the Court of Criminal Appeals had a duty to review the full transcript for error.  However, Hunt argues, this was impossible because "many portions" of the proceedings were not transcribed.  (Doc. 1, ¶ 76.)

Hunt raised this claim in his amended Rule 32 petition, (Vol. 14, Tab 48 ¶ 115), but the court found the claim was without merit:

> This claim is located . . . in paragraph 115. . . of Hunt's amended petition.  On direct appeal, the Court of Criminal [**sic**] addressed the underlying substantive issue and concluded that:

>> "the untranscribed portions of the proceedings did not constitute 'a substantial and significant portion of the record' and we have 'conclud[ed] affirmatively that no substantial rights of [the appellant] have been adversely affected by the omissions from the transcript.' " *Ex parte Harris*, 632 So.2d at [543] at 546 [(Ala. 1993)].

> *Hunt*, 659 So. 2d at 955. . . .

> . . . .

> Hunt presented no evidence or legal argument at his evidentiary hearing establishing that an incomplete trial record caused him to be prejudiced on appeal. Prejudice cannot merely be alleged; it must be affirmatively proved."  *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000)**.**  The Court finds that Hunt "has not met his burden of proof imposed by Rule 32.3, ARCrP."  *Boyd v. State*, 746 So.

2d at 385.   The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced.   The [claim] is hereby denied.

(Vol. 22, Tab 63 at 62-64)

This claim is precluded because Hunt failed to raise it in his Rule 32 appellate brief, (Vol. 19, Tab 54 at p. iii - vii), or his Alabama certiorari petition ( Vol. 21, Tab 58 at i - iv), and return to state court would now be futile.

In the alternative, Hunt has failed to demonstrate how the state court's ruling was contrary to or an unreasonable application of *Strickland*; Hunt did not specify what type of information was omitted from the transcript and how such information would have affected the outcome of his case. As Hunt has failed to demonstrate prejudice due to counsel's alleged deficiency, he is entitled to no relief.

### 5.      Penalty Phase

#### a.      Mitigating Evidence.  (Doc. 1, ¶¶ 77-89.)

##### i.      Hunt's childhood.  (Doc. 1, ¶ 77-88)

Hunt complains about his trial counsel's performance during the penalty phase of the trial. Specifically he faults trial counsel for putting on no witnesses and no evidence, and notes that the defense argument amounts to fewer than five and one half pages of the trial transcript.  (Doc. 1 ¶ 79.) Hunt first complains that his attorneys were ineffective because they failed to conduct an investigation that would have revealed troubling aspects of his childhood.  (Doc. 1 ¶¶ 81, 82.)[76]

---

[76]     Some of the information regarding Hunt's troubled childhood was found in his pre-sentencing report and his mother testified at the sentencing hearing.  (*See* Vol. 22, Tab. 59 at p. 12)  Therefore, here, Hunt presumably challenges his attorneys for failing to present additional evidence regarding his childhood.

Citing *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), Hunt emphasizes that the Supreme Court has held that "[t]he investigation for preparation of the sentencing phase . . . should comprise efforts to discover <u>all reasonably available mitigating</u> evidence." (Doc. 1 ¶ 80.)  The types of evidence that should be presented include, "medical history, educational history, employment and training history, <u>family and social history</u>, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* (quoting ABA Guidelines § 11.8.6 at p. 133) (emphasis in original)).  Additionally, Hunt notes that the jury must be allowed to consider "as a <u>mitigating factor</u> any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Doc. 1 ¶ 77)(citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis in original)).  Moreover, Hunt argues that under Alabama law, the sentencer "has unlimited discretion to consider <u>any</u> mitigating circumstances." (Doc. 1 ¶ 78) (citing *Ex parte Clisby*, 456 So. 2d 105, 108 (Ala. 1984)).

Hunt contends that additional mitigating evidence in this case included: (1) Hunt's parents were alcoholics; (2) Hunt's father, who was not a medical professional, performed surgery on Hunt's leg with a knife after abuse rather than taking him to a hospital; (3) an abusive step-father who savagely beat Hunt's mother and siblings, and who also tried to molest Hunt's sister; (4) abusive foster homes; (5) school records purportedly indicating low IQ and poor cognitive skills; (6) Hunt's overdose from crack; and (7) his employment at the time of the murder.[77]  (Doc. 1 ¶¶ 82-86.)

Hunt argues that "[h]ad trial counsel discovered these and other mitigation facts and presented even a  fraction of them to the jury, there is a reasonable probability that the jury would not have recommend that [he] be sentenced to death." (Doc. 1 ¶ 87.)  Hunt notes that the prosecution argued

---

[77]/   It is not entirely clear to what extent some of this evidence may have been in the pre-sentence report.

in support of two aggravating factors, but even in the absence of mitigation evidence, one juror voted

for life in prison.   (*Id*. ¶ 87.)  Had the jury heard the additional mitigating evidence, he argues, the

jurors more likely would have voted for a lesser sentence and the court would have been more likely

to find additional mitigators.  (*Id*.); *See  Harris v. Dugger*, 874 F.2d 756, 763 (11th Cir. 1989); *Blake*

*v Kemp*, 758 F.2d 523, 533 (11th Cir. 1985); *Blanco v. Singletary*, 943 F.2d 1477, 1504 (1991);

*Jackson v. Herring*, 42 F.3d 1350, 1367-68 (1995).

     As an initial matter, the prosecution contends the penalty phase claims are waived because

Hunt himself has told the Court on numerous occasions that he has no desire to challenge any penalty

phase claims.  (Answer ¶ 128 n.9.)  This issue is addressed in Section VII of this opinion.

     In the alternative to its waiver argument, Respondent asserts that Hunt has failed to establish

that the state court's ruling was contrary to or an unreasonable application of the law or the facts.

(Answer ¶ 130-37.)  This claim was raised in Hunt's amended Rule 32 petition, (Vol. 14, Tab 48 ¶

157-170).  The Court rejected this argument:

> Hunt cites the Court to the American Bar Association *Guidelines of the Appointment*
> *and Performance of Counsel in Death Penalty Cases*, in support of his claim.  In
> *Strickland*, however, the United States Supreme Court held that:
>
>> prevailing norms of practice as reflected in American Bar Association
>> standards and the like . . . are guides to determining what is
>> reasonable, but the [sic] are only guides.  No particular set of detailed
>> rules for counsel's conduct can satisfactorily take account of the
>> variety of circumstances faced by defense counsel or the range of
>> legitimate decisions regarding how best to represent a criminal
>> defendant.   Any  such  set  of  rules  would  interfere  with  the
>> constitutionally protected independence of counsel and restrict the
>> wide latitude counsel must have in making tactical decisions.
>
> *Strickland v. Washington*, 446 U.S. at 688-89. . . .

Hunt did not present any testimony or other evidence at his evidentiary hearing that, if presented by trial counsel, would have changed the outcome of the penalty-phase. . . .

. . . .

The Eleventh Circuit has held that:

> "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." [*Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*) (noting that such witnesses show nothing more than that, "with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings").

> *Chandler v. United States*, 218 F.3d at 1316 n.20.   In sentencing Hunt, this Court considered evidence of Hunt's childhood, his drug problem as a youth, and the abuse he suffered from his father, but found that this evidence did not constitute mitigation. (C.R. 1051) <u>The "facts" in paragraph 167 that Hunt contends would have been mitigating would, at most, have been cumulative to the evidence presented at trial.</u>

. . . .

[Therefore] Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced.

(Vol. 22, Tab 63 at 67-69, 71-72)(emphasis added).

With respect to the argument that the trial court would not have sentenced Hunt to death if trial counsel had presented mitigation evidence regarding his childhood, the Rule 32 trial court explained:

> In *Grayson v. Thompson*, 257 F.3d 1194, 1226 (11th Cir. 2001), the Eleventh circuit addressed a similar claim and held:

> > In light of the brutal nature of this crime against an elderly victim and the specific findings made by the court that sentenced Grayson to death, we find no reasonable probability that the mitigating circumstances gathered and presented in connection with Grayson's state habeas proceedings would have altered the balance of aggravating and mitigating factors in this case.

> The brutal manner in which Hunt murder the victim "[i]s more characteristic of the actions of wild ravaging dogs of hell rather than even the lowest and most depraved

level of humanity." *Grayson v. Thompson*, 479 So. 2d 69, 75-76 (Ala. Crim. App. 1984). Hunt offered no evidence at his evidentiary hearing that could have been considered in mitigation. [Footnote 3][78] . . . Prejudice cannot merely be alleged; it must be affirmatively proved." *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000). The Court finds that Hunt "has not met his burden of proof imposed by Rule 32.3, ARCrP." *Boyd v. State*, 746 so. 2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. The allegation . . . is hereby denied by the Court.

(Vol. 22, Tab 63 at 72-73.)

The Court of Criminal Appeals upheld:

Hunt argues that the circuit court erred in concluding that his counsel's performance at the penalty phase of his capital trial was not deficient.

"When claims of ineffective assistance of counsel involve the penalty phase of a capital murder trial the focus is on ' "whether 'the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.' " ' *Jones v. State*, 753 So.2d 1174, 1197 (Ala.Crim.App.1999), quoting *Stevens v. Zant*, 968 F.2d 1076, 1081 (11th Cir.1992). *See also Williams v. State*, 783 So.2d 108 (Ala.Crim.App.2000). An attorney's performance is not per se ineffective for failing to present mitigating evidence at the penalty phase of a capital trial. *See State v. Rizzo*, 266 Conn. 171, 833 A.2d 363 (2003); *Howard v. State*, 853 So.2d 781 (Miss.2003), cert. denied, 540 U.S. 1197 (2004); *Battenfield v. State*, 953 P.2d 1123 (Okla.Crim.App.1998); *Conner v. Anderson*, 259 F.Supp.2d 741 (S.D.Ind. 2003); *Smith v. Cockrell*, 311 F.3d 661 (5th Cir. 2002); *Duckett v. Mullin*, 306 F.3d 982 (10th Cir. 2002), cert. denied, 123 S.Ct. 1911 (2003); *Hayes v. Woodford*, 301 F.3d 1054 (9th Cir. 2002); and *Hunt v. Lee*, 291 F.3d 284 (4th Cir.), *cert. denied*, 537 U.S. 1045 (2002)."

*Adkins v. State*, 930 So.2d 524, 536 (Ala.Crim.App.2001) (opinion on return to third remand). As we also state in *McWilliams v. State*, 897 So. 2d 437, 453-54 (Ala. Crim. App. 2004):

" 'Prejudicial ineffective assistance of counsel under *Strickland* cannot be established on the general claim that additional witnesses should have been called in mitigation. *Briley v. Bass,* 750 F.2d 1238, 1248

---

[78]   Footnote 3 reads: "Counsel for Hunt did move to admit affidavits and to allow his legal assistant to testify about the conversation she had with Hunt's siblings. The State objected and the Court denied counsel's motion."

(4th Cir. 1984); *See also Bassette v. Thompson,* 915 F.2d 932, 941 (4th Cir. 1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial.' *Smith v. Anderson,* 104 F.Supp.2d 773, 809 (S.D.Ohio 2000), *aff'd,* 348 F.3d 177 (6th Cir. 2003). 'There has never been a case where additional witnesses could not have been called.' *State v. Tarver,* 629 So.2d 14, 21 (Ala.Crim.App.1993)"

The record in this case reflects that Hunt filed the original Rule 32 petition *pro se*. Counsel had been appointed for Hunt. Acting *pro se* Hunt filed several motions requesting that the circuit court not entertain any claims related to ineffective assistance of counsel at the penalty phase of his capital trial. In a motion to dismiss stamped as filed in the circuit clerk's office on January 10, 2001, Hunt states the following:

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of difference to counsel's judgments.

" *In the instant case counsel for the defendant did an exhaustive background check and after discussions between counsel and defendant the decision, a strategic decision, was made by both counsel and defendant that to present testimony at a sentence hearing would be fruitless and even harmful, and [a] decision was made not to present testimony.*

"1) Harmful because any testimony would [have] bolstered the theory of the state

"2) There is no prejudice because even if there existed mitigating evidence, no amount presented could hurdle over the aggravating factor of heinous, atrocious [or] cruel."

(C.R. 137; emphasis added). The motion is signed by Gregory Hunt.

The record also shows that before the evidentiary hearing on the Rule 32 petition, the circuit court discussed the motions filed by Hunt *pro se* and the following occurred:

"[Assistant attorney general]: If you recall, Judge, with our last status conference, Mr. Hunt had indicated to the Court that he wished all the penalty phase issues of ineffective assistance be dismissed. And we would ask the Court to colloquy Mr. Hunt and see if that's still his desire. If it is, we would ask that any and all ineffectiveness claims

concerning the penalty phase be dismissed at this time, Your Honor, before we move on.

"The Court: Mr. Levine [defense counsel]?

"[Defense counsel]: Your Honor, I would oppose, obviously, I oppose the prosecuting general's motion. I think that one, it would be inappropriate for your Honor to colloquy my client directly, because he is represented by counsel....

"....

"[Hunt]: And I want to stand adamant about my desire not to challenge the penalty phase issues.

"The Court: You do not want to challenge the penalty phase issues?

"[Hunt]: Right."

(R. 66-68.) Hunt's statements are not disputed because both of his trial attorneys were deceased at the time of the Rule 32 proceedings.

Hunt argues that counsel was ineffective for failing to investigate mitigating evidence. He argues in his brief to this Court that he demonstrated at the Rule 32 proceeding that his trial counsel's failure to conduct an investigation was complete. He asserts that he presented pages of possible mitigating evidence that could have been but was not presented at trial.

However, what Hunt fails to consider is that the majority of the alleged mitigating evidence was only pleaded in his Rule 32 petition. As this Court stated in *Boyd v. State,* 913 So.2d 1113, 1125 (Ala.Crim.App.2003):

> " 'Rule 32.6(b) requires that the *petition* itself disclose the *facts* relied upon in seeking relief.' *Boyd v. State,* 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a *conclusion* 'which, if true, entitle[s] the petitioner to relief.' *Lancaster v. State,* 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of *facts* in pleading which, if true, entitles a petitioner to relief. After *facts* are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. R.Crim. P., to present evidence proving those *alleged facts.*"

Here, Hunt argues that there were numerous witnesses, Hunt's siblings, who could have testified about Hunt's violent and abusive father and his troubled childhood. However, Hunt never presented any witnesses at the Rule 32 hearing to support theses allegations.  "<u>When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented at the evidentiary hearing</u>." *Black v. State,* 794 S.W.2d 752, 757 (Tenn.Crim.App.1990).  When the petitioner alleges that mitigating evidence should have been presented at the penalty phase, he has the burden of proving that such mitigating evidence does in fact exist.  *See Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex.Crim.App.1992).

The record does reflect that counsel introduced some of Hunt's school records at the evidentiary hearing to support his assertion that Hunt had "low cognitive functioning."  We have reviewed the records.  The majority of those records show that Hunt was an average student who made several Ds over the course of his school years.  On the back of his 6th grade report card the teacher made the following comment: "Greg can do well when he feels he needs to. He needs to be pushed at times." The presentence report stated that Hunt completed the 10th grade and he reported that he had obtained his general educational development ("GED") certificate. There is no indication in the records submitted by Hunt to indicate that Hunt had "low cognitive functioning." [Footnote 15] .[79]   Therefore, Hunt failed to prove that the alleged excluded mitigating evidence would have affected the outcome at the penalty phase.

Hunt also makes several other arguments concerning his counsel's performance at the penalty phase. However, Hunt presented absolutely no evidence at the Rule 32 hearing in support of these claims; therefore, he failed to meet his burden of proof. Rule 32.3, Ala.R.Crim.P.

Last, the United States Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), when reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial stated:

> "In *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], we made clear that, to establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Id.*, at 694, 104 S.Ct. 2052. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."

---

[79]  Footnote 15 reads: "Indeed, Hunt filed numerous items with this Court, and we can find no evidence that Hunt has a lower than average cognitive functioning."

539 U.S. at 534, 123 S.Ct. 2527.

Here, the circuit court found as aggravating circumstances that the murder was committed during the course of a burglary and that the murder was especially heinous, atrocious, or cruel as compared to other capital murders. The circuit court also found as a statutory mitigating circumstance that Hunt had no significant history of prior criminal activity. The circuit court considered that Hunt's childhood "had been wrought with misfortune," that he had been placed in foster care at a young age, that he had a drug problem, and that he had had an abusive father. The circuit court declined to find that this evidence constituted nonstatutory mitigating circumstances.

<u>In reviewing Hunt's claim of prejudice under *Strickland* we have independently reweighed the aggravating circumstances that were presented in this case against the alleged nonstatutory mitigating circumstances that were not presented at the penalty phase. We are confident that death was the appropriate sentence in this case and that the alleged excluded mitigating evidence would not have effected the result.</u> *See Wiggins v. Smith*.

*Hunt*, 940 So. 2d at 1067-70 (emphasis added by underlining) (emphasis in italics in the original)

In its answer, Respondent notes that "The burden to prove both *Strickland* elements 'by a preponderance of the evidence' is on the defendant/petitioner, and that burden 'is a heavy one.'" *Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006)). Respondent asserts that Hunt failed to establish deficiency of trial counsel. Respondent argues that Hunt had over seven years to collect and present evidence at the Rule 32 hearing in support of his mitigation claims, yet "completely" failed to do so. (*Id*.) During these seven years, Hunt's trial attorneys died and Hunt failed to present any evidence to rebut the legal presumption that their investigation was reasonable. (*Id*. ¶ 130.) Respondent also points out that Hunt failed to present evidence that he was prejudiced by the alleged deficiency of his trial attorneys; he called no witnesses who could testify to the truth of the story he "laid out in his Rule 32 petition" and he only presented documentary evidence in the form of school records. (Answer ¶ 131.)

Respondent further argues that "counsel is not required to present all mitigation evidence, even if additional mitigation evidence would have been compatible with counsel's strategy." (Answer ¶ 134) (citing *Osborne*, 466 F.3d at 1306).

In his reply brief, Hunt first challenges the Court's reliance on his statement that his attorneys did an exhaustive background check given his efforts to sabotage counsel's efforts at obtaining post-conviction relief.  (Reply at 69-73.)  "In determining whether mitigating evidence exists, defense counsel is obligated to do more than simply ask the defendant," Hunt points out.  (Reply 70) (citing several cases including *Rompilla v. Beard*, 125 S. Ct. 2456, 2462-63 (2005)).  His attorneys note that "one must consider the source" when evaluating his claim: "Given Mr. Hunt's occasional efforts to sabotage counsel's efforts at obtaining post-conviction penalty-phase relief, Mr. Hunt can not be considered a reliable report of his trial counsel's efforts (or lack thereof) at finding and obtaining mitigating evidence." (Reply at 70.)  Hunt claims the record does not support a finding that his prior attorneys conducted any investigation.  He points to the attorney billing records introduced at the Rule 32 hearing showing attorney Wilkinson billed only 45 hours preparing for the trial.[80]  (*Id*. at 70.)

Hunt contends that the experience of the state court that some attorneys do not bill for all of their time is "neither here nor there and is no substitute for actual evidence," particularly where Wilkinson never billed the maximum.  (Reply at 71.)  He also asserts that the records do not indicate any investigation conducted specifically with the penalty-phase in mind.  (*Id*.)  Additionally, Hunt claims the time spent by defense investigators on the case is not compelling because those investigators allegedly failed to speak to any of Hunt's family members.  In contrast, his current attorneys were able to "unearth a significant amount of truly mitigating evidence" that was never

---

[80]/     The files of the late Hubert Taylor could not be located and his billing records were not found in the court files.

presented to the jury. (*Id*. at 71.)  Although some of that evidence was in the pre-sentence report, the information was "never shown to the jury."  (Reply at 71-72.)  Thus, according to Hunt, his trial attorneys could not have made an informed tactical decision with respect to presentation of mitigating evidence.  Accordingly, Hunt's current attorneys argue Hunt's account of the events is unreliable given the source and the evidence in the record.  (Reply at 72.)  Finally, Hunt argues that the state court's finding was an unreasonable view of the facts in light of the evidence presented and an unreasonable application of *Strickland*.[81]

Hunt's arguments are unpersuasive.  First, only  Hunt knows the extent to which he shared with his trial counsel the tragedies and challenges of his childhood either before or during trial and he has indicated his attorneys were fully aware of his background.  Thus, there is no evidence that the state court's decision was contrary to or an unreasonable application of the facts.  Second, and most importantly, the Appeals court "independently" considered the mitigating evidence that Hunt's current attorneys "unearthed," and "reweighed" that evidence against the aggravating circumstances.  *Hunt*, 940 So. 2d at 1070.  Yet, even then, the Court was "confident that death was the appropriate sentence in this case and that the alleged excluded mitigating evidence would not have effected the result."

Hunt has failed to establish that the state court's decision was contrary to or an unreasonable application of the facts, *Strickland* or the cases cited in his brief.  Indeed, one of the cases upon which Hunt relies is instructive.  Hunt quotes in his habeas petition this excerpt from *Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir. 1985): "It should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably

---

[81]    Hunt also raises again his unsuccessful argument that the Court of Criminal Appeals held him to a higher burden by requiring that he present "extrinsic" evidence of his ineffective assistance of counsel claims.  (Reply at 72-73.)  This argument is addressed in Section IV(D)(1) of the current opinion.

effective assistance of counsel by any objective standard of reasonableness." Hunt, however, failed to cite the sentence immediately following, which limits the impact of the sentence upon which he relied: "This is not the end of the inquiry, for [Petitioner] must also demonstrate that he was prejudiced by his attorney's conduct." *Id.* This Hunt has failed to do.

### ii. Hunt's Intoxication/Drug Use. (Doc. 1, ¶ 89.)

Hunt contends that his attorneys were ineffective for failing to present or refer to evidence that he was impaired at the time the crime was committed during the penalty phase. He argues that because such evidence was adduced at trial, and, was highly probative, the jury was under an obligation to consider such evidence at the penalty phase of the trial. *See Booker v. Dugger*, 922 F.2d 633 (11th Cir. 1991). However, he complains that his attorneys only "suggested" that impairment by drugs or alcohol could be considered a mitigating factor. (Doc. 1 ¶ 89.)

As an initial matter, the Court notes that Hunt's trial attorneys did mention Hunt's alleged intoxication during the penalty phase of trial:

> Mitigating circumstances which are set out in the code which might be applicable here would be . . . . the capacity of the defendant to appreciate the criminality of his conduct or to confirm his conduct to the requirements of law, being substantially impaired. I think drugs and alcohol are probably what is contemplated by that.
>
> As I suggest to you ladies and gentlemen, that is not a defense, of course, to anything. It's a factor, though. If somebody is under the influence of alcohol or drugs on a given night, I think you can consider, when you determine whether or not you are to recommend the death penalty as opposed to life without ever having the possibility of parole.

(Vol. 5, Tr. at 920.)

To the extent Hunt still argues that his trial counsel's argument was ineffective, the Rule 32 court rejected this argument:

This claim is located . . . in paragraph 189 . . . of Hunt's amended petition. Hunt's argument is completely inconsistent. Hunt contends that evidence of his alcohol and drug use prior to the crime had been adduced during the guilt-phase and admits that the Court consider [sic] it but found that it did not establish a mitigating circumstance. Hunt then contends that the trial counsel failed to present such evidence for the jury and Court's consideration. Hunt failed to present any evidence at his evidentiary hearing establishing that he was impaired due to alcohol and/or drugs at the time he murdered the victim. "Prejudice cannot merely be alleged; it must be affirmatively proved." *Williams v. State*, 783 So. 2d 108, 119 (Ala. Crim. App. 2000). The Court finds that Hunt "has not met his burden of proof imposed by Rule 32.2 ARCrP." *Boyd v. State*, 746 So. 2d at 385. The Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced. The allegation [is therefore] denied by the Court.

(Vol. 22, Tab. 63 at 78-79.) As discussed above in the analysis of Hunt's ineffective assistance of counsel claims about his troubled childhood, the Alabama Court of Appeals upheld the lower court's ruling:

The circuit court considered that Hunt's childhood 'had been wrought with misfortune,' . . .[and] that he had a drug problem . . . The circuit court declined to find that his evidence constituted nonstatutory mitigating circumstances. . . .

*Hunt*, 940 So. 2d at 1070 (emphasis added). The Court reweighed the aggravators with the "alleged nonstatutory mitigating circumstances that were not presented at the penalty phase" and the Court still concluded the death sentence was appropriate. *See id.*[82]

Because Hunt has presented no evidence that the state court's decision was contrary to or an unreasonable application of *Strickland*, this claim is due to be dismissed.

### b.     Failure to Object to Rushed Proceedings.  (Doc. 1; ¶ 90-93)

Hunt argues that his trial attorneys were ineffective for failing to object to proceeding immediately to the penalty phase of the trial after the guilt phase, rather than seeking continuances and failing to object to certain "prejudicial" statements by the trial court that allegedly encouraged

---

[82]/   The Respondent's answer to this claim is the same as presented in response to the claims regarding his troubled childhood.  (Answer ¶¶ 128-37.)

the jury to engage in rushed deliberations.[83]  (Doc. 1 ¶ 90.)  He faults his attorneys for failing to take some affirmative action to protest beginning the penalty phase after the judge admitted he and the jury were "tired."  (Doc. 1 ¶ 93.)

According to Hunt, counsels' failure to object prevented them from taking the time necessary to gather mitigating evidence.[84]  (*Id*.)  Additionally, he points out that it was foreseeable that the penalty phase proceedings, which he describes as "the most critical" proceedings in a capital case, might take longer than a few hours.   (*Id*.)  According to Hunt, this course of events and the trial court's comments "unfairly suggested to the jury that their role in the sentence process was unimportant and, therefore, gave the jury a diminished sense of responsibility."  (Doc. 1 ¶ 93) (citing *Caldwell v. Mississippi*, 472 U.S. 320 (1985)).

Hunt raised this claim in his amended Rule 32 petition, (Vol 14, Tab 48 ¶¶ 171-79).  The court rejected it because "Hunt presented no evidence at his evidentiary hearing that would establish that he was prejudiced due to trial counsel's failure to object. . . . [Therefore]  Hunt has failed to prove that the trial counsel's performance was deficient or caused him to be prejudiced." (Vol. 22, Tab. 63 at 73-74.)  Hunt raised these claims again in his Rule 32 appellate brief, (Vol. 19, Tab 54 at 82-83), but the Court of Criminal Appeals summarily dismissed them:

> Hunt also makes several other arguments concerning his counsel's performance at the penalty phase.  However, Hunt presented absolutely no evidence at the Rule 32 hearing in support of these claims; therefore, he failed to meet his burden of proof. Rule 32.3, Ala. R. Crim. P.

---

[83]/  These statements are quoted in the Court's discussion on Hunt's substantive rushed penalty phase claim.  *See* Section V(D)(1) of this opinion.

[84]/  As discussed above, this claim, regarding trial counsel's failure to gather sufficient mitigating evidence, was asserted independently and rejected by the Court of Criminal Appeals under *Strickland*.  *See Hunt*, 940 So. 2d at 1070.

*Hunt*, 940 So. 2d at 1070.

Hunt has failed to establish that the state court's decision was contrary to or an unreasonable application of *Strickland*. Hunt does not explain how his attorneys were deficient for failing to object when Alabama law provides that "[t]he sentencing hearing shall be conducted as soon as practicable after the defendant is convicted." Ala. Code § 13A-5-45(a). Nor does Hunt proffer any valid argument regarding why it was unreasonable for his attorneys to object to the trial court's statement that he and the jury were "tired." Forcing the jury to wait until the next day to conduct the sentencing hearing, after it had already been sequestered for eight days, and it had already sat through trial proceedings for seven of the eight days might have had the effect of hastening deliberations. To establish deficient performance, Hunt must show no competent counsel would have proceeded as his attorneys did. This he has failed to do. Moreover, Hunt failed to establish prejudice because the court reweighed the aggravators and mitigators.

Finally, citing *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985), Hunt contends that the Court's comments unfairly suggested to the jury that their role in the sentencing process was unimportant, thereby giving the jurors a diminished sense of responsibility. This argument is unavailing because that case is not on point. In *Caldwell*, the Court found a constitutional violation where the prosecutor urged the jury to avoid viewing itself as making the final determination regarding whether the defendant would die, because any death sentence would be reviewed for correctness by the State Supreme Court. *Id.* Nothing about *Caldwell* establishes an unreasonable application of United States Supreme Court law by the state court in this case.

### c. **Counsel's Argument.** (Doc. 1, ¶¶ 94-97.)

Hunt next challenges the arguments his trial attorneys made during the penalty stage.  "Given the failure to put on any mitigation evidence the jury and trial court's choice between life and death rested <u>entirely</u> on trial counsel's argument why his life should be spared.  Trial counsel's performance was objectively unreasonable.  " (Doc. 1 ¶ 94) (emphasis in original).  Specifically, Hunt challenges the following comments:

- <u>Paragraph 94</u>: Hunt complains that his attorneys misinformed the jury and diminished their sense of responsibility by telling them that they had the option of considering mitigating evidence, when, instead, they were <u>obligated</u> to consider relevant mitigators:

  > "Mitigating circumstances which are set out in the code which <u>might</u> be applicable here would be . . . ."

  > "Hunt's extreme emotional disturbance, . . .  is <u>perhaps</u> a factor that you <u>might</u> take into consideration. . . ."

  > "[I]f somebody is under the influence of alcohol or drugs on a given night, I <u>think you can consider</u>, when you determine whether or not you are to recommend the death penalty as opposed to life without ever having the possibility of parole."

  > "The code also says you <u>can</u> consider the age of the person . . . ."

(Vol. 5, Tr. at 920) (emphasis added)

- <u>Paragraph 95</u>: Hunt complains that he was prejudiced when his attorneys commented that he had not taken the stand to testify:

  > "<u>You all have not heard from the defendant </u>but you have heard about his state of mind on that particular night.  And, you know there was extreme emotional disturbance, whether right or wrong, it was there and present and it contributed to him doing something that, obviously, he had never done before and is perhaps a factor that you might take into consideration."

(Vol. 5, Tr. at 920) (emphasis added)

- <u>Paragraphs  96 - 97</u>: Hunt complains that his attorneys encouraged the jury to draw highly prejudicial inferences by stating that the only person willing to testify on Hunt's behalf was

his mother.[85]  (Doc. 1 ¶ 96.)  Additionally, he complains that his rights were violated because of comments by his attorneys that equated life without parole to a death sentence.  Such "equivocal advocacy conveyed to the jury that even Mr. Hunt's counsel could not strongly articulate reasons that Mr. Hunt should not be sentenced to death."  (*Id.* ¶ 97.)

> "The Code sets out certain mitigating circumstances when you are deciding whether somebody gets, what I would call, a <u>delayed death penalty</u>, life without parole or a death sentence, which is a long term of imprisonment interrupted by execution. . . .  <u>Like I say, we are talking about a delayed death sentence or something quicker</u>. . . ."

> "The code also says you can consider the age of a person and we are not talking about a juvenile, or somebody under twenty-one, but we are talking about a relatively young person.  So, that a sentence of life without parole for someone in his late twenties would be a little bit more significant, perhaps, than for, say, somebody my age. . . ."

> "Obviously, that is what I'm asking you to do, consider life without parole as opposed to recommendation of death."

> "I think it would be fair.  Nobody is going to be able to undo what was done.  Nobody is going to be able to restore anybody. . . .  I would submit to you that it would be safer, fairer and <u>maybe</u> the right thing to do to recommend life without parole."
>
> . . . .

> "When we talk about the courageous thing to do, I think maybe you heard on the stand, about the only person here in the whole county, <u>I guess, who testified, "for Greg Hunt," or was willing to, was his mother</u>."

> "I don't know that it takes any great courage to recommend death to somebody who is pretty much alone at this stage of the game, rightfully or wrongfully, friendless and in jail and probably asking only to stay in jail forever.  I don't know that it takes a great deal of courage to recommend death to somebody who is in that circumstances.  I think perhaps it takes more courage to do the opposite, to recommend life without parole."

> "Like I say, that is certainly not a good thing at his age.  That is thirty or forty years in the penitentiary.  And, never get out.  If there is such a thing as balancing off for another human being's suffering.  That is a long time to

---

[85]  Hunt failed to raise this claim in his Rule 32 appellate brief, (Vol. 19, Tab 54 at 84-88).  It is, therefore, precluded because he failed to exhaust and a return to state court would be futile.

balancing off for another human being's suffering.  That is a long time to balance it off."

"Under the circumstances, if I wanted to wax as graphically as Mr. Baker [the prosecutor], I could, about the kind of circumstances he will expend the next number of years, it would surprise you, I think.  But, I won't."

"I would just suggest to you that the punishment - - that I am asking you to recommend is not very different in it's severity from what Mr. Baker wants you to do.  It perhaps does require more courage to  do it."

(Vol. 5, Tr. at 919, 920-22, 930-31) (emphasis added).

The Circuit Court rejected each of these arguments finding that Hunt failed to establish the *Strickland* elements.  (Vol. 22, Tab 63 at 74-78, 79.)[86]  With the exception of the comment about only Hunt's mother being willing to testify for him, Hunt raised these same claims in his Rule 32 appellate brief.  (Vol. 19, Tab 54 at 84-88.)  On appeal, after addressing the ineffective assistance of counsel mitigation penalty phase claim, the Court summarily dismissed Hunt's remaining ineffective assistance of counsel penalty phase claims:

Hunt also makes several other arguments concerning his counsel's performance at the penalty phase.  However, Hunt presented absolutely no evidence at the Rule 32 hearing in support of these claims; therefore, he failed to meet his burden of proof. Rule 32.3, Ala. R. Crim. P.

*Hunt*, 940 So. 2d at 1070.

Hunt has failed to establish that the state court's decision was contrary to or an unreasonable application of *Strickland*; he did not establish that a different argument would have changed the outcome. Moreover, because, according to Hunt, he and his trial counsel decided to forego presentation of the mitigation evidence, trial counsel's argument was reasonable under the circumstances, especially given the brutal nature of the crime and the extent of the evidence against

---

[86]/      These claims are found in paragraphs 187-192 of Hunt's amended Rule 32 petition.  (Vol. 14, Tab 48.)

Hunt.  This claim is due to be denied.

      **d.**    **Prosecutorial Misconduct.**  (Doc. 1, ¶¶ 98-100.)

Next Hunt claims his trial attorneys were ineffective for failing to object to alleged prosecutorial misconduct during the penalty phase as set forth in Paragraphs 171 through 77 and 204 though 216 of his habeas petition. (Doc. 1, ¶ 98-100.)  These are the same claims he raised in paragraphs 73-74 of this habeas petition.  These claims are discussed *infra*, in Section VI(4)(e)(ii).

      **e.**    **Jury Instructions and Verdict.**  (Doc. 1, ¶¶ 101-04.)

Hunt complains that his trial attorneys were ineffective because they failed to object to certain instructions:

1.    Hunt complains that his attorneys failed to object when the trial Court included, in its penalty phase jury charge, a list of every statutory mitigating factor under Alabama law.  By reading all of the factors, Hunt contends the Court implicitly suggested to the jury that the absence of evidence to support the listed mitigators was something that would weigh in favor of a death sentence.  (*See* Doc. 1, ¶ 101; *citing* Doc. 1, ¶ 143.)

2.    In paragraph 102, Hunt complains that his trial attorneys failed to object to the following instructions spelled out in Paragraphs 157 through 166 and paragraphs 171 through 77 of his habeas petition:[87]

    &bull;    The Court read the list of non-statutory mitigators, but failed to define or give examples of non-statutory mitigators.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶¶ 158-59.)[88]

    &bull;    The Court gave allegedly confusing instructions regarding the number of votes required for a death sentence recommendation.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶ 160.)

    &bull;    The Court transposed the terms mitigating and aggravating at one point during its instructions.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶ 161.)

---

[87]    The Court has already addressed Hunt's ineffective assistance of counsel claims with respect to the comments spelled out in paragraphs 171-77.  *See* Section VI(4)(e)(ii) in the current opinion.

[88]    Hunt did not raise this claim in his amended Rule 32 brief, (*See* Vol. 14, Tab 48 at 2091234421-223), nor in his Rule 32 appellate briefs, (*See* Vol. 19, Tab 54 at 94-97; Vol. 21, Tab 58 at 119-23).  As such, the claim is precluded because he failed to fairly present it to the state courts and a return to state court would now be futile.

- The Court at one point indicated that the burden of proof on mitigating circumstances was not beyond a reasonable doubt, but instead was by a preponderance.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶ 162. )

- The Court gave allegedly improper instructions regarding the sentence to be imposed if the jury found no aggravating circumstances.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶ 163.)

- The Court gave an instruction on circumstances that would allegedly require a sentence of life without parole, but the Court told the jury it "may" sentence defendant to life.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶¶ 164-65.)

- The cumulative affect of these comments violated Hunt's constitutional rights.  (Doc. 1, ¶ 102; *citing* Doc. 1, ¶¶ 166.)

3    Hunt complains that his trial attorneys failed to object to the jury verdict form.  (Doc. 1, ¶ 103; *citing* Doc. 1, ¶¶ 144-46.)

4.    Hunt complains that his attorneys were ineffective for failing to object when the jury failed to specify the aggravating and mitigating factors it found and upon which they based their recommendations.  (Doc. 1, ¶ 104; *citing* Doc. 1, ¶¶ 217-18.)

With the exception of the claim that the court read the list of non-statutory mitigators, but failed to define or give examples of non-statutory mitigators,[89] the Circuit Court rejected these ineffective assistance of counsel claims.  (Vol. 22, Tab 63 at 86-89.)  As discussed above, the Court of Criminal Appeals summarily rejected Hunt's ineffective assistance of counsel penalty phase claims because he failed to meet his burden of proof to establish the *Strickland* elements as required under Alabama Rule of Criminal Procedure 32.3.  *Hunt*, 940 So. 2d at 1070.

Again, Hunt has failed to established why the state court's decision is contrary to or an unreasonable application of the law or facts.  Thus, this claim is due to be dismissed.

**f.    Other Penalty Phase Issues.**  (Doc. 1; ¶ 105.)

--------

[89]/    *See* prior footnote.

Hunt next complains that his trial attorneys were ineffective for agreeing to have all the guilt-phase evidence automatically admitted during the penalty phase.  Hunt contends that the evidence during the guilt phase related to more than the two aggravating factors the jury had to consider at the penalty phase.  Accordingly, much of the evidence was "overwhelmingly irrelevant" and prejudicial.  As such, his trial attorneys "greatly enhanced the chances that the jury unlawfully considered and found non-statutory aggravating factors arising out of the guilt-phase evidence, and was wholly unreasonable."  (Doc. 1 ¶ 105.)

Hunt raised this claim in his amended Rule 32 brief, (Vol. 14, Tab 48 ¶ 237).  The court rejected this claim because Hunt failed to present any evidence that would meet the *Strickland* standard.  (Vol. 22, Tab 63 at 93.)  Hunt raised this claim again in his Rule 32 appellate brief, (Vol. 19, Tab 54 at 97-102), but again the Appeals Court summarily rejected Hunt's ineffective assistance of counsel penalty phase claims because he failed to establish the criteria of *Strickland*.  *Hunt*, 940 So. 2d at 1070.

Moreover, any objection by counsel would have been overruled. Section 13A-5-45(c) of the Alabama Code states that

> Evidence presented at the trial of the case may be considered insofar as it is relevant to the aggravating and mitigating circumstances without the necessity of re-introducing that evidence at the sentence hearing, unless the sentence hearing is conducted before a jury other than the one before which the defendant was tried.

Hunt has failed to cite to Supreme Court precedent that would render this statute unconstitutional, that would suggest his attorneys were deficient, or that would show he was prejudiced.  Thus, he has not established that the state court's finding was contrary to or an unreasonable application of *Strickland*.

6. [90]   **Sentencing Hearing.**  (Doc. 1, ¶ 106-14.)

Hunt makes several ineffective assistance of counsel claims regarding the sentencing phase of his proceedings.

First, Hunt argues that his trial attorneys were ineffective for failing to prepare for the sentencing hearing, and for failing to present *any* argument at the hearing.  Because of this lack of preparation, the decision to forego an argument could not have been strategic.  (Doc.1, ¶¶ 106-08.) Hunt again refers to the evidence of his abusive childhood and his early drug and alcohol abuse, and argues that there are many arguments counsel could have made on his behalf.   (Doc.1, ¶ 106-08.)

Hunt raised this claim in his amended Rule 32 brief.  (Vol. 14, Tab 48 ¶ 235).  The trial court rejected the claim because Hunt failed to present evidence sufficient to meet the *Strickland* standard. (Vol. 22, Tab 63 at 91-92.)  Hunt raised this claim in his Rule 32 appellate brief, (Vol. 19, Tab 54 at 97-98), where it was summarily rejected.   *See Hunt*, 940 So. 2d at 1070.  Hunt's present bare allegations that the state court determination was wrong does not establish that the state court's finding was contrary to or an unreasonable application of *Strickland*.

Second, Hunt claims his attorneys were ineffective because they failed to object when the trial court allegedly refused to consider non-statutory mitigation evidence, as spelled out in paragraphs 148 through 159 of his habeas petition.  (Doc.1, ¶ 109.)  Hunt raised this claim in his amended Rule 32 petition. (Vol. 14, Tab 48 ¶¶ 227-34). The court denied it, finding:

> This claim is located . . .  in paragraph 227-234 . . . of Hunt's amended petition. [Footnote 5 omitted]  This Court did consider the evidence of Hunt's childhood, his drug abuse as a youth, and the fact that he was abused by this father but found that the evidence did not rise to the level of a nonstatutory mitigating circumstance. (C.R. 1051) On direct appeal, the Court of Criminal Appeals reviewed the Court's sentencing order and held that its "findings regarding the aggravating and

---

90/         In Hunt's habeas petition, this section is mislabeled as Section 5.  (*See* Doc. 1 at p. 42.)

mitigating circumstances [were] supported by the evidence." *Hunt v. State*, 659 So. 2d at 960.  The fact that the Court did not find the evidence presented by trial counsel to be mitigating was not a basis for them to object; thus, trial counsel was not ineffective for failing to do so.  The allegation . . . fails to state a claim or establish that a material issue of fact or law exist [sic] which entitle [sic] him to relief as required by Rule 32.7(d), ARCrP. . . .

> In the alternative, . . . . [t]he Court finds that Hunt has failed to prove that trial counsel's performance was deficient or caused him to be prejudiced.

(Vol. 22, Tab 63 at 90-91.)  Ultimately, on rehearing, the Court of Criminal Appeals reviewed this claim and independently reweighed the aggravating circumstances against the non-statutory mitigating evidence Hunt presented on collateral review.  *Hunt*, 940 So. 2d at 1070.  The Appeals Court held it was "confident that death was the appropriate sentence in this case . . . . " *Id*.

Without any evidence to the contrary, Hunt has failed to establish that the Court failed to consider his mitigation evidence.  Thus he cannot establish deficiency or prejudice under *Strickland* because his trial attorneys failed to offer an objection.

Third, Hunt challenges his trial counsel for failing to object to the death penalty as imposed in this case as disproportionate and discriminatory.  (Doc.1, ¶ 110.)  However, Hunt failed to raise this claim in his amended Rule 32 petition.  (Vol. 19, Tab 54 at iii - viii, 57 - 96, 97-100; Vol. 21, Tab 58 at iii - iv; 123-29.)  Therefore, the claim is precluded because Hunt failed to exhaust and any return to state court would be futile.

In the alternative, Hunt fails to satisfy the *Strickland* standard because, as discussed in the substantive section, he presented no evidence to support his claim that the death penalty was imposed in a disproportionate and discriminatory manner.  Therefore, his attorneys could not have been deficient, and he was not prejudiced under *Strickland*.

Fourth, Hunt complains that his trial counsel failed to object to Alabama's "method of execution" as unconstitutional.  (Doc.1, ¶ 111.)  In his Rule 32 brief, Hunt alleged counsel was ineffective for failing to challenge Alabama's use of electrocution.  (Vol. 14, Tab 48, ¶ 236.)  The Rule 32 trial court rejected his claim:

> This claim is moot. The most recent session of the Alabama legislature change [sic] the primary method [sic] execution in Alabama from electrocution to lethal injection. [Thus this] allegation . . . fails to state a claim or a material issue of fact or law upon which Hunt is entitled to relief as required by Rule 32.7(d), ARCrP.  Therefore, it is denied.

(Vol. 22, Tab 63 at 92-93.)  Hunt then failed to raise any ineffective assistance of counsel method of execution claim in his Rule 32 appellate briefs.  (Vol. 19, Tab 54 at iii - viii, 97- 102; Vol. 21, Tab 58 at iii - iv; 123-29.) Therefore, the claim is precluded because Hunt failed to exhaust and any return to state court would be futile.  *See* 28 U.S.C. § 2254(b)(1)(A); Ala. R. Crim. P. 32.2(b) and 32.2(c).

In the alternative, it should be noted that Hunt has failed to establish the *Strickland* elements; there is no basis in United States Supreme Court precedent for arguing that lethal injection as administered by the state of Alabama is cruel and unusual.

Fifth, Hunt argues that his trial counsel failed to argue that the cumulative effect of the sentencing errors violated due process and rendered the trial and sentence unreliable.  (Doc.1, ¶ 112.) Hunt did not raise this claim in his amended Rule 32 brief.  (Vol. 14, Tab 48, ¶¶ 73-100.)  Therefore, the claim is precluded because Hunt failed to exhaust and any return to state court would be futile. In the alternative, the Court finds that Hunt has failed to meet the *Strickland* standard because his individual claims failed.

Hunt also contends his trial attorneys were ineffective for failing to "lodge timely and proper objections, thereby limiting many of Hunt's claims to plain error review.  Hunt argues that had the

objections been made, they would have been reviewed on direct appeal under a less stringent standard, which would have resulted in reversal of his conviction and death sentence. (Doc.1, ¶ 113.) However, Hunt does not cite to any specific instances about which he complains. Hunt next claims his trial attorneys were ineffective throughout the pre-trial, guilt and penalty phases, thereby resulting in insufficient proportionality review. (Doc.1, ¶ 114.) Again, however, he fails to cite to any specific instances.

These claims fail because they are not sufficiently pled. *See* Ala. R. Crim. P. 32.6 (b). Moreover, both of these arguments are essentially arguments that his cumulative claims give rise to constitutional deprivations. Because his individual claims are without merit, these claims also fail.

### 7.[91]   Appeal and Collateral Review.  (Doc. 1, ¶¶ 115-123.)

Hunt next complains that during his initial appellate proceedings, his attorneys were ineffective, thereby depriving him of his right to have his conviction and death sentence carefully and rationally reviewed with the benefit of full briefing and representation, as guaranteed by the United States Constitution. (Doc. 1 ¶ 115.)

Hunt explains that his trial counsel passed away not long after his trial. His first appellate lawyer, Stanley Cohen of New York, filed numerous motions seeking to obtain or reconstruct the files of the trial lawyers and "correct" the record on appeal. He contends that the trial court never ruled on all of the motions and never completed the task of compiling the correct record for appellate review. Mr. Cohen was replaced on appeal to the Court of Criminal Appeals by Julian Massey Relfe. Later, Mr. Gespass and Mr. Izzi represented Hunt on appeal to the Alabama Supreme Court. (*Id.* ¶ 116.)

---

[91]/         In Hunt's Habeas Petition, this Section is mislabeled as Section 6.  (*See* Doc. 1 at p. 44.)

Hunt claims his lawyers were ineffective on direct appeal for failing to conduct an investigation to discover evidence that had not been adduced below: namely the mitigation evidence previously discussed.  Additionally, Hunt claims his counsel on direct appeal were ineffective for failing to research, prepare, raise, or argue adequately for appellate review the following legal claims:

- *Brady* violations

- The trial court's failure to instruct on lesser-included offenses

- Improper restriction on his ability to cross-examine crucial witnesses, James Carl Sanders.

- All of the substantive claims found in paragraphs 22 through 28 and 126 through 231 in his habeas petition.

- All of his ineffective assistance of counsel claims found in paragraphs 33 through 114

- Ineffective assistance of counsel of both trial and appellate counsel were not argued in the Supreme Court

(Doc. 1, ¶ 118.)

- Failing to properly brief the  Alabama Supreme Court petition, in which counsel only sought review on three substantive errors that occurred at trial level: (1) the trial court's failure to instruct on intoxication and manslaughter; (2) the trial court's allegedly improper restriction of Hunt's ability to cross-examine witnesses; and (3) the trial court's allegedly improper ruling that the State could introduce testimony that he burned the decedent's house prior to the murder.  (Doc. 1, ¶ 119.)  Additionally failing to submit adequate briefs in both the Court of Criminal Appeals and the Alabama Supreme Court based, in great deal, on drafts written by Hunt himself. (Doc. 1, ¶ 121.)

- Failing to ensure the trial court compiled a complete record.  (Doc. 1, ¶ 120.)

- Failure to raise on direct appeal the issues identified above, except ineffective assistance of counsel claims, thereby precluding post-conviction review and prejudicing Hunt not only on direct appeal, but also on collateral review.  (Doc. 1, ¶ 122.)

- Finally, rather than direct his complaint at his attorneys, he again challenges the Alabama Courts for incorrectly applying *Strickland* and requiring extrinsic evidence of prejudice.

(Doc. 1, ¶ 123.)

Respondent argues these claims are procedurally defaulted because Hunt failed to raise them in his brief to the Court of Criminal Appeals. Rather, Hunt simply raised general allegations such as, appellate counsel "submitted completely inadequate briefs" and failed to raise a "myriad" of constitutional and trial errors described in detail in connection with the ineffective assistance of counsel claims and other claims in the Rule 32 petition. (Answer ¶¶ 163-71; *See* Vol. 19, Tab. 54 at 103-05.)

The Alabama Court of Criminal Appeals rejected Hunt's claims of ineffective assistance of appellate counsel claims:

Hunt argues that the circuit court erred in denying relief on his claim that his appellate counsel was ineffective.

Hunt was represented on appeal by attorney J. Massey Relfe, Jr. Relfe was not called to testify at the Rule 32 proceedings. Neither was any evidence offered to support Hunt's claims that counsel was ineffective on direct appeal

On appeal Hunt makes only a general claim that counsel was ineffective during his direct appeal. He identifies no specific deficiency. We agree with the United States Court of Appeals for the Eleventh Circuit:

"[W]e note that the record is silent as to why trial counsel did not pursue a motion to suppress the evidence obtained from Grayson incident to his arrest on Fourth Amendment grounds; Grayson's habeas counsel did not inquire as to trial counsel's reasons for not raising such a claim either during counsel's deposition or his testimony at the state habeas hearing. 'An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption [of effective representation]. Therefore, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." ' *Chandler v. United States,* 218 F.3d 1305, 1314 n.15

> (11th Cir. 2000) (en banc) (quoting *Williams v. Head,* 185 F.3d 1223,
> 1228 (11th Cir. 1999)."

> *Grayson v. Thompson*, 257 F.3d 1194, 1218 (11th Cir. 2001). Hunt failed to meet his
> burden of proof in regard to this claim.

*Hunt*, 940 So. 2d at 1070-71.

In his reply brief, Hunt cites to the above quoted language as evidence that his claim is not

precluded because the appeals court reached the merits of his claim. (Reply at 73-75.) He then, in

one sentence without any legal analysis, contends that the Court of Criminal Appeal's decision was

contrary to and an unreasonable application of *Strickland*. (*Id*. at 75.)

Even assuming the state court did address the claims on the merits, Hunt has not established

that the state court's determination was contrary to or an unreasonable application of the principles

enunciated in *Strickland*. Inasmuch as Hunt's ineffective assistance of counsel direct appeal claims

simply mirror his previously argued claims, and, all of those claims have been unsuccessful, he is not

entitled to relief on his ineffective assistance of counsel direct appeal claim.

## VIII.  HUNT'S WAIVER OF RIGHT TO PURSUE HIS PENALTY PHASE CLAIMS

Hunt, who in spite of the Court's repeated instructions to cease, has continued to file

numerous *pro se* letters[92] clearly indicating that he wants to raise challenges only to the guilt phase

of his trial. He requests to withdraw all of his sentencing claims[93], and faults counsel for failing to

follow his instructions to do so. Accordingly, because Hunt has "continually attempted to waive all

---

[92]/   Because Mr. Hunt is represented by counsel, his submissions are not "pleadings" and are thus referred to as "letters."

[93]/   This request is not unique to this proceeding. On appeal from the denial of Hunt's Amended Rule 32 petition, the Alabama Court of Criminal Appeals observed that although counsel had been appointed to represent Mr. Hunt, he had nonetheless filed several *pro se* motions requesting the Rule 32 court decline to entertain claims related to the penalty phase of his capital trial.

penalty phase claims since his Rule 32 petition was filed almost 10 years ago," Respondent contends that Hunt has waived his right to pursue his penalty phase claims.  (Answer ¶ 128 n.9.)[94]

The law of the Eleventh Circuit is clear that a 2254 petition can be dismissed in its *entirety* by a petitioner subject to the death penalty, as long as the Court is sure that the petitioner is competent to make that decision.  *Lonchar v. Zant*, 978 F.2d 637, 640 (11th Cir. 1992).  The  inquiry is controlled by the Supreme Court's decision in *Rees v. Peyton*, 384 U.S. 312 (1966), which established that the test for determining competency to waive post-conviction review in a capital case is whether a defendant has the "capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder or other defect which may substantially affect his capacity in the premises." *Lonchar*, 978 F.2d at 1641.  The application of *Rees* and *Lonchar* were again reaffirmed in *Henderson v. Campbell*, 353 F.3d 880, 883 (11th Cir. 2003) when the appellate court held that the district court had correctly concluded that a petitioner was able to make a rational choice among available options in dismissing his 2254 petition.

In *Ford v. Haley*, 195 F.3d 603, 605 (11th Cir. 1999), the Eleventh Circuit further refined the inquiry, concluding that the petitioner "... need not understand the particulars of each legal issue framed in the petition or the likelihood of prevailing on any of them, ... [rather the petitioner must exhibit] ... 'a basic understanding of the habeas proceeding' and understand that without further proceedings 'he would be executed.'"

---

[94]/    Respondent's contention is perfectly reasonable, however, for the reasons set forth below the court has considered Hunt's claims as presented in the petition.

In this case, the court's original intent was to obtain and receive into evidence the opinion of a neutral psychiatrist with a forensic background to assist in determining whether Mr. Hunt was competent to waive his sentencing claims.  That is the appropriate test.

It must be noted, however, that there is a distinction in this case.  Hunt has not asked to dismiss his habeas petition in its entirety.  Instead, at most, he disagrees with counsel's decision to present both guilt and sentencing issues.  The court's scheduling order clearly requires counsel to raise all possible claims.  Counsel has complied with that order.  Hunt seeks some form of hybrid representation in which he can "overrule" counsel's decision without proceeding *pro se*.  There is no such federal constitutional right.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (a defendant does not have a constitutional right to share the duties of conducting his defense with a lawyer, or "choreograph special appearances by counsel"); *United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir. 1994)(there is no constitutional or statutory right to simultaneously proceed *pro se* and with benefit of counsel).

Not only has Hunt not asked to dismiss his habeas petition in its entirety, but he has not asked to proceed in this action without counsel.  A request to proceed *pro se* would be within the court's discretion, as the Sixth and Fourteenth Amendments of our Constitution guarantee that a person *brought to criminal trial* in any state or federal court has the right to self-representation.  It does not follow that such a right equates to a Sixth Amendment right to represent oneself in a  federal habeas proceeding.  *See*, *e.g., Martinez v. Court of Appeal of California*, 528 U.S. 152, 162-63 (2000)(Sixth Amendment right to self-representation vanishes following a guilty verdict, including on direct appeal; neither the holding nor the reasoning in *Faretta* establishes a constitutional right to self-representation on direct appeal from a criminal conviction); *accord Douglas v. California*, 372

U.S. 353, 357-58 (1963).  Hunt is challenging a state court conviction and sentence of death in a §

2254 habeas petition.  For that reason, the appointment of counsel is governed not by the Sixth

Amendment, but by two statutory provisions, both of which recognize that self-representation and the

appointment of counsel are within the court's discretion[95].

      Hunt's *pro se* position is arguably supported by the rationale of *Rees, Lonchar,* and the like.

*See also Whitmore v. Arkansas*, 495 U.S. 149 (1990); *Demosthenes v. Baal,* 495 U.S. 731 (1990);

*Singleton v. Lockhart*, 962 F.2d 1315 (8th Cir. 1992).  However, in this case, Hunt is represented by

competent counsel who chose to present those claims they deemed to be of arguable merit.  Hunt has

not asked to withdraw the petition in its entirety and face execution, nor to discharge counsel and

proceed *pro se* in this action.  Because there exists no constitutional right to hybrid representation in

this post-conviction proceeding, nor for that matter, to self-representation, the Court will not honor

Hunt's *pro se* requests to waive the sentencing claims.  In any event, the Court finds the claims to be

without merit. Should the Eleventh Circuit find otherwise and conclude that Hunt is due sentencing

relief, Hunt may, under *Gilmore v. Utah*, 429 U.S. 1012 (1976), make a knowing and intelligent

decision to waive judicial remedies and face execution at that time.

### IX.  CUMULATIVE EFFECT OF THE ERRORS

---

[95]    (1)    "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  28 U.S.C. § 1654; and

    (2)    "In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other service in accordance with paragraphs (5), (6), (7), (8), and (9)."  21 U.S.C. § 848(q)(4)(B).

The final claim presented in Hunt's habeas petition is a catchall argument. Hunt contends that the cumulative effect of the purported errors spelled out in his petition violated his constitutional rights. Given the Court's findings throughout this opinion, his claim is without merit.

## X.  CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus filed by Gregory Hunt, along with his requests for discovery and an evidentiary hearing (docs. #17 and #35) are due to be DENIED. A separate order shall be entered contemporaneously herewith.

Done this 12th day of August 2009.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671